**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| PALTALK HOLDINGS, INC., <br><br> Plaintiff, <br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | CIVIL ACTION NO. 6:21-CV-00757-ADA <br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF PALTALK HOLDINGS, INC.'S SUR-REPLY
<u>CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 2

I. "a multiplexed stream" / "said multiplexed stream" (cls. 1, 2, 6, 7) ........................ 2

a. "a data structure" ........................................................................................ 2

b. "continuous sequence" .................................................................................. 5

c. "interleaved packets" .................................................................................... 6

d. "audio data" ................................................................................................ 7

e. "each client on the active speakers list" ........................................................ 8

II. "PC-based equipment" ........................................................................................ 8

III. "means for removing" (claims 7 and 8) ............................................................... 9

CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biomedino, LLC v. Waters Techs.*,
   490 F.3d 946 (Fed. Cir. 2007)...................................................................................................9

*Brown v. 3M*,
   265 F.3d 1349 (Fed. Cir. 2001)...................................................................................................2

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998)...................................................................................................8

*Default Proof Credit Card Sys., v. Home Depot U.S.A.*,
   412 F.3d 1291 (Fed. Cir. 2005)...................................................................................................9

*Dell USA v. Lucent Techs.*,
   464 F. Supp. 2d 620 (E.D. Tex. 2006).........................................................................................9

*Hill-Rom Servs. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014)...................................................................................................4

*Ross-Hime Designs v. United States*,
   126 Fed. Cl. 299 (2016) ..............................................................................................................2

*Thorner v. Sony Computer Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)...................................................................................................6

*Vitronics Corp. v. Conceptronic*,
   90 F.3d 1576 (Fed. Cir. 1996).....................................................................................................3

## INTRODUCTION

Cisco wrongly contends that it seeks only to clarify the Patent's plain language. In fact, Cisco asks for a rewrite of the Patent that is untethered from the intrinsic evidence and based on the say-so of its expert. Such constructions are unwarranted and should be rejected.

"Multiplexed Stream." Cisco does not dispute the key points underpinning Paltalk's position that "multiplexed stream" should be given its plain and ordinary meaning. *First*, Cisco concedes that the term is well understood in the art. *Second*, Cisco concedes that its 19-word proposed construction imposes at least five limitations that are not found in the claim language. And *third*, Cisco's proposed limitations largely don't appear anywhere in the Patent—e.g., Cisco tries to impose an "interleaving" requirement when that word appears *nowhere* in the intrinsic evidence. Cisco's proposed construction is neither plain nor ordinary. Given the parties' collective agreement that "multiplexed stream" is well understood, no construction is needed.

"PC-Based Equipment." Paltalk's proposed construction—"devices for personal computing"—arises from the clear contrast the Patent draws between "PC-based equipment" (which can mix multiplexed steams) and traditional telephones (which cannot). The Patent does not suggest that "PC-based equipment" is limited by the type of operating system or the type of computerized device. The scope of the claim language itself thus encompasses smartphones and VoIP devices, as well as other devices for personal computing. For its part, Cisco has equivocated about what devices are included as "PC-based equipment," apparently in an attempt to preserve a later argument that certain computerized devices are excluded notwithstanding the language of the claim. The Court should adopt Paltalk's construction, which is consistent with the claim language of the Patent.

"Means for Removing." In trying to argue that two means-plus-function claims are indefinite, Cisco advances a hyper-narrow view of what a POSITA would understand from the

Patent's specification. But as Paltalk's expert explains, the Patent clearly discloses a structure that triggers and performs the "means for removing" function.

