# EXHIBIT 3

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS WACO DIVISION

| | |
|---|---|
| **PALTALK HOLDINGS, INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**CISCO SYSTEMS, INC.,**<br><br>**Defendant.** | Case No. 6:21-cv-00757-ADA |

## PALTALK'S NOTICE RULE 30(B)(6) DEPOSITION OF CISCO SYSTEMS, INC.

Plaintiff Paltalk Holdings, Inc. will take the deposition by oral examination of Cisco Systems, Inc. ("Cisco") at the following date, time, and location (as may otherwise be agreed to by the parties) pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure.

  Date: August 30, 2022

  Time: 9:00 a.m.

  Location: TBD

The deposition will be recorded stenographically before a notary public or other officer authorized to administer oaths, and shall continue from day to day, excluding weekends and holidays, until completed. The deposition may be videotaped and/or offered via live web feed with real-time transcripts to persons located off-site (in such a case, the persons will be identified on the deposition record).

Pursuant to Fed. R. Civ. P. 30(b)(6), Cisco shall produce for deposition one or more officers, directors, managing agents, employees, or other persons who can testify on its behalf with respect to the topics set forth in Exhibit A attached to this notice. The person(s) so designated shall

be required to testify to each of those matters known or reasonably available to Cisco. Paltalk requests that Cisco provide written notice to counsel for Paltalk at least two weeks prior to the date of the deposition of the name(s) and position(s) of the designee(s) who will testify on behalf of Cisco and to identify the matters to which each designee will testify.

Paltalk requests that Cisco produce the categories of documents and things listed in Exhibit B at or before the deposition pursuant to Rule 30(b)(2), as well as any documents in the possession of Cisco's witness relevant to the deposition topics. "Documents and things" as used herein have the same meaning as those terms used in Rule 34.

Dated: August 10, 2022

Respectfully submitted,

SUSMAN GODFREY L.L.P.

/s/ Max L. Tribble, Jr.
Max L. Tribble, Jr.
Bar No. 2021395
Ryan Caughey
Bar No. 24080827 *(pro hac vice)*
Bryce Barcelo
Bar No. 24092081
Amber B. Magee
Bar No. 24121572 *(pro hac vice)*
mtribble@susmangodfrey.com
bbarcelo@susmangodfrey.com
amagee@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana St, Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366

Kalpana Srinivasan
Bar No. 237460 *(pro hac vice)*
ksrinivasan@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue Of The Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100

*Counsel for Paltalk Holdings, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that, on Wednesday, August 10th 2022, all counsel of record who have appeared in this case were served with a copy of the foregoing via email.

/s/ Max J. Tribble, Jr.
Max J. Tribble, Jr.

## **EXHIBIT A**

### I.     DEFINITIONS AND INSTRUCTIONS

1. "This Action" means and refers to *Paltalk Holdings, Inc. v Cisco Systems, Inc.*, pending in the United States District Court for the Western District of Texas, Waco Division, under the civil action number referenced in the notice.

2. "Plaintiff" or "Paltalk" means and refers to Paltalk Holdings, Inc.

3. "You" or "Defendant" or "Cisco" means and refers to Cisco Systems, Inc. and includes all of its current or former officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, and all other persons acting or purporting to act on behalf of it, as well as all of its foreign and domestic subsidiaries, parents, affiliates, divisions, successors, predecessors, any relevant companies acquired by Cisco, and any other related entities with whom it has sufficient closeness, connection, and practical interaction to allow it control over that entity's documents and information, and specifically includes all assets or companies that have been acquired by it or with respect to which it has succeeded to rights and/or obligations.

4. "And," "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever makes the request more inclusive.

5. "Any" shall be construed as "all," "each and every," or "any one," whichever makes the request more inclusive.

