# EXHIBIT 6



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,062 | 02/22/2022 | 6683858 | 136129-0007.US00 | 6370 |

27776        7590        04/18/2022
Kelley Drye & Warren LLP
One Jefferson Road
Parsippany, NJ 07054

| EXAMINER |
|---|
| FOSTER, ROLAND G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/18/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

PERKINS COIE LLP, WASHINGTON DC
c/o PATENT DOCKETING DEPARTMENT
PO BOX 1247
SEATTLE, WA 98111-1247

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,062* .

PATENT UNDER REEXAMINATION  *6683858* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| ***Order Granting Request For Ex Parte Reexamination*** | **Control No.**<br>90/019,062 | **Patent Under Reexamination**<br>6683858 | |
|---|---|---|---|
| | **Examiner**<br>ROLAND G FOSTER | **Art Unit**<br>3992 | **AIA (FITF) Status**<br>No |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed <u>02/22/2022</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐   PTO-892,        b)☑   PTO/SB/08,        c)☑   Other: <u>See the Decision</u>

1. ☑   The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

   For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

   For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /ROLAND G FOSTER/<br>Primary Examiner, Art Unit 3992 | | |
|---|---|---|
| cc:Requester ( if third party requester ) | | |

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

### *Decision Granting Ex Parte Reexamination*

A substantial new question of patentability (hereinafter referred to as a "SNQ") is raised affecting claims 1-10 of US Patent No. 6,683,858 B1 to Chu et al. (the "Chu" patent) by the request for *ex parte* reexamination filed February 22, 2022 (the "Request").

### *The SNQ Requirement*

A printed publication raises a SNQ where there is a substantial likelihood that a reasonable examiner would consider the printed publication important in deciding whether or not the claim is patentable, unless the same SNQ has already been decided as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination.  MPEP § 2242.

It is not sufficient that a request for reexamination merely proposes one or more rejections of a patent claim or claims as a basis for reexamination. It must first be demonstrated that a patent or printed publication that is relied upon in a proposed rejection presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the patent for which reexamination is requested, and during the prosecution of any other prior proceeding involving the patent for which reexamination is requested.  MPEP § 2216.

The SNQ may be based on art previously considered by the Office if the reference is presented in a new light or a different way that escaped review during earlier examination.  MPEP § 2216.

Application/Control Number: 90/019,062                                          Page 3
Art Unit: 3992

   An earlier concluded examination or review of the patent, on which an SNQ is based, incudes

the review of the patent in an earlier concluded trial by the Patent Trial and Appeal Board, such as a

post-grant review, *inter partes* review, or covered business method review of the patent.  MPEP 2242.I.


### *Decision Granting Ex Parte Reexamination*

   The Request relies upon the following prior art to raise a SNQ as to claims 1-10 of the Chu

patent:


U.S. Patent No. 7,079,495 to Pearce, et al. ("Pearce"), attached as Exhibit "G" to the Request.

U.S. Patent No. 6,418,125 to Oran ("Oran"), attached as Exhibit "H" to the Request.

"Proposal of a Method of for Voice Stream Multiplexing for IP Telephony Systems" to Hoshi, et a l. ("Hoshi''), attached as Exhibit "I" to the Request.

"An RTP Payload Format for User Multiplexing", IETF Internet Draft, to Rosenberg, et al. ("Rosenberg"), attached as Exhibit "J" to the Request.

U.S. Patent No. 6,327,276 to Robert, et al. ("Robert"), attached as Exhibit "K" to the Request.

U.S. Patent No. 6,584,093 to Salama, et al. ("Salama") , attached as Exhibit "L" to the Request.

U.S. Patent No. 6,141,597 to Botzko, et al. ("Botzko") , attached as Exhibit "M" to the Request.

U.S. Patent No. 6,006,253 to Kumar, et al. ("Kumar") , attached as Exhibit "N" to the Request.

ITU-T Recommendation H.323 (11/96) ("H.323 Protocol"), attached as Exhibit "P" to the Request.


Request, 16, 17.

