# EXHIBIT 7



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,062 | 02/22/2022 | 6683858 | 136129-0007.US00 | 6370 |

27776        7590        09/07/2022
Kelley Drye & Warren LLP
One Jefferson Road
Parsippany, NJ 07054

| EXAMINER |
|---|
| FOSTER, ROLAND G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/07/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

PERKINS COIE LLP, WASHINGTON DC
c/o PATENT DOCKETING DEPARTMENT
PO BOX 1247
SEATTLE, WA 98111-1247

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,062* .

PATENT UNDER REEXAMINATION *6683858* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Office Action in Ex Parte Reexamination* | **Control No.** 90/019,062 | **Patent Under Reexamination** 6683858 | |
|---|---|---|---|
| | **Examiner** ROLAND G FOSTER | **Art Unit** 3992 | **AIA (FITF) Status** No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☑ Responsive to the communication(s) filed on <u>22 February 2022</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

    1. ☑ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

    2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

    1a. ☑ Claims <u>1-10</u> are subject to reexamination.

    1b. ☑ Claims <u>11-13</u> are not subject to reexamination.

    2. ☐ Claims \_\_\_\_\_ have been canceled in the present reexamination proceeding.

    3. ☐ Claims \_\_\_\_\_ are patentable and/or confirmed.

    4. ☑ Claims <u>1-10</u> are rejected.

    5. ☐ Claims \_\_\_\_\_ are objected to.

    6. ☐ The drawings, filed on \_\_\_\_\_ are acceptable.

    7. ☐ The proposed drawing correction, filed on \_\_\_\_\_ has been (7a) ☐ approved (7b) ☐ disapproved.

    8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

        a) ☐ All  b) ☐ Some* c) ☐None    of the certified copies have

        1 ☐ been received.

        2 ☐ not been received.

        3 ☐ been filed in Application No. \_\_\_\_\_.

        4 ☐ been filed in reexamination Control No. \_\_\_\_\_.

        5 ☐ been received by the International Bureau in PCT application No. \_\_\_\_\_.

        * See the attached detailed Office action for a list of the certified copies not received.

    9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

    10. ☐ Other: \_\_\_\_\_

cc: Requester (if third party requester)

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.


### *Background*

Claims 1-10 of US Patent No. 6,683,858 B1 to Chu et al. (the "Chu" patent) are currently under reexamination in this *ex parte* reexamination proceeding 90/019,062.

The subject claims are rejected below based on prior art held to raise a Substantial New Question ("SNQ") of patentability in the Order granting *ex parte* reexamination, mailed April 18, 2022 (hereinafter the "Order") in response to the request for *ex parte* reexamination filed February 22, 2022 (the "Request").


U.S. Patent No. 7,079,495 to Pearce, et al. ("Pearce"), attached as Exhibit "G" to the Request.

U.S. Patent No. 6,418,125 to Oran ("Oran"), attached as Exhibit "H" to the Request.

"Proposal of a Method of for Voice Stream Multiplexing for IP Telephony Systems" to Hoshi, et al. ("Hoshi''), attached as Exhibit "I" to the Request.

"An RTP Payload Format for User Multiplexing", IETF Internet Draft, to Rosenberg, et al. ("Rosenberg"), attached as Exhibit "J" to the Request.

U.S. Patent No. 6,327,276 to Robert, et al. ("Robert"), attached as Exhibit "K" to the Request.

U.S. Patent No. 6,584,093 to Salama, et al. ("Salama") , attached as Exhibit "L" to the Request.

U.S. Patent No. 6,141,597 to Botzko, et al. ("Botzko") , attached as Exhibit "M" to the Request.

U.S. Patent No. 6,006,253 to Kumar, et al. ("Kumar") , attached as Exhibit "N" to the Request.

ITU-T Recommendation H.323 (11/96) ("H.323 Protocol"), attached as Exhibit "P" to the Request.


Request, 16, 17.

### *Claim Interpretation*

The following is a quotation of 35 U.S.C. 112(f):

(f) Element in Claim for a Combination. – An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The following is a quotation of pre-AIA 35 U.S.C. 112, sixth paragraph:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

As explained in MPEP § 2181, subsection I, claim limitations that meet the following three-prong test will be interpreted under 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph:

(A)     the claim limitation uses the term "means" or "step" or a term used as a substitute for "means" that is a generic placeholder (also called a nonce term or a non-structural term having no specific structural meaning) for performing the claimed function;

(B)     the term "means" or "step" or the generic placeholder is modified by functional language, typically, but not always linked by the transition word "for" (e.g., "means for") or another linking word or phrase, such as "configured to" or "so that"; and

(C)     the term "means" or "step" or the generic placeholder is not modified by sufficient structure, material, or acts for performing the claimed function.

