**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **PALTALK HOLDINGS, INC.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **No. 6:21-cv-00757-ADA** |
| | § | |
| **CISCO SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | **REDACTED VERSION** |
| | § | |

**CISCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NO PRE-SUIT DAMAGES DUE TO FAILURE TO COMPLY WITH 35 U.S.C. § 287**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 1

    A.   Paltalk's Acquisition of HearMe and the '858 Patent. ............................. 1

    B.   The Microsoft License and the Identified Microsoft Products. .............. 1

    C.   The Activision and Sony Licenses and the Identified Activision and Sony
    Products ................................................................................................. 2

    D.   Cisco's Notice to Paltalk Regarding the '858 Patent ............................. 4

    E.   Paltalk's Last-Minute Attempt to Circumvent its Marking Requirement. ............. 5

III. LEGAL STANDARD ......................................................................................... 5

IV.  PALTALK FAILED TO COMPLY WITH THE MARKING REQUIREMENTS ........... 7

    A.   Cisco Has Satisfied Its Initial Burden of Production. ............................. 7

    B.   Paltalk Did Not Comply with the Marking Requirements to Recover Pre-Suit
    Damages ................................................................................................. 8

    C.   Paltalk Cannot Circumvent Its Marking Requirement ............................ 10

    D.   Paltalk Cannot Demonstrate That Any of Its Licensees' Products Do Not Practice
    the Patented Inventions. ....................................................................... 10

V.   CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amsted Indus. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994)...........................................................................................6

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)................................................................................. passim

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   950 F.3d 860 (Fed. Cir. 2020).................................................................................5, 8, 10

*CXT Systems, Inc. v. J. C. Penny Corporation, Inc.*,
   No. 2:18-cv-00233, 2020 WL 9936135 (E.D. Tex. 2020)....................................................6, 10

*Devices for Medicine, Inc. v. Boehl*,
   822 F.2d 1062 (Fed. Cir. 1987)......................................................................................9, 10

*DivX, LLC v. Hulu*,
   LLC, No. 2:21-cv-01615, 2021 WL 4459368 (C.D. Cal. June 11, 2021) ..........................6, 10

*Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*,
   No. 2:16-cv-00055, 2017 WL 5165606 (E.D. Tex. Oct. 15, 2017), *report and
   recommendation adopted sub nom.*, 2017 WL 5157687 (E.D. Tex. Nov. 7, 2017)............7, 10

*In re Yarn Processing Pat. Validity Litig.*,
   602 F. Supp. 159 (W.D.N.C. 1984) ..............................................................................6

*K&K Jump Start/Chargers, Inc. v. Shumacher Elec. Corp.*,
   52 F. App'x 135 (Fed. Cir. 2002) ..................................................................................9

*KAIST IP US LLC v. Samsung Elecs. Co.*,
   No. 2:16-cv-01314, 2018 WL 10498197 (E.D. Tex. May 22, 2018) .......................................7

*Massachusetts Inst. of Tech. v. Abacus Software, Inc.*,
   No. 5:01-cv-00344, 2004 WL 5268123 (E.D. Tex. Aug. 4, 2004)..........................................6

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996).......................................................................................5

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020)................................................................................7, 10

*Washburn v. Harvey*,
   504 F.3d 505 (5th Cir. 2007) .......................................................................................5

**TABLE OF AUTHORITIES**
(continued)

                                                                    **Page(s)**

**STATUTES**

35 U.S.C. § 287.......................................................................................................... passim

**RULES**

Fed. R. Civ. P. 56(a) .......................................................................................................5

**OTHER AUTHORITIES**

U.S. Patent No. 6,683,858.......................................................................................... passim

## I.     INTRODUCTION

A patent owner may not recover damages prior to providing actual notice to an accused infringer if it fails to inform the public of its patent by marking patent-practicing products.  This obligation extends not only to a patent owner's products, but also to products of any licensees allowed to practice the claimed invention.  Here, Plaintiff Paltalk Holdings, Inc. ("Paltalk") licensed many products in the market but never required any of its licensees to mark products practicing the sole asserted patent (which is now expired): U.S. Patent No. 6,683,858 ("the '858 Patent").  Because Paltalk never provided notice to potential infringers by requiring that embodying products were marked and did not provide Defendant Cisco, Inc. ("Cisco") with notice prior to filing this suit, any damages may accrue only from the date of suit until the expiration of the '858 Patent.

