**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

PALTALK HOLDINGS, INC.,

               Plaintiff,

v.

CISCO SYSTEMS, INC.,

               Defendant.

CIVIL ACTION NO. 6:21-CV-00757-ADA

JURY TRIAL DEMANDED

**PALTALK'S OPPOSITION TO CISCO'S MOTION TO EXCLUDE CERTAIN
<u>OPINIONS OF WATER BRATIC AND DR. SCOTT SCHAEFER</u>**

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ..........................................................................................................1

LEGAL STANDARD...................................................................................................3

BACKGROUND ..........................................................................................................3

ARGUMENT ...............................................................................................................5

    I.    Cisco's quibbling over the date of first infringement is a question for cross-examination, not a *Daubert* motion...................................................5

        A.    Bratic's analysis is grounded in the facts of the case...................6

        B.    The Court should reject Cisco's misplaced credibility attack, faulty alternative date of first infringement, and misguided analysis of caselaw..................................................................6

        C.    Any imprecision around the date of first infringement is Cisco's own doing...........................................................................10

    II.    Bratic's running royalty analysis is based on a reliable methodology, is factually grounded, and will be helpful to the jury................................12

        A.    Cisco's challenges to apportionment go to weight, not admissibility...........................................................................12

            1.    Bratic's and Dr. Schaefer's apportionment opinions are admissible. ................................................................12

            2.    Cisco cites no authorities calling into question Bratic's and Dr. Schaefer's apportionment analysis. ..................17

        B.    Bratic's reasonableness check is not an independent royalty analysis and will be helpful to the jury because it addresses Cisco's black-box in-house apportionment. ................................18

        C.    Bratic's split of incremental benefits is reasonable, justifiable, and based on facts in the record...............................................19

        D.    Bratic properly addresses the licenses that have been produced in this case...............................................................................21

    III.    While the Court should not exclude any of Paltalk's experts' opinions, if the Court were to find any deficiency it would be curable................................22

CONCLUSION.............................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   435 F.3d 1356 (Fed. Cir. 2006)..................................................................................9

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)................................................................................12

*Cassidian Commc'ns, Inc. v. Microdata GIS*,
   2013 WL 11322510 (E.D. Tex. Dec. 3, 2013)...................................................10, 22

*Cassidian Communications, Inc. v. microDATA GIS*,
   2013 WL 12148459 (E.D. Tex. Dec. 10, 2013).................................................10, 22

*Cioffieta v. Google, Inc.*,
   2017 WL 77395 (E.D. Tex. Jan. 9, 2017).................................................................15

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
   2022 WL 831619 (W.D. Tex. Feb. 24, 2022)............................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)........................................................................................ *passim*

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
   2017 WL 1322555 (E.D. Tex. Apr. 6, 2017)................................................8, 14, 16

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018)................................................................................12

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   2015 WL 1303643 (D. Del. Mar. 20, 2015) .....................................................10, 22

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ...........................................................21

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................. *passim*

*GPNE Corp. v. Apple, Inc.*,
   2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .........................................................17

*i4i Limited Partnership v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .....................................14

*Innovation Scis., LLC v. Amazon.com, Inc.*,
 2020 WL 4201925 (E.D. Tex. July 22, 2020) ........................................................17

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
 694 F.3d 51 (Fed. Cir. 2012)...............................................................................5

*Longhorn HD LLC v. Netscout Sys., Inc.*,
 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) .....................................9, 10, 11, 13

*Louisiana United Business Association v. J&J Maintenance, Inc.*,
 2016 WL 6143058 (W.D. La. Oct. 19, 2016) ........................................................18

*Mobility Workx, LLC v. Cellco P'ship*,
 2019 WL 572814 (E.D. Tex. Nov. 5, 2019) ...........................................................6

*Netfuel, Inc. v. Cisco Systems*,
 2020 WL 1274985 (N.D. Cal. Mar. 10, 2020)................................................17, 23

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
 2019 WL 5206273 (N.D. Ill. Mar. 13, 2019) ........................................................15

*Oracle Am., Inc. v. Google, Inc.*,
 798 F. Supp. 2d 1111 (N.D. Cal. 2011) ...............................................................10

*Papst Licensing GmbH v. Samsung Elecs. Co.*,
 403 F. Supp. 3d 571 (E.D. Tex. 2019)...................................................................9

*PerdiemCo, LLC v. Industrack LLC*,
 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) .......................................................14

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
 2021 WL 662238 (E.D. Tex. Feb. 20, 2021) ..................................................15, 17

*Realtime Data LLC v. EchoStar Corp.*,
 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018) ...............................................16, 21

*ROY-G-BIV Corp. v. ABB, Ltd.*,
 2014 WL 12465449 (E.D. Tex. Aug. 1, 2014) ......................................................18

*Salazar v. HTC Corp.*,
 2018 WL 1783157 (E.D. Tex. Apr. 13, 2018).......................................................16

*Shire Viropharma Inc. v. CSL Behring LLC*,
 2021 WL 1227097 (D. Del. Mar. 31, 2021) .........................................................16

*Summit 6, LLC v. Samsung Elecs. Co.*,
 802 F.3d 1283 (Fed. Cir. 2015).............................................................................3

*United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*,
   80 F.3d 1074 (5th Cir. 1996) .................................................................................................3

*Via Vadis, LLC v. Amazon.com, Inc.*,
   2022 WL 23351 (W.D. Tex. Jan. 3, 2022) ..........................................................................18

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)........................................................................................9, 12

*Voxer, Inc. v. Meta Platforms, Inc.*,
   2022 WL 3371634 (W.D. Tex. Aug. 16, 2022).....................................................................15

**Rules**

Fed. R. Evid. 702 ...........................................................................................................................3

**Other Authorities**

U.S. Patent No. 6,683,858.................................................................................... *passim*

## INTRODUCTION

Paltalk has put forth voluminous evidence that Cisco Webex, one of the world's most-used video- and audioconferencing platforms, is infringing U.S. Patent No. 6,683,858 (the "Patent") and has been doing so since at least 2015. Since the damages period began in this case, Webex has generated more than ████████████████ for defendant Cisco. Paltalk's damages expert Walter Bratic has calculated a reasonable royalty ██████████ due to Paltalk.

