**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| PALTALK HOLDINGS, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:21-CV-00757-ADA |
| CISCO SYSTEMS, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

**PALTALK'S OPPOSITION TO CISCO'S MOTION
FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT**

# FILED UNDER SEAL

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD...........................................................................................................5

ARGUMENT .......................................................................................................................5

    I.      Irrespective of Cisco's concocted Markman issue, disputed fact issues
relating to infringement preclude summary judgment.............................................5

    II.     If the Court Decides to Construe the Term "Each," the Understanding
Implied by Dr. Schaefer's Infringement Analysis Is Correct ..................................8

         A.     The Court should interpret "each's" plain and ordinary
meaning in light of the specification..........................................................8

         B.     The understanding of "each" implied by Paltalk's infringement
analysis is the plain and ordinary meaning in light of the other
claims of the '858 Patent and the specification. .........................................8

              1.     Claim 1(e): multiplexing said packets of audio data
received from **each** client on Said active Speakers list
into **a** multiplexed Stream ...............................................................9

              2.     Claim 1(f): sending said multiplexed stream to **each** of
**said** first subset of the plurality of clients.....................................13

              3.     Paltalk's position on plain and ordinary meaning has
been consistent. ..............................................................................14

    III.    Cisco's Construction of "Each" Conflicts with Both Intrinsic and
Extrinsic Evidence. ..............................................................................................15

         A.     Cisco's untimely construction of "each" contravenes settled
claim construction law by contradicting or completely ignoring
the '858 Patent's specification. ...............................................................15

              1.     "Each" as "all" is not supported by any intrinsic
evidence. .........................................................................................16

              2.     "Each" as "all" is not supported by any extrinsic
evidence beyond Cisco's own expert.................................................17

              3.     Case law construing "each" across unique patents in
dissimmlar fields of art are irrelevant. .............................................18

CONCLUSION...................................................................................................................20

CERTIFICATE OF SERVICE ....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................6

*Apple Inc. v. MPH Techs. Oy*,
  28 F.4th 254 (Fed. Cir. 2022) ..............................................................................5, 8

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-CV-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014)....................6

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
  224 F.3d 1308 (Fed. Cir. 2000).............................................................................12

*Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007)...............................................................................7

*DeMarini Sports, Inc. v. Worth*,
  239 F.3d 1314 (Fed. Cir. 2001).............................................................................16

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016)...........................................................................6

*Freedom Wireless, Inc. v. Alltel Corp.*,
  2008 WL 4647270 .................................................................................................20

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) .....................................................................7

*Medrad, Inc. v. MRI Devices Corp.*,
  401 F.3d 1313 ...........................................................................................16, 18, 20

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545 (Fed. Cir. 1996),
  *overruled on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo
  Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000)............................................13, 17, 18

*Nichia Corp. v. Feit Elec. Co.*,
  2022 WL 17222250 (C.D. Cal. Oct. 12, 2022)........................................................7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)...............................................................5

*Thorner v. Sony Computer Ent. Am. LLC*,
  669 F.3d (Fed. Cir. 2012).........................................................................................6

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)....................................................................................5

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
  2017 WL 404519 (W.D. Tex. Jan. 27, 2017) ...............................................................6

**Rules**

Fed. R. Civ. P. 56............................................................................................................5

## INTRODUCTION

The Court should deny summary judgment because Paltalk has advanced extensive evidence that would support a jury's finding that the accused Cisco Webex products infringe the '858 Patent. Cisco's motion tries to gin up a *Markman* dispute that comes too late, lacks merit, and in any event, cannot defeat infringement as a matter of law.

Nine months after the *Markman* hearing, Cisco says there is an urgent need for additional claim construction—and that, moreover, Cisco's new *Markman* position requires summary judgment. Not so. The parties are long past claim construction. For many months now, Paltalk and Cisco have agreed that all un-construed terms should be afforded their plain and ordinary meaning—including "each." Yet with trial set for February 23, 2023, Cisco now asks this Court—for the first time—to apply a specific *limiting* construction to the term "each," where "each" *must* mean "all." This is a gambit by Cisco to avoid trial by seeking an 11th-hour construction for a term that everyone has always agreed should be afforded its plain-and-ordinary meaning.

Cisco's motion is too little, too late, and fails to establish any grounds for summary judgment. Both sides *agree* the term "each" is subject to its plain and ordinary meaning. *See* Cisco Motion for Summary Judgment, ECF No. 54 ("Mot.") at 11. That Cisco's expert disagrees with Paltalk's expert about how a POSITA would view infringement in light of the plain and ordinary meaning of the term "each" does not give rise to the need for a construction; it certainly does not raise any summary judgment issue. It just highlights an infringement issue that will be tried to the jury, with capable experts on both sides who disagree—a situation that happens in every case.

