**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**WACO DIVISION**

|  |  |
|---|---|
| **PALTALK HOLDINGS, INC.,** | |
| **Plaintiff,** | |
| | **No. 6:21-CV-00757-ADA** |
| **v.** | **JURY TRIAL DEMANDED** |
| | **FILED UNDER SEAL** |
| **CISCO SYSTEMS, INC.,** | |
| **Defendant.** | |

**REPLY IN SUPPORT OF DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO
EXCLUDE PORTIONS OF EXPERT TESTIMONY BY
MR. WALTER BRATIC AND DR. SCOTT SCHAEFER**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ........................................................................................ 1

II.     ARGUMENT .............................................................................................. 1

        A.      Bratic's July 2015 Hypothetical Negotiation Date Must Be Excluded. ............. 1

                1.      This is not an issue for cross-examination because Bratic relies on
                        no evidence of a July 2015 first-infringement date. .............................. 1

                2.      Kindler's analysis is irrelevant to the admissibility of Bratic's date. ..... 2

                3.      Bratic cannot cure his unsupported hypothetical negotiation date. ........ 4

        B.      Bratic's Running Royalty Analysis Should Be Excluded.................................. 5

                1.      Bratic's and Schaefer's apportionment is inadmissible because it
                        has no quantitative support. ................................................................ 5

                2.      Bratic's split of alleged incremental benefit makes no economic
                        sense and should be excluded. .............................................................. 7

                3.      Bratic's "reasonableness check" would not be helpful to a jury
                        because it depends on the conclusion it is checking. ............................ 8

                4.      Bratic should be barred from offering any further opinions about
                        licenses he deems non-comparable. ...................................................... 9

        C.      Paltalk should not be allowed cure Bratic's reasonable-royalty calculations
                with supplemental reports. ...................................................................... 9

III.    CONCLUSION............................................................................................. 10

        CERTIFICATE OF SERVICE ............................................................................ 12

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Avance v. Kerr–McGee Chem.*
LLC, 2006 WL 3484246 (E.D. Tex. 2006)................................................................10

*Cassidian Commc'ns, Inc. v. Microdata GIS*,
No. 2:12-cv-00162-JRG, 2013 WL 12148459 (E.D. Tex. Dec. 10, 2013)..............................4

*Cleave v. Renal Care Grp., Inc.*,
No. CIV.A. 2:04CV161-P-A, 2005 WL 1629750 (N.D. Miss. July 11, 2005) .....................10

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022)...................4, 5, 10

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
No. 6:11-CV-00201-JRG, 2017 WL 1079441 (E.D. Tex. Mar. 22, 2017)..............................6

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
No. 6:11-CV-00201-JRG, 2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) ............................3, 6

*Finalrod IP, LLC v. John Crane, Inc.*,
No. 7:15-CV-00097-ADA, 2019 WL 13074602 (W.D. Tex. May 28, 2019) ........................10

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)........................................................................................5

*Nationwide Agribusiness Ins. Co. v. Varco Pruden Buildings, Inc.*,
No. 5:19-CV-083-M-BQ, 2020 WL 1778069 (N.D. Tex. Mar. 3, 2020)..................................7

*NetFuel, Inc. v. Cisco Sys. Inc.*,
No. 5:18-CV-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ............................10

*PerdiemCo, LLC v. Industrack LLC*,
No. 2:15-CV-727-JRG-RSP, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) ..........................6

*Robinson v. Ethicon Inc.*,
No. CV H-20-3760, 2021 WL 4034131 ...............................................................10

*RSA Protective Techs., LLC v. Delta Sci. Corp.*,
No. LA CV19-06024, 2021 WL 4978462 (C.D. Cal. Oct. 20, 2021)......................................5

*Salgado v. Gen. Motors Corp.*,
150 F.3d 735 (7th Cir. 1998) ................................................................................10

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    No. 2:18-CV-00366, 2019 WL 7041725 (E.D. Tex. Dec. 20, 2019) ........................................9

*Via Vadis, LLC v. Amazon.com, Inc.*,
    No. 1:14-CV-00813-LY, 2022 WL 23351 (W.D. Tex. Jan. 3, 2022).......................................2

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)...........................................................................................3, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ....................................................................................................................5

## I.    INTRODUCTION

Cisco's motion does not question the factual bases of Bratic's opinions, as Paltalk suggests. The problem is that Bratic **has no** factual foundation for his opinions. With no tie to the facts of the case, his opinions are wholly inadmissible—cross-examination will not help the jury, as there will be no facts for them to assess. The same is true for Schaefer's related opinions.

In particular, Bratic's use of a 2015 hypothetical negotiation date has no factual basis, as neither expert relies on any documented evidence or testimony as support. His apportionment analyses use percentages that are wholly unsupported by data. And his use of Cisco's research-and-development-to-operating-expenses ratio contravenes basic economic principles. To make matters worse, his reliance on licenses produced by Cisco is self-contradictory: he says they are not economically comparable, yet he uses one as his sole evidence to justify a running-royalty structure—even though that license did not use a running-royalty structure.

These are all issues suitable for resolution via *Daubert*: without a factual basis, there is nothing for the jury to consider or for the parties to cross-examine. And Paltalk should not be awarded a supplemental report mulligan to attempt to cure these fundamental deficiencies.

## II.   ARGUMENT

### A.    Bratic's July 2015 Hypothetical Negotiation Date Must Be Excluded.

#### 1.    This is not an issue for cross-examination because Bratic relies on no evidence of a July 2015 first-infringement date.

Bratic's assumption that the hypothetical negotiation would have occurred on July 23, 2015 is based entirely on one "interview with Dr. Schaefer." Bratic cites no evidence tying that assumption to actual facts of the case. ECF No. 55-1 ("Bratic Report") ¶ 36. Paltalk argues that Cisco should simply cross-examine him because he "interviewed," "cited that interview," "testified about content of the interview," and "relied on the interview" to support his conclusion

that the hypothetical negotiation occurred in 2015. Resp. at 7.  But Schaefer did not provide any opinions or testimony about the date of first infringement, so the interview is not tied to any facts in the record. ECF No. 78-5 ("Schaefer Dep.") Tr. 74:8–11 ("Q: Do you have an opinion as to when WebEx first infringed the '858 patent or not? . . . A: I don't"); (ECF No. 78-5 120:23–25) ("Q: Did you talk to Mr. Braddock [*sic*] about when you believed Cisco began infringing? A: I don't recall doing that."). Neither Schaefer nor Bratic (nor Paltalk in its Opposition) has cited any dated document or source code as support for this date, and an off-the-record interview should not be allowed as the sole basis for such an important premise. That is especially so when Schaefer does not remember discussing any date with Bratic, even after he recalled that they had spoken, and conceded in deposition that he did not "have a good date for the source code." ECF No. 78-5 74:15–75:11; 79:10–20; 80:12–15; 113:11–24. As Paltalk itself recognizes, admissibility of expert testimony must contain reasoning or methodology that is sufficiently "tied to the facts of the case." *See Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-CV-00813-LY, 2022 WL 23351, at *2 (W.D. Tex. Jan. 3, 2022) (granting *Daubert* motion to exclude expert's improper reasonable-royalty analysis) (citation omitted). There simply are no facts whatsoever to support Bratic's assumption of a July 2015 first-infringement and hypothetical-negotiation date, and no amount of cross examination about the interview can create such facts.

### 2.    Kindler's analysis is irrelevant to the admissibility of Bratic's date.

Paltalk's transparent attempt to create a dispute of fact between the experts suffers from a material flaw: the only facts about any hypothetical negotiation that Paltalk includes are those that **Cisco's damages expert** relies on to support **her** hypothetical negotiation date. Resp. at 7–8. But Paltalk has not challenged the admissibility of Kindler's testimony because she relies on numerous sources to support her date. ECF No. 74-4 ("Kindler Report") ¶¶ 51-53. The jury can, and will, assess Kindler's analysis, and Paltalk will have the opportunity to cross-examine her about it at

trial.[1] This is **not** true of Bratic's date—there is no factual evidence on which to cross-examine.

The core problem is that Bratic and Schaefer did not analyze the appropriate factors to determine the date of the hypothetical negotiation. Cisco's Opening Br. at 13. The law is clear that "[t]he date of first infringement begins when both the patent has issued and accused products have been sold." *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322555, at *7 (E.D. Tex. Apr. 6, 2017) (internal citation omitted). To justify its lack of factual support for a 2015 date, Paltalk now claims that the accused products could not have been sold and infringement could not have occurred before 2007, when Cisco acquired Webex.[2] Resp. at 9. In a surprising about-face, Paltalk says "it has consistently disclosed that it accuses only Cisco products of infringing the Patent." That assertion is beside the point because Paltalk's experts do not address it in their reports or testimony, and Kindler's testimony is unchallenged—and it is false to boot. Paltalk named Webex Communications, Inc. and Cisco Webex, LLC as co-defendants in its original Complaint. ECF No. 1. Paltalk agreed to dismiss these Webex entities after Cisco agreed that it would "not assert that liability is different or escaped or a judgment may be avoided because only Cisco is a defendant in this case, and not the Webex entities." *See* ECF No. 22. Paltalk's assertion that it has only accused **Cisco** products is a thinly veiled attempt to dispute

---

[1] Kindler cites several documents and testimony that support her conclusion that the accused Webex products were sold as early as 2001 and that they could host both PSTN and VoIP users in the same audio conference before issuance of the '858 Patent in 2004. Cisco Opening Br. at 14; No. 74-4 ¶ 182. Contrary to Paltalk's description, the cited WebEx SEC statement stated that it "supports [PSTN] or [VoIP] **within browser-based interactions**," meaning that both PSTN and VoIP were supported in the same conference. ECF No. 56-3 (WebEx Communications, Inc. SEC Form 10-K for the fiscal year ended December 31, 2001) at 3 (emphasis added)).

[2] Notably, Paltalk does not assert 2007 as the date of the hypothetical negotiation, but instead chooses eight years later. Cisco continued selling the Webex product after acquiring Webex in 2007. *See* Edlin Declaration in Support of Reply, Ex. 21 ("WebEx's technology and services portfolio complement Cisco's leadership in the Unified Communications and collaboration market …. Cisco plans to preserve this business model going forward.").

***Kindler's factual support*** that the alleged Cisco and Webex products embodying the accused functionality were available and sold earlier than 2015. But fashioning a dispute over Kindler's analysis does not change the fact that Bratic failed to analyze the relevant factors to determine the date of the hypothetical negotiation and has no support for his assumption.

### 3.    Bratic cannot cure his unsupported hypothetical negotiation date.

Paltalk argues that Bratic should be allowed to cure his unfounded opinion, but the cases it relies on would not have allowed a cure in these circumstances. In *Cassidian,* the court allowed the expert to supplement his report and change the hypothetical date to two years earlier because "the prejudicial effect [wa]s minimal" as the expert "largely incorporated its original damages analysis." *Cassidian Commc'ns, Inc. v. Microdata GIS*, No. 2:12-cv-00162-JRG, 2013 WL 12148459, at \*2 (E.D. Tex. Dec. 10, 2013). The court noted that allowing supplementation "normally would present substantial prejudice to the opposing party." *Id.* Here, despite Bratic's unsupported assertion that an earlier date would not change his opinion about the outcome of the negotiation (Ex. 55-1 ¶ 36 n.72), an 11-year change of date would certainly necessitate a different analysis using new assumptions and factors that Bratic previously failed to consider. Bratic's unsupported date is too problematic and essential to the analysis, and a re-do would substantially prejudice Cisco.

Furthermore, allowing Paltalk to supplement and change Bratic's analysis would contradict his current opinion that it would not change, and this Court has found supplemental analysis of a changed hypothetical negotiation date prejudicial and inadmissible when the information relied on was previously available to the expert. *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at \*8 (W.D. Tex. Feb. 24, 2022). Paltalk claims that *Daedalus* is inapposite because it "involved an expert who put the wrong parties at the table during the

-4-

hypothetical negotiation and served an untimely supplemental opinion." Resp. at 10. But those would be the issues here if Paltalk were to supplement with additional analysis of 2004 and different parties at the table. In *Daedalus,* this Court reasoned "[w]hen an expert's supplemental report 'effectively replace[s] the earlier report,' it is not a supplemental report within the meaning of Rule 26(e) of the Federal Rules of Civil Procedure" and that the expert is "instead taking a second crack at his report utilizing information available at the time of his initial disclosure." *Daedalus*, 2022 WL 831619, at *4–7 (citations omitted). Bratic should not be allowed a second crack when all information was available at the time he filed his report, and when Cisco would be prejudiced as a result. *See RSA Protective Techs., LLC v. Delta Sci. Corp.*, No. LA CV19-06024, 2021 WL 4978462, at *5 (C.D. Cal. Oct. 20, 2021) (denying a supplemental report to cure the incorrect hypothetical negation date that was improperly set exactly 6 years before the plaintiff filed suit because it would be prejudicial and "not a harmless error" even when it was only a one-year difference.). Here, an 11-year difference is not a harmless error. Bratic's new analysis would be predicated on inputs he did not originally address and different assumptions, and he should not be allowed to supplement using information that was available to him all along.

     **B.**    **Bratic's Running Royalty Analysis Should Be Excluded.**

         **1.**    **Bratic's and Schaefer's apportionment is inadmissible because it has no quantitative support.**

Expert testimony relying only on "vague qualitative notions" is inadmissible. *Laser-Dynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014) ("[W]here an expert considers relevant material but fails to provide an opinion explaining how that material leads to his conclusion, [a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") (internal quotation omitted). Paltalk fails to address Schaefer's lack of quantitative

support for the particular functionalities he selects, the technical weights he assigns, and his double-counting of features that Cisco presents in its motion. Cisco's Opening Br. at 18–20; Resp. at 12. Paltalk does claim that Bratic "relies on Dr. Schaefer's technical expertise" (Resp. at 13), but Schaefer uses only purely qualitative notions to select his percentages, which appear to be plucked from thin air.[3] Cisco's Opening Br. at 17–23.

Paltalk claims that Schaefer considered *all* the accused products' functionalities based on his "comprehensive review of Webex source code and technical documentation" when determining his attributions, but he did not explain in his report or in deposition what technologies he considered or how he factored them to determine the value of the patented contribution. Resp. at 15; ECF No. 55-2 ("Schaefer Report") at ¶¶ 220–31. For example, Schaefer discussed no other technologies of the accused product that contribute to his "Hybrid Audio" or his "Global Access" categories and provided no explanation about whether or how he factored them. ECF No. 55-2 ¶¶ 220, 222. That analysis cannot be reliable. Paltalk's non-response with any detail about his analysis only underscores that Schaefer's percentages are purely qualitative and unsupported. *See* Cisco's Opening Br. at 21–22. Paltalk cites to *Eidos* to for its argument that whether an expert considers alternatives is a matter for cross-examination. But *Eidos* did not allow an expert to entirely ignore functionalities of the *accused* product and present his analysis, without explanation, as "comprehensive"—it dealt with whether an expert compared the accused process with other alternative, interchangeable processes. *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1079441, at *4 (E.D. Tex. Mar. 22, 2017). Bratic filled none of

---

[3] Bratic's singular reliance on Schaefer is categorically different from the expert in *PerdiemCo*, whose "apportionment analysis entail[ed] a weighing of three different approaches to calculating a reasonable royalty," including two quantitative approaches and a qualitative approach. *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-CV-727-JRG-RSP, 2016 WL 6611488, at *2 (E.D. Tex. Nov. 9, 2016).

Schaefer's analytical gaps. Instead, he relied solely on Schaefer's unsupported figures and provided no analysis of his own. ECF No. 55-1 ¶¶ 134-35, 166. And Bratic admitted that he has no idea how Schaefer came up with these figures.[4]

       **2.**    **Bratic's split of alleged incremental benefit makes no economic sense and should be excluded.**

Bratic's split of the alleged incremental benefit is not only unsupported as a ratio specific to Webex products (as opposed to Cisco's overall business), but it is flawed and nonsensical because it equates a ratio of *Cisco's* research and development expenses to total operating expenses with *Paltalk's* contributions. Cisco's Opening Br. at 23–24. This is not a problem with "the minutiae of Bratic's approach," as Paltalk suggests, but with his fundamentally irrational methodology. "Scientific testimony is reliable only if the reasoning or methodology underlying the testimony is scientifically valid, meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known." *Nationwide Agribusiness Ins. Co. v. Varco Pruden Buildings, Inc.*, No. 5:19-CV-083-M-BQ, 2020 WL 1778069, at *7 (N.D. Tex. Mar. 3, 2020) (internal quotation marks omitted). While Paltalk claims that Bratic's split-of-benefits opinion is "grounded in the specifics of the case," Bratic provides no support that the facts he chose (the ratio he uses) are relevant to his analysis. Bratic's ratio is not conceptually sound: no direct relationship exists between Cisco's R&D investment and Paltalk's share of benefit. Bratic admitted that under this model, if Cisco had not invested in R&D (such as in a pure inventor/promoter relationship), then Paltalk's damages would be zero. *See* Cisco's Opening Br. at 24; ECF No. 55-3 135:12–25. Bratic should not be allowed to select a ratio that

---

[4] Ex. 22 106:4–9 ("Q: [D]id Dr. Schaefer provide you with the underlying analysis that he did to obtain each of the percentages that are listed in the chart on top of page 49? A: Not at the time I interviewed him, not that I recall.").

provides his desired outcome with no basis when his only description of why he used it makes no logical sense.

### 3. Bratic's "reasonableness check" would not be helpful to a jury because it depends on the conclusion it is checking.

Cisco's motion explained that Bratic's "reasonableness check" is circular because Schaefer uses his 40% Webex Audio apportionment conclusion in his "alternative apportionment" to Webex overall, which Bratic then uses as a "reasonableness check" on the original 40% conclusion. Paltalk now claims that Bratic's "reasonableness check" was intended only as a check on Cisco's internal attribution of overall Webex revenues to Webex Audio. But Bratic admits that he uses Schaefer's "alternative apportionment" as a check on his ultimate conclusion and does not perform the comparison that Paltalk claims it was intended for.

First, Bratic's report says he "performed an alternative analysis to assess the reasonableness *of my reasonable royalty conclusion identified above*." ECF No. 55-1 ¶ 164 (emphasis added). He confirms that he used the alternative analysis as a check on his primary analysis and compares the final numbers. *Id.* Second, despite the many questionable inputs to Schaefer's apportionment that warrant a "reasonableness check" (e.g., Schaefer's arbitrary percentages), Paltalk now claims that Bratic needed a check on the financial-attribution data that Cisco keeps in the regular course of business. Ex. 23 ("Boyles Dep. Tr.") 112:1–113:12; ECF No. 076-3; ECF No. 076-04. But even assuming Bratic's intention was to check Cisco's financials, he does not compare Cisco's internal attribution of ▇▇▇▇ for Webex Audio with the 45% of all Webex functionality that Schaefer arbitrarily allocated to Webex Audio, which would be the apples-to-apples comparison that Paltalk claims Bratic was doing. Had he performed that calculation, he would have seen that Cisco's attribution to Webex Audio is actually ▇▇▇ of total Webex revenues (ECF No. 74-4 Ex. 1), so Schaefer's 45% allocation to Webex Audio is inflated. Bratic's reasonableness check is unhelpful

and likely to confuse the jury because it relies on the very conclusion he sought to confirm. Cisco's Opening Br. at 24–26. This analysis should be excluded. "Irrelevant evidence is not admissible. Further, even relevant evidence may be excluded if there is a high risk of confusing or misleading the jury." *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366, 2019 WL 7041725, at *2 (E.D. Tex. Dec. 20, 2019) (internal citations omitted).

      **4.**    **Bratic should be barred from offering any further opinions about licenses he deems non-comparable.**

Bratic himself concludes that no Cisco license is technically or economically comparable to the outcome of the hypothetical negotiation. There is no reason for him to offer any further opinions on these licenses, because Paltalk contends these licenses "are not relevant to the hypothetical negotiation." Resp. at 21.

The same is true of the NCR Agreement, which Bratic improperly uses to justify selection of a running-royalty structure. ECF No. 55-1 ¶ 89. Contrary to Paltalk's assertion, Bratic does not merely "mention" the NCR Agreement in passing. Resp. at 22. He speculates that "Webex Communications was aware that one of NCR Corporation's preferred royalty structures involved royalties paid on a licensee's revenues" and concludes that a running royalty factors these considerations. ECF No. 55-1 ¶ 145. Bratic cites the NCR Agreement as his only exemplar for a running-royalty structure, ***but the NCR Agreement did not use a running-royalty structure.*** Cisco's Opening Br. at 27–28. Use of this non-comparable agreement is unreliable and would not assist the jury. Because Bratic cites no other facts to support a running royalty, the Court should exclude these opinions.

    **C.**    **Paltalk should not be allowed cure Bratic's reasonable-royalty calculations with supplemental reports.**

Paltalk's experts should not be allowed to submit supplemental reports to cure Bratic's unsupported conclusions. In addition to the reasons discussed above concerning the hypothetical-

negotiation-date supplementation (*see supra,* Section II.A.3), Cisco would be greatly prejudiced if Bratic were allowed to re-do his apportionment analysis at this late date. It would require substantial work and expense to analyze the new report, re-depose Bratic, draft another rebuttal report, and defend Kindler at another deposition. In any event, Bratic cannot timely, and without prejudicing Cisco, cure the deficiencies in his royalty analysis because each of his unsupported calculations affects the reliability of the entire damages number. It would require an entire new analysis. *See NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1274985, at *15 (N.D. Cal. Mar. 17, 2020); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-CV-00097-ADA, 2019 WL 13074602, at *1 (W.D. Tex. May 28, 2019) (finding supplementation prejudicial; Defendants would have to address "different analyses that resulted in different damages calculations.").

Cisco's motion cited multiple cases denying supplementation, in addition to the "one case" Paltalk references where the court excluded Bratic's apportionment analysis. Cisco's Opening Br. at 28–29; *NetFuel, Inc.*, 2020 WL 1450570, at *2. *Daedalus,* which denied supplementation, cited a bevy of Fifth Circuit cases doing the same. Cisco's Opening Br. at 16–17 ("collecting cases").[5] Here, the prejudice Cisco would face to address a new apportionment analysis with barely two months remaining before trial should preclude supplementation. In any event, curing by supplementation "is not [a] vehicle[] by which experts can rework their initial reports to respond to problems that their adversaries aptly address." *Daedalus*, 2022 WL 831619, at *7.

## III.    CONCLUSION

The Court should exclude the challenged opinions of Bratic and Schaefer.

---

[5] The cases collected in *Daedalus* include *Sierra Club* 73 F.3d at 571; *Avance v. Kerr–McGee Chem.* LLC, 2006 WL 3484246, *7 (E.D. Tex. 2006); *Robinson v. Ethicon Inc.*, No. CV H-20-3760, 2021 WL 4034131, at *5 (S.D. Tex. Sept. 2, 2021; *Cleave v. Renal Care Grp., Inc.*, No. CIV.A. 2:04CV161-P-A, 2005 WL 1629750, at *1 (N.D. Miss. July 11, 2005); and *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741–43 (7th Cir. 1998), all rejecting supplementation.

Dated:  December 22, 2022                     Respectfully submitted,


                                              */s/ Sarah E. Piepmeier*
                                              Sarah E.  Piepmeier (admitted, Cal. SBN. 227094)
                                              Elise Edlin (SBN 293756) (*pro hac vice*)
                                              PERKINS COIE LLP
                                              505 Howard Street, Suite 1000
                                              San Francisco, California 94105
                                              SPiepmeier@perkinscoie.com
                                              EEdlin@perkinscoie.com
                                              Telephone: 415.344.7000
                                              Facsimile: 415.344.7050

                                              Ryan Hawkins (*pro hac vice*)
                                              PERKINS COIE LLP
                                              11452 El Camino Real, Suite 300
                                              San Diego, California 92130
                                              RHawkins@perkinscoie.com
                                              Telephone: 858.720.5700
                                              Facsimile: 858.720.5799

                                              Jessica J. Delacenserie (*pro hac vice*)
                                              PERKINS COIE LLP
                                              1201 3rd Ave, Suite 4900
                                              Seattle, Washington 98101
                                              JDelacenserie@perkinscoie.com
                                              Telephone: 206.359.8000
                                              Facsimile: 206.359.9000

                                              Michael E. Jones (SBN. 10929400)
                                              Shaun W. Hassett (SBN. 24074372)
                                              POTTER MINTON, P.C.
                                              110 N. College Ave., Suite 500
                                              Tyler, Texas 75702
                                              mikejones@potterminton.com
                                              shaunhassett@potterminton.com
                                              Telephone: 903-597-8311
                                              Facsimile: 903-531-3939

                                              Attorneys for Defendant
                                              CISCO SYSTEMS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on December 22, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on December 22, 2022.

*/s /Sarah E. Piepmeier*
Sarah E. Piepmeier

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case and Judge Albright's Amended Standing Order Regarding Filing Documents Under Seal in patent Cases and Redacted Pleadings.

*/s/ Sarah E. Piepmeier*
Sarah E. Piepmeier