IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PALTALK HOLDINGS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 6:21-CV-00757-ADA<br><br>JURY TRIAL DEMANDED |

### PALTALK'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S DAMAGES EXPERT MS. KINDLER

███████████████████

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

    I.    Kindler's opinions on Webex usage data remain unreliable ..................................1

        a.    Kindler's Webex usage analysis is not based on the facts of this case............................................................................................................2

        b.    Kindler's methodology estimating the number of PSTN-to-VoIP calls before August 2021 is both untested and unreliable ..................4

    II.    Kindler's opinions related to late-produced documents should be excluded ..................................................................................................................6

        a.    Spreadsheet with Webex Add-on Product IDs (CISCO-PAL-00003857) ...........................................................................................7

        b.    ▮ Agreement.............................................................................9

    III.    Kindler's opinions on non-infringing alternatives should be excluded .................10

CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barry v. Medtronic, Inc.*,
  2016 WL 7665773 (E.D. Tex. July 19, 2016) ............................................................................5

*CJS Sols. Grp., LLC v. Clowers*,
  2022 WL 3088376 (W.D. Tex. Aug. 2, 2022) ...........................................................................2

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................................10

*Guillory v. Domtar Industries Inc.*,
  95 F.3d 1320 (5th Cir. 1996) ................................................................................................2, 3

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011)
  ....................................................................................................................................................4

*J.S. v. Am. Inst. for Foreign Study, Inc.*,
  2013 WL 5372531 (W.D. Tex. Sept. 24, 2013) ........................................................................2

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ....................................................................................................4

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ..................................................................................................................4

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) ....................................................................................................4

*Texokan Operating, Inc. v. Hess Corp.*,
  89 F. Supp. 3d 903 (S.D. Tex. 2015) ........................................................................................2

*Viterbo v. Dow Chemical Co.*,
  826 F.2d 420 (5th Cir. 1987) ....................................................................................................2

*Voxer, Inc. v. Meta Platforms, Inc.*,
  2022 WL 3371634 (W.D. Tex. Aug. 16, 2022) .....................................................................5, 6

**Rules**

Fed. R. Civ. P. 37(c)(1) ....................................................................................................................6

## INTRODUCTION

Cisco's response does not and cannot save certain opinions of Cisco's damages expert Lauren Kindler. Her opinions about Webex usage, Webex Add-on revenue, and non-infringing alternatives lack factual foundation and are premised on late-produced, improper evidence. Paltalk therefore renews its request to strike certain of Kindler's opinions.

*First*, Kindler's opinions about the use of hybrid PSTN-to-VoIP from 2015-2021 are unsupported by the factual record. Both parties agree that there is ***no evidence*** of 2015-2020 usage in the record, but Cisco attempts to manufacture this absent usage data through its expert. Thus, Kindler's usage opinions amount to pure conjecture, using only Cisco's witness and a snapshot of usage from 2021 as their faulty foundation. Neither provides a reliable indicator of usage from 2015-2020 (or usage trends from 2015-2021). Kindler's opinions based on or derived from purported Cisco usage data should be excluded.

*Second*, Kindler's opinions that reference Webex "Add-on" data and a Webex license should also be excluded because Cisco failed to produce these documents during fact discovery. Because Paltalk was not able to test or verify information contained in these documents before the close of fact discovery, Kindler's opinions related to these documents should be excluded.

*Third*, Kindler did not conduct *any* analysis to determine whether any alleged non-infringing alternatives met the standard she advanced—i.e., that they could be reasonably implemented in a timely and cost-effective manner. Without this analysis, Kindler's opinions are wholly unsupported and should be excluded.

## ARGUMENT

I. **Kindler's opinions on Webex usage data remain unreliable**

Cisco concedes that Kindler's opinions on usage data are nothing more than assumptions layered on assumptions atop an "estimate" of usage data gleaned from an offhand anecdote by a

Cisco employee. *See* Cisco Resp. at 3. Kindler uses smoke and mirrors to dress up her naked conjecture about usage data, which she then uses to argue for a low-value royalty. Kindler's opinions relating to usage data lack any basis and should not reach the jury.

      **a.**      **Kindler's Webex usage analysis is not based on the facts of this case**

Kindler's opinions about Webex usage data are not supported by facts and therefore unreliable and misleading to the jury. *See J.S. v. Am. Inst. for Foreign Study, Inc.*, 2013 WL 5372531, at *8 (W.D. Tex. Sept. 24, 2013) (citing *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). "Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *CJS Sols. Grp., LLC v. Clowers*, 2022 WL 3088376, at *4 (W.D. Tex. Aug. 2, 2022) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "Where the challenged opinion 'is fundamentally unsupported, then it offers no expert assistance to the jury.'" *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 909 (S.D. Tex. 2015).

Kindler's manufactured assertions about the frequency of PSTN-to-VoIP calls from 2015-2021 are unsupported by the record. *See, e.g.,* Ex. A ¶ 134. It is undisputed that Kindler's opinions about PSTN-to-VoIP call usage rest on sparse factual evidence—a single year of Webex usage data from 2021 (the only Webex usage data that Cisco actually produced), and one speculative assertion from a single Cisco-controlled witness. *See* Cisco Resp. at 3.

First, the 2021 usage data does not support Kindler's conclusions about the frequency of PSTN-to-VoIP calls from 2015-2021. By Cisco's own admission, there is **no available evidence** of the frequency of PSTN-to-VoIP calls from 2015-2020. *See* Cisco Resp. at 5 ("Cisco does not keep Webex usage data older than 13 months."). That ends the discussion. Since Cisco does not,

as it states, even possess Webex usage data older than 13 months, any expert opinion about PSTN-to-VoIP usage from 2015-2020 is purely speculative and inherently unreliable. *See Guillory*, 95 F.3d at 1331 (affirming exclusion of expert testimony that was not based upon facts in the record).

Second, the testimony of Cisco employee ▇▇▇▇ fails to support Kindler's conclusions about Webex usage data from 2015-2021. Despite Cisco's statements to the contrary, ▇▇▇ did not testify about a "steady decrease in the percentage of users accessing Webex via the PSTN" from 2015-2020. *See* Cisco Resp. at 3. Twice, ▇▇▇ said that neither he nor Cisco possesses factual data on the number of PSTN users during the 2015-2020 span. *See* Cisco Resp. Ex. B 210:12-16, 211:24-212:6. ▇e testified that ▇ had **never even seen** usage data for any year other than 2021. *See id*. 207:4-14 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That too should end the inquiry.

In the absence of actual usage data, ▇▇▇ speculated about what the percentage of PSTN and VoIP users **might have been** at some point in time. *See id.* at 211:20-23 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ testimony boils down to a hypothetical example—it is not evidence. Additionally, despite his 20 years of experience at Cisco, ▇▇▇ was unable to testify about the number of PSTN or VoIP users from 2015-2021. Because ▇▇▇ testimony was bare conjecture, any expert opinions based on that testimony should be excluded. *See Guillory*, 95 F.3d at 1331 ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all.").

Cisco asks this Court to ignore the holes in Kindler's analysis and reserve this issue for cross-examination. But this case is distinguishable from the cases Cisco cites where faulty expert testimony was rectified upon cross examination. *See* Cisco Resp. at 2. In those cases, where experts

3

methodologies were "sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) [could] go to the testimony's weight, but not its admissibility." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) and *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). Here, Kindler's usage opinions are not based on a sufficient factual basis, and the Court should exclude them.

      **b.**    **Kindler's methodology estimating the number of PSTN-to-VoIP calls before August 2021 is both untested and unreliable**

Independently, Kindler's opinions about Webex usage should be excluded because her methodology is unreliable. In paragraph 194 of her report, Kindler outlines the labyrinth of calculations she performed to arrive at entirely speculative Webex usage percentages for 2015-2020. But neither Kindler nor Cisco have presented any justification for Kindler's speculative methodology to estimate the number of PSTN-to-VoIP calls. Nor is her analysis grounded in the factual record. Kindler's methodology in unreliable because it was plucked from thin air and not based on the record. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-152 (1999)). Given Kindler's use of unreliable methods for determining Webex usage, all of Kindler's usage opinions should be excluded.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

      *1.*    *Kindler's "50% Model" is Speculative and Unreliable*

Kindler's 50% usage model is unreliable because it is unsupported by factual evidence. In the 50% model, Kindler heavily relies on her baseless calculation of VoIP & PSTN Share, "the share of meeting minutes that simultaneously involved both VoIP and PSTN users." *See* Ex. A ¶ 194. Kindler cites to nothing justifying the use of this calculation. She then takes the single VoIP

& PSTN Share data point from 2021 and couples it with ▆▆▆▆ hypothetical to create a series of unsupported VoIP & PSTN Share statistics for 2015-2020.

Cisco argues that Kindler's 50% model is reliable because it is a "conservative average" of the frequency of VoIP and PSTN calls from 2015-2021. *See* Cisco Resp. at 5. But there is no basis to know whether Kindler's model is conservative or not. Nothing in the record speaks to this issue. Cisco cites no cases or principles in support of this argument, and Kindler's unreliable methodology does not become reliable merely because she arrives at an allegedly conservative estimate. Without the actual usage data, neither Paltalk nor the jury can test the accuracy of Kindler's opinions about Webex usage data.

Cisco's attempts to bolster its position through caselaw are misplaced. *Barry v. Medtronic, Inc.* does not support Cisco's erroneous conclusion that an expert's methodology is reliable so long as she explains the source of her calculations. *See* 2016 WL 7665773, *11 (E.D. Tex. July 19, 2016). The source of all calculations must be rooted in the record, and unlike Kindler, the expert in *Barry* relied on facts sufficiently in evidence. *Id.* at *10. Here, Kindler's explanation of her calculations does not add to the reliability of her opinions because her opinions are based on an insufficient factual record. *See id*. at *10-11.

2. Kindler's "Decreasing Usage Model" is Less Reliable

Kindler's "decreasing usage" model is even less justifiable than her "50% usage" model. Kindler again relies on nothing more than ▆▆▆▆ hypothetical and 2021 usage data to guess what the VoIP and PSTN share might have been if that data decreased in "a straight-line fashion" from 2015-2021. She cites nothing in support of her theory that the VoIP and PSTN Share declines in a straight-line, and Cisco presents no evidence that Kindler's methodologies are reliable.

*Voxer, Inc. v. Meta Platforms, Inc.*, 2022 WL 3371634 (W.D. Tex. Aug. 16, 2022) does not excuse the deficiencies in Kindler's analysis. In *Voxer*, the plaintiff's damages expert used his

5

own model to compute certain damages because the defendant did not track all of its revenue. *Id.* at *2. Because the plaintiff's estimate of damages was based on record evidence and the defendant would have the opportunity to present contrary evidence, the court permitted the expert's testimony. *See id.* at *4.

The present case is factually distinct for three reasons. *First*, the plaintiff's expert in *Voxer* used a model to estimate revenues because defendants didn't keep track of certain revenue information. Here, Cisco tracked usage data, deleted it, and now uses its own expert to manufacture usage data in place of any record evidence. *Second*, Kindler's conjectures about the frequency of PSTN-to-VoIP calls from 2015-2021 are not based on record evidence. *See* § I(a), *supra*. Neither ▇▇▇▇▇▇ testimony nor the 2021 usage data provide any insight into the frequency or trend of PSTN-to-VoIP calls that occurred from 2015-2021. *See id*. *Third*, Paltalk cannot present evidence that is contrary to Kindler's conjectures about usage data because Cisco failed to retain that data. Cisco cannot say it has no evidence of usage data from 2015-2020 in one breath but then use its expert to supply artificial facts about usage data in another. Because Paltalk has not had a meaningful opportunity to challenge Kindler's artificial usage data in fact discovery or its opening expert reports, Kindler's usage opinions should be excluded.

## II.     Kindler's opinions related to late-produced documents should be excluded

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party ***is not allowed*** to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Because Cisco cannot demonstrate that its delay in producing: (a) a spreadsheet showing revenues for Webex Add-on product IDs or (b) the ▇▇▇▇▇▇ Agreement was harmless, the Court should exclude all of Kindler's opinions relying on those documents.

a.     **Spreadsheet with Webex Add-on Product IDs (CISCO-PAL-00003857)**

Cisco cannot have it both ways—either the newly available information contained in the spreadsheet with Webex Add-on data produced at CISCO-PAL-00003857 is important to the issues in this case such that Paltalk suffered prejudice from Cisco's untimely production, or the information is unimportant and provides no basis for excusing Cisco's error. *Compare* Cisco Resp. at 11 ("Kindler's add-on analysis is not dependent on the content or timing of Spreadsheet 2, but since it is the only document she cites for her figures, it is important.") *with* Cisco Resp. at 9 ("[T]his late-produced spreadsheet is substantively identical to the one that was produced previously, during discovery."). Regardless, Cisco has not demonstrated that its untimely production should be excused.

Additional factors also support the exclusion of all of Kindler's opinions related to Webex Add-on data. *First*, Cisco provides no explanation for its late production of the spreadsheet. *Second*, Cisco's contention that Paltalk was not prejudiced because Cisco produced a "substantively identical" spreadsheet during the discovery period is incorrect. During discovery, Cisco produced an indecipherable spreadsheet listing thousands of Webex transactions. *See* Cisco Resp. at Ex. D. Each transaction was listed along with the corresponding product ID, product family, and product description, all encoded with initials and abbreviations. *See id.* When ▮▮▮▮▮▮[1]—Cisco's designated corporate representative to discuss financial topics—was asked to decipher this information, ***even he could not interpret*** various parts of the spreadsheet as produced and testified that he typically used "a product ID with an associated description" to decipher the information. *See* Ex. B 41:22-42:1, 47:5-48:1. During discovery, Cisco never

---

[1] Cisco's position that Paltalk could have asked another witness to decode the product ID information after is simply untrue. Cisco refused to present a witness who would testify about the meaning of the more than "600 PIDs for the Relevant Products." *See* Ex. C at 1-2.

7

produced those descriptions or any decipherable data for the 600+ unique product IDs listed on Cisco's revenue sheets.

But, after fact discovery had closed and Paltalk's expert reports had been served, Cisco suddenly produced a spreadsheet with the missing product descriptions, which clearly identifies revenues associated with Webex Add-on features. *See* Cisco Resp. at Ex. C ("AddOn Support Assist for Medium Events"). Kindler then interviewed ▇ and had ▇ identify Webex-Add On sales product IDs using the product descriptions contained in the *new spreadsheet. See* Ex. A ¶ 196-97.

Cisco's insistence that the spreadsheets in Exhibits C and D are identical is belied by its own expert. The sole source of support for Kindler's Webex Add-on opinions is the new spreadsheet and her post-discovery interview with ▇ *See, e.g.,* Ex. A ¶ 196-97, Ex. 7. Kindler does not cite the other spreadsheet (the only one that Paltalk had access to during discovery) for any propositions related to her Webex Add-on opinions, despite the fact that she reviewed the other spreadsheet and cites it in five other sections of her report. *See, e.g.,* Ex. A at ¶ 161, Ex. 1. Even Cisco's witness and expert recognize the limited usage of the original spreadsheet produced and rely on the late-produced spreadsheet instead. The spreadsheets are not equal.

Cisco's failure to produce a decipherable Cisco's Webex Add-ons spreadsheet until now prejudices Paltalk because Paltalk's experts were not able to absorb or analyze this information, and Paltalk's ability to seek leave to amend its opening expert reports is immaterial to this analysis. There is no requirement that Paltalk, at its own great expense, amend its expert reports and wait for Cisco to serve additional responsive expert reports. Even if Paltalk had amended its opening expert report, Paltalk would still be prejudiced because Cisco has unique access to its own witnesses (an opportunity it took only after the close of discovery) and would have multiple chances to rebut Paltalk's expert opinions.

8

A continuance would further prejudice Paltalk by giving Cisco a bad-faith basis to delay the parties' imminent trial date. Trial is set in this case in two months. Paltalk has been litigating this case without access to Cisco's Webex Add-on data, and the Court should level the playing field and exclude the Webex Add-on data because of Cisco's inability to comply with this Court's scheduling order. Moreover, Kindler should not be allowed to supplement her report—Cisco and its experts have had ample time to review and rely on the Webex Add-on data, and Kindler ultimately chose to cite only this late-produced spreadsheet in support of her conclusions about Webex Add-ons.

### b. ▮ Agreement

Cisco offers a half-hearted explanation for its late production of the ▮ Agreement, but that is far short of an explanation of a valid reason for Cisco's prejudicial delay. Cisco had seven months to conduct a diligent search and produce all relevant discovery, and Cisco's nearly seven-month delay is not excused because Cisco had to comply with a notice period. This factor supports exclusion. Furthermore, Cisco's untimely production of the ▮ Agreement prejudiced Paltalk because Paltalk was unable to question Cisco's 30(b)(6) witness on licensing topics about the ▮ Agreement because Cisco produced the agreement after the deposition. This factor also weighs in favor of exclusion.

Cisco presents no arguments on the two remaining factors—the utility of a continuance and the importance of the late-produced documents. Notwithstanding Cisco's forfeiture of these points, a continuance would not cure Paltalk's prejudice and there is no reason to think that the ▮ Agreement is of particular importance to Cisco. All factors counsel in favor of granting Paltalk's motion to exclude all opinions of Kindler related to or relying on any documents that Cisco failed to produce by the close of fact discovery.

### III.  Kindler's opinions on non-infringing alternatives should be excluded

Kindler's opinions on non-infringing alternatives should be excluded for lack of sufficient factual basis. Kindler opines that the standard for non-infringing alternatives must be "readily-implementable" and "cost effective." *See* Ex. A ¶ 169. But there is no evidence that either alternative she identifies meets this standard. The sole source of support for Kindler's opinions on non-infringing alternatives is her conversation with Cisco expert Mr. Dean Willis. *See* Cisco Resp. Ex. A 117:3-6. Willis provided Kindler with a vague sense that the cost and effort to implement two allegedly non-infringing alternatives would be fairly minimal, **but neither expert** identifies sufficient facts in the record about cost or ease of implementation to support the conclusion that there are non-infringing alternatives to the '858 Patent.

Kindler reiterated that it would be easy to implement two non-infringing alternatives and that both could be implemented for $1,000,000 to $1,500,000, but that was rank speculation. Kindler never articulated a basis for that opinion or that expenditure range. *See id.* Ex. A 116-119. Cisco responds by saying that an expert need not produce "an exact analysis of costs" under *Georgia-Pacific* Factor 9. That may be true but, where an expert reaches a conclusion, that conclusion must be tied to the facts of the case by more than just the "ipse dixit" of the expert. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144, (1997). Because Kindler's opinions on non-infringing alternatives are not based on a sufficient factual basis, those opinions should be excluded.

### CONCLUSION

The Court should grant Paltalk's motion to exclude certain opinions of Lauren Kindler.

Dated: December 22, 2022                                      Respectfully submitted,

By: */s/ Max L. Tribble, Jr.*
    Max L. Tribble, Jr.
    State Bar No. 2021395
    SUSMAN GODFREY L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Fax: (713) 654-6666
    mtribble@susmangodfrey.com

    **ATTORNEY-IN-CHARGE FOR**
    **PLAINTIFF PALTALK HOLDINGS, INC.**

OF COUNSEL:

Ryan Caughey (*admitted pro hac vice*)
State Bar No. 24080827
Bryce T. Barcelo
State Bar No. 24092081
Amber B. Magee *(admitted pro hac vice)*
State Bar No. 24121572
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
bbarcelo@susmangodfrey.com
amagee@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was served on all counsel of record on the 22nd day of December, 2022.

*/s/ Amber B. Magee*
Amber B. Magee
