**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **PALTALK HOLDINGS, INC.,** | § | |
| **Plaintiff** | § | |
| **vs.** | § | **No. 6:21-cv-00757-ADA** |
| **CISCO SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

**DEFENDANT CISCO SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF CISCO'S EXPERT DEAN WILLIS**

## TABLE OF CONTENTS

**Page**

I. CISCO'S NON-INFRINGING ALTERNATIVES .......... 1

II. MR. WILLIS'S OPINIONS SHOULD NOT BE EXCLUDED BECAUSE THEY ARE ROOTED IN THE RECORD .......... 3

A. Mr. Willis supports his opinions by describing how the Webex source code would need to be modified .......... 3

B. Mr. Willis supports his opinion with prior art references and systems in the record. .......... 5

C. Mr. Willis supported his opinions with reference to published standards at the time of the hypothetical negotiation .......... 6

D. Mr. Willis supported his opinions with his personal experience and knowledge from working at Cisco at the time of the hypothetical negotiation .......... 7

E. Mr. Willis relied on his personal knowledge of Cisco's engineering costs at the relevant time period to calculate the cost to implement the proposed design arounds. .......... 8

F. Mr. Willis explained that the alternatives he identified were available, reasonably implemented, and acceptable .......... 9

III. CONCLUSION .......... 11

CERTIFICATE OF SERVICE .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ikhinmwin v. Rendon*,
No. SA-16-CV-184-OLG (HJB), 2017 WL 10768507 (W.D. Tex. Oct. 2, 2017) ....... 7

*United States v. Austin Radiological Ass'n*,
No. A-10-CV-914-LY, 2014 WL 2515696 (W.D. Tex. June 4, 2014) ....... 7

**OTHER AUTHORITIES**

Fed. R. Evid. 703 ....... 7

It is ironic that a motion attacking the factual bases of an opinion should itself be so untethered to the facts. Paltalk's breathless accusations that Cisco's non-infringement expert Dean Willis "provides no authority;" that his "opinions are baseless;" and that he "admitted in deposition that they are not based on any facts in the record" are simply false. Paltalk's motion cites snippets from Mr. Willis's deposition where he acknowledged that he relied on his personal experience *as part of* his opinions. Paltalk ignores the report itself and Mr. Willis's responses to Paltalk's counsel's deposition questioning about the facts and evidence in the record that he *also* relied on, *in addition to* his personal experience, in forming his opinions.

Mr. Willis's opinions regarding non-infringing alternatives are reliable because they are tethered to and well supported by the specific facts in this case. Paltalk's critiques can be addressed through cross-examination of Mr. Willis at trial.

## I. CISCO'S NON-INFRINGING ALTERNATIVES

The asserted '858 Patent is titled "Hybrid Server Architecture for Mixing and Non-Mixing Client Conferencing" and claims an audio conference where the server selectively mixes different speakers' audio at the server depending on whether the speaker's device has the ability to mix itself. ECF No. 1-1 ("'858 Patent") at 2:18-41. The claims use the word "combine"—i.e., taking audio inputs from multiple speakers and combining those inputs into a single audio packet.

Cisco has disclosed and intends to present to the jury two non-infringing alternatives that were well known prior to the claimed invention. ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 170–74. In fact, they were used by Cisco previously—and in certain audio call and audio-conferencing scenarios, they are still used in Cisco's products today. Both are straightforward and easy to understand.

Cisco's first non-infringing alternative is to send one speaker's audio—e.g., the loudest speaker—all the time. *Id.* (Supp. Willis Rpt.) ¶ 171. As everyone knows from years of conference calls, most of the time only one person is speaking—when multiple people do speak, it can be difficult to understand what is being said. That is why Paltalk's counsel asked Mr. Willis at the beginning of the deposition to let him finish his questions before Mr. Willis answered. ECF No. 149-4 (Willis Dep. Tr.) 26:6–7.

Cisco's second non-infringing alternative is to mix the audio for all participants before it is sent to them. ECF No. 149-2 (Supp. Willis Rpt.) ¶ 173. This is already how WebEx handles audio conferences where all the participants dial in to the audio conference via a phone number, as opposed to joining via a hyperlink or other VoIP based connection.

Paltalk has known that Cisco was relying on these prior art techniques as non-infringing alternatives for over a year and a half. Cisco disclosed that it was relying on such prior art in the invalidity contentions provided in its initial, April 2022 response to Paltalk's interrogatory on the topic. Cisco's supplement to that response this September included additional citations to the prior art references that Mr. Willis relies on in support of his non-infringing alternatives analysis. Resp. to Interrog. No. 7.[1]

Mr. Willis's original and supplemental expert reports analyzed both non-infringing alternatives. ECF No. 149-5 (Willis Rpt.) ¶¶ 254-58; ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 170–74. Paltalk did not previously move to strike Mr. Willis's analysis, but it did seek to preclude Cisco's damages expert, Lauren Kindler, from relying on it, complaining that Mr. Willis's original expert report failed to address the actual "engineering costs associated with such a modification."

1 Cisco supplemented its response to Paltalk's Interrogatory No. 7 to cite the prior art references and included invalidity charts for both of the references that Mr. Willis contends disclosed his non-infringing alternatives: Botzko (CISCO-PAL-00001402) (Exhibit A-12 to Cisco's Final Invalidity Contentions) and Oran (CISCO-PAL-0000021) and (Exhibit A-11).

ECF No. 59 (Paltalk's Motion to Strike Opinions of Cisco's Damages Expert) at 13. In response to that complaint and the Court's instruction to the parties to supplement their reports in response to those motions, ECF No. 151-9 (Pretrial Conference Tr.) 157:4-8, Mr. Willis supplemented his analysis to provide a specific calculation of hours and cost to implement them. ECF No. 149-2 (Supp. Willis Rpt.) ¶ 171.

## II.  MR. WILLIS'S OPINIONS SHOULD NOT BE EXCLUDED BECAUSE THEY ARE ROOTED IN THE RECORD

Mr. Willis's opinions are firmly grounded in the facts of this case, including: (1) an analysis of the Webex source code that would need to be modified in order to implement the non-infringing alternatives; (2) an analysis of a technical specification that was published shortly before the hypothetical negotiation date, produced in discovery, cited in Mr. Willis's report, and explained in his deposition; (3) an analysis of well-known prior art in the field that disclosed the exact methods that Mr. Willis contends could have been implemented; (4) Mr. Willis's personal experience and knowledge from working at Cisco, in this field, at the time of the hypothetical negotiation; and, finally, (5) Mr. Willis's experience as an expert in this field with over 30 years of experience working on these technologies.

### A.  Mr. Willis supports his opinions by describing how the Webex source code would need to be modified

Mr. Willis's report describes what code would need to be altered to implement the modifications to WebEx. For one alternative, Mr. Willis explained what specific part of the WebEx code would need to be replaced and on what specific server that change would be made: "This would require replacing the 'switching' layer of the WebEx MCS server with a mixer." ECF No. 149-2 (Willis Supp. Rpt.) at ¶ 173. Mr. Willis further explained that the code would not even need to be written—it could simply be copied, as it already existed elsewhere in a different part of

WebEx: "the code for which is already present in the CMS server." *Id*. For the other alternative, he similarly explained that the Webex code that currently selects the three loudest speakers would be modified to only use the loudest speaker's audio. *Id*. at ¶ 171.

Paltalk complains that Mr. Willis failed to provide "citations" to the code he contends would need to be modified to implement the proposed alternatives, but it ignores both what Mr. Willis disclosed in his report and his deposition testimony in response to Paltalk's questions. Mr. Willis's report describes the code and identifies the specific server that it resides on. *Id.* (Supp. Willis Rpt.) ¶¶ 171, 173. Other portions of his report provide specific citations to file names and line numbers in the code and discuss that code extensively. *Id.* ¶¶ 93–99, 173. Paltalk cannot seriously contend that it does not know what code Mr. Willis is referring to. Indeed, *both parties'* experts' reports discuss the MCS server, the switching layer, the CMS server, and the code for selecting the loudest speakers, *Id.* ¶¶ 93–99, 173; ECF No. 151-3 (Supp. Schaefer Rpt.) ¶¶ 57–76, and both parties asked the opposing expert deposition questions on those topics.

Paltalk's motion quotes a series of questions asking Mr. Willis whether he "cited" the code he is referencing in his non-infringing alternatives analysis—and he agreed that he had not. But Paltalk's motion ignores other testimony that wasn't fixated on citations to particular lines of code. When Mr. Willis was asked about the code that he was referring to, he identified the portions of the code that he reviewed and he referred Paltalk to the portions that were cited elsewhere in the report:

> But when we did the code review that we referred to, and have produced those snippets of code that were cited here, the -- *we identified the mixing and switching of audio components in the CMS and MCS systems*, it would be very easy to essentially snip out or put a bypass around the mixing code, not invoke it, and just transmit the audio from the -- essentially, from the current speaker.

ECF No. 149-4 (Willis Dep. Tr.) at 98: 1–24 (emphasis added).

### B. Mr. Willis supports his opinion with prior art references and systems in the record.

Mr. Willis's expert report also provides examples of prior art systems and publications that disclosed the non-infringing alternative he has proposed and establish that these were known alternatives at the time of the hypothetical negotiation. ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 172, 174. Paltalk's counsel questioned Mr. Willis extensively about the support for his opinions, and Mr. Willis pointed Paltalk to facts in the record on which he was relying:

> Q. What is the basis for that assertion -- for your assertion that this non-infringing alternative could have easily and inexpensively been implemented as early as January 2004?
>
> A. Well, if you recall, I had been developing this, sort of, application, working in this space since the -- since the early '90s, so I've – I've done a lot of this development.
>
> But when we did the code review that we referred to, and have produced those snippets of code that were cited here, the -- we identified the mixing and switching of audio components in the CMS and MCS systems, it would be very easy to essentially snip out or put a bypass around the mixing code, not invoke it, and just transmit the audio from the -- essentially, from the current speaker.
>
> This is supported by a number of the other documents and patents that we've referenced, like Botzko and Oran, which talk about that particular model of communication in a conference much earlier.

ECF No. 149-4 (Willis Dep. Tr.) at 98:1-24.

The prior art references Mr. Willis identifies are the same prior art patents that Cisco will present to the jury, and Cisco produced them to Paltalk early in discovery. For example, Mr. Willis identifies U.S. Patent No. 6,418,125 to David Oran and others. Mr. Willis explained that he knows Mr. Oran personally and worked with him at Cisco at the time of the hypothetical negotiation. Willis Dep. Tr. 104:11-20. Mr. Willis explained that he was personally familiar with the work that Mr. Oran described in the Oran Patent. *Id*.

### C. Mr. Willis supported his opinions with reference to published standards at the time of the hypothetical negotiation.

Paltalk also asserts that when it asked Mr. Willis "about the basis for his opinions about non-infringing alternatives, Mr. Willis "***could not identify any methodology or sufficient factual basis*** for his cost estimates, hour estimates, or assertions about what 'users would … notice." Paltalk's Mot. at 5 (emphasis added). Paltalk's accusation again misstates Mr. Willis's testimony:

> Q: Are there any documents -- or any materials, I suppose, listed in this Exhibit B that you relied on to come up with your work estimation or -- yeah -- your work estimation relating to the noninfringing alternative analysis?
>
> A: I would primarily have looked at, actually, RFC 1889, and a few documents there to make sure that I had remembered some things correctly.

ECF No. 149-4 (Willis Dep. Tr.) 31:24-32:8.

Mr. Willis identified the factual evidence in the record that he relied on, including RFC 1889, entitled "TP: A Transport Protocol for Real-Time Applications." The Internet Engineering Task Force (IETF), which is the premier standards development organization for the Internet, https://www.ietf.org/about/introduction/, published this specification prior to the hypothetical negotiation. ECF No. 149-2 (Supp. Willis Rpt.) ¶ 53; ECF No. 149-4 (Willis Dep. Tr.) 32:5-13.

Not only did Mr. Willis identify the evidence in the record that he was relying on, but he explained *how* this evidence helped him determine the appropriate basis for his cost and hour estimates:

> Q: [W]as this RFC 1889 publication relevant to your supplemental opinions on noninfringing alternatives?
>
> A. Yes. I needed to consider how much experience the -- skilled developers who would be likely to be working on this, that I'm trying to estimate the effort for, have had with the type of changes that would be required.

ECF No. 149-4 (Willis Dep. Tr.) 33:16-25.

Mr. Willis thus provided substantial evidentiary support for his non-infringing alternatives analysis, both in his report and in response to Paltalk's deposition questions.

**D. Mr. Willis supported his opinions with his personal experience and knowledge from working at Cisco at the time of the hypothetical negotiation**

Mr. Willis has *not* rested his opinions simply on "what a person of ordinary skill in the art" would have known. Mr. Willis is an expert in the field and has been working in the field of audio conferencing for over 30 years, and he did rely on that experience in forming his opinions. ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 4–15; ECF No. 149-4 (Willis Dep. Tr.) 27:17-19. But Mr. Willis also has *personal*, factual knowledge based on *working at Cisco at the time of the hypothetical negotiation* that informs his analysis of how much it would cost and how long it would take to implement the proposed design arounds. The Federal Rules of Evidence expressly recognize that experts may rely on facts they have personally observed. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or personally observed*.") (emphasis added); *see also Ikhinmwin v. Rendon*, No. SA-16-CV-184-OLG (HJB), 2017 WL 10768507, at *3 (W.D. Tex. Oct. 2, 2017) ("Expert testimony can be based mainly on personal observations, professional experience, education and training.") (internal quotations omitted); *United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2014 WL 2515696, at *3 (W.D. Tex. June 4, 2014) ("An expert's testimony does not always have to be based on scientific testing; it can be based on personal experience.") (internal quotations omitted).

Because Mr. Willis worked at Cisco from 2004 to 2007, he knew how much Cisco engineers were getting paid at the relevant time. ECF No. 149-4 (Willis Dep. Tr.) 108:14-23; 109:5-14. Similarly, he testified that he worked directly with the Cisco engineers who were the

inventors of the prior art methods he is opining could have been implemented. Ex. A[2] (Willis Dep. Tr.) at 104:11-20.

Paltalk attacks Mr. Willis for relying on his personal experience in claiming that there is usually only one active speaker on an audio conference. Paltalk Mot. at 7-8. But Mr. Willis was perfectly entitled to say so. Indeed, you don't need formal market research or testing or to be an expert with 30 years of experience in the field to know that there is usually only one person talking on an audio conference at a time. ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 171-72; Ex. A 102:21-103:2.

### E. Mr. Willis relied on his personal knowledge of Cisco's engineering costs at the relevant time period to calculate the cost to implement the proposed design arounds.

Paltalk overstates Mr. Willis's testimony that he did not review any "Cisco documents" that listed the amount it would cost to implement his proposed design arounds. The statement was true but immaterial because Mr. Willis himself worked at Cisco at the time of the hypothetical negotiation and was personally aware of "Cisco's engineering costs in the 2004-2006 timeframe":

> Q. Going back to this $100 or $200 an hour figure, did you review any Cisco documents reflecting what Cisco's actual hourly engineering costs are?
>
> A. I did not. However, I did have experience with Cisco's engineering costs in the 2004 to 2006 timeframe, as a senior engineer at Cisco who was frequently tasked to do a cost analysis on proposed changes from customers.

ECF No. 149-4 (Willis Dep. Tr.) 108:14-23.

For both of his alternatives, Mr. Willis multiplied this hourly cost times the amount of hours he thought each alternative would have taken to fully implement. ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 171, 172. For the first alternative, he calculated that it would have taken

---

2 Citations to "Ex." refer to exhibits to the Hawkins Declaration being filed concurrently with this opposition.

approximately 100 hours. At deposition, he was asked to explain how he came to that estimate. He explained that he calculated that it would take only about 10 hours to alter the code because the code already existed and would simply need to be copied from one location to another. ECF No. 149-4 (Willis Dep. Tr.) 99:14-19. But his opinion was not limited to just how long it would take to rewrite the code. Mr. Willis explained that it was also necessary to account for the rest of the development process—planning, bug fixes, quality control, and integration—which is why he estimated 100 hours. ECF No. 149-4 (Willis Dep. Tr.) 100:5–14.

Mr. Willis also explained, in response to Paltalk's question asking what he relied on "to come up with your work estimation or -- yeah -- your work estimation relating to the noninfringing alternative analysis," he consulted the relevant technical specification from the standard setting body in order to confirm his recollection of the level of skill of programmers and engineers at that time. ECF No. 149-4 (Willis Dep. Tr.) 31:24-32:8; Ex. B (RTP: A Transport Protocol for Real-Tine Applications), (CISCO-PAL-0000050). Based on his extensive investigation, he testified at his deposition that he felt it was appropriate to multiply the amount of hours required to rewrite the code by ten to calculate the total time it would take to implement his proposed alternatives. ECF No. 149-4 (Willis Dep. Tr.) 100:5–14.

In short, Paltalk's assertion that his methodology was a "made up" multiplier simply ignores Mr. Willis's explanation of what he relied on and why.

### F. Mr. Willis explained that the alternatives he identified were available, reasonably implemented, and acceptable.

Paltalk contends that Mr. Willis could not provide an "adequate foundation for any conclusion, for example, that the alleged non-infringing alternatives were reasonably 'available' during the relevant period." Paltalk Mot. at 8-9. Once again, this simply ignores Mr. Willis's report, which specifically points out that the cited alternatives were "well known in the art" and

cites to specific references (Botzko and Oran) as examples that were available at the time of the hypothetical negotiation in 2004.

> 172. Sending only one user's audio is a well-known implementation and was well known in the prior art. For example, U.S. Patent No. 6,141,597 ("Botzko") discloses this type of implementation. *See* Botzko at 4:53-5:1 ("Referring in more detail to exemplary audio processor

> 174. Sending mixed audio to all users is a well-known implementation and was well known in the prior art. For example, U.S. Patent No. 6,418,125 ("Oran") discloses this type of implementation. Oran at 3:61–63 ("Of the speakers who are identified "active", each receiver

ECF No. 149-2 (Supp. Willis Rpt.) ¶¶ 172, 174 (snippets of the paragraphs shown above).

Contrary to Paltalk's suggestion, Mr. Willis's report does not rely on "*ipse dixit* testimony untethered to any analytical or factual basis." It cites to specific patents that existed prior to the hypothetical negotiation. Moreover, Mr. Willis didn't simply cite these patents—his report quotes particular portions of those references that disclosed his proposed alternatives. *Id.*

Paltalk is well aware of this. At deposition, it asked Mr. Willis to provide the basis for his assertion that his non-infringing alternative could have been implemented at the time of the hypothetical negotiation. And he again pointed them to facts in the record he was relying on, including patents that show that the alternatives were known and available at that time:

> Q. What is the basis for that assertion -- for your assertion that this noninfringing alternative could have easily and inexpensively been implemented as early as January 2004?
>
> A. Well, if you recall, I had been developing this, sort of, application, working in this space since the -- since the early '90s, so I've – I've done a lot of this development.
>
> But when we did the code review that we referred to, and have produced those snippets of code that were cited here, the -- we identified the mixing and switching of audio components in the CMS and MCS systems, it would be very easy to essentially snip out or put a bypass around the mixing code, not invoke it, and just transmit the audio from the -- essentially, from the current speaker.

> This is supported by a number of the other documents and patents that we've referenced, like Botzko and Oran, which talk about that particular model of communication in a conference much earlier.

ECF No. 149-4 (Willis Dep. Tr.) at 98:1-24.

Contrary to Paltalk's motion, Mr. Willis's expert report and deposition testimony confirmed that his proposed alternatives were available at the time of the hypothetical negotiation.

## III. CONCLUSION

Paltalk's motion should be denied, and Mr. Willis should be permitted to present his opinions on non-infringing alternatives opinions at trial.

Dated: November 21, 2023

Respectfully submitted,

*/s/ Sarah E. Piepmeier*
Sarah E. Piepmeier
Elise Edlin (admitted *pro hac vice*)
Robin L. Brewer (admitted *pro hac vice*)
Nathan B. Sabri (admitted pro hac vice)
Karl M. Johnston (admitted *pro hac vice*)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
SPiepmeier@perkinscoie.com
EEdlin@perkinscoie.com
RBrewer@perkinscoie.com
KJohnston@perkinscoie.com
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Ryan Hawkins (admitted *pro hac vice*)
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
RHawkins@perkinscoie.com
Telephone: (858) 720-5709
Facsimile: (858) 720-5809

Jessica J. Delacenserie (admitted *pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
JDelacenserie@perkinscoie.com
Telephone: (206) 359-3644

Olivia S. Radics (admitted *pro hac vice*)
PERKINS COIE LLP

33 East Main Street, Suite 201
Madison, WI 53703
ORadics@perkinscoie.com
Telephone: (608) 663-7460

Michael E. Jones (SBN: 10929400)
Shaun W. Hassett (SBN: 24074372)
POTTER MINTON
110 North College
500 Plaza Tower
Tyler, TX 75702
mikejones@potterminton.com
shaunhassett@potterminton.com
Telephone: (903) 597.8311
Facsimile: (903) 593.0846

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 21, 2023.

*/s/ Sarah E. Piepmeier*
Sarah E. Piepmeier