## ARGUMENT

I. **"a multiplexed stream" / "said multiplexed stream" (cls. 1, 2, 6, 7)**

Paltalk and Cisco—as well as both parties' experts—agree that "multiplexed stream" is a well-understood term in the art. Cisco concedes that "multiplex" is a well-understood term that should be given a plain and ordinary meaning. *See* Cisco Opening Br. at 6; Bress Decl. ¶ 41; Madisetti Decl. ¶ 40 ("multiplex"). And as Cisco's own expert says, a "stream" is "simply … the output of a multiplexer." Bress Decl. ¶ 41. The universal agreement that "multiplexed stream" is a term well understood by a POSITA should end the claim construction inquiry. "When the plain meaning of a claim is immediately apparent, the Court should refrain from 'elaborate interpretation.'" *Ross-Hime Designs v. United States*, 126 Fed. Cl. 299, 316 (2016) (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). No construction is needed.

Cisco's construction, by contrast, is the definition of "elaborate interpretation" and then some. Cisco proposes a 19-word jumble. Whereas the inventors claimed only a "multiplex stream," Cisco proposes a construction with at least five additional limitations: "data structure," "continuous sequence," "interleaved packets," "audio data," and "each client on the active speakers list." All should be rejected.

a. **"a data structure"**

Cisco argues that the "data packets" referenced in the specification must be arranged in a "data structure." Cisco Reply at 2. While the '858 Patent says that data packets can enter the multiplexer and exit as part of a multiplexed stream, *see* '858 Pat., 8:1-3, the Patent includes no language that supports Cisco's argument that the packets must be "packaged into a data structure." *See* Cisco Reply at 5. The Patent does not even mention the concept of a "data structure."

2

Cisco does not deny that it proposes numerous limitations found nowhere in the text of the claim language (and most do not appear at all in the intrinsic evidence). Cisco nevertheless makes four arguments in support of its "data structure" limitation.

*First*, Cisco attempts to equate its proposed "data structure" limitation with the concept of a "data packet."[1] But "data structures" and "data packets" are not equivalent. What Cisco seeks with its proposed limitation is something far afield from what the Patent describes: a requirement that data packets be transmitted in a specific structured arrangement. The Patent says that data is received from clients in packets. *Id.* 4:36-37 ("Mixer 118 includes buffers 202 which receive audio *packets* from the clients 102 and 108 via switch 114."). Data packets enter the multiplexer during the multiplexing process, *see id.* 8:1-3, but the Patent does not require the output to be packaged into a "data structure" before being sent to clients. *See* Madisetti Decl. ¶ 41.

*Second*, Cisco contends that "a POSITA would know that transmission through a packetized network requires a data structure." Cisco Reply at 2. That argument is wrong for at least three reasons. First, Cisco justifies its unsupported "data structure limitation" by adding another unsupported limitation—that data be sent in a "packetized network." *Id.* Second, there is no "packetized network" requirement in the Patent. Although multiplexed streams containing data packets are sent along a network, that network also transports other data (e.g., proprietary code). *See* '858 Pat., 5:35-39. Third, Cisco imposes this additional limitation within a limitation based solely on the say-so of its expert. That is impermissible under well-established principles of claim construction. *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

---

[1] Cisco's own construction dooms its argument that data packets are equal to data structures. Cisco says that a multiplexed stream is "a data structure containing a continuous sequence of interleaved packets of audio data from each client on the active speakers list." Data structure must mean something more than just "data packets" to avoid a redundancy in Cisco's proposed construction.

*Third*, Cisco erroneously points to the Patent's preferred embodiment as evidence that data packets must be placed into a "data structure." Cisco Reply at 3-4. The preferred embodiment says that "[t]he mix/mux 208 forms multiplexed audio packets to be sent to clients capable of mixing multiple audio streams." '858 Pat., 4:50-52. While the embodiment mentions "data packets," it does not even reference—and certainly doesn't require—any "structure" for the multiplexed stream before it is sent to clients. The embodiment does not support a "data structure" limitation, nor could it. *See Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[W]e do not read limitations from the embodiments in the specification into the claims."). The embodiment merely contemplates that data is sent and received in packets over the network. The only disagreement is whether the multiplexed stream must conform to some data structure before being transmitted over the network to clients. The Patent says "no."

*Fourth*, Cisco argues that the multiplexed stream is "a single output data sequence" and therefore the multiplexed stream must exist in a single data structure. *See* Cisco Reply at 4. Cisco argues that "multiplexed stream" in claim 1 must refer to a single multiplexed stream that all clients receive. Cisco ignores the fact that, when there are active speakers, claim 2 describes the methodology by which clients receive *different* multiplexed streams based on the presence and number of active speakers. *Id.* 5:44-50 ("In step 314, active speaker audio data for every active speaker is multiplexed. However, as will be apparent to those skilled in the relevant art(s), if party j is an active speaker, step 314 will not include party j's own audio data in the multiplexed packets."). And in any event, the number of multiplexed streams formed during a conferencing session does not determine whether the streams must be sent to clients in a data structure.

Paltalk's position, by contrast, aligns with the claim language and specification. The Patent says that the multiplexer forms multiplexed audio packets, but it does not say that those packets

4

are then packaged into a structure. *See* '858 Pat., 4:50-52; Madisetti Decl. ¶ 41. Cisco's "data structure" limitation is an unsupported limitation for a claim term that all parties agree needs no construction, and it should be rejected.

**b.     "continuous sequence"**

Cisco next argues that the claimed "multiplexed stream" must be "continuous" because it purportedly contains only audio packets and "no other packets can be inserted into the multiplexed output." Cisco Reply at 6. That is a false premise. Such a limitation is not supported by the claim language, and it is not even arguably required by any of the intrinsic evidence. Cisco's proposed limitation is also inconsistent with how the Patent describes the invention.

The presence of other data (i.e., non-audio data) in the multiplexed stream may make certain audio packets in the stream "non-continuous," thus contradicting Cisco's proposed "continuous sequence" limitation. Cisco ignores the Patent's description of other data that may end up in the multiplexed stream. The Patent clearly states, for example, that proprietary code may be input into the audio stream or control stream when received from clients. '858 Pat., 5:37-39. That received data (the audio packets and other information) is then input into the multiplexer. *Id.* 5:44-46 ("In step 314, control flow 300 multiplexes (by employing mix/mux 208) the audio stream data (stored on retriever 206) for all k active speakers."). The multiplexer multiplexes other data along with the clients' audio packets when that data is received and then transmits it as a multiplexed stream. A POSITA easily understands this concept.

Finally, Paltalk's plain-language reading of the Patent is consistent with *both* parties' dictionary definitions of "multiplexing"—that is, "a technique used in communications and input/output operations for transmitting a number of separate signals simultaneously over a single channel or line." Since audio data and other information may enter the multiplexer, the inputs may

5

be output as a part of the multiplexed stream. The resulting multiplexed stream thus includes non-audio data and, for at least this reason, is not a "continuous sequence" of audio packets.

**c.     "interleaved packets"**

Cisco wrongly asserts "the parties agree that multiplexing of audio packets entails the interleaving of packets." Cisco Reply at 6. Paltalk does not agree. While interleaving may be an *example* of one kind of multiplexing, the Patent does not require "multiplexing" to involve "interleaving." Cisco argues, without support in the intrinsic record, that a POSITA would understand that "multiplexing" means interleaving. *Id.* There can be no reasonable debate on this point: ***the word "interleaving" appears nowhere in the intrinsic evidence***. Nor does the concept, for that matter. And, as Dr. Madisetti explains, there are different kinds of multiplexing contemplated by the Patent beyond interleaving. *See* Madisetti Decl. ¶ 40.

Cisco also contends that Paltalk should have proposed a type of multiplexing to counter its "interleaving" limitation. Cisco Reply at 6. But there is no need to propose a construction for multiplexing in light of its plain and ordinary meaning, particularly when POSITAs on both sides agree that "multiplexing" is a term well-understood in the art. *See* Bress Decl. ¶ 41; Madisetti Decl. ¶ 40. At bottom, Cisco is trying to cloak an elaborate construction as an effort in "clarifying the term's plain and ordinary meaning." Cisco Opening Br. at 9. The Court should reject Cisco's limitation here because the patentee did not act as a lexicographer and define terms beyond their plain and ordinary meaning. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning.") (internal quotation marks omitted).

    **d.**    **"audio data"**

Cisco urges the Court to limit the concept of a "multiplexed stream" to one that must include *only* "audio data." This limitation directly **conflicts** with the Patent's language. As previously discussed, a client's data input can include other data, including proprietary code. *See* '858 Pat., 5:37-39. While Cisco is correct that the proprietary code may be "sent to the multiplexer prior to the formation of the multiplexed stream," *see* Cisco Reply at 7, Cisco is wrong that the multiplexer somehow omits the proprietary code and all other information from the multiplexed stream output. The multiplexer multiplexes data that may include information beyond proprietary code. *See* '858 Pat., 5:37-39, 5:44-46. Cisco tries to subvert the Patent language by saying that proprietary code may only be inserted "into the audio stream of a single PSTN client." Cisco Reply at 7. But this is false; non-audio data may be inserted into the audio streams of both clients 102 (mixing clients) and clients 108 (non-mixing clients). *See* '858 Pat., 5:36-40. Audio data and other information both may be included in the multiplexer's output.

Moreover, Cisco's proposed "audio data" and "interleaving" limitations work in tandem to remove language from the specification, not to clarify it. Cisco says that "multiplexing" means "interleaving" and "interleaving" is "alternat[ing] received *audio* packets." Cisco Reply at 6 (emphasis added). Cisco then says that the multiplexed stream contains only audio data. *Id.* at 7. Cisco's limitations completely disregard the other data (including proprietary code) that is "sent to the multiplexer prior to the formation of the multiplexed stream." *Id.* Cisco's "interleaving" limitation is seemingly so restrictive that it only allows the multiplexer to alternate audio packets and does not allow the multiplexer to do anything with the other data that it receives. But if all the multiplexer does is "interleave," it must interleave and build the multiplexed stream using all the data input, not just the audio data.

Cisco's "audio data" limitation requires all other data to be excluded from the stream because "the multiplexed stream is composed of audio data and does not include other types of information." Cisco Reply at 7. Cisco simultaneously says the multiplexer receives audio data and other information, and can do nothing more than interleave that data, while also saying that only audio data ends up in the multiplexed stream. This is just one example of the inconsistency and confusion caused by Cisco's grab-bag of limitations. The Patent is clear that audio data, as well as other data, enter the multiplexer and are output as a part of the multiplexed stream. *See* '858 Pat., 5:37-39, 5:44-46. The Patent itself refutes Cisco's notion that a "multiplexed stream" must contain only audio data.

e.  **"each client on the active speakers list"**

Paltalk disputes Cisco's "each client on the active speakers list" limitation. That limitation contradicts the claim language because claim 1 subpart 5 and claim 6 already include language specifying that the invention "multiplex[es] … data received from each client on [the] active speakers list." *See* '858 Pat., 8:1-2. There is no basis to add this limitation and render the other claim language superfluous, and Cisco's attempt contravenes settled law on claim differentiation. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998).

II.  **"PC-based equipment"**

The parties' briefing on this term underscores the need for a construction. Cisco still has not enunciated a principled objection to Paltalk's proposed construction. Cisco concedes that the Patent clearly distinguishes between personal computers and traditional phones. Cisco Reply at 8. That is the key point. The Patent excludes traditional phones from being PC-based equipment, but it does not exclude smartphones and VoIP phones that may function as personal computers for purposes of the inventions claims in the Patent. The Court should adopt Paltalk's construction.

### III. "means for removing" (claims 7 and 8)

Claim 7's function is removing the active speaker's audio from the multiplexed stream before sending that audio to the active speaker. Claim 8 has a similar function with respect to active speakers who are non-mixing clients. Both claims have the same structure: "mixer 118" as well as the equivalents thereof. Cisco says that claims 7 and 8 are indefinite because the "mixer 118" structure is not "clearly linked or associated" with the disclaimed function or alternatively because the Patent does not explain how the "mixer 118" performs the means for removing functions. These arguments do not hold water.

Cisco first argues that "the mixer 118" is not the proper structure because it is not clearly linked or associated with the "removing" functions of claims 7 and 8. *See* Cisco Reply at 8. To be a corresponding structure, the structure must "actually perfor[m] the specified function." *Dell USA v. Lucent Techs.*, 464 F. Supp. 2d 620, 628 (E.D. Tex. 2006). But a patentee need not disclose "details of structures well known in the art"—it needs only to disclose "*some* structure." *Biomedino, LLC v. Waters Techs.*, 490 F.3d 946, 952 (Fed. Cir. 2007) (quoting *Default Proof Credit Card Sys., v. Home Depot U.S.A.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005)) (emphasis added).

Cisco's argument is wrong because the Patent discloses the "mixer 118" that performs the functions of claims 7 and 8, *i.e.*, "some structure." Claim 1 details the first step of the invention—the formation of a multiplexed stream that includes audio data from conference clients. '858 Pat., 7:55-8:5. Claim 6 states that a multiplexed stream is then sent to clients by a packet sender. *Id.* at 8:50-55. Before the packet sender sends the stream to an active speaker, however, the "mixer 118" triggers a process that removes the active speaker's audio data from the stream. *Id.* at 4:63 ("An event is detected by the mixer 118, causing the switch 204 to close …. Upon detecting an event, control flow 300 proceeds to step 304."). The control flow then ascertains which speakers are

9

active speakers. *Id.* 5:11-12. Then the "mix/mux 208" (a component of mixer 118) multiplexes data in step 314, excluding from the stream an active speaker's own audio data. *Id.* at 5:44-50.

The "mixer 118" initiates the process by which active speaker audio is removed from the multiplexed streams formed by the multiplexer. The "removal" function of claims 7 and 8 refers to the multiplexer's ability to exclude active speaker data in steps 314 and 316. *See id.* at 5:55-60; 6:59-7:8. Since the "mixer 118" both triggers and enacts the process by which active speaker data is removed from multiplexed streams and combined packets in claims 7 and 8, "the mixer 118" (and its component parts) "actually perform" the function of those claims. The Patent clearly links "mixer 118" as the structure for the removing process, as evidenced by "mixer 118's" involvement at every step of the way: in detecting the signal, in determining the number of active speakers, and finally in multiplexing or mixing the data for active speakers that excludes their own audio data.

Cisco next argues that the Patent does not describe how the "mixer 118" performs the removing function. But as Dr. Madisetti explains, the multiplexing and mixing processes performed by the "mixer 118" are well understood in the art. *See* Madisetti Decl. ¶ 38. The Patent also explains that the "mixer 118" prevents active speaker data from being included in streams sent to active speakers. *Id.* at 5:44-50. In this way, the multiplexed streams sent to active speakers have data "removed" when compared to the multiplexed stream formed in claim 1.

The structure of claims 7 and 8 is the "mixer 118." It is clearly linked and associated with the function of those claims because the "mixer 118" performs the described functions, and the Patent is sufficiently specific as to how the "mixer 118" accomplishes those tasks. Moreover, a POSITA can look at claims 7 and 8 and readily identify "mixer 118" as the structure.

## CONCLUSION

The Court should reject Cisco's construction of multiplexed stream, reject Cisco's indefiniteness arguments, and adopt Paltalk's proposed construction of PC-based equipment.

10

Dated: February 1, 2022                                  Respectfully submitted,


By: */s/ Max L. Tribble, Jr.*
    Max L. Tribble, Jr.
    State Bar No. 2021395
    SUSMAN GODFREY L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Fax: (713) 654-6666

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF PALTALK HOLDINGS, INC.**


OF COUNSEL:

Ryan Caughey (*admitted pro hac vice*)
State Bar No. 24080827
Bryce T. Barcelo (*admitted pro hac vice*)
State Bar No. 24092081
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
bbarcelo@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was filed electronically using the Court's CM/ECF system, on the 1st day of February 2022.

                                        */s/ Max L. Tribble, Jr.*
                                        Max L. Tribble, Jr.