6. "Concerning," "relating to," and "referring to" shall be interpreted so as to encompass the scope of discovery set forth in Federal Rule of Civil Procedure 26(b)(1). For example, Documents that "concern," "relate to," or "refer to" any given subject means all Documents that in any way directly or indirectly, in whole or in part, discuss, deal with, regard, constitute, pertain to, reflect, consider, underlie, modify, amend, confirm, mention, endorse, evidence, summarize, memorialize, describe, analyze, evaluate, represent, qualify, terminate, revoke, cancel, negate, comprise, contain, embody, enumerate, involve, identify, state, correspond to, or result from the subject or are in any way pertinent to the subject, including Documents concerning the preparation of other Documents.

7. "Date" means the exact day, month, and year, if ascertainable, or if not, the best estimate.

8. "Document" and, correlatively, "Documentation," shall be interpreted broadly, consistent with the comprehensive meaning in Federal Rule of Civil Procedure 34. Without limiting the foregoing, the term "Document" means and includes all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices, that are within Your possession, custody, or control, including all accounts; advertising literature; agreements; analytical records; appointment books or schedules;

articles; audits; bank records or statement blueprints; books; books of account; booklets; brochures; bulletins; calendars; CD, DVD, and other optical-disk media; charts; checks; circulars; coding forms; Communications (intra-or inter-company); computer files or storage (in a computer, computer disk, computer tape or otherwise); computer printouts; computer readable data; computer programs; computer source and/or object code; contracts; copies; correspondence; data bases; diaries; disks; displays; drafts of any document; drawings; electronic mail (e-mail); envelopes; examinations; films; files; file folders; financial reports; flyers; forecasts; graphs; indices; instructions; instruction manuals or sheets; invoices; job requisitions; letters; licenses; logs; magnetic media or sheets; magnetic media of any kind (Including disks, tapes, or other media) containing computer software with supporting indices, data, documentation, flow charts, comments, object code, source code, and computer programs relating thereto; manuals; maps; memoranda; messages (Including text messages and instant messages); minutes; three- dimensional models; magazines or other published material (or any clipping thereof); newspapers; notes (typewritten, handwritten, stenographic, recorded, or any other type); notebooks; notices; opinions; pamphlets; papers; periodicals or other publications; photographs; price lists; prints; printed circuit boards; promotional literatures; punch cards; purchase orders; questionnaires; receipts; records; recorded Read-Only-Memory (ROM); recordings (magnetic, electronic, videotape, or any other type); record requests; reports; slides; solicitations; statements; statistical compilations; stenographic notes; studies; summaries (including any memoranda, minutes, notes, records, or summary of any (a) telephone or intercom conversation or message, (b) personal conversation or interview, or (c) meeting or conference); supporting documentation; surveys; tapes; telegrams; telephone logs; transparencies; travel or expense records; video recordings; video tapes; visitor logs; voice recordings; vouchers; x-ray films and prints; worksheets; working papers; writings or other handwritten, printed, reproduced, recorded, typewritten, or otherwise produced graphic material from which the information required may be obtained. The term "Document" also includes all copies of documents by whatever means made, except that where a document is produced, identical copies of it that do not contain any markings, additions, or deletions that are different from the original do not have to be separately produced.

9. "Identify," "Identification," or "Identity," when used in reference to:

   a) a natural person, means: (1) the person's full name or title, last known address, and telephone number; (2) the person's present employer(s) and place(s) of employment; and (3) the person's job title or position held.

   b) a firm, corporation, partnership, joint venture, or other entity which is not a natural person, means: the entity's full name, place of incorporation (if known), address of its principal place of business, and telephone number.

   c) a Patent or Patent application, means: (1) its Patent number or application number and Dates of filing, publication, and grant; (2) the Identity of all applicants or patentees; (3) the title of the application or Patent; and (4) the present status of the application or Patent (e.g., pending, abandoned, etc.). If the Patent or Patent application has already been produced in discovery, it is sufficient to identify the Bates number(s) of such Patent or Patent application.

   d) a Document, other than a Patent or Patent application, means: (1) its Date, author, and

addressee(s); (2) the type of Document (e.g., letter, memorandum, etc.); and (3) its present location. If the Document has already been produced in discovery, it is sufficient to identify the Bates number(s) of such Document.

10. "Including" means "specifically including but not limited to."

11. "Person(s)" or "People" means and refers to any natural person, firm, association, partnership, corporation, group, sole proprietorship, public entity, governmental agency, organization or other form of legal business entity, regardless of whether "not-for-profit," and specifically including Plaintiff and Cisco.

12. "Plaintiff's Infringement Contentions" means and refers to Paltalk's Infringement Contentions and any amendments thereto.

13. "Accused Functionalities" shall mean all products, systems, and instrumentalities referred to in the complaint, Plaintiff's Infringement Contentions, and all reasonably similar products systems, and instrumentalities. The Accused Functionalities include, but are not limited to, echo cancellation, identification of an active speaker, and the hosting of both PSTN and SIP-based users in a single conference.

14. "Accused Products" shall mean all products identified in Paltalk's Complaint and Preliminary Infringement Contentions, including any supplements and amendments thereto.

15. "Patent-in-Suit" shall mean U.S. Patent No. 6,683, 851.

16. "Prior Art" shall mean any printed publication, any public use, any public knowledge, any sale, or any patent for sale anywhere in the world which Cisco believes may be material to the validity of the Patent-in-Suit.

17. "Source Code Control System" shall mean a tool used to track the development of a source code file to prevent it from being altered by more than one person at a time.

18. "Version" shall mean a set of software code (source or object) that reflects a specific form or variation of the code. When changes are made to the code, the changed set of software code is identified by a unique number or letter code, termed the "version number," "revision level," or simply "version." Within a given version number category (major, minor), these numbers are generally assigned in increasing order and correspond to new developments in the software. For example, version 1.0, version 2.0, and version 2.2.

19. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

20. The singular form of any word shall be deemed to include the plural, and vice-versa.

21. Unless otherwise signified, whether a word or term begins with a capital or lower-case letter is irrelevant to its meaning as defined above.

## II. DEPOSITION TOPICS

**DEPOSITION TOPIC NO. 1**: The identity and operation of all Accused Functionalities (and all versions thereof), including but not limited to those made the subject of Plaintiff's Infringement Contentions, that are (or have been) (i) made, used, sold, offered for sale, or imported into the United States by (or for) Webex and/or Cisco since the issuance of the Patent-in-Suit and/or (ii) otherwise utilized in, or with, any product(s) made, used, sold, offered for sale, or imported into the United States by (or for) Webex and/or Cisco since the issuance of the Patents-in-Suit.

**DEPOSITION TOPIC NO. 2**: Cisco's knowledge of the Patent-in-Suit, including the date, circumstances, and person(s) or mechanism(s) through which Cisco first learned of the Patent-in-Suit.

**DEPOSITION TOPIC NO. 3**: Cisco's Document collection and production efforts in this Action, including Documents collected and produced pursuant to the Order Governing Proceedings and Scheduling Order.

**DEPOSITION TOPIC NO. 4**: The identity, organization and structure of any division, department, group, or subdivision (formal or informal) of Cisco from which Cisco has collected and produced Documents in this Action.

**DEPOSITION TOPIC NO. 5**: The methods, processes, and procedures employed by Cisco to search for, identify and produce Documents (including documents in electronic format) in this Action.

**DEPOSITION TOPIC NO. 6**: The methods, processes, and procedures employed by Cisco to search for and identify individuals named in Cisco's disclosures under Federal Rule of Civil Procedure 26(a)(1).

**DEPOSITION TOPIC NO. 7**: Cisco's answers to Plaintiff's interrogatories served on Cisco in this Action, including the content and subject matter of Documents identified and/or relied upon by Cisco in its answers.

**DEPOSITION TOPIC NO. 8**: Cisco's policies, procedures, practices and actual conduct regarding the creation, distribution, retention and/or destruction of Documents.

**DEPOSITION TOPIC NO. 9**: The identification of Documents that Cisco has not been able to produce in this case because they have been deleted, physically destroyed, corrupted, damaged, lost, overwritten, or otherwise disposed of or stolen.

**DEPOSITION TOPIC NO. 10**: Efforts made or steps taken by Cisco to design around or otherwise avoid infringement of the Patent-in-Suit.

**DEPOSITION TOPIC NO. 11**: Changes made to the design or operation of the Accused Functionalities.

**DEPOSITION TOPIC NO. 12**: The software of each of the Accused Functionalities, including but not limited to the design, development, structure, operation, and use of such software, how the software is archived, version history and changelogs, Version and/or Source Code Control System used for organizing the software, who developed the software, third party products used to develop the software, and development environments used in creating the software.

**DEPOSITION TOPIC NO. 13**: The design, development, organization, and functionality of the source code produced by Cisco in this litigation.

**DEPOSITION TOPIC NO. 14**: The operational and design differences among versions of the Accused Functionalities.

**DEPOSITION TOPIC NO. 15**: The flow or process of the Accused Functionalities as experienced by end users.

**DEPOSITION TOPIC NO. 16**: The identification, description, code packages (modules, classes, etc.), and purpose of all algorithms used, executed, or otherwise implemented by the Accused Functionalities.

**DEPOSITION TOPIC NO. 17**: The design, development, structure, operation, implementation, and use of each of the Accused Functionalities.

**DEPOSITION TOPIC NO. 18**: User interfaces for, or relating to, the Accused Functionalities.

**DEPOSITION TOPIC NO. 19**: Manuals, user guides, and other instructional information and resources provided or made available to Cisco's customers or end users relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 20**: The defenses asserted in this case by Cisco, including but not limited to:

a) Cisco's basis(es) for denying infringement of the Patent-in-Suit;
b) Cisco's basis(es) for alleging invalidity of the Patent-in-Suit; and
c) Cisco's basis(es) for alleging unenforceability of the Patent-in-Suit.

**DEPOSITION TOPIC NO. 21**: The identification of all Documents considered by Cisco in connection with any opinion concerning the Patent-in-Suit, including, but not limited to, the validity, enforceability, and infringement of the Patent-in-Suit.

**DEPOSITION TOPIC NO. 22**: Cisco's policies and practices related to obtaining and protecting its intellectual property.

**DEPOSITION TOPIC NO. 23**: Cisco's policies and practices related to licensing intellectual property to others.

**DEPOSITION TOPIC NO. 24**: Cisco's policies and practices related to licensing intellectual property from others.

**DEPOSITION TOPIC NO. 25**: Licenses (including patent licenses) that Cisco has entered into relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 26**: Royalties (including patent royalties) and/or license fees that Cisco has paid or is paying in connection with or relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 27**: Royalties (including patent royalties) and/or license fees that Cisco has collected or received, or is collecting or receiving, in connection with or relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 28**: All surveys (conducted by Cisco or conducted on behalf of Cisco) relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 29**: The amount of sales, uses, subscriptions, leases, monetization, costs, revenues, profit margins, and total profits of products or services incorporating the Accused Functionalities purportedly occurring within the United States, the basis for any contention that other sales, uses, subscriptions, leases, monetization, costs, revenues, profit margins, and total profits related to the Accused Functionalities occur outside the United States, and the amount of such non-United States sales, uses, subscriptions, monetization, costs, or revenues.

**DEPOSITION TOPIC NO. 30**: Sales of software incorporating the Accused Functionalities and attendant sales data.

**DEPOSITION TOPIC NO. 31**: Cisco's revenues and pre-tax income attendant to the Accused Functionalities and/or products/software titles incorporating or making use of the Accused Functionalities.

**DEPOSITION TOPIC NO. 32**: Cisco's revenues derived from any method of providing the Accused Functionalities to its customers.

**DEPOSITION TOPIC NO. 33**: Operating costs and expenses relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 34**: Research and development costs and expenses relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 35**: Operating profits attendant to the Accused Functionalities and/or products/software titles incorporating or making use of the Accused Functionalities.

**DEPOSITION TOPIC NO. 36**: Projections and forecasts for sales and or use of the Accused Functionalities and/or products/software titles incorporating or making use of the Accused Functionalities.

**DEPOSITION TOPIC NO. 37:** Cost savings and other benefits related or attendant to the Accused Functionalities.

**DEPOSITION TOPIC NO. 38**: Cisco's return on investment in, or relative to, the Accused Functionalities.

**DEPOSITION TOPIC NO. 39**: Cisco's development profit and loss statements for the Accused Functionalities and/or products/software titles incorporating or making use of the Accused Functionalities.

**DEPOSITION TOPIC NO. 40**: Cisco's publicly disclosed financial statements.

**DEPOSITION TOPIC NO. 41**: Reasons the Accused Functionalities are used or implemented with Cisco's products.

**DEPOSITION TOPIC NO. 42**: The monetary and/or nonmonetary value that Cisco's customers (including software makers), end users, or other Persons attribute, accord, or place on the Accused Functionalities, including the existence and substance of any related studies, surveys, presentations, reports, or other similar Documentation.

**DEPOSITION TOPIC NO. 43**: The monetary and/or nonmonetary value that Cisco attributes, accords, or places on the Accused Functionalities, including the pricing of such Accused Functionalities and the existence and substance of any related studies, surveys, presentations, reports, or other similar Documentation.

**DEPOSITION TOPIC NO. 44**: Cisco's review, study, or tracking of consumer choice, preference and/or selection relating to the Accused Functionalities (and/or the features and functions thereof).

**DEPOSITION TOPIC NO. 45**: Any and all comparisons of the Accused Functionalities with other products, systems, and/or instrumentalities of any other Person.

**DEPOSITION TOPIC NO. 46**: Your analysis of competitors in the marketplace for the Accused Functionalities, including competitor assessments, product comparisons, feature assessments, market share analyses, reports, reviews and/or studies of competitor products, systems, and instrumentalities.

**DEPOSITION TOPIC NO. 47**: Presentations, whether written, verbal, recorded, televised and/or broadcast (via the Internet or otherwise), relating to the Accused Functionalities.

**DEPOSITION TOPIC NO. 48**: The marketing and promotion of the Accused Functionalities, including Defendant's marketing strategies and business plans.

**DEPOSITION TOPIC NO. 49**: Defendant's business and/or financial relationship with third parties relating to the design, development, implementation, use, sale, distribution, or promotion of the Accused Functionalities.

**DEPOSITION TOPIC NO. 50**: All license agreements or contracts relating to or concerning the design, development, implementation, use, sale, distribution, or promotion of the Accused Functionalities.

**DEPOSITION TOPIC NO. 51**: All internal analysis and market studies prepared by (or for) Cisco relating to the importance or benefits of the Accused Functionalities or features or aspects thereof.

**DEPOSITION TOPIC NO. 52**: All customer surveys and analysis conducted, commissioned, or purchased by Cisco related to the importance of, or benefits attributable to, the Accused Functionalities.

**DEPOSITION TOPIC NO. 53**: The nature and types of services provided by Cisco.

**DEPOSITION TOPIC NO. 54**: Cisco's policies and practices related to tracking customer information and data for the Accused Functionalities.

**DEPOSITION TOPIC NO 55:** Cisco's policies and practices for tracking revenue generated by the Accused Functionalities.

**DEPOSITION TOPIC NO. 56**: The identification of Documents, including architecture design documents, training manuals, training videos, debugging records, sketch books, emails, diagrams, flowcharts, source code documentation, change logs, specifications, repair records, maintenance records, operational manuals, wiki documentation, correspondence with contractors, programmer logs, timesheets, and other work records, which refer to, explain, describe, define, or otherwise evidence the steps or acts taken by Cisco or Persons acting on the behalf of or in connection with Cisco to design, create, build, develop, implement, operate, repair, debug, maintain, or use the Accused Functionalities.

**DEPOSITION TOPIC NO. 57**: The identification of Cisco's instrumentalities that are reasonably similar to the Accused Functionalities.

**DEPOSITION TOPIC NO. 58:** The identification of Documents concerning Cisco's instrumentalities that are reasonably similar to the Accused Functionalities.

**DEPOSITION TOPIC NO. 59:** The identification of all instrumentalities Cisco alleges to be a non-infringing alternative.

**DEPOSITION TOPIC NO. 60**: The identification of Documents concerning the operation of any instrumentality that Cisco alleges to be a non-infringing alternative.

**DEPOSITION TOPIC NO. 61**: The number of (a) downloads of the Accused Functionalities, (b) uses of the Accused Functionalities, and (c) the number of users and accounts serviced by the Accused Functionalities since issuance of the Patent-in-Suit to present.

**DEPOSITION TOPIC NO. 62**: For each limitation recited in the claims that Cisco contends is not met (either literally or under the doctrine of equivalents, and either directly or indirectly) by the Accused Functionalities, all facts and Documents that support, or tend to prove or disprove such a contention.

**DEPOSITION TOPIC NO. 63**: The identification of Documents that Cisco referenced or relied upon in answering interrogatories in this lawsuit or in drafting any responsive pleading, motion, legal memoranda, or discovery request in this lawsuit.

**DEPOSITION TOPIC NO. 64**: All non-privileged communications between Cisco and any third party concerning the subject matter of this lawsuit.

**DEPOSITION TOPIC NO. 65**: All non-privileged communications between Cisco and any third party regarding the Patent-in-Suit, regardless of whether or not it relates to this lawsuit.

**DEPOSITION TOPIC NO. 66**: All communications between Cisco and any third party regarding Prior Art.

**DEPOSITION TOPIC NO. 67**: All communications regarding any Prior Art, including Cisco's identification of Prior Art, the date and circumstances in which Cisco first gained any awareness of Prior Art, and any effort by Cisco to locate Prior Art.

**DEPOSITION TOPIC NO. 68**: The royalty rate or rates that Cisco contends would constitute a "reasonable royalty" under 35 U.S.C. § 284, assuming infringement of the Patent-in-Suit found.

**DEPOSITION TOPIC NO. 69:** All facts regarding determining a royalty rate that Cisco contends would constitute a "reasonable royalty" under 35 U.S.C. § 284, assuming infringement of the Patent-in-Suits is found.

**DEPOSITION TOPIC NO. 70**: All facts regarding any computation, calculation, or estimation of damages, lost profits, or reasonable royalties involving the Patent-in-Suit.

**DEPOSITION TOPIC NO. 71**: The identification of Documents regarding any computation, calculation, or estimation of damages, lost profits, or reasonable royalties involving the Patent- in-Suit.

**DEPOSITION TOPIC NO. 72:** Any proposed or actual settlement of any litigation, prospective litigation, or disputes involving the Accused Functionalities.

**DEPOSITION TOPIC NO. 73**: All facts regarding any efficient infringement policy or policies used by Cisco, including the dollar amounts under which such an efficient infringement policy or policies are enacted.

**DEPOSITION TOPIC NO. 74**: From July 2000 to the present, Your evaluations of patents, patent applications, or other proprietary technology relating to the Accused Functionalities, and the methodologies used by You for determining values or royalty rates for licensing of such technology.

**EXHIBIT B**

22. All documents consulted or relied upon in preparation for the deposition.

23. All documents which the deponent has used or may need to refresh his or her recollection as to any of the topic.