### *Issues Raised in the Request*

Requester asserts the following grounds for raising a SNQ as to claims 1-10 of the Chu patent:

1) Pearce in combination with Oran (Grounds I) or that combination in further view of various secondary references (Grounds II-IX) raises a SNQ as to claims 1-10 of the Chu patent.  Request, 18-115.

2) Botzko in combination with Kumar (Ground X) or that combination in further view of various secondary references (Grounds IX, XII) raises a SNQ as to claims 1-10 of the Chu patent. Request, 118-202.

### *Prosecution History of the Chu Patent*

The Chu patent issued on January 27, 2004 from U.S. Application No. 09/604,961 (the "Chu

'961" application), which was filed on June 28, 2000.

During prosecution of the Chu '961 application, the Examiner issued a first Office allowance

stating the following reasons for allowance:

The following is an examiner's statement of reasons for allowance: the prior art made of record does not teach the method, apparatus and computer program product include the steps of receiving audio packets from each client, determining which are active speakers and forming an active speakers list. Then, the clients are divided into two categories—those have the capability to mix multiple audio streams and those do not. For those clients that can mix, the server multiplexes the packets of audio data received from each client on the active speakers list into a multiplexed stream. For those clients that cannot mix, the server mixes the packets of audio data received from each client on the active speakers into one combined packet. The method further include the step of send the multiplexed stream to each of the clients that can mix, and send the combined packet for each of the clients that cannot mix.

First Office action allowance, mailed October 3, 2003, Chu '961 Application (page 73 of the prosecution file history, attached as Exhibit "B" to the Request).

Application/Control Number: 90/019,062                                                    Page 5
Art Unit: 3992

### *Technological Features Important to the Patentability of the Chu Patent*

In view of the prosecution history described above, if a new reference or a reference applied in a new light teaches a substantial portion of the following technological features, then that reference (or combination based on that reference) may raise a SNQ for those claims that recite one or more of the following technological features in a wireless communication system or process:

Receiving audio packets from each client, determining which are active speakers and forming an active speakers list.

Then, dividing the clients into two categories—those have the capability to mix multiple audio streams and those do not.

For those clients that can mix, the server multiplexes the packets of audio data received from each client on the active speakers list into a multiplexed stream.

For those clients that cannot mix, the server mixes the packets of audio data received from each client on the active speakers into one combined packet.

Then, sending the multiplexed stream to each of the clients that can mix, and send the combined packet for each of the clients that cannot mix.

### *The Proposed SNQ(s) based on Pearce in combination with Oran*
### *(Grounds I-IX)*

It is agreed that the combination of Pearce and Oran alone or the combination with the other, cited secondary references raises a SNQ of patentability as to claims 1-10 of the Chu patent. As an initial matter, Pearce is newly cited prior art that was not before the original Examiner. Request, 17. Moreover, Oran was cited by the Examiner, but has not been applied to any of the claims of the Chu patent. Moreover, the Examiner specifically stated when citing to Oran that Oran was "not relied upon." See the First Office action allowance, mailed October 3, 2003, Chu '961 Application (page 73 of the prosecution file history, attached as Exhibit "B" to the Request). Thus, Oran is being applied in a new light or new to way to the claims of the Chu patent for which reexamination is sought. A SNQ may be

Application/Control Number: 90/019,062                                            Page 6
Art Unit: 3992

based on art previously considered by the Office if the reference is presented in a new light or a

different way that escaped review during earlier examination.  MPEP § 2216.

As was discussed in the prosecution history above, the following features are technological

features important to the patentability of all the independent claims for which reexamination is

requested.  Thus, any reference or combination of references that teach a substantial portion of the

following technological features would be a feature important to patentability thereby raising a SNQ.

Receiving audio packets from each client, determining which are active speakers and forming an
active speakers list.

Then, dividing the clients into two categories—those have the capability to mix multiple audio
streams and those do not.

For those clients that can mix, the server multiplexes the packets of audio data received from
each client on the active speakers list into a multiplexed stream.

For those clients that cannot mix, the server mixes the packets of audio data received from each
client on the active speakers into one combined packet.

Then, sending the multiplexed stream to each of the clients that can mix, and send the
combined packet for each of the clients that cannot mix.

Pierce teaches receiving audio packets from PSTN telephony devices 68a (through gateway 64a)

and one or more telephony devices 22, 23, 25.  Col. 10, ll. 55-61.  See also Pearce, Fig. 1 as annotated in

the Declaration of James Bress (hereinafter the "Bress Declaration") (attached to the Request of Exhibit

"C") to gray out elements not involved in the session and which is reproduced below:



Bress Declaration, Fig. B (annotating Fig. 1 of Pearce).


In Oran's active speaker management process, the receiver (the MCU in the combined system)

"receives audio packets and identifies the speakers 26A-26D associated with the audio packets.  Fig. 4

and col. 3, ll. 40-42 (e.g., status flag "A" means the speaker is active).

Application/Control Number: 90/019,062                                                    Page 8
Art Unit: 3992



Pearce further teaches determining which client devices have the capability to mix audio streams and those that do not.  Specifically, a multicast intermediary 28 "is inserted into a telecommunication session on behalf of" a unicast telephony device 64a so that unicast telephony device (gateway) 64a "can effectively participate in a multicast telecommunication session."  Col. 10, ll. 31-34.  This determination is performed by the call manager 26a (see annotated Fig. 1 reproduced above).

Pearce teaches that the server multiplexes the packets of audio data received from each client on the active speakers list into a multiplexed stream.  Col. 9, ll. 25-41.  For those clients that cannot mix, the server mixes the packets of audio data received from each client on the active speakers into one combined packet.  Specifically, Pearce discloses that the "multicast intermediary will typically sort or mix media streaming 104" for the unicast clients.  Col. 11, ll. 43-46.  See also the Bress Declaration, ¶ 94. Oran describes mixing as a function performed by a network-based component:  "MCU 18 uses brute force method to mix of [sic] all speakers together and then send out the mixed signal to all packet gateways in the conference call."  Col. 2, ll. 61-63.  Thus, the combination of Pearce and Oran raises a

Application/Control Number: 90/019,062                                                    Page 9
Art Unit: 3992

substantial question as to whether the combination teaches mixing packets of audio data for a unicast

client using a network based device, such as gateway 64a.  See also the Bress Declaration, ¶ 94.

Pearce teaches then sending the streams to the clients.  Col. 11, ll. 37-46.

A substantial question also exists as to whether it would have been obvious to a person of

ordinary skill in the art at the time the invention was made to add Oran's prior-art centralized MCU to

Pearce's teachings of multicast transmission for conference calls, such as increasing simplicity and

reducing cost by not requiring each client to have mixing equipment on their device.  Bress Declaration,

¶¶ 50-61.  See also the Request, pp. 29-36.

See also the Request (pages 18-115, particularly pages 36-56) which apply the combination of

Pearce and Oran alone or in view of various secondary teaching references in a detailed manner to each

limitation of the claims for which reexamination is requested.

Thus, a reasonable examiner would view the new technological teachings of the combination of

Pearce and Oran, either alone or in further view of secondary references, important in deciding to allow

claims 1-10 of the Chu patent.

The remaining dependent claims for which reexamination is sought incorporate the recited

technological features important to patentability from their respective, parent independent claims, and

thus a SNQ is also raised for the dependent claims as well for the same reasons.

There was also no final holding of invalidity by the Federal Courts regarding the requested

claims of the Chu patent.

Application/Control Number: 90/019,062                                    Page 10
Art Unit: 3992

### *The Proposed SNQ(s) based on Botzko in Combination with Kumar and the H.323 Protocol (Grounds X, XI)*

It is agreed that the combination of Botzko, Kumar and the H.323 Protocol alone or the combination with the other, cited secondary references raises a SNQ of patentability as to claims 1-10 of the Chu patent.

As an initial matter, Botzko, Kumar and H.323 Protocol are newly cited prior art that was not before the original Examiner.  Request, 17.

As was discussed in the prosecution history above, the following features are technological features important to the patentability of all the independent claims for which reexamination is requested.  Thus, any reference or combination of references that teach a substantial portion of the following technological features would be a feature important to patentability thereby raising a SNQ.

Receiving audio packets from each client, determining which are active speakers and forming an active speakers list.

Then, dividing the clients into two categories—those have the capability to mix multiple audio streams and those do not.

For those clients that can mix, the server multiplexes the packets of audio data received from each client on the active speakers list into a multiplexed stream.

For those clients that cannot mix, the server mixes the packets of audio data received from each client on the active speakers into one combined packet.

Then, sending the multiplexed stream to each of the clients that can mix, and send the combined packet for each of the clients that cannot mix.

Botzko teaches receiving audio "from various sites connected to the conference system and for distributing the audio to the various sites" using a central audio processor 12.  Fig. 1 (reproduced below) and col. 1, ll. 4-12.



FIG. 1

**Botzko, Figure 1**

Botzko also teachings determining which are active speakers.  In a switching audio processor for local mixing client, selector 26 "is fed by the uncompressed audio signals on lines 19a, 19b, and 19d, from SITES 'A', "B", and 'D', respectively."   Col. 4, ll. 60-62.  See Fig. 2 as annotated in the Bress Declaration, which is reproduced below.

Application/Control Number: 90/019,062                                      Page 12
Art Unit: 3992



FIG. 2

**Botzko, Annotated Figure 2**

Bress Declaration, (annotating Fig. 1 of Botzko).

Selector 26 "determines the one of the SITES 'A', "B', or "D' with the highest likelihood of

speech" and "produces the corresponding control signal on line 24" which couples one of SITES A, B, or

D to SITE C.  Col. 4, l. 62 – col. 5, l. 1.  When a SITE (e.g., SITE 'C') has the capability to receive multiple

audio streams, "the selector 26 may be appropriately modified to select more than one of the SITES"

(e.g., SITES 'A', "B', or "D') for coupling to its end-point SITE (e.g., SITE 'C').  Col. 5, ll. 1-4.)  For these

SITES, "a more complex selector may be required."  Col. 5, ll. 45-46.  Botzko's selector 26 therefore

"determine/es] which of the plurality of clients is an active speaker."   See also the Bress Declaration, ¶

194.

Application/Control Number: 90/019,062                                                        Page 13
Art Unit: 3992

Botzko similarly teaches that selector 26 of Figs. 3 and 3A also determine which of the plurality of clients is an active speaker.  Col. 5, ll. 4-6; Col. 6, ll. 31-38; Col. 6, l. 62 – col. 7, l. 57; Col. 8, ll. 35-56. See also the Request, pp. 139-143.

Botzko further teaches determining which client devices have the capability to mix audio streams and those that do not.   Bridge 12 "operates to selectively forward, and/or mix, the audio from the various SITES so that each SITE can participate in a conference." Col. 4, ll. 10-12.  Botzko's conferencing system also supports multiple types of SITES: normal end-point SITES "which can receive one audio stream to play out of their loudspeakers" (Col. 5, ll. 22-25) and SITES that "are able to receive more than one audio stream, and perform their own local mixing" (col. 5, ll. 39-40).  A SITE that can only receive a single audio stream "does not have the capability to mix."   See also the Bress Declaration, ¶ 201.  Thus, Botzko's conferencing system makes processing decisions, e.g., the type of audio processor to couple to a SITE and whether to mix or forward multiple streams, based on the capabilities of the SITES.

Kumar teaches a conferencing system using the H.323 protocol requiring that "[e]ndpoint system capabilities are exchanged by transmission of the H.245 teminalCapabilitySet message" after call setup messages are exchanged. Col. 4, ll. 33-37.  The H.323 Protocol prior art accordingly teaches that H.323 requires that H.323 terminals "shall use H.245 simultaneous capabilities to indicate how many simultaneous audio streams it is capable of decoding.  If the audio mixing capability indicates that the terminal can only decode one stream, then that terminal is not capable of performing local missing.  See also the Bress Declaration, ¶ 202.  Similarly, the capability to decode two or more audio streams require the capability of performing local mixing.

Botzko teaches that the server multiplexes the packets of audio data received from each client on the active speakers into a multiplexed stream.  Botzko's Figure 2 (reproduced above) illustrates a switching audio processor that provides a single audio stream to a SITE.  Overview section.  Botzko also

teaches "[s]ome end-point SITES are able to receive more than one audio stream, and perform their

own local mixing." Col. 5, ll. 39-40.   The streams are either unicast (Figure 2A) or multicast (Figure 2B)

to the SITES.  Col. 6, ll. 6-14.

A substantial question also exists as to whether it would have been obvious to a person of

ordinary skill in the art at the time the invention was made to add Kumar's H.323-based conference

system (and accordingly the H.323 Protocol prior art teachings) to the conferencing system of Botzko,

such as for conforming to conferencing protocol technical standards.  Bress Declaration, ¶¶ 182-184.

See also the Request, pp. 131-134.

See also the Request (pages 118-202, particularly pages 134-161) which apply the combination

of Botzko, Kumar and the H.323 Protocol prior art alone or in view of various secondary teaching

references in a detailed manner to each limitation of the claims for which reexamination is requested.

Thus, a reasonable examiner would view the new technological teachings of the combination of

Botzko, Kumar and the H.323 Protocol, either alone or in further view of secondary references,

important in deciding to allow claims 1-10 of the Chu patent.

The remaining dependent claims for which reexamination is sought incorporate the recited

technological features important to patentability from their respective, parent independent claims, and

thus a SNQ is also raised for the dependent claims as well for the same reasons.

There was also no final holding of invalidity by the Federal Courts regarding the requested

claims of the Chu patent.

*Conclusion*

***Service of Papers***

After the filing of a request for reexamination by a third party requester (if any), a document

filed by either the patent owner or the third party requester (if any) must be served on the other party

(or parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

***Extensions of Time***

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because

the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination

proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be

conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in *ex parte* reexamination

proceedings are provided for in 37 CFR 1.550(c).

***Amendment in Reexamination Proceedings***

Patent owner is notified that any proposed amendment to the specification and/or claims in this

reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant

to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

***Submissions***

In order to ensure full consideration of any amendments, affidavits or declarations or other

documents as evidence of patentability, such documents must be submitted in response to the <u>first</u>

<u>Office action on the merits</u> (which does not result in a close of prosecution).  Submissions after the

second Office action on the merits, which is intended to be a final action, will be governed by the

Application/Control Number: 90/019,062                                                    Page 16
Art Unit: 3992

requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be

strictly enforced.


### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the Chu

patent throughout the course of this reexamination proceeding.  The third party requester (if any) is also

reminded of the ability to similarly appraise the Office of any such activity or proceeding throughout the

course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/019,062                                                  Page 17
Art Unit: 3992

        **All** correspondence relating to this *ex parte* reexamination proceeding should be directed as
follows:

By EFS:           Registered users may submit via the electronic filing system EFS-Web, at
                  https://efs.uspto.gov/efile/myportal/efs-registered

By Mail to:       Mail Stop *Ex Parte* Reexam
                  Central Reexamination Unit
                  Commissioner for Patents
                  P.O. Box 1450
                  Alexandria, VA  22313-1450

By FAX to:        (571) 273-9900
                  Central Reexamination Unit

By hand to:       Customer Service Window
                  Randolph Building
                  401 Dulany St.
                  Alexandria, VA  22314


        For EFS-Web transmission, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for

a request for reexamination and a corrected or replacement request for reexamination) will be

considered timely if (a) it is transmitted via the Office's electronic filing system in accordance with 37

CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the

date of transmission, which is prior to the expiration of the set period of time in the Office action.

        Any inquiry concerning this communication should be directed to Roland Foster at telephone

number 571-272-7538.

Signed:
/ROLAND G FOSTER/
Primary Examiner, Art Unit 3992

Conferee:         /JOSEPH R POKRZYWA/
                  Primary Examiner, Art Unit 3992

                          /ALEXANDER J KOSOWSKI/
                          Supervisory Patent Examiner, Art Unit 3992

Application/Control Number: 90/019,062                                          Page 18
Art Unit: 3992