Use of the word "means" (or "step") in a claim with functional language creates a rebuttable presumption that the claim limitation is to be treated in accordance with 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph. The presumption that the claim limitation is interpreted under 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph, is rebutted when the claim limitation recites sufficient structure, material, or acts to entirely perform the recited function.

Absence of the word "means" (or "step") in a claim creates a rebuttable presumption that the claim limitation is not to be treated in accordance with 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph. The presumption that the claim limitation is not interpreted under 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph, is rebutted when the claim limitation recites function without reciting sufficient structure, material or acts to entirely perform the recited function.

Claim limitations in this application that use the word "means" (or "step") are being interpreted under 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph, except as otherwise indicated in an Office action. Conversely, claim limitations in this application that do not use the word "means" (or "step") are not being interpreted under 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, sixth paragraph, except as otherwise indicated in an Office action.

**Rejections Based on Pearce in Combination with Oran**

***Claim Rejections - 35 USC § 103***

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims under pre-AIA 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was

commonly owned at the time any inventions covered therein were made absent any evidence to the

contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and

invention dates of each claim that was not commonly owned at the time a later invention was made in

order for the examiner to consider the applicability of pre-AIA 35 U.S.C. 103(c) and potential pre-AIA 35

U.S.C. 102(e), (f) or (g) prior art under pre-AIA 35 U.S.C. 103(a).

**Claims 1 and 6** are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Pearce in

view of Oran (both as cited above).


Regarding independent **claim 1**,


*A method of providing audio conferencing for a plurality of clients using varying equipment and
protocols, comprising the steps of:*

*(1) receiving an audio packet from each of the plurality of clients;*


Pearce teaches of a communication network for multicast streaming to and from client devices,

where the network "further includes a multicast intermediary operable to receive multicast media

streaming sent to the multicast group address. The multicast intermediary . . . communicate[s] the

media streaming to the unicast telephony device to enable the unicast telephony device to participate in

multicast communication with the multicast telephony devices." Abstract. The multicast devices and

unicast telephony devices thus are the recited "varying equipment and protocols" and a "plurality of

clients." Multicast and unicast streamlining includes the streaming of audio (as well as video). 2:60-67.

See also

The multicast and unicast streaming (via multicast intermediary) also involves conferencing.

Figs. 4, 6 and 2:55-67, 12:29-40. The streaming is performed using the IP protocol and thus includes

data packets. 3:46-60.

Application/Control Number: 90/019,062                                    Page 6
Art Unit: 3992

See also Figure 1 of Pearce, reproduced below.



**Pearce, Annotated Figure 1**

*(3) determining that a first subset of the plurality of clients has the capability to mix multiple audio streams;*

*(4) determining that a second subset of the plurality of clients does not have the capability to mix multiple audio streams;*

As discussed above, Pearce teaches determining which client devices have the capability to mix audio streams and which do not. Specifically, a multicast intermediary 28 under the direction of call manager 26a "is inserted into a telecommunication session on behalf of" a unicast telephony device 64a so that unicast telephony device (gateway) 64a "can effectively participate in a multicast telecommunication session." Col. 10, ll. 31-34. The call manager 26a actively determines whether a subset of clients is multicast capable or only unicast capable. The multicast clients have the capability to mix multiple conferencing audio streams for individual conference participants and the unicast clients do not have this mixing capability. 9:58-10:2. Note that the call manager may implemented a virtual

telephony device 28, which is the intermediary devices 28.  6:41-48 & 66-67.  Thus, the call manager can

be interpreted to include the intermediary device and vice versa.


> *(5) multiplexing said packets of audio data received from each client . . . into a multiplexed stream;*
>
> *(6) sending said multiplexed stream to each of said first subset of the plurality of clients;*
>
> *(7) mixing said packets of audio data received from each client . . . into one combined packet; and*
>
> *(8) sending said combined packet to each of said second subset of the plurality of clients;*

Regarding the multicast capable conference clients, Pearce teaches "[e]ach of the participating

telephony devices can then receive the streaming from other participating telephony devices at the

multicast address.  Each telephony device then mixes or sums the media streaming received from each

of the other telephony devices to form a conference-like input . . . . "  9:63-10:2.

Regarding the unicast-only capable clients,  Pearce teaches a multicast intermediary 28 that

"mix media streamlining 104 received from telephony devices 22, 23 and 25" to unicast telephony

device 65a.  11:43-57.  This process is consistent with multiplexing according to a broad definition of

multiplexing being a technique that allows simultaneous transmission (e.g., real-time conferencing) of

multiple signals (e.g., real-time conference voice channels or streams from telephony devices 22, 23 and

25) across a single data link (mixed, unicast stream to unicast device 65a).  *Forouzan, Behrouz A., Data

Communications and Networking, 5th Ed.*, McGraw Hill, ISBN 978-0-07-337622-6, 2013, p. 156.  The

discussed, pre-mixed stream also forms a sequence of audio packets and is thus a multiplexed stream

according to the alleged, Patent Owner's interpretation of the phrase "multiplexed stream."  Bress Decl.,

¶ 86.  Moreover, the premixed stream from multiple conferencing clients is also a "multiplexed stream"

according to the Requester's preferred definition.  Specifically, a stream would form a data structure

(pre-mixed with logical port indication, see Pearce, 11:53-57) containing a continuous sequence of

interleaved audio data (real-time conference audio data channels or streams from multiple clients 22,

23 and 25 mixed or interleaved together). Request, 7.

Pearce fails to disclose "(2) determining which of the plurality of clients is an active speaker and

forming an active speaker list."

Oran (like Pearce) is directed to a packet-based, IP telephony conferencing system (abstract, Fig.

2). Oran teaches an active speaker management process, where the receiver "receives audio packets

and identifies the speakers 26A-26D associated with the audio packets." 3:40-42. The receiver then

"decides which speakers are currently 'active' and warrant keeping information about." 3:44-45. As

illustrated in Oran Figure 4 (reproduced below), state information is generated and managed using a

digital signal processor (DSP). See also, 5:47-7:35. Specifically, "data array 42 keeps information about

the M speakers." 5:8-9.



Each row in the "data array 42 represents a speaker entry containing the state information for

one of the M speakers." 5:9-10. SSRC "is used to match speaker entries in the data array 42 with audio

packets 43." 5:11-12. Speaker Stats "contain a variety of information about a speaker 26 used for sizing

and operating a jitter buffer 44 when the speaker 26 is active." 5:28-30. The Status Flag "V" "is used to

identify either an inactive speaker or a speaker who is being ignored in favor of another speaker who is

active" and the Status Flag "F" "identifies a speaker free to be used or reused by another speaker 26."

5:40-46.  Thus, speaker entries having a Status Flag "A" are "active speakers" and data array 42 includes

an "active speakers list."  Bress Decl.  ¶  75.

The teaching/suggestion/motivation to add active speaker management in the packet-based, IP

telephony conferencing system of Oran to the packet-based, IP telephony conferencing system of

Pearce would have been for several reasons.  For example, the tracking active speakers would have

reduced memory requirements at each client in conferences where there is a large number of potential

speakers.  Oran, 4:36-38.  Moreover, the tracking active speakers would have improved audio quality in

cases where there is more than one active speaker.  Oran, 4:38-45.

Thus, to one of ordinary skill in the art at the time the invention was made, it would have been

obvious to add the active speaker management taught in the packet-based, IP telephony conferencing

system of Oran to the packet-based, IP telephony conferencing system of Pearce.

For additional details, see also the Request, 18-58.


Independent **claim 6** differs substantively from independent claim 1 in that claim 6 recites a

system comprising components that executed the functions recited in the method of claim 1.  Thus, see

the claim 1 rejection for additional details.  Regarding the system components recited in claim 6:

A "receiver," "multiplexor," "mixer," and "packet sender"  reads on Pearce, Figs 4-6,

intermediary device 28, 28a and 28b.

The "means for maintaining a list" invokes means-plus-function as discussed  in the claim

interpretation above.  The corresponding structure is the active list management system (packet

gateway 18 and DSP 14) as taught by Oran, which was added to the multicast intermediary 28, 28a and

28b, as discussed in the claim 1 rejection above.  Note that the call manager may implemented a virtual

Application/Control Number: 90/019,062                                            Page 10
Art Unit: 3992

telephony device 28, which is the intermediary devices 28. 6:41-48 & 66-67. Thus, the call manager can be interpreted to include the intermediary device and vice versa. See also Figs. 4-6.

The "means for storing information" invokes means-plus-function as discussed in the claim interpretation above. The corresponding structure is the multicast intermediary 28, 28a and 28b, which may include the call manager 26a, as discussed above. See also Figs. 4-6.

The conferencing system as taught by Pearce in view of Oran supports real-time audio conferencing and thus a plurality of clients simultaneously participate.

For additional details, see also the Request, 58-71.


**Claims 4, 5, 9 and 10** are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Pearce in view of Oran as applied to the respective, parent claims above, and further in view of Rosenberg (as cited above).

Pearce teaches local mixing on "PC-based equipment." 3:55-58. See also the Bress Decl. ¶ 135.

However, Pearce as modified fails to specifically disclose using the Session Initiation Protocol (SIP) or H.323.

Rosenberg notes that "ITU-T has standardized H.225[5] and H.245[6] as the call signaling protocol and call control protocol respectively to be used within the ITU-T standard H.323[7]." Section 3.4, p. 8. Rosenberg also teaches that the "Session Initiation Protocol (SIP) can be used as the control signaling protocol between the two gateways [11]." Section 3.5, p. 11. See also the Bress Decl. ¶ 136.

The teaching/suggestion/motivation for adding the H.323 and SIP teachings of Rosenberg would have been that the versatility of the IP packet based, multiplexed streamlining disclosed in Pearce would have been increased by adding reliable (e.g., persistent), signaling capabilities. Specifically, "H.225 and H.245 [which as discussed above are part of H.323] may be used for signaling and control purposes between the gateways. When this is the case, persistent H.225 and H.245 connections exists between a

pair of gateways."  Section 3.4, p. 8.  Rosenberg further teaches that H.245, which is part of H323 as

discussed above, increases the adaptability, versatility, versatility, and transmission efficiency of

coding/decoding by binding payload types to particular codec types, security parameters, and

multiplexing capability through capability exchange messages.    Section 3.4, p. 9.  "The multiplexing

protocol can make use of whatever encryption and authentication schemes are present in RTP, SIP,

H.323 or other relevant protocols."  Rosenberg, section 6, p. 13.  Moreover, the used of SIP and H.323

on top of TCP/IP telephony-based conferencing calling would have conformed to industry standards, as

evidenced by Rosenberg, which is an Internet Engineering Task Force Draft.  Indeed, the specification of

the Chu patent under reexamination acknowledges that "H.323 specifies the minimum standards (e.g.,

call setup and control) that equipment must meet in order to send voice over the IP. . where quality of

sound cannot be guaranteed."  1:47-60.  Moreover, SIP "is well-known in the relevant art(s)" for a

"signaling protocol for Internet conferencing and telephony" that "more powerful than H.323 in

providing call control and extended feature sets."  1:6-2:4.

    Thus, to one of ordinary skill in the art at the time the invention was made, it would have been

obvious to add H.232 and SIP as taught by Rosenberg to the IP-based telephony of Pearce in view of

Oran.

    For additional details, see also the Request, 88-102.


    **Claims 2, 3, 7 and 8** are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over

Pearce in view of Oran as applied to the respective, parent claims above, and further in view of Roberts

(as cited above).

    Pearce as modified fails to disclose the limitations of the subject, dependent claims.  Claims 7

and 8 are illustrative:

Claim 7. The system of claim 6, further comprising: means for removing, before said packet sender sends said multiplexed stream to one of the plurality of clients which have the capability to mix multiple audio streams, from said multiplexed stream said packets of audio data received from said one of the plurality of clients, when said one of the plurality of clients is on said list of active speakers.

Claim 8. The system of claim 6, further comprising: means for removing, before said packet sender sends said combined packet to one of the plurality of clients which do not have the capability to mix multiple audio streams, from said combined packet said packets of audio data received from said one of the plurality of clients, when said one of the plurality of clients is on said list of active speakers.

Roberts discloses that a client receiving a multicast signal having mixed audio "removes its own component from the signal and outputs the remaining signal which contains the conferenced signals of the other users in the conference call but substantially no 'echo' of that particular client's output signal." 5:57-61.

The teaching/suggestion/motivation for adding the ability to remove its own component from the combined conference signal to the modified intermediary device of Pearce in view of Oran that processes the combined conference signal in the form of either separate multicast streams (multiplexed streams as in claim 7), or a premixed unicast stream (combined signal as in claim 8) would have been to increase the accuracy and usability of conferencing by reducing echo affects corresponding to the voice of the active speaker or speakers. Roberts, 5:57-61. See also the Bress Decl., ¶ 151.

Thus, to one of ordinary skill in the art at the time the invention was made, it would have been obvious to remove redundant (and echo-inducing) active voices as taught by the conferencing system of Roberts to the conferencing system of Pearce in view of Oran.

The "means for removing" invokes means-plus-function as discussed in the claim interpretation section above. The functions discussed above are performed by the intermediary device (corresponding structure) discussed in the independent claim rejections.

## Rejections Based on Pearce in view of Oran and Hoshi or Rosenberg

The proposed rejections of the independent claims relying upon Hoshi or alternatively Rosenberg to teach multiplexing are not adopted because the Examiner determined that Pearce in view of Oran teaches multiplexing as discussed in the claim rejections above.

## Rejections Based on Pearce in view of Oran and Further In View of Hoshi

The proposed rejections using Hoshi as a secondary, teaching reference are not applied in this Office action. Hoshi was proposed in the Request to teach industry standard H.323 and SIP protocols. 73-76. However Rosenberg was also proposed in the Request to teach the same protocols. 76-81. Rosenberg was applied in the rejection above. For this reason and at this stage of prosecution, the Hoshi reference is deemed cumulative to the teachings of Rosenberg for teaching substantially the same use of industry standard H.323 and SIP protocols.

## Rejections Based on Pearce in view of Oran and Rosenberg and Further in View of Salama

The proposed rejections of the independent claims relying upon Salama to teach H.323 and SIP are not adopted because the Examiner determined that Rosenberg teaches the use of these industry standard protocols.

## Rejections Based on Botzko and Kumar

The proposed rejections based on Botzko and Kumar are not adopted. Although this combination was determined to raise a SNQ in said Order, the combination fails to teach or fairly suggest the obviousness of all claim limitations in the independent claims. As noted by the Requester, "Botzko however does not disclose a technique for determining the local mixing capabilities of its SITES."

Application/Control Number: 90/019,062                                    Page 14
Art Unit: 3992

Request, 132.  Thus, Botzko fails to teach the following, independent claim limitation (independent

claim 1 is illustrative):

> (3) determining that a first subset of the plurality of clients has the capability to mix multiple
> audio streams;

> (4) determining that a second subset of the plurality of clients does not have the capability to mix
> multiple audio streams;

   The Requester relies upon Kumar to remedy the admitted failure of Botzko to teach

"determining . . . the capability to mix multiple audio streams" or "does not have the capability to mix

multiple audio streams."   However, the Requester only states regarding Kumar that the "H323 standard

(incorporated by reference by Kumar) explains that capabilities exchange . . . . 'describe the terminal's

ability to receive and process information streams . . . [and] . . . indicate how many simultaneous audio

streams it is capable of decoding.'"  Request, 131.  Bress Decl., ¶ 180.  Kumar, 5:63-64, 8:12-15.  This

teaching however is related to decoding audio streams, not to mixing audio conference streams.

Specifically, Kumar fails to specifically teach "determining . . .the capability to mix multiple audio

streams" or the incapability to mix multiple audio streams as required by the claims.

**Conclusion**

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the Chu patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/019,062                                                    Page 16
Art Unit: 3992

        **All** correspondence relating to this *ex parte* reexamination proceeding should be directed as
follows:

By EFS:          Registered users may submit via the electronic filing system EFS-Web, at
                 https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:      Mail Stop *Ex Parte* Reexam
                 Central Reexamination Unit
                 Commissioner for Patents
                 P.O. Box 1450
                 Alexandria, VA 22313-1450

By FAX to:       (571) 273-9900
                 Central Reexamination Unit

By hand to:      Customer Service Window
                 Randolph Building
                 401 Dulany St.
                 Alexandria, VA 22314

        For EFS-Web transmission, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence
(except for a request for reexamination and a corrected or replacement request for
reexamination) will be considered timely if (a) it is transmitted via the Office's electronic filing
system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for
each piece of correspondence stating the date of transmission, which is prior to the expiration of
the set period of time in the Office action.

        Any inquiry concerning this communication should be directed to Roland Foster at
telephone number 571-272-7538.

Signed:
/ROLAND G FOSTER/
Primary Examiner, Art Unit 3992
(571) 272-7538

Conferees: /DAVID E ENGLAND/
           Primary Examiner, Art Unit 3992

           /MICHAEL FUELLING/
           Supervisory Patent Examiner, Art Unit 3992