As there is no genuine factual dispute that Paltalk did not comply with the marking requirements of 35 U.S.C. § 287, the Court should grant summary judgment of no pre-suit damages.

## II.     BACKGROUND

### A.     Paltalk's Acquisition of HearMe and the '858 Patent.

The application that resulted in the '858 Patent was filed on June 28, 2000, with HearMe, Inc. ("HearMe") as the assignee.  In 2001, prior to its allowance, Paltalk acquired HearMe's assets, including the application that issued as the '858 Patent on January 27, 2004.  ECF No. 26-4, Ex. 3 at 68-74 ('858 Patent Prosecution History).

### B.     The Microsoft License and the Identified Microsoft Products.

On April 23, 2009, Paltalk entered into a license with Microsoft ("Microsoft License"). Edlin Decl. at Ex. 1 (Microsoft License; PT_0000979-92).  The Microsoft License grants

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████  *Id.* at PT_0000980, 82 (emphasis added).  As such, Microsoft has a license to

the '858 Patent.  Edlin Decl. at Ex. 2 at 154:11-19 (Katz Dep. Tr.).  The Microsoft License does

not contain a provision requiring Microsoft to mark embodying products with the '858 patent or

any other Paltalk patent number.  *See generally* Edlin Decl. at Ex. 1.  Paltalk does not dispute

this fact.

On September 22, 2022, Cisco identified the Microsoft License to Paltalk, along with an

identification of Microsoft Teams, which incorporates substantially the same functionality in

Cisco's products that Paltalk accuses of infringement ("Identified Microsoft Product").  Edlin

Decl. at Ex. 3 at 9 (████████████████████████████████████████

Microsoft Teams allows both mixing and non-mixing clients to participate in an audio

conference.  *Id.*; *see also* Edlin Decl. at Exs. 4-6 (Identified Microsoft Product;

CISCO-PAL-00003161-62, 64).  The Identified Microsoft Product was released on November 2,

2016 or later, which is after April 22, 2009, the Effective Date of the Microsoft License.  Edlin

Decl. at Ex. 7 (Microsoft Teams Article).

## C.   The Activision and Sony Licenses and the Identified Activision and Sony Products.

On September 15, 2011, Paltalk entered into a license with Activision ("Activision

License").  Edlin Decl. at Ex. 8 (Activision License; PT_0001012-28).  The Activision License

grants ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  *Id.* at PT_0001013-16 (emphasis added).

Stemming from the same suit, on October 13, 2011, Paltalk also entered into a license with Sony

("Sony License").  Edlin Decl. at Ex. 9 (Sony License; PT_0000993-1011).  Similar to the

Activision License, the Sony License grants ████████████████████████████████

████████ " which includes " ████████████████████████████████████████████

████████████████████████████████████████████████████████ *Id.* at

PT_0000994-5 (emphasis added).  Therefore, both Activision and Sony had a license to the '858

Patent.  Edlin Decl. at Ex. 2 at 158:1-5, 161:21-162:2, 167:17-22.  Neither the Activision nor the

Sony License require the licensees to mark embodying products with any Paltalk patent number.

*See generally* Edlin Decl. at Exs. 8 and 9.

On September 23, 2022, Cisco identified both the Activision and Sony Licenses to

Paltalk.  Edlin Decl. at Ex. 3 at 10.  Cisco also identified specific Activision and Sony products

incorporating substantially the same functionality in Cisco's products that Paltalk accuses of

infringement ("Identified Activision Products" and "Identified Sony Product").  *Id.*  Cisco's

Identified Activision Products include Blizzard Voice and Overwatch Voice Chat, which allow

players to engage in voice chat while playing video games.  *Id.*; *see also* Edlin Decl. at Exs.

10-13 (Identified Activision Products; CISCO-PAL-00003158-60, 66).  Cisco also identified

Sony's PC Videoconferencing Endpoint Software that "allows remote connection from a

Windows PC to video conferences."  Edlin Decl. at Ex. 14 (Identified Sony Product; CISCO-

PAL-00003163).

The Identified Activision Products were released after September 5, 2011, the Effective

Date of the Activision License: the Identified Blizzard Voice product was released in October

20, 2016 or later, while the Identified Overwatch Voice Chat was released in October 27, 2015

or later.  Edlin Decl. at Exs. 15 (Blizzard Voice Article) and 16 (Overwatch Voice Chat Article).

The Identified Sony Product was on sale on July 11, 2012 or later, which is after Sony License's

Effective Date of October 13, 2011.  Edlin Decl. at Ex. 17 at 4 (Wainhouse Research's Newsletter regarding Sony's PC Videoconferencing Endpoint Software).

> **D.      Cisco's Notice to Paltalk Regarding the '858 Patent.**

To meet its burden of production, during discovery Cisco identified Microsoft's, Activision's, and Sony's licenses to Paltalk ("Identified Licenses"), as well as products Cisco contended should have been, but were not, marked with the '858 Patent number ("Identified Products").  Edlin Decl. at Ex. 3 at 9.  On September 29, 2022, Cisco sent a letter to Paltalk confirming that Cisco's response to Interrogatory No. 13 "satisfied its initial burden of production for its marking defense by identifying unmarked products that it believes to practice the asserted patents," and again listed the products that Cisco believes should have been marked. Edlin Decl. at Ex. 18 (E. Edlin's Letter to R. Caughey Regarding Marking Statute Compliance). Cisco further provided that Paltalk now "bears the burden of proof to show that these products either do not embody the patents, or that it complied with the marking statute with regard to its licensees Microsoft, Sony, and Activision."  *Id.*

Paltalk has not satisfied its burden of proof to show that the Identified Products do not embody the '858 Patent, or that they were marked in compliance with the statute.  Paltalk claims that it does not "know whether Microsoft is offering technology that practices the '858 Patent that it's licensed to."  Edlin Decl. at Ex. 2 at 156:20-24.  Paltalk admits it has never "investigate[d] whether Microsoft had any products or services that infringed the '858 Patent," and thus, has never investigated whether Microsoft marks its embodying products. *Id.* at 154:20-155:5.  As with Microsoft, Paltalk does "not know what products Sony [or Activision] may offer that practice the '858 Patent."  *Id.* at 164:6-9, 167:23-168:2.  Paltalk further admits that it is "not aware of any obligation that Paltalk gave to Sony [or Activision] to mark …

products or services that practice the '858 patent." *Id.* at 164:10-17, 168:3-10.  Paltalk provides

no expert opinion to meet its burden of proof that the Identified Products do not require marking,

including any opinion disputing that any of the Identified Products practice at least one claim of

the '858 Patent.  These facts are all undisputed.

### E.   Paltalk's Last-Minute Attempt to Circumvent its Marking Requirement.

On November 23, 2022, eight days before this motion for summary judgement is due,

Paltalk notified Cisco that it intends to withdraw apparatus claims 6-10.  Paltalk has yet to notify

the Court or dismiss its claims with prejudice.

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

Patentees and licensees must provide notice that a product is covered by a patent.

35 U.S.C. § 287.  To recover damages prior to the date of actual notice, patentees and licensees

may give notice by affixing the word "Patent" or the abbreviation "Pat." to the product or

packaging, along with the patent number or a link to a website containing the patent information.

*Id.*  "A patentee's licensees must also comply with § 287."  *Arctic Cat Inc. v. Bombardier

Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  When the licensees are third

parties, courts may consider "whether the patentee made reasonable efforts to ensure compliance

with the marking requirements." *Id.* (internal quotation marks and citations omitted); *Arctic Cat

Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020); *Maxwell v. J.

Baker, Inc.*, 86 F.3d 1098, 1111–12 (Fed. Cir. 1996).  The marking provision of § 287 applies to

all authorized persons making or selling the patented articles, regardless of whether that

authorization is contained in an express license, settlement agreement, or covenant not to sue. *See Massachusetts Inst. of Tech. v. Abacus Software, Inc.*, No. 5:01-cv-00344, 2004 WL 5268123, at *9 (E.D. Tex. Aug. 4, 2004), *report and recommendation adopted in part*, No. 5:01-cv-00344, 2004 WL 5268124 (E.D. Tex. Sept. 29, 2004) (citing *In re Yarn Processing Pat. Validity Litig.*, 602 F. Supp. 159, 169 (W.D.N.C. 1984) (this section "applies to authorizations by a patentee of other persons to make and sell patented articles regardless of the particular form these authorizations may take")) (cited with approval by *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 n.2 (Fed. Cir. 1994)).

"The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat*, 876 F.3d at 1366.  While the accused infringer "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287, … the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.* at 1368.  The accused infringer's initial burden of production is a "low bar," where it "need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id.*

A patentee is required to comply with the marking requirement even when initially-asserted apparatus claims are later withdrawn. *CXT Systems, Inc. v. J. C. Penny Corporation, Inc.*, No. 2:18-cv-00233, 2020 WL 9936135, *4–*5 (E.D. Tex. 2020) (rejecting patentee's argument that since it dropped previously asserted apparatus claims, leaving only method claims at issue, compliance with the marking statute became irrelevant, the court noting that "courts across the country have disallowed this practice, finding that the marking requirement remains"); *DivX, LLC v. Hulu, LLC*, No. 2:21-cv-01615, 2021 WL 4459368, at *5 (C.D. Cal. June 11, 2021) (finding that the patentee's election to assert non-method claims

triggered § 287(a));  *Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*, No. 2:16-cv-00055, 2017 WL

5165606, *2–3 (E.D. Tex. Oct. 15, 2017), *report and recommendation adopted sub nom.*, 2017

WL 5157687 (E.D. Tex. Nov. 7, 2017) (rejecting argument that "application of the [marking]

statute turns on a patent holder's decision to drop apparatus claims at some point during

litigation" because it "defies logic," and granting summary judgment motion of no pre-suit

damages where patents contained both method and system claims and patentee initially asserted

that defendant "infringes at least one system claim from each patent-in-suit").

## IV.    PALTALK FAILED TO COMPLY WITH THE MARKING REQUIREMENTS

### A.    Cisco Has Satisfied Its Initial Burden of Production.

During fact discovery, Cisco identified various products as unmarked patented articles

subject to 35 U.S.C. § 287.  Edlin Decl. at Ex. 3 at 9-10 (Cisco's September 23, 2022 response to

Paltalk's Interrogatory No. 13 included the Identified Products); *id.* at Ex. 18.

This clears the Federal Circuit's "low bar" required to satisfy Cisco's initial burden of

production set forth in *Arctic Cat*.  *Arctic Cat*, 876 F.3d at 1368.  An alleged infringer is only

required to identify the products it believes are unmarked patented articles.  *Id.* ("To be clear,

this is a low bar.  The alleged infringer need only put the patentee **on notice** that he or his

authorized licensees sold specific unmarked products which the alleged infringer believes

practice the patent.") (emphasis added); *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299,

1313 (Fed. Cir. 2020); *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-01314, 2018 WL

10498197, at *3 (E.D. Tex. May 22, 2018) ("The [Federal Circuit's] choice of words [in *Arctic

Cat*] requires no more than 'belief,' 'articulation,' 'notice,' and 'specificity' to meet a 'low

bar.'"); *Finjan, Inc. v. Juniper Networks*, Inc., 387 F. Supp. 3d 1004, 1016-17 (N.D. Cal. 2019)

("Finjan complains that all Juniper provided was a list of [entities] and generally described some

product categories that they offer.  It asserts that Juniper should have provided more specific information, such as the versions of the products and the relevant timeframe during which the products were allegedly available.  But Finjan offers no authority requiring that level of detail in satisfying the initial burden of production.") (internal quotation marks and citations omitted).

Cisco's identification of relevant license agreements and products that should have been, but were not, marked with the asserted patent number is what the Federal Circuit deemed adequate in *Arctic Cat*.[1]  There, the defendant introduced a license agreement that included the relevant patented functionality and identified fourteen products from three versions of the licensee's boat steering functionality, which was similar to the defendant's accused functionality. *Arctic Cat*, 876 F.3d at 1368.  The Federal Circuit then determined that this was sufficient to meet the defendant's initial burden.  *Id.*

The same is true here.  Cisco (1) identified the agreements granting licenses to the '858 Patent, (2) contended that Microsoft, Activision, and Sony ("Licensees") are subject to the Identified Licenses, and (3) identified products it believes include the same functionalities that Paltalk accuses of infringement here–the Identified Products.  *See* Section II.B-C, *supra*.  Cisco met its initial burden of production.

**B.    Paltalk Did Not Comply with the Marking Requirements to Recover Pre-Suit Damages.**

When licensees are third parties, courts may consider "whether the patentee made reasonable efforts to ensure compliance with the marking requirements."  *Arctic Cat*, 876 F.3d at 1366.  When considering a patentee's reasonable effort, courts further look at whether the license agreements include language requiring licensees to mark.  *See Arctic Cat*, 950 F.3d at 864

---

[1] In *Arctic Cat*, the Federal Circuit did not determine the minimum showing needed for the accused infringer to meet its burden, but it determined that the defendant met it in that particular case.  *Id*. at 1368.

("While courts may consider whether the patentee made reasonable efforts … here Arctic Cat's license agreement with Honda expressly states that Honda had no obligation to mark."); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) ("DFM's licenses did not require its licensees to mark the introducer product and there was no evidence that any product ever bore a patent marking.").  Even if a license contains a marking requirement, failure to take steps to ensure a licensee actually marked its products can still fail § 287.  *See, e.g.*, *K&K Jump Start/Chargers, Inc. v. Shumacher Elec. Corp.*, 52 F. App'x 135, 141 (Fed. Cir. 2002).  And while the Federal Circuit has never specified the bare minimum effort a patentee must make, it indicated that a patentee should at least include a marking provision in a license.  *Id.*

Paltalk did not contend that the Licensees mark (or have marked) any of the Identified Products.  And more importantly, as evident from Mr. Katz's (Paltalk's Chairman and CEO) deposition transcript and the Identified Licenses that do not contain a marking requirement, Paltalk admitted that it is not aware of any such obligations to ensure that, and thus has never even investigated whether the Licensees marked its products.  Edlin Decl. at Ex. 2 at 154:20-155:5, 164:10-17, 168:3-10; *see also id.* at Exs. 1, 8, 9.  Indeed, Paltalk admitted that it "does not have any … knowledge about … any … entities that may have developed or marketed a product that embodies one or more of the Asserted Claims."  Edlin Decl. at Ex. 19 at 2-4 (Paltalk's Suppl. Resps. and Objs. to Cisco's 2nd Interrogs.).  Paltalk therefore cannot demonstrate that it made reasonable efforts to ensure its Licensees' compliance with the marking requirements.  *Arctic Cat*, 876 F.3d at 1366.

Paltalk's ignorance to its marking requirements, and willful blindness to its Licensees' patent-practicing products do not excuse Paltalk from complying.  As such, Paltalk does not even

come close to making a reasonable effort to ensure that its Licensees mark their products. *Arctic Cat*, 950 F.3d at 864; *Devices for Medicine*, 822 F.2d at 1066.

### C.   Paltalk Cannot Circumvent Its Marking Requirement.

Paltalk's recent offer to withdraw its initially-asserted apparatus claims cannot circumvent its marking requirement. *CXT Systems*, 2020 WL 9936135, at *4. Paltalk asserted its apparatus claims at the outset of this suit, triggering § 287(a). *DivX*, 2021 WL 4459368, at *5. Paltalk continued to assert its apparatus claims through the various stages of this case, and did not offer to withdraw its apparatus claims until days before dispositive motions are due, despite Cisco's request for claim narrowing. Although Paltalk will be withdrawing its apparatus claims ***after*** *Markman*, the completion of discovery, and the deadline for dispositive motions, Paltalk is still required to comply with the marking statute. *Huawei Techs.*, 2017 WL 5165606, at *2–3.

### D.   Paltalk Cannot Demonstrate That Any of Its Licensees' Products Do Not Practice the Patented Inventions.

Finally, upon satisfaction of Cisco's initial burden of production, Paltalk must prove that the identified products do not fall within at least one patent claim. *Arctic Cat*, 876 F.3d at 1369; *see also Packet*, 965 F.3d at 1313, cert. denied, 209 L. Ed. 2d 552 (Apr. 19, 2021). Paltalk has waived any such defense. No Paltalk expert has addressed the issue of marking, including whether the Identified Products fall within the claims of the '858 Patent. The only evidence on the issues is Cisco's, and it is unrebutted. Under these circumstances, Paltalk cannot "present substantial evidence to the jury that match[] the limitations in any claim of the [asserted '858] patent to the features of the [Identified Products]." *Packet*, 965 F.3d at 1314. Summary judgment for this issue is thus warranted.

## V.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court grant its motion for partial summary judgment of no pre-suit damages based on Paltalk's failure to mark.

Dated: December 1, 2022                    Respectfully submitted,


                                           */s/ Elise Edlin*
                                           Sarah E. Piepmeier
                                           Elise Edlin (admitted *pro hac vice*)
                                           PERKINS COIE LLP
                                           505 Howard Street, Suite 1000
                                           San Francisco, CA  94105
                                           SPiepmeier@perkinscoie.com
                                           EEdlin@perkinscoie.com
                                           Telephone: (415) 344-7000
                                           Facsimile: (415) 344-7050

                                           Ryan Hawkins (admitted *pro hac vice*)
                                           PERKINS COIE LLP
                                           11452 El Camino Real, Suite 300
                                           San Diego, CA 92130-2080
                                           RHawkins@perkinscoie.com
                                           Telephone: (858) 720-5709
                                           Facsimile: (858) 720-5809

                                           Jessica J. Delacenserie (admitted *pro hac vice*)
                                           PERKINS COIE LLP
                                           1201 Third Avenue, Suite 4900
                                           Seattle, WA 98101-3099
                                           JDelacenserie@perkinscoie.com
                                           Telephone: (206) 359-3644

                                           Michael E. Jones (SBN: 10929400)
                                           Shaun W. Hassett (SBN: 24074372)
                                           POTTER MINTON
                                           110 North College
                                           500 Plaza Tower
                                           Tyler, TX  75702
                                           mikejones@potterminton.com
                                           shaunhassett@potterminton.com
                                           Telephone: (903) 597.8311
                                           Facsimile: (903) 593.0846

                                           ATTORNEYS FOR DEFENDANT
                                           CISCO SYSTEMS, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on December 1, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on December 1, 2022.

*/s/Elise Edlin*
Elise Edlin

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case and Judge Albright's Amended Standing Order Regarding Filing Documents Under Seal in patent Cases and Redacted Pleadings.

*/s/Elise Edlin*
Elise Edlin