To arrive at that royalty figure, Bratic—whose qualifications are unchallenged—properly apportioned Cisco's revenue from the accused Webex products and applied each of the *Georgia-Pacific* factors. He did so by analyzing the materials produced by Cisco and leveraging the technical analysis of Paltalk's infringement and validity experts, Drs. Scott Schaefer and Vijay Madisetti, both of whom are professors of computer science. Bratic's analytical approach is legally proper, factually grounded, and admissible under guiding legal authorities. It will be helpful to the jury when this case is tried in February 2023.

Cisco nevertheless seeks to exclude Bratic's testimony (and some of Dr. Schaefer's testimony) on several grounds. The Court should reject all of them.

*First*, Cisco argues that Bratic identified the incorrect date of first infringement. Whereas Bratic asserts that infringement began at least as early as 2015, Cisco advances an alternative date: 2004, when the Patent was issued. This is a factual dispute among the experts. It doesn't bear any admissibility. And in any event, Paltalk has the better side of the argument. Cisco produced ██ ████████████████████████████████████████████████████. While dates varied, Dr. Schaefer concluded that infringement occurred at least as of July 2015, as Bratic confirmed in a conversation with Dr. Schaefer. Any ambiguity in the date of first infringement is due to the manner in which Cisco has conducted discovery—████████████████████ ██████████████. By contrast, Cisco's proposed 2004 date of first infringement

is unsupported. Paltalk does not accuse any products of Cisco's predecessor WebEx Communications of infringement, and there's no record evidence—and certainly no technical evidence—that infringement began as early as 2004.

*Second*, Cisco challenges Bratic's apportionment analysis. Cisco disagrees with Bratic's assumptions, inputs, and conclusions, but a mountain of caselaw refutes Cisco's argument. Bratic relies on Dr. Schaefer's ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████. Dr. Schaefer documented his sources and arrived at his conclusions based on a consideration of infringing and non-infringing functionalities of the accused products, exactly as the law requires. Cisco's disagreement with Dr. Schaefer's conclusions (and Bratic's reliance on them) is, at most, a matter for cross-examination.

*Third*, Cisco contends that Bratic's calculation of the split of incremental benefits between Paltalk and Cisco lacks support. But Bratic explained his methodology and the supporting facts, which are well-reasoned, based on information created by Cisco, and amply documented. It is the jury's role to weigh that evidence and decide whether Bratic's conclusions are correct.

*Fourth*, Cisco disagrees with some aspects of Bratic's reliance on licenses produced by Cisco. But Cisco misunderstands or misrepresents Bratic's approach. Bratic relied on Dr. Schaefer's conclusion that ████████████████████████████████████████████ ███████████████████████████████████████████. There is nothing controversial about such a conclusion. Nor is there any basis to challenge Bratic's conclusion that █████████████████████████████—an opinion he bases on the patent statute itself, the *Georgia-Pacific* factors, and Cisco's overall conduct. His citation to ████████████, which involved ████████████████████████████, is not any basis for exclusion.

2

Cisco's series of fact-bound disputes are not matters for a *Daubert* motion. They are topics for cross-examination. Bratic's "methodology is reasonable and [his] data or evidence are sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). The law requires nothing more.

## LEGAL STANDARD

The admissibility of expert testimony is governed by FRE 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), a district court determines whether proffered expert testimony is reliable by analyzing whether the reasoning or methodology underlying the testimony is valid. To ascertain whether the testimony is relevant, courts determine whether the reasoning or methodology can be applied to the specific facts of the case. *Id.*

Notwithstanding *Daubert*'s dictates, "the rejection of expert testimony is the exception rather than the rule." FRE 702, Adv. Cmte. Notes (2000). Daubert did not work a "'sea-change over federal evidence law,'" and "'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *See id.* (quoting *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As *Daubert*, 509 U.S. at 596, recognized, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

## BACKGROUND

Cisco's motion seeks to exclude large portions of the royalty analysis of Paltalk's damages expert Walter Bratic. Bratic is a Certified Public Accountant and is Managing Director of public accounting and valuation firm Whitley Penn. Bratic has served as an expert in scores of patent cases involving royalty calculations. No one questions Bratic's qualifications or experience. Nor could they.

In this case, Bratic calculates a reasonable royalty issuing a rigorous analysis under the non-exhaustive factors of *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). As Bratic details in paragraph 34 of his report, he used the following clearly documented and industry-standard methodology to arrive at a reasonable royalty:

- I determined the date of and parties to the hypothetical negotiation;

- I determined the royalty base and compensation period;

- I assessed the *Georgia-Pacific* Factors and their impact on the hypothetical negotiation;

- I performed quantitative royalty analyses under the commonly accepted income approach, market approach, and cost approach;

- I determined the reasonable royalty rate based on the relative bargaining positions of the parties to the hypothetical negotiation; and

- I quantified the reasonable royalty by multiplying the reasonable royalty rate times the royalty base.

The inputs to Bratic's approach are beyond reproach. Bratic relied ████████████████ ████████████████████████████████████████████████████████████████████████ Bratic, in turn, relied on Paltalk's technical expert Dr. Scott Schaefer to identify the approximate date of first infringement to ████████████████████████████████████ ██████████████████████████████████. *Id.* ¶¶ 36, 37, 130-33. Bratic's well-accepted methodology, guided by the *Georgia-Pacific* factors, yielded a reasonable royalty of $121.6 million. *Id.* ¶¶ 143-163.

Bratic also conducted a reasonableness check. He did so for a specific reason. Outside the context of litigation, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

Given that Paltalk and its experts had no visibility into Cisco's apportionment, Bratic also performed a reasonableness check by separately [REDACTED]

[REDACTED]

[REDACTED]   For this analysis, Bratic again relied on Dr. Schaefer's work. *Id.* Bratic's reasonableness check confirmed that his principal apportionment and royalty calculations were reasonable and conservative. *Id.* ¶ 167.

## ARGUMENT

Cisco does not attack Bratic's qualifications and touches only obliquely on his methodologies. The reason is that Bratic's qualifications are superb and his methodologies (applying the *Georgia-Pacific* factors to apportioned revenue) are best-in-class. Cisco instead questions the "factual basis" of many of Bratic's opinions. But disagreements about the factual inputs for an expert's opinions are matters for cross-examination—not admissibility.

**I.    Cisco's quibbling over the date of first infringement is a question for cross-examination, not a *Daubert* motion.**

The *Georgia-Pacific* factors are directed to ascertaining what a reasonable royalty would have been at the time of a hypothetical negotiation between the parties. *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012). Bratic used Dr. Schaefer's approximation of the date of first infringement—July 2015—as the date of a hypothetical negotiation. Ex. 1 ¶ 36. Cisco's damages expert, Lauren Kindler, disagrees and says the date of the hypothetical negotiation would have been "around January 2004." Ex. 3 (Kindler Rpt.) ¶ 53. This expert spat

over the hypothetical negotiation date is a fact dispute between the experts that goes to weight, not admissibility.

### A. Bratic's analysis is grounded in the facts of the case.

Bratic relies on Dr. Schaefer's technical analysis to arrive at an approximate date of first infringement (and therefore a hypothetical negotiation date). Dr. Schaefer is Paltalk's technical expert who reviewed ████████████████ and opines on infringement. Bratic interviewed Dr. Schaefer about the date of first infringement and cited that interview in his report. Bratic explains: "[T]he '858 Patent issued on January 27, 2004. However, I understand based upon Dr. Schaefer's ████████████████████████████████████████████████████████████████ ████████████████████████████ In connection with this analysis of Webex's functionality, Dr. Schaefer reviewed ████████████████████████████████████████████████████ ██████████████████████████████████████████ Bratic properly relied on Dr. Schaefer's analysis.

Bratic's approach is proper and admissible. Courts in Texas and elsewhere routinely allow testimony on a date of first infringement if it has at least some factual grounding. For example, in *Mobility Workx, LLC v. Cellco P'ship*, 2019 WL 572814, at *17 (E.D. Tex. Nov. 5, 2019), the Eastern District of Texas rejected Verizon's *Daubert* challenge and explained "a dispute over when the hypothetical negotiation date would have occurred is better left to cross examination than the exclusion of Dr. Hernandez's entire opinion."

### B. The Court should reject Cisco's misplaced credibility attack, faulty alternative date of first infringement, and misguided analysis of caselaw.

Cisco tries to attack Bratic's approach by questioning the credibility of Dr. Schaefer's conclusion and trying to create factual confusion around the date of first infringement. But Cisco has not identified any issue with the admissibility of Bratic's testimony. And any ambiguity is the

result not of an improper expert opinion but instead stems from the nebulousness of Cisco's discovery responses and materials produced.

Cisco's Misplaced Credibility Attack. First, Cisco tries to attack the foundation of Bratic's testimony by cherry-picking testimony from Dr. Schaefer's deposition where he couldn't recall the specifics of his interview with Bratic. *See* Br. at 13-14. Cisco mentions only in a footnote Dr. Schaefer's testimony about his records of calls with Bratic, and Cisco glosses over Bratic's testimony about the support Dr. Schaefer provided for the date of first infringement. *See, e.g.*, Ex. 1 ¶ 36; Ex. 4 at 30:11-31:5; Ex. 5 (Schaefer Depo.) at 113:11-24. Cisco's attempts to sow doubt over the Schaefer-Bratic issue is a classic cross-examination issue. In terms of admissibility, the record is unequivocal that (1) Bratic interviewed Dr. Schaefer, (2) Bratic cited that interview in his report, (3) Bratic testified about the content of the interview of Dr. Schaefer, and (4) Bratic relied on his interview with Dr. Schaefer for the date of first infringement. *See, e.g.*, Ex. 1 ¶ 36. *Daubert* requires nothing more.

Cisco's Faulty and Unsupported Proposed Date of First Infringement. Cisco and its expert Kindler don't just attack Bratic's date of a hypothetical negotiation. They advance an alternative position that a hypothetical negotiation would have occurred in 2004. Br. at 14-15; Ex. 3 ¶¶ 50-52. This position is baseless and wrong. Whereas Bratic's opinion is grounded in Dr. Schaefer's analysis, Kindler's date of first infringement is *wholly speculative*. In 2004, ███████████ ████████████████████████████████████████████████████ ████████ Cisco has zero basis to believe that infringement occurred in 2004. Most importantly, Cisco did not produce source code going back to 2004 and does not cite technical documentation showing infringement. ████████████████████████████ ████████████████████████████████████████████

████████████████████████████████████████████ Without technical

sources to rely upon, Cisco and its expert point to SEC filings suggesting that, in 2004, a prior

(non-accused) version of Webex allowed PSTN and VoIP users to participate in conferences. Br.

at 14.

Cisco's and Kindler's argument is flawed in two ways. First, as Cisco argues in this case

(and even in its motion), merely facilitating PSTN and VoIP users in the same conference does not

necessarily infringe the Patent. The Patent is directed to *particular methods* of audioconferencing

that allow PSTN and VoIP to communicate seamlessly while conserving bandwidth and enhancing

user experience. Second, Cisco's evidence doesn't even establish that WebEx ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

The Court should reject Cisco's attempt to exclude Bratic while advancing a factually

baseless 2004 date of first infringement.[1] *See, e.g.*, *Eidos Display, LLC v. Chi Mei Innolux Corp.*,

2017 WL 1322555, at *7 (E.D. Tex. Apr. 6, 2017) (denying *Daubert* motion and explaining,

"Innolux only argues that it began using the alleged 5-mask process in 1999 and produced the first

large TGT-LCD display in July 1999. But Innolux fails to provide any evidence that it sold an

accused product in 1999").

<u>Cisco's Faulty Assertion about the Parties to the Hypothetical Negotiation</u>. On the basis of

its flimsy factual analysis, Cisco contends that WebEx Communications (not Cisco) should have

---

[1] Cisco tries to make a point out of a typo in paragraph 141 of Bratic's report, where he erroneously identifies a
hypothetical negotiation date in 2004. This is inconsequential, Cisco didn't ask about it in Bratic's deposition, and it
should not factor into the Court's analysis.

been across the table from Paltalk in a hypothetical negotiation. *See* Br. at 16. Even if Cisco were correct about a 2004 negotiation date, the Court should reject Cisco's assertion about the proper parties to the hypothetical negotiation. The key point is that *Paltalk does not accuse any products that existed in 2004*. Paltalk has consistently disclosed that it accuses only *Cisco* products of infringing the Patent (e.g., Cisco Webex Meetings, Cisco Webex Teams). *See, e.g.*, Ex. 6 (Paltalk's Final Infringement Contentions) at 2; ECF No. 1 (Paltalk Complaint) ("*Cisco* has directly infringed and continues to directly infringe … the '858 Patent."). Cisco has never suggested these products existed in 2004, much less that ███████████████████████████. Cisco's first Webex product ██████████████, when Cisco acquired Webex Communications. Thus, even if WebEx Communications' products infringed (and there is no evidence they did), they are not at issue in this case and therefore irrelevant to a hypothetical negotiation.[2] *See, e.g., Longhorn HD LLC v. Netscout Sys., Inc.*, 2022 WL 903934, at *2 (E.D. Tex. Mar. 27, 2022) (rejecting notion that the hypothetical negotiation could have occurred prior to a corporate acquisition of the seller of the accused product); *Papst Licensing GmbH v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 608-09 (E.D. Tex. 2019) (proper to strike portions of report "basing the hypothetical negotiation date on sales of products never accused in this case and that were sold at a substantially different time than the Accused Products"); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) ("There is nothing to suggest that we should tie a hypothetical negotiation to a prior infringement no longer at issue.").

---

[2] Nor is this even a consequential issue. Bratic explained in his report and deposition that "the hypothetical negotiation between Paltalk and Cisco would have occurred earlier than July 23, 2015, the outcome of the hypothetical negotiation would not have changed because the underlying economic circumstances would be the same." Ex. 1 ¶ 36 n.72. He explained the basis for that opinion in deposition. *See* Ex. 4 at 32:3-9 ("Whether the hypothetical negotiation were as of the date of issuance of the 858 patent, or whether it occurred in July 2015, the parties would have looked at the economic benefits conferred on Cisco during the damages period."). For its part, Cisco says that different parties would have been involved in 2004. But as explained, that's wrong: even if the evidence showed infringement earlier than 2015, the earliest date of infringement could have been 2007. If Cisco disagrees with Bratic's analysis, it is free to cross-examine him at trial.

<u>Cisco's Misplaced Citations to Caselaw</u>. Cisco's legal arguments are equally misplaced. Cisco's principal case is *Cassidian Commc'ns, Inc. v. Microdata GIS*, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013), but it is irrelevant to the situation here. In *Cassidian*, "Defendants did ***not dispute*** that [the expert's] entire opinion [was] based on an incorrect hypothetical negotiation date." *Id.* While the court rejected the expert's opinion on another basis, the court allowed the expert to supplement his report and allowed the new opinion even though "his original damages assessment remain[ed] substantially unchanged." *Cassidian Communications, Inc. v. microDATA GIS*, 2013 WL 12148459, at *4 (E.D. Tex. Dec. 10, 2013).

Cisco next cites *Daedalus Blue LLC v. SZ DJI Tech. Co.,* 2022 WL 831619, at *8 (W.D. Tex. Feb. 24, 2022). But *Daedalus* involved an expert who put the wrong parties at the table during the hypothetical negotiation and served an untimely supplemental opinion. Those are not at issue here. As explained, Paltalk accuses only Cisco's products—not the products of any predecessor. *See Longhorn HD LLC*, 2022 WL 903934, at *2. Cisco's other authorities are equally irrelevant. *See Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 1303643, at *2 (D. Del. Mar. 20, 2015) (issue of first date of inducement to infringe); *Oracle Am., Inc. v. Google, Inc.,* 798 F. Supp. 2d 1111, 1116 (N.D. Cal. 2011) (issue of first offer of sale as opposed to first date of infringement by defendant).

**C.      Any imprecision around the date of first infringement is Cisco's own doing.**

To the extent there is any issue with zeroing in on a date of first infringement, it's an issue of Cisco's creation and not a basis to find Bratic's testimony inadmissible. In its requests for production of documents, Paltalk asked for ████████████████████████████████ ████████████████████████████████████ Cisco objected that the request was "not limited as to time" and did not produce any ██████████████████████████ that would have revealed a precise date of first infringement. *See id.*

10

When Cisco did produce technical documentation and code, it produced 

Cisco also produced scattered technical documents—some of them dated, some undated. This method of producing source code did not allow anyone (neither Dr. Schaefer, nor Kindler, nor anyone else) to pinpoint the precise date when the accused Webex products began to infringe. Cisco's approach makes things particularly muddy, given that Webex products have evolved over time and Cisco's corporate representative on source code (Nathan Buckles) was prepared to testify only about more-recent iterations.

This date-of-first-infringement issue thus distills down to a factual dispute. Bratic concluded, on the basis of an interview of Dr. Schaefer, that the date of first infringement was at least as early as 2015. Kindler concluded, based on ambiguous SEC filings and the say-so of a Cisco employee—and *not* based on any infringement opinion or technical analysis—that the date of first infringement was approximately in 2004. So unlike in cases cited by Cisco, there is no definitive evidence of a precise date of first infringement. Which of course makes sense: *Georgia-Pacific* talks of a *hypothetical* negotiation date—not a real one.

In any event, factual disputes should be resolved by the trier of fact—not on *Daubert*. As in *Longhorn HD*, 2022 WL 903934, at *4, the Court should reject Cisco's *Daubert* argument because "[a] dispute among the experts is not grounds for exclusion." *See also id.* ("[Longhorn] did not clai[m] liability dated prior to the NetScout-Arbor acquisition, and there is no expert

opinion in the record that the Accused Products were infringing prior to the hypothetical negotiation date.").

## II.     Bratic's running royalty analysis is based on a reliable methodology, is factually grounded, and will be helpful to the jury.

### A.     Cisco's challenges to apportionment go to weight, not admissibility.

Cisco argues that Bratic's apportionment lacks "factual basis" because it is based on the wrong documents and does not consider all non-infringing features. *See* Br. at 17. Cisco is wrong. Bratic properly relied on Dr. Schaefer's well-supported technical opinions about the relative contributions of the accused functionalities to the Webex products. Cisco's arguments about factual details in Dr. Schaefer's analysis go to weight, not admissibility.

"The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). "[A]pportionment can be addressed in a variety of ways, including by careful selection of the royalty base," "by adjustment of the royalty rate," "by a combination thereof," or by a "proper analysis of the Georgia-Pacific factors." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348–49 (Fed. Cir. 2018); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("[T]he standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation.").

#### 1.     Bratic's and Dr. Schaefer's apportionment opinions are admissible.

Adhering to the Federal Circuit's guidance, Bratic accounted for the value attributable only to Paltalk's patented technology by (1) relying on Cisco's in-house apportionment that singled out revenue ██████████████ which covered all accused functionalities; (2) applying an additional ████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████. Throughout the 169 paragraphs in his report, Bratic carefully apportioned Webex revenues so that his royalty calculation would be reasonably related to Paltalk's contributions to the accused functionalities in the accused Webex products.

Bratic's apportionment is based on a solid foundation. Bratic relies on Dr. Schaefer's technical expertise. Over more than 15 pages of his report, Dr. Schaefer analyzes the accused Webex products, their technical capabilities, and their features to arrive at a fully reasoned apportionment based on extensive documentation in the record—mostly internal Cisco documents relating to Cisco's █████████████████████████████████████████

██. Dr. Schaefer considered the "infringing and non-infringing nature of the ██████████████

████████ and, in light of the materials produced in this case as well as publicly available sources, put forth opinions about the relative importance of the features. *See id.* ¶¶ 216-231.

Cisco does not and cannot call into question Bratic's approach of relying on a technical expert who has analyzed source code and technical documentation relating to the accused functionalities. Such an approach is irrefutably proper. *See, e.g.*, *Longhorn HD*, 2022 WL 903934, at *3 ("Mr. Bergman may rely on Dr. Kia's opinion about the technical importance of the patent-in-suit to support Mr. Bergman's apportionment analysis."). Nor can Cisco question the factual grounding of Bratic's and Dr. Schaefer's opinions: Dr. Schaefer's voluminous record citations and detailed explanations refute any such notion. Cisco instead argues that (1) Dr. Schaefer is not qualified to make such an apportionment, and (2) Dr. Schaefer should have considered other evidence and applied different weights to the evidence he did consider. Both of those arguments are cross-examination points; neither affects admissibility.

13

*First*, Cisco argues that Dr. Schaefer's apportionment analysis "lack[s] quantitative support." Br. at 18-20. Cisco misunderstands Dr. Schaefer's analysis, which while not mathematical, was certainly grounded in the factual record. Dr. Schaefer analyzed voluminous record evidence in light of his experience and review of source code and technical documentation. *See* Ex. 9 ¶¶ 206-241. Based on relevant facts in the record—mostly Cisco's own documents ██████████████████—and Dr. Schaefer's expert understanding of the patented technology, Dr. Schaefer opines about the relative importance of various features in ████████. The fact that Cisco apparently prefers a quantitative analysis based on its certain usage statistics (*see* Br. at 20-21) is irrelevant under *Daubert*. As the Federal Circuit explained in *i4i Limited Partnership v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (applying Fifth Circuit law), "it is not the district court's role under Daubert to evaluate the correctness of facts underlying an expert's testimony." The court elaborated: "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *See, also, e.g.*, *Eidos Display*, 2017 WL 1079441, at *2 ("[T]he contention that Dr. Smith's opinions are purely subjective because he did not conduct an analytical economic analysis also does not provide a basis to exclude his opinions. As discussed above, Dr. Smith is Eidos's technical expert and has provided opinions regarding the technical advantages and benefits of the claimed technology."); *PerdiemCo, LLC v. Industrack LLC*, 2016 WL 6611488, at *3 (E.D. Tex. Nov. 9, 2016) ("While it is true that Mr. McLean does not disclose how he weighs or combines these metrics to arrive at his final royalty, estimating a reasonable royalty and apportionment is never an exact science. At some level an expert must be allowed to rely on and use his or her judgment, provided the opinion is supported by facts and data."); *Cioffieta v. Google, Inc.*, 2017 WL 77395, at *3 (E.D. Tex. Jan.

9, 2017) (Bratic allowed to rely on technical analysis of apportioned features identified in "Google's own marketing materials").

Cisco presents, at most, a dispute between experts for the jury. But disagreements about factual support go to weight, not admissibility. Dr. Schaefer cited numerous documents in the record and also ███████████████████████████████████████████████ ███████████████████████████████. If Cisco thinks Dr. Schaefer should have analyzed these documents differently, or assigned different weights to different features, it can raise those issues on cross-examination. But questions about which facts an expert should rely upon and emphasize are classic issues for cross-examination that don't affect admissibility. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 2021 WL 662238, at *6 (E.D. Tex. Feb. 20, 2021) ("Mr. Dansky's attempt to apportion the royalty base is sufficient to meet the minimum apportionment necessary. Apple may believe that further apportionment may be proper or that certain assumptions may be incorrect, but these are questions for a jury to decide."); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 5206273, at *1 (N.D. Ill. Mar. 13, 2019) (assertions that an expert "did not do the apportionment correctly and/or came out with an erroneous result" "bear on the weight to be given to … testimony, not its admissibility"); *Voxer, Inc. v. Meta Platforms, Inc.*, 2022 WL 3371634, at *3–4 (W.D. Tex. Aug. 16, 2022) ("Although apportionment generally is required if the patented features are not the sole driver of demand, it is not a rigid rule, but rather an evidentiary tool intended to avoid jury confusion…. Having considered all of Meta's contentions that portions of Ratliff's report and his proposed testimony are deficient and should be excluded from trial, the court finds that Meta's complaints are for the factfinder to assess. Cross-examination and the presentation of contrary evidence are the traditional and appropriate means of addressing what one side may believe to be shaky evidence.").

*Second*, Cisco argues that Bratic and Dr. Schaefer did not account for all non-infringing features but instead "cherry-picked" features from a "larger set of non-infringing audio features." Br. at 18. Cisco is wrong about Bratic's and Dr. Schaefer's analysis: Bratic relies on Dr. Schaefer's factually supported opinions about the relative importance of various features across the accused products. If Cisco contends that the accused products include unpatented features that were not (but should be) accounted for, that is a dispute between experts for the jury to resolve. *See, e.g.*, *Eidos Display*, 2017 WL 1079441, at *2 ("Whether Dr. Smith considered alternatives or compared other five-mask processes is simply a matter for cross-examination as it goes to the correctness of his methodology, not the reliability."); *Salazar v. HTC Corp.*, 2018 WL 1783157, at *1 (E.D. Tex. Apr. 13, 2018) (denying Daubert motion where "the parties present[ed] conflicting facts about the extent to which the Pronto includes nonpatented features"); *Realtime Data LLC v. EchoStar Corp.*, 2018 WL 6266301, at *7–9 (E.D. Tex. Nov. 15, 2018) ("Mr. Dell recognized the existence of other features present in the Accused Products and nevertheless concluded that his apportionment factor accurately represents the incremental benefit created by the accused compression feature. Defendants' criticisms regarding Mr. Dell's inclusion of unpatented features largely go to the credibility of his opinion, rather than its admissibility."); *Shire Viropharma Inc. v. CSL Behring LLC*, 2021 WL 1227097, at *24, *28 (D. Del. Mar. 31, 2021) (denying *Daubert* motion where the parties disputed whether "the patents-in-suit cover[ed] the infringing product as a whole").

Finally, Bratic's apportionment analysis is particularly credible given that Cisco's ███

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████. But to ensure accuracy and credibility, Paltalk's experts went even further and applied additional technical apportionment to ██████████ revenue. On behalf of Cisco, Kindler and its technical expert Dean Willis advance an alternative (more Cisco-friendly) apportionment. *See* Ex. 3 ¶ 129.

Ultimately, Cisco and its expert may disagree with Bratic's reasoning and assumptions, "but vigorous cross-examination is the traditional means of attacking shaky but admissible evidence, not exclusion." *Personalized Media Commc'ns*, 2021 WL 662238, at *5; *see also id.* at *6 ("Apple may believe … that certain assumptions may be incorrect, but these are questions for a jury to decide."); *Innovation Scis., LLC v. Amazon.com, Inc.*, 2020 WL 4201925, at *3 (E.D. Tex. July 22, 2020) (denying motion to exclude where defendants argued that "Dr. Magee has no support for his opinions" because such challenges go to weight (emphasis in original)).

2.    *Cisco cites no authorities calling into question Bratic's and Dr. Schaefer's apportionment analysis.*

The authorities Cisco cites reveal the weakness of its apportionment argument. Cisco highlights *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *5 (N.D. Cal. Apr. 16, 2014), but there, the damages expert "attempt[ed] no apportionment analysis, nor [did] he even consider whether apportionment is appropriate." The expert's $1 per unit royalty was "plucked out of thin air" and was therefore not subject to cross-examination. *Id.* at *6.

Cisco also cites *Netfuel, Inc. v. Cisco Systems*, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 10, 2020), where the Northern District of California excluded an apportionment opinion because the technical expert opinion was "an impermissible black box" based on experience and industry-wide data. Critically, the technical expert did not and could not explain which non-infringing features comprised the 67% of remaining value (beyond the infringing features). *Id.* Dr. Schaefer's analysis was significantly more detailed.

Cisco's other cases are farther afield. Cisco cites *ROY-G-BIV Corp. v. ABB, Ltd.*, 2014 WL 12465449, at *9 (E.D. Tex. Aug. 1, 2014), to try to paint Bratic's and Dr. Schaefer's analysis as arbitrary. But the expert in *ROY-G-BIV* buried his 70% apportionment figure in a single footnote and said it was "[b]ased on discussions with ROY-G-BIV personnel … and [ROY-G-BIV's] infringement expert." *Id.* The analysis there was not close to Dr. Schaefer's well-cited work. Next, Cisco cites *Via Vadis, LLC v. Amazon.com, Inc.*, 2022 WL 23351, at *3 (W.D. Tex. Jan. 3, 2022), but the issue there was the "entire market rule"—not the factual foundation of an expert's apportionment opinion. Finally, Cisco tries to rely on *Louisiana United Business Association v. J&J Maintenance, Inc.*, 2016 WL 6143058, at *3 (W.D. La. Oct. 19, 2016), but that case involved a personal injury claim and a negligence standard. It has nothing to do with apportionment or even intellectual property.

### B.   Bratic's reasonableness check is not an independent royalty analysis but will be helpful to the jury because it addresses Cisco's black-box in-house apportionment.

In addition to his standard apportionment analysis, Bratic performed a "reasonableness" check designed to test the accuracy of his royalty rate and also the ███████████████████ ███████████████████████████████████████████ Note that this reasonableness analysis does not bear on or contribute to Bratic's reasonably royalty calculation. It is instead designed as a cross-check on Cisco's opaque apportionment work and Bratic's own *Georgia-Pacific* analysis. *Id.* ¶ 167.

As explained, Cisco ███████████████████—a fact that, standing alone, defeats Cisco's "lack-of-apportionment" apportionment arguments. *See supra* Part II.A. But because ████████████████████████████████████████████████████ ████████████████████████████████, Bratic performed an independent cross-check. *See id.* ¶ 165 His analysis is as follows: he (1) began with the overall

Webex revenue base (as opposed to the ███████████████████████); (2) relied on Dr. Schaefer's analysis of infringing and non-infringing features across the entire range of Webex features (███████████████████); (3) applied Dr. Schaefer's entire-Webex analysis to the entire revenue basis; and (4) compared the resulting royalty with the royalty yielded by the principal apportionment using "███████████" revenue. *See id.* ¶¶ 164-167. Bratic's conclusion—grounded in the evidence and Dr. Schaefer's technical analysis—is that his principal "███████ ███" apportionment (which is premised on Cisco's in-house apportionment) is reasonable and conservative. *Id.*

Cisco attacks Bratic's reasonableness check on precisely the same basis as it attacks his principal apportionment: Cisco contends that Bratic and Dr. Schaefer don't look at the right evidence and don't weigh it in the right way. Br. at 24-26. But again, that is an issue for cross-examination. In his experts report and in deposition, Bratic explained clearly the grounding and purpose of his reasonableness check, which will be helpful to the jury. Bratic's analysis will contextualize his principal apportionment and also allow Bratic and Dr. Schaefer to respond to Cisco and its experts' discussion of the "███████████" apportionment, on which Cisco's damages expert Kindler bases her royalty analysis. *See, e.g.*, Ex. 3 ¶¶ 36-37. Again, if Cisco believes Dr. Schaefer should have relied on different materials, or emphasized different features, it can test those issues on cross-examination.

### C. Bratic's split of incremental benefits is reasonable, justifiable, and based on facts in the record.

In three paragraphs without citation to a single authority, Cisco challenges Bratic's split of the incremental benefit to Cisco of the patented invention as "flawed and unsupportable." Br. at 23. Cisco's criticism is that Bratic used the wrong expenditure data and ███████████████████ ███████████████████████████████████████████ Cisco is wrong and,

in any event, its only disagreement is with the minutiae of Bratic's approach—not its relevance or admissibility.

As Bratic explains at length in his report, he "analyzed the incremental benefit that Cisco realized as a result of its alleged infringement of the '858 Patent." Ex. 1 ¶ 137. Bratic details that "Paltalk and Cisco would have … considered how to split the incremental benefit realized by Cisco from leveraging the technologies claimed by the '858 Patent in determining a reasonable royalty." *Id.* ¶ 154. To ascertain this split, Bratic used a conventional approach: he "considered the ratio of Cisco's █████████████████████████████████████████████████████████ ████████████████████████████████. Based on this calculation—which he derived from Cisco's own financial data, as publicly reported in its 10-Ks—Bratic concludes that ████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Bratic's split-of-benefits opinion is "grounded in the specific facts of the case"—in particular, the commercial relationship between Cisco and Paltalk and how Cisco █████████████ ██████████████████████████████████████████████████████████████████████ His opinion is also consistent with *Georgia-Pacific* factor 5 and the inventor-promoter relationship, because Bratic's calculation reflects the investment Cisco makes to acquire, license, and/or develop technology and the investment Cisco makes to commercialize its technology. Bratic's opinion is proper and admissible.[3] *See Fujifilm Corp. v. Motorola Mobility LLC*, 2015

---

[3] Cisco tries to create a false hypothetical and extrapolate about the consequences if Cisco were to spend ██████████ Br. at 24. That's misdirection. The issue is not whether Cisco would or would not spend more money on R&D in a hypothetical world. The issue is ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Bratic considered all operating expenses, such as marketing, market research, and selling efforts.

WL 1737951, at *12–*13 (N.D. Cal. Apr. 8, 2015) (denying Daubert motion where the expert linked his royalty rate to Motorola's research and development expenses "as a percentage of profits"); *see also Realtime Data LLC*, 2018 WL 6266301, at *11.

**D.    Bratic properly addresses the licenses that have been produced in this case.**

Cisco seeks to exclude two of Bratic's opinions about the licenses produced in this case. Both of Cisco's arguments misunderstand and mischaracterize Bratic's analysis.

*First*, Cisco argues that, under his analysis of *Georgia-Pacific* factor 2, Bratic lists licenses produced by Cisco but, in ignoring them for purposes of the hypothetical negotiation, provides no information besides the names of the parties and the date. Br. at 26. Cisco says Bratic's approach is improper because he was required to "account for the technological and economic differences" between the licenses at issue and the patented technology. *Id.* Cisco misses the point. There was *no reason* for Bratic to discuss the details of these licenses. *See* Ex. 1 ¶ 87. Why? Because as reflected in Bratic's report and in Dr. Schaefer's report, Dr. Schaefer opined that none of the licenses at issue involved technology comparable to the teachings of the Patent. *See id.* ¶ 88 ("A summary of the Cisco Agreements is included as Exhibit 8 to this report. According to Dr. Schaefer, none of the Cisco Agreements involve technology that is comparable to the teachings of the '858 Patent.").[4] If the licenses do not involve comparable technology, then they are not relevant to the hypothetical negotiation. *See also* Ex. 9 ¶¶ 242-246.

*Second*, Cisco criticizes Bratic's reliance on the ████████████████. Cisco's argument is based on a skewed representation of paragraph 145 in Bratic's report. Cisco suggests that Bratic chose a running royalty ██████████████████

---

[4] Bratic also noted, ████████████████████████

*Id.* But what paragraph 145 *actually* says is that "[a] running royalty is the best way to determine the extent of use made of the '858 Patent *under the patent statute and under Georgia-Pacific factors.*" Ex. 1 ¶ 145. Bratic therefore made it clear that the principal guidance ███████████ ██████████████████████████ but instead the patent statute and *Georgia-Pacific* factors. ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ and that fact would have been recognized by Cisco and Paltalk in the hypothetical negotiation. *Id.* ¶¶ 89, 145

### III. While the Court should not exclude any of Paltalk's experts' opinions, if the Court were to find any deficiency it would be curable.

If the Court's conclusion is that any of Bratic's or Dr. Schaefer's opinions lack factual basis or are otherwise inadmissible, Paltalk respectfully requests that Bratic or Dr. Schaefer be allowed to supplement their opinions. Cisco's authorities are not to the contrary.

In the principal case that Cisco cites—*Cassidian*—the court *allowed* the expert to supplement his opinion with a new date of hypothetical negotiation and *allowed* to the expert to testify as to the substantially the same royalty opinion notwithstanding the new date. *See Cassidian Communications, Inc. v. microDATA GIS*, 2013 WL 12148459, at *4 (E.D. Tex. Dec. 10, 2013).

Likewise in *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 1303643, at *2 (D. Del. Mar. 20, 2015), the court allowed experts to supplement to "use the correct hypothetical negotiation date." That is the conventional and proper approach.

The only case Cisco cites where supplementation was not allowed—*NetFuel,* 2020 WL 1274985—is an out-of-district case where reply reports had already been served that tried to cure the deficiency. Here, Bratic and Dr. Schaefer have served only one report and have had no opportunity to reply to Cisco's experts' reports. Thus, while no supplementation or adjustment is

needed, one would be warranted if the Court were to question the admissibility of any of Paltalk's experts' opinions.

## CONCLUSION

The Court should deny Cisco's motion to exclude certain opinions of Walter Bratic and Dr. Scott Schaefer.

Dated: December 15, 2022                    Respectfully submitted,


                                            By: */s/ Max L. Tribble, Jr.*
                                                Max L. Tribble, Jr.
                                                State Bar No. 2021395
                                                SUSMAN GODFREY L.L.P.
                                                1000 Louisiana Street, Suite 5100
                                                Houston, Texas 77002-5096
                                                Telephone: (713) 651-9366
                                                Fax: (713) 654-6666
                                                mtribble@susmangodfrey.com

                                                **ATTORNEY-IN-CHARGE FOR
                                                PLAINTIFF PALTALK HOLDINGS, INC.**

OF COUNSEL:

Ryan Caughey (*admitted pro hac vice*)
State Bar No. 24080827
Bryce T. Barcelo (*admitted pro hac vice*)
State Bar No. 24092081
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
bbarcelo@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was emailed to all

counsel of record on the 15th day of December 2022.


                                        */s/ Max L. Tribble, Jr.*
                                        Max L. Tribble, Jr.