Additionally, contrary to Cisco's suggestion, Paltalk is not asking for "each" to be construed. And Paltalk's expert offered his view of the term only in response to specific questioning in deposition. It is Cisco, having never raised this issue during *Markman*, and not upon receiving final infringement contentions or expert reports (which clearly presented Paltalk's theory

1

of infringement), that now seeks a new and unnecessary construction that would be inconsistent with the claim language and the specification of the patent.

Cisco's motion for summary judgment makes a single argument: that Webex does not infringe any claims of the '858 Patent if the Court applies a limiting construction whereby "each" means "all." Cisco's arguments are wrong for at least three reasons.

*First*, the Court need not construe the term "each." Trial should proceed on the current schedule. Neither party sought a construction of "each" at *Markman* and the parties agree that the term should be given its plain and ordinary meaning. At this point, the parties' experts simply disagree over whether Paltalk has shown infringement, and they both advance theories under what they understand to be the plain-and-ordinary meaning of "each." It's a classic dispute of material fact that should be resolved by a jury.

*Second*, if it does decide to construe the term "each," the Court should adopt Paltalk's understanding of "each" because Paltalk's infringement position is consistent with the plain and ordinary meaning of "each," interpreted in light of the intrinsic evidence, including surrounding claims and the specification. The description of the formation, modification, and sending of multiplexed stream in columns five and six of the patent confirm that "each" means "one or more."

*Third*, Cisco's proposed construction of "each" as "all" is an unsupported limitation engineered to bolster Cisco's non-infringement theory and avoid trial. Cisco proposes a limiting construction that is not supported by any intrinsic or extrinsic evidence, while Paltalk's understanding of "each" gives adequate breadth to the term in light of the specification.

The Court should deny Cisco's motion for summary judgment.

## BACKGROUND

On July 23, 2021, Paltalk filed suit against Cisco for the infringement of the '858 Patent. The '858 Patent taught several critical improvements to audioconferencing, including the ability to seamlessly host an audioconference with both PC-based clients (or clients capable of mixing) and phone-based clients (those clients not capable of mixing).

Before discovery began, the parties met and conferred on terms for construction, exchanged multiple claim construction briefs, and attended a *Markman* hearing on February 24, 2022. The Court construed four terms at the *Markman* hearing: "multiplexed stream," "PC-based equipment," and two means-plus-function claims that are no longer asserted by Paltalk. Neither party sought construction of the term "each" at the time of the *Markman* hearing. *See* Joint Claim Construction Statement, ECF No. 33.

On April 28, 2022, Paltalk served its Final Infringement Contentions. Paltalk provided its infringement theories and existing evidence for all asserted claims. Paltalk explained its rationale for concluding that Webex infringes claim 1(e) and 1(f) as well. *See* Ex. A at 24-25. Paltalk also served its infringement expert report of Dr. Scott Schaefer on September 27, 2022, reiterating much of the same evidence as in Paltalk's Final Infringement Contentions.

## RESPONSE TO CISCO'S STATEMENT OF UNDISPUTED FACTS

Cisco's motion tries to identify 4 "undisputed facts" in its brief. *See* Mot. at 5. Those facts are either disputed or wrong. Cisco ignores the important disputed fact for purposes of summary judgment on infringement: the question of infringement itself.

### I.    The big disputed fact: Paltalk has put forth extensive evidence that Webex infringes the '858 Patent.

The key disputed fact is infringement: both parties have put forth lengthy expert reports with admissible evidence of infringement and non-infringement. Cisco does not challenge the

admissibility of Dr. Schaefer's infringement opinions other than his application of the plain and ordinary meaning of "each." The fact of infringement is disputed.

## II.    Cisco does not dispute with Dr. Schaefer's opinions about Webex's multiplexing function.

As relevant to the '858 Patent, there are two subsets of Webex clients—PSTN (i.e., legacy phone) clients and PC-based clients. *See* Ex. C at 10, 17-18. PC-based clients have the capability to mix multiple audio streams, and all PC-based clients receive each other's audio in the form of a multiplexed stream. *See id.* at 17, 41. But when a PC-based client speaks (and becomes an "active speaker"), that client will receive a new multiplexed stream that does not include his own audio. *See id.* at 40-41. Cisco agrees that Webex "creates unique streams for each active speaker." Mot. at 6.

## III.    The Court already rejected Cisco's proposed limiting construction of "multiplexed stream."

In connection with the February 2022 *Markman* hearing, Cisco sought a construction of "multiplexed stream." *See* ECF No. 33. The Court already rejected Cisco's construction and instead applied the term's plain and ordinary meaning. *See* ECF No. 39. Cisco's motion for summary judgment is an attempt at another bite at the apple.

## IV.    Response to Cisco's "Undisputed" Facts

Paltalk also responds explicitly to each of Cisco's proposed "undisputed" facts:

Undisputed Fact 4.1: Paltalk disputes Cisco's interpretation of claims 1(e) and 1(f), as explained below. Paltalk has presented evidence that Webex infringes under the plain and ordinary meaning of "each" and "multiplexed stream." *See, e.g.* Ex. A, C.

Undisputed Fact 4.2: Paltalk disputes fact 4.2 and Cisco's interpretation of claims "each." Paltalk's understanding of each has been apparent since at least Paltalk's April 2022 Final Infringement Contentions. *See, e.g.* Ex. A.

Undisputed Fact 4.3: Paltalk disputes fact 4.3. The Court has already rejected Cisco's effort to construe the term "multiplexed stream" with unsupported limitations, and Cisco is attempting a re-do here. *See* ECF No. 39.

Undisputed Fact 4.4: Paltalk disputes fact 4.4. Dr. Schaefer opines on infringement of the asserted claims of the '858 Patent in light of unconstrued terms' plain and ordinary meaning, interpreted in light of the patent's text and the specification. *See, e.g., Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc).

## LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1361 (Fed. Cir. 2012) (citing Fed. R. Civ. P. 56).

## ARGUMENT

I.    **Irrespective of Cisco's concocted Markman issue, disputed fact issues relating to infringement preclude summary judgment.**

Paltalk has submitted voluminous admissible evidence that Cisco's Webex products infringe the asserted claims of the '858 Patent. Dr. Schaefer's 100-plus page expert report on infringement sets forth detailed expert opinions—supported by extensive citations to source code, technical documents, and other record evidence— establishing infringement. Cisco, of course, disagrees. This is a classic battle of the experts on the ultimate question of material fact—whether

Cisco Webex infringes the '858 Patent. Paltalk says yes. Cisco says no. Because a reasonable jury could consider the evidence presented by both parties and find in favor of Paltalk, Cisco's motion fails. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non- moving party.").

Unable to dispute that the accused Cisco Webex products infringe under the construed terms and the plain-and-ordinary meaning of un-construed terms, Cisco tries to reopen claim construction and construe the term "each" nine months after the parties' *Markman* hearing. Additional claim construction is unnecessary and would be inappropriate for at least three reasons:

*First*, neither side sought construction of the "each" during the *Markman* hearing. Since neither side presented the term for construction, the term must be given its plain and ordinary meaning. *See YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 404519, at *1 (W.D. Tex. Jan. 27, 2017). In fact, both parties *agree* that the term should be given its plain and ordinary meaning.[1] That means that the technical experts are free to advance infringement theories under the plan and ordinary meaning of the patent claims. Indeed, "When a court does not construe a term or orders that ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury." *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016). "***At trial, parties may "introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art***." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014). Indeed, the law is also clear that an expert "may explain [to the jury] how a POSITA would understand [a] term" so long

---

[1] The parties also agree that the plain and ordinary meaning applies because the patentee did not act as his own lexicographer by (1) clearly express an intent to redefine a term in the specification or (2) clearly disavow the scope of a claim in the specification. *See* Mot. at 14; *see also Thorner v. Sony Computer Ent. Am. LLC,* 669 F.3d at 1365-66 (Fed. Cir. 2012).

as he is "not offer[ing] a legal interpretation thereof." *Nichia Corp. v. Feit Elec. Co.*, 2022 WL 17222250, at *11 (C.D. Cal. Oct. 12, 2022). The fact that the experts disagree is not grounds for another *Markman* proceeding.

*Second*, Cisco has waived any right to a second claim construction by failing to timely raise this issue. *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.,* 340 F. Supp. 3d 934, 947–49 (N.D. Cal. 2018); *see also Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Paltalk's infringement opinions on claims 1(e) and the related claim 1(f) have been apparent since at least April 2022, when Paltalk served its Final Infringement Contentions in light of the Court's *Markman* ruling. *See* Ex. A at 24 ("This function multiplexes the packets from different clients; for the listeners, the same multiplexed stream is sent to each listener (e.g., 'multiplex[es] said packets of audio data received from each client on said active speakers list into a multiplexed stream'). *However, for endpoints on the active speaker list, their packets are omitted from the multiplexed stream*.").

Paltalk's infringement expert Dr. Schaefer advanced the identical theory in his September 29 expert report, *see* ex. C at 41, and Cisco's non-infringement expert Dean Willis's report expressly disagrees with Dr. Schaefer's conclusion on this point.  *See* Willis Rpt. ¶ 121 ("Nonetheless, to the extent that Paltalk attempts to argue that the claim does not require the same stream to be sent to each/all of the first subset of clients, I note that such a position is contrary to the plain language of the claim. A POSITA would understand the literal claim language to require the same stream to be sent to each/all of the first subset of clients.) Both Cisco and  Willis knew of Dr. Schaefer's infringement opinions at least as early as April 28, 2022, and Cisco's delay in raising "each" for construction should preclude Cisco from arguing it now. There is no basis to interfere with the fast-approaching trial date.

*Third*, no construction is needed because the plain and ordinary meaning of "each" is easily understood by the jury. The plain and ordinary meaning of "each" is the "meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history." *See Apple* 28 F.4th at 259. Dr. Schaefer has appropriately put forth admissible expert opinions on infringement in light of the plain and ordinary meaning of "each."

II.   **If the Court Decides to Construe the Term "Each," the Understanding Implied by Dr. Schaefer's Infringement Analysis Is Correct**

A.   **The Court should interpret "each's" plain and ordinary meaning in light of the specification.**

Consistent with decades of case law from the Federal Circuit, Paltalk and its expert applied the term "each" to their infringement analysis consistent with the patent's specification. "Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history." *Apple*, 28 F.4th at 259. "Claims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments*, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

B.   **The understanding of "each" implied by Paltalk's infringement analysis is the plain and ordinary meaning in light of the other claims of the '858 Patent and the specification.**

As Dr. Schaefer testified when probed by Cisco, Paltalk's understanding of how a POSITA would interpret "each" in claim 1 of the '858 Patent is informed by (1) the plain language of the '858 Patent where the word "each" appears; (2) the text of the other claims of the '858 Patent; and (3) the '858 Patent's specification. *See* Ex. D at 164:12-15 ("I have to interpret [claim 1] in light of the specification but also the dependent claims, and there's a dependent claim. It talks about modifying [a multiplexed stream] on a per-client basis."); *see also id.* at 159:17-20 ("In all cases …. for all these limitations, [I am] trying to interpret them in light of the specification.").

Dr. Schaefer also testified that "each" in claim 1 could mean "one or more"[2] in light of the specification and the text of the other patent claims. *See id.* at 158:17-159:8 ("Q: [Y]our interpretation of Claim 1.f, that limitation in Claim 1.f is that the term "each" means one or more; is that correct …. A: That's the way I have previously been interpreting it. It's been in light of the specification…. My interpretation was based off of dependent claims and how claims are supposed to be read in terms of infringement and so forth."). Dr. Schaefer's understanding of "each" as "one or more" in claims 1(e) and 1(f) is supported by other patent claims and the specification.

        *1.*    *Claim 1(e): multiplexing said packets of audio data received from **each** client on Said active Speakers list into **a** multiplexed Stream*

Claim 1(e), conjunction with the remainder of claim 1, teaches the formation of a multiplexed stream before that stream is sent to one or more clients. *See* '858 Pat., cl. 5 ("multiplexing said packets of audio data received from each client on said active speakers list into a multiplexed stream."). Under Cisco's construction, claim 1 would require *all* users to receiver their own audio. But under the patent's claim language, its specification, and the differentiation between the claims, that's impossible.

Claims 2 and 3 discuss *removal* of an active speaker's audio before the audio is sent to an active speaker, as part of a multiplexed stream or a combined packet. Claims 2 and 3 therefore involve sending less than all clients' audio as part of multiplexed streams or combined packets; claims 2 and 3 also depend on claim 1. Claim 1 therefore *must* accommodate the fact that an active speaker's audio might not be included in a multiplexed stream or one combined packet. And it does. The specification makes that clear; so does the plain claim language; and this is the crux of Dr. Schaefer's opinion. Claim 1 involves creating a multiplexed stream or combined packet with the audio from "each" client (i.e., "one or more" clients) before sending the stream or packet to

one or more clients. That reading is the plain-and-ordinary interpretation that makes claim 1 consistent with claims 2 and 3 as well as the specification and preferred embodiments.[3] The plain-and-ordinary language of the patent does not contemplate such a reading.

The patent specification supports Paltalk's view that claim 1(e) is infringed when data is received by from *one or more* active speakers and then multiplexed into multiplexed streams and then sending them to one or more clients in an appropriate "plurality." The patent specification clearly describes (a) the process of receiving data from one or more active speakers and (b) the multiplexing of audio data from active speakers into one or more multiplexed streams.

*First*, the patent specification describes the process by which the claimed invention receives audio data from one or more active speakers. A plurality of telephone-based clients can join an audio conference through a gateway 112 and switch 114. *Id.* at 3:66-4:4. From the switch 114, client audio travels to the MCU server and specifically the mixer 118, which contains both a packet mixer and a packet multiplexor 208. *Id.* at 4:36-38, FIG. 1. Then, the multiplexor 208 includes control flow 300, which determines whether any client belongs on the active speaker list. *See id.* at 5:7-8 ("In step 306, control flow 300 determines whether the active speaker list needs to be updated."). This completes the process for receiving audio as described in claims 1(a) and 1(e).

*Second*, audio data is received from one or more active speakers, the multiplexor multiplexes audio for clients in step 314. *See id.* at 5:44-46. But before sending audio data to clients, step 314 describes the alteration of that stream. *Id.* at 5:60-61. In step 314, prior to sending the multiplexed stream to active speaker A, the multiplexor 208 will subtract active speaker A's audio from the multiplexed stream. *See* cls 2,3.

---

[3] In other words, the alteration step in claim 2 creates additional multiplexed streams, one additional stream per active speaker that excludes that speaker's own audio. When read in view of claim 2, claim 1(e) teaches the formation of one or more multiplexed streams that contains audio from one or more (but not necessarily all) active speakers.

Where there is one or more active speakers, the patent explicitly says that a given active speaker's audio is not sent to that active speaker. "In step 314, control flow 300 multiplexes (by employing mix/mux 208) the audio stream data (stored or retriever 206) for all k active speakers. **In step 314, active speaker audio data for each and every active speaker is multiplexed.** However, as will be apparent to those skilled in the relevant art(s), if party j is an active speaker, step 314 will not include party j's own audio data in the decoded data." '858 Pat., 5:44-52. The patent says that audio data for *"each and every speaker"* is multiplexed but also says step 314 excludes some speaker's audio in  the very next sentence. Given the specification's description of both multiplexing, a POSITA would understand that step 314 and claim 1(e) does not require the audio of all speakers to be sent to all clients. *Se*e Ex. D at 149:13-150:11.

 This portion of the specification makes clear that, under claim 1 not all speakers' audio must be sent to all clients. An active speaker's audio may be excluded—a fact that necessitates Paltalk's understanding that "each" means "one or more." *See id.* at 5:57-61 ("However, as will be apparent to those skilled in the relevant art(s), if party j is an active speaker, Step 316 will not include party j's own audio data in the decoded data.").

Where there is one or more active speakers, the patent explicitly says that a given active speaker's audio is not sent to that active speaker. This portion of the specification makes clear that, under claim 1 not all speakers' audio must be sent to all clients. An active speaker's audio may be excluded—a fact that necessitates Paltalk's understanding that "each" means "one or more." *See id.* at 5:57-61 ("However, as will be apparent to those skilled in the relevant art(s), if party j is an active speaker, Step 316 will not include party j's own audio data in the decoded data.").

Rather than engaging with the specification to determine the meaning of claim terms, Cisco says that "each" cannot mean "one or more" based on the tense of a single word in claim 1(e) –

"client."  *See* Cisco Mot. at 14. Cisco says that the patentee could not have meant "one or more" because then the text of claim 1(e) would read "multiplexing said packets of audio data received from one or more client [sic] on said active speakers list into a multiplexed stream."

Cisco is wrong.[4] Cisco's hyper-literal, hyper-technical approach hinges on the absence of a plural "s," but there is no requirement that the definition of a claim term match the tense of surrounding claim language. Moreover, Cisco argues that "each" cannot mean "one or more" or "one" based on an assumption that where a patentee uses different words in a *claim,* the patentee intended for those words to have distinct meanings. *See* Cisco Mot. at 14 (citing *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). "One or more" does not appear in any claim language, so *CAE Screenplates* and its progeny don't apply to "one or more." And while "one" does appear in claims 2 and 3, "one" in claim 2 and 3 has a distinct meaning from "each as "one or more," and both appear in claim language. Given that both "one" and "one or more" have different meaning and appear in different claims of the '858 Patent, Paltalk's understanding of "each" gives different terms different meaning as required by *CAE Screenplates.*

The patent clearly contemplates the formation of multiple multiplexed streams where there is one or more active speakers. As shown on the proceeding page, claim 1 accommodates a scenario where an active speaker will receive a multiplexed stream (or combined packet) containing audio from all active speakers, *minus his own audio. See* '858 Pat., 5:57-61. So where there is one or more active speakers, claim 1(e) multiplexes data received from *one or more* active

---

[4] Notably, Cisco's proposed construction has this identical (purported) issue. If "all" was substituted for "each" in claim 1(e), the resulting claim would suffer from the same grammar defect that Cisco raises on page 14 of its motion. The resulting claim would read "multiplexing said packets of audio data received from all client [sic] on said active speakers list into a multiplexed stream."

speakers into *one or more* multiplexed streams, which are sent to *one or more* clients. Cisco's contrary proposal—a limiting construction—would render the patent internally inconsistent and put the claims at odd with the specification and preferred embodiments.

Just as problematically, Cisco's reading leads to an absurd reading where the preferred embodiment (which involves sending streams or packets with less than "all" clients' audio) would be outside the scope of the claimed invention. The law strongly disfavors that result. *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996), *overruled on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) ("Indeed, a claim interpretation that would exclude the inventor's device is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support, whereas in this case it received none, whether from the specification, the prosecution history, or the prior art."). Cisco's interpretation

      2.     *Claim 1(f): sending said multiplexed stream to **each** of **said** first subset of the plurality of clients*

A POSITA would also look to the text of the surrounding claims and the specification to determine the plain and ordinary meaning of claim 1(f). Claim 1(f) refers to the multiplexed stream (or streams) formed in claim 1(e).. Claim 1(f) thus teaches the sending of one or more multiplexed streams to one or more clients capable of mixing.

The specification supports this reading of claim 1(f). The specification says that audio from active speakers is multiplexed in step 314. *See id.* at 5:44-46. In step 322, control flow 300 sends the multiple multiplexed streams to various clients. If a client is not an active speaker, the client will receive a multiplexed stream with the audio of all active speakers. If a client is an active speaker, the client will receive a multiplexed stream with the audio of all the *other* active speakers. *See id.* at 5:66-6:4. This sending process loops and repeats until the conference ends. *See id.* at 6:4-

8. Following from the patent's description of claim 1(e), the patent contemplates the sending of multiple multiplexed streams where there is one or more active speakers. So, where there is one or more active speakers, claim 1(f) sends one or more multiplexed stream to one or more clients who are capable of mixing.

### 3. *Paltalk's position on plain and ordinary meaning has been consistent.*

Contrary to Cisco's argument Paltalk's position on plain and ordinary meaning has been consistent since the parties' February Markman hearing. At all times, Paltalk has maintained that the plain and ordinary meaning of a term must be determined in view of the claim language, specification, and prosecution history. *See* Paltalk Resp. at 6, ECF No. 26.

Paltalk is not importing any limitations from the specification into the patent claims. Only Cisco is trying to advance a limiting construction. As Dr. Schaefer testified, the patent specification can provide a *broader* meaning of claim terms and adopting that broader meaning does not run afoul of the law of claim construction. *See* Ex. D at 162:5-10 ("I have to be careful not to try and read a limitation from the specification into the claims themselves. So if I interpreted 'each' more broadly, as I did previously to fit the spec[ification], that's still compatible with the specification.").

Cisco's assertion that "one or more" is a limitation from the specification is incorrect. The opposite is true. Under a reading whereby "each" means "one or more," claim 1 is consistent with claims 2 and 3 and the specification. The specification supports a reading of "each" that means one or any number greater than one, depending on the number of active speakers attending a conference call. *See* '858 Pat., 5:14-19 (describing the number of active participants that can join a conference call). In this way, the specification allows for a broader reading of the claims than Cisco's proposed limitation of "each" as necessarily "all." Paltalk's understanding of "each" is consistent with the specification but not limited by it.

Cisco's argument that "one or more" is not the plain and ordinary meaning of "each" is unavailing. The parties' dispute about the meaning of Claims 1(e) and 1(f) reduces to a central question: does the patent disclose the formation of multiple multiplexed streams? The answer is yes. Where there is one or more active speaker participating in a conference, there are one or more multiplexed streams formed that are sent to one or more participants.

## III.   Cisco's Construction of "Each" Conflicts with Both Intrinsic and Extrinsic Evidence.

### A.   Cisco's untimely construction of "each" contravenes settled claim construction law by contradicting or completely ignoring the '858 Patent's specification.

The Court should not adopt Cisco's proposed construction of "each" because it is not supported by intrinsic evidence, extrinsic evidence, or precedent. Cisco's proposed construction also creates tensions between claims 1, 2, and 3 that the specification avoids.

At a minimum, claim construction requires looking at the claim language, patent specification, and prosecution history. Instead of looking at the appropriate intrinsic sources, Cisco asks this Court to defy decades of claim construction precedent and construe the term "each" in claim 1 in a vacuum, devoid of critical context provided by both the patent's claims as a whole and the specification. Cisco's deposition of Paltalk's infringement expert confirmed that Cisco is interpreting claim language in isolation and ignoring relevant parts of the patent.

> *Question by Cisco's lawyer:* Okay. And so you're saying that the literal language of the claim requires this—requires the audio conference to receive an audio packet from each of the plurality of clients, but you're interpreting that claim language differently based on the specification?

> *Answer by Dr. Schaefer:* I didn't necessarily say that. You're interpreting "each" as "every" in this case. I'm interpreting it in terms of how the patent actually talks about the receiving. So what the patent is talking about here, the way I'm interpreting it, the way I'm reading the specification is it's got—it has the ability to receive, and it's asking for that and it's trying to receive over a certain time period in this example.[5]

---

[5] Ex. D at 93:4-18.

Cisco's "blinders on" approach to claim construction has been expressly rejected by the Federal Circuit. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 ("We cannot look at the ordinary meaning of the term … in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") (quoting *DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001)). If the Court decides to construe "each," it should look to the intrinsic evidence of the patent.

                  1.        *"Each" as "all" is not supported by any intrinsic evidence.*

In 20 pages of briefing, Cisco fails to provide any intrinsic support for its construction of "each" as "all." *See* Willis Rpt. at 121.  Instead of looking to the specification to determine the meaning of "each," Cisco asks this Court to ignore decades of claim construction precedent and interpret claim language based on a layperson's usage of the term "each." *See* Cisco Mot. at 12 ("[A]ny lay person can tell you that "each" does not mean 'one or more.'"). Cisco attempts to skirt the law of claim construction because neither the text of the patent claims nor the specification supports Cisco's proposed construction.

First, the patent claims read as a whole refute Cisco's construction. Dependent claims 2 and 3 involve more than multiplexed streams and combined packets because they involve sending streams and packets to active speakers where an active speaker's own audio is removed. Thus, claim 1 must accommodate a scenario where a packet does not include "all" audio from all clients. Claim 1 is consistent with claims 2 and 3, and the specification, under Paltalk's reading whereby "one or more" streams or packets are sent to one or more clients.

Second, the patent specification refutes Cisco's construction of "each" as "all." As explained above, the specification describes the process for creating multiple multiplexed streams when there is at least one active speaker. *See* '858 Pat., at 5:44-46, 5:60-61. Given the formation of multiple streams, the claimed invention does not multiplex audio data received from *all* clients

into *a single multiplexed stream.* To adopt Cisco's construction of "each" as "all," a POSITA would have to (1) ignore the description of the formation of multiplexed streams in columns 5 and 6 of the '858 Patent or (2) read the claim language so narrowly that even the preferred embodiment falls outside the scope of the claim language. Both approaches are expressly disfavored. *See Modine* 75 F.3d at 1550 ("Indeed, a claim interpretation that would exclude the inventor's device is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support, whereas in this case it received none, whether from the specification, the prosecution history, or the prior art.").

Because Cisco's construction of "each" either contravenes or ignores the patent's specification, Cisco's construction of "each" as "all" should be rejected.

### 2. *"Each" as "all" is not supported by any extrinsic evidence beyond Cisco's own expert*

The sole source of support for Cisco's construction is extrinsic evidence in the form of an expert opinion and inapposite caselaw construing "each" in the context of dissimilar patents. Cisco's non-infringement report disclosed that Cisco's construction of "each" is "all." *See* Willis Rpt. at 121. Cisco's reliance on Willis's opinion is incorrect for at least two reasons.

First, Willis's opinion is extrinsic evidence, and the Court need not consider any extrinsic evidence here. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics*, 90 F.3d at 1583. Courts should only consider extrinsic evidence in the limited circumstances where a full review of the intrinsic evidence does not resolve the meaning of a claim term. *See id.* Here, the meaning of "each" can be fully determined by reference to the patent's specification and specifically the specification's discussion of the formation and sending of multiple multiplexed streams in columns 5 & 6 of the '858 Patent.

Second, Willis's unsupported conclusion that "each" means "all" or "every" contradicts the plain and ordinary meaning, in light of the intrinsic evidence, of "each" as "one or more." Where expert testimony on the meaning of a claim conflicts with the patent specification and file history, that evidence should be given no weight. *See id.* at 1584. Willis's expert report and deposition testimony clearly contradict the intrinsic evidence and should not be considered.

        3.     *Case law construing "each" across unique patents in dissimimlar fields of art are irrelevant.*

Cisco's reliance on caselaw is similarly unavailing. Other cases that construe the term "each" has no bearing on the meaning of the "each" here because the patent language and patented technology are different. *See Medrad,* 401 F.3d at 1318 ("A particular term used in one patent need not have the same meaning when used in an entirely separate patent, particularly one involving different technology. In fact, there are many situations in which the interpretations will necessarily diverge."). "[C]laim terms are typically given their ordinary and accustomed meaning as understood by one of ordinary skill in the pertinent art, and the generally understood meaning of particular terms may vary from art to art." *Id.*

Cisco's cases are not only irrelevant. They also do not support Cisco's conclusion that each must mean "all" anytime it appears in any part of any patent. *See* Mot. at 16."[6] For example, in *Shopify v. Express Mobile, Inc.*, the district court determined that "each" meant "all" in the following claim: "a database with a multidimensional array comprising the objects that comprise the web site including data defining, for ***each*** object, the object style, an object number, and an indication of the web page that ***each*** object is part of." 2021 WL 4288113, *11-12 (D. Del. Sept. 21, 2021). The district court's conclusion in *Shopify* was supported by both the plain text and the

---

[6] Cisco cites *Genlyte Thomas Group LLC v. Luytron Electronics, Co. Inc.* and says the court construed "each" as "every" or "every one." *See* Mot. at 17. However, neither "every" nor "every one" appear in the order cited by Cisco.

patent's specification. *See id.* at *12 ("The claim language shows that each and every object has the defining data including an 'object number… The specification too supports finding that the claim to a "number" must be a number rather than an identifier").

*Shopify* is distinguishable because Cisco's construction of "each" here is not supported by intrinsic evidence like the text of the patent claims or the specification. *See* § III (A)(1), *supra*. *T.M. Patents, L.P. v Cisco Systems Inc.,* is distinguishable for similar reasons. In *T.M. Patents*, the court construed "each" as "all" where there was no evidence of an alternative meaning in the patent, a related case had concluded that "each" meant all, the prosecution history supported the construction because the patentee had disclaimed all other meanings during prosecution. *See* 982 F.Supp.2d 93, 101-02. Here, there are no related cases, or evidence that the patentee construed "each" as "all" in either the patent itself or the patent prosecution history.

The same is true for *Highmark, Inc. v. Allcare Health Management System* and *ResQNet.com, Inc. v. Lansa, Inc.*, In *Highmark Inc.,* the court construed "each" as "all" because there was no intrinsic evidence supporting a different construction. 2006 WL 6234624, *34 (N.D. Tex. Dec. 20, 2006). In *ResQNet.com*, the court construed "each" as "all" based on strong evidence supporting that construction in the specification. *See* 346 F.3d 1374, 1379 (Fed. Cir. 2003) ("[T]he specification confirms the 'all fields' requirement in the '961 claim.").

*Lucent Technologies, Inc. v. Gateway, Inc.*, is also unpersuasive. In *Lucent,* the court rejected using the specification to interpret claim language where that language was unambiguous. *See* 525 F.3d 1200, 1216 (Fed. Cir. 2008). The court found that the plain text of the challenged claim in *Lucent*, coupled with the claim's exhaustive list of steps 1-5, was unambiguous. *Id.* The language at issue in *Lucent* is materially different from claim "each client on said active speakers list" or "each of said first subset of the plurality of clients," as neither claim benefits from a clear

meaning aided by a definite list. The language of claims 1(e) and 1(f) do not unambiguously define "each" such that this Court should eschew all reference to the specification.

Other cases cited by Cisco are equally inapplicable. In *TimeBase Party Ltd. v. The Thomson Corp.*, the district court relied on extrinsic evidence to conclude that "each" meant "everyone considered separately" where the patent specification provided no insight into the meaning of "each." Other cases cite no support for the conclusion that "each" means "every" beyond other unrelated cases, an approach disavowed by the Federal Circuit in *Medrad. See Freedom Wireless, Inc. v. Alltel Corp.*, 2008 WL 4647270, at *12 (citing two unrelated cases in support of its construction of "each").

Cisco's construction of "each" is not supported by caselaw construing "each" in dissimilar patents. The cases cited by Cisco exemplify the futility of reliance on the case law because each case reaches a construction of "each" based on a myriad of factors--- the presence of information in a specification, the absence of information in a specification, the reliance on case law in the first place. None of these cases provide any support for Cisco's limiting construction of "each," leaving Cisco's construction wholly unsupported by a shred of evidence or precedent. Cisco's construction should be rejected.

## CONCLUSION

The Court should deny Cisco's motion for summary judgment.

Dated: December 15, 2022

Respectfully submitted,

By: */s/ Max L. Tribble, Jr.*
Max L. Tribble, Jr.
State Bar No. 2021395
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
mtribble@susmangodfrey.com

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF PALTALK HOLDINGS, INC.**

OF COUNSEL:

Ryan Caughey (*admitted pro hac vice*)
State Bar No. 24080827
Bryce T. Barcelo
State Bar No. 24092081
Amber B. Magee *(admitted pro hac vice)*
State Bar No. 24121572
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
bbarcelo@susmangodfrey.com
amagee@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was emailed to all counsel of record on the 15th day of December 2022.

*/s/ Amber B. Magee*
Amber B. Magee