IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PALTALK HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | No. 6:21-CV-00757-ADA <br><br> JURY TRIAL DEMANDED |

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE PORTIONS OF EXPERT TESTIMONY BY
<u>MR. WALTER BRATIC AND DR. SCOTT SCHAEFER</u>**

-i-

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 1
    A. Mr. Bratic's Hypothetical Negotiation Date Analysis Is Fatally Flawed. .......... 1
        1. Dr. Schaefer's Keyword Searches Are Untethered to the Asserted Patents and Accused Functionality. ........................................................ 2
        2. Mr. Bratic's Analysis of Alternative Dates Is Flawed. ........................... 3
    B. Dr. Schaefer's Apportionment Is Arbitrary and Inadmissible. ........................... 5
        1. Dr. Schaefer Does Not Support His Arbitrarily Chosen Percentages. ................................................................................................ 5
        2. Dr. Schaefer's Reliance on Dr. Madisetti's Undisclosed Opinions Is Improper. ................................................................................................ 8
    C. Paltalk's Remaining Arguments Are Meritless. .............................................. 10
III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ............................................................................................... 7

*Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.*,
   No. 2:12-CV-00162-JRG, 2013 WL 11322510 (E.D. Tex. Dec. 3, 2013) ............................... 4

*Contour IP Holding, LLC v. GoPro, Inc.*,
   No. 3:17-cv-04738-WHO, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) .............................. 6

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
   No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) ............................. 4

*GPNE Corp. v. Apple, Inc.*,
   No. 12-cv-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............................... 3, 7

*Guardant Health, Inc. v. Found. Med., Inc.*,
   No. 17-cv-1616-LPS-CJB, 2020 WL 2461551 (D. Del. May 7, 2020) ............................... 5, 7

*Hafeman v. LG Elecs., Inc.*,
   No. 6:21-cv-00696-ADA, 2023 WL 4362863 (W.D. Tex. Apr. 14, 2023) .............................. 8

*Intellectual Ventures II, LLC v. Sprint Spectrum, L.P.*,
   No. 2:17-CV-0662-JRG-RSP, 2019 WL 1877309 (E.D. Tex. Apr. 26, 2019) ......................... 7

*Lind v. Int'l Paper Co.*,
   No. A-13-CV-249-LY, 2014 WL 11332304 (W.D. Tex. Mar. 12, 2014) ................................ 8

*Longhorn HD LLC v. Netscout Sys., Inc.*,
   No. 2:20-cv-00349-JRG-RSP, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) ......................... 5

*Mobility Workx, LLC v. Cellco P'ship*,
   No. 4:17-cv-00872, 2019 WL 5721814 (E.D. Tex. Nov. 5, 2019) .......................................... 2

*NetFuel, Inc. v. Cisco Sys. Inc.*,
   No. 18-cv-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar 17, 2020) ................................ 5, 6

**I.   INTRODUCTION**

Paltalk's opposition highlights why the Court must exclude the unreliable opinions of Mr. Bratic and Dr. Schaefer. Paltalk fails to grapple with Dr. Schaefer's many admissions regarding the unreliability of his methodology, and it fails to justify Mr. Bratic's 2010 hypothetical negotiation date and factually unsupported apportionment opinions.

*Hypothetical Negotiation.* Paltalk's impassioned attorney argument cannot transform Dr. Schaefer's keyword searches of unknown and uncited text files into "technical analysis." Having failed to connect the dots between his keyword searches for dates and either the asserted patent or accused functionality, Dr. Schaefer was forced to admit that he cannot say when infringement purportedly began. ECF No. 151-6 at 81:23–82:10. Instead, Paltalk doubles-down on Mr. Bratic's flawed alternative dates, which Mr. Bratic incredibly claims do not affect his analysis at all even though they span an 11-year range.

*Apportionment.* Paltalk concedes that Dr. Schaefer's apportionment opinions have no quantitative support. Instead, it asserts that that does not matter because they are grounded in the facts of this case, but his opinions do not clear even that hurdle. Dr. Schaefer never explains how he arrived at his chosen percentages for the relative importance of individual (and non-exhaustive) features. Courts regularly reject such black-box analysis under *Daubert*.

**II.   ARGUMENT**

**A.   Mr. Bratic's Hypothetical Negotiation Date Analysis Is Fatally Flawed.**

The Court identified a need for "more reliance on the technical expert to come up" with the date of first infringement for the hypothetical negotiation. ECF No. 131 at 157:12–16. What Paltalk provided, however, was a completely new summary of Dr. Schaefer's previously undisclosed searches that even Dr. Schaefer admits were not reliable for the purpose for which he used them. ECF No. 151-6 at 47:13–19; 48:7–20 ("I don't have reliable dates as I said for this").

Paltalk's silence on those crucial admissions speaks volumes. And Paltalk's myriad excuses for Dr. Schaefer's cursory keyword searches are no substitute for an explanation of how searching through an unidentified set of documents for the digits "2004" or "2010" is even relevant, much less sufficient to show when infringement began.

### 1. Dr. Schaefer's Keyword Searches Are Untethered to the Asserted Patents and Accused Functionality.

Paltalk characterizes the Court's methodology concern as simply a lack of adequate description regarding the bases of Dr. Schaefer's opinions. Now that Dr. Schaefer has explained himself, they assert, his opinions should be accepted without further inquiry. ECF No. 152 ("Opp.") at 5. But by explaining—and indeed *changing*—his results, Dr. Schaefer and Paltalk have exposed the glaring and unresolvable holes in his analysis. Paltalk also makes up its own standard for admissibility: that its date of first infringement analysis need only have "some" factual grounding. Opp. at 3 (citing *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-cv-00872, 2019 WL 5721814, at *17 (E.D. Tex. Nov. 5, 2019) (denying motion to exclude but not addressing proper standard of factual support)). Yet Dr. Schaefer's analysis cannot hurdle even that low bar.

Paltalk argues that Dr. Schaefer employed a "technical analysis to arrive at an approximate 2010 date of first infringement," Opp. at 3, but his work was neither "technical," nor "analysis." Dr. Schaefer simply conducted a keyword search for various dates and then uncritically compiled the totals without ever (i) opening the files, (ii) noting what files had which dates, or (iii) analyzing whether each file related to the asserted patents or accused features. ECF No. 151-6 at 56:7–22. The result was a conclusory and unrepeatable list of dates that even Dr. Schaefer admits he did not compare to the asserted claims. *Id.* at 75:4–8. Dr. Schaefer ultimately admitted that the accused functionality could have been added at any time between 2004 and 2022. *Id.* at 80:14–82:4. Paltalk's response ignores these admissions.

Paltalk asserts that "Cisco can perform the same searches," Opp. at 5, but that is not true. Cisco has repeatedly asked Paltalk and Dr. Schaefer for his notes—including twice during his deposition—and he admitted that he did not keep track of which files he searched. ECF No. 151-6 at 67:3–68:4. Because no one knows which specific files Dr. Schaefer searched, Cisco and its experts cannot replicate his results. Courts routinely exclude such unrepeatable and opaque "analysis." *See GPNE Corp. v. Apple, Inc.*, No. 12-cv-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) ("Experts must follow some discernable methodology, and may not be a black box into which data is fed at one end and from which an answer emerges at the other.") (internal quotation marks and citation omitted).

Moreover, Dr. Schaefer's results are dubious. Paltalk argues that because "the majority of the source code [is] likely from 2010," it was reasonable for Dr. Schaefer to conclude that infringement began in 2010. Opp. at 4. Even setting aside the process flaws discussed above, according to Dr. Schaefer's search results, there were more hits for 2004 (the year Ms. Kindler opines is properly the date of the hypothetical negotiation). ECF No. 151-3 ¶ 129. Paltalk fails to address that "2010" had only the *second* highest number of hits, not the majority. ECF No. 151-3 ¶ 132. This methodological flaw leads to questionable results that demonstrate the fundamental lack of reliability in Dr. Schaefer's keyword search.

Paltalk says it is "telling[ ]" that Cisco's discussion of Dr. Schaefer's analysis of the date of first infringement does not cite a single case or legal authority. Opp. at 5. That no other expert has attempted such a cursory and untechnical analysis hardly supports Dr. Schaefer's opinions here. Paltalk, for its part, cites no authority holding a comparably flawed analysis admissible. At bottom, Dr. Schaefer simply does not know when infringement began.

 2. **Mr. Bratic's Analysis of Alternative Dates Is Flawed.**

As a backstop, Paltalk relies on Mr. Bratic's conclusion that under these circumstances, the

hypothetical negotiation date is irrelevant and would not change his royalty analysis regardless of when infringement began prior to the damages period. Mr. Bratic apparently disavows his original 2015 hypothetical negotiation date, but he nevertheless contends that his analysis would remain the same regardless of whether the hypothetical negotiation occurred in 2004, on July 13, 2015, or at any time in-between. Ex. 10[1] [Bratic Depo] at 81:13–15.[2] Not only were the economic circumstances vastly different in 2004 as compared to 2010 or 2015, but the negotiation would have been with WebEx Communications, not Cisco. *See Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.*, No. 2:12-CV-00162-JRG, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013) ("Simply pointing out that 'the record is completely silent with regard to any market changes' between the two dates, without more, fails to persuade the Court that no market changes took place between the[se] two dates.") (citation omitted); *Daedalus Blue LLC v. SZ DJI Tech. Co.,* No. W-20-CV-00073-ADA, 2022 WL 831619, at *8 (W.D. Tex. Feb. 24, 2022) (excluding expert's opinions because of a failure to use the proper parties at the time of the contemplated hypothetical negotiation). Ms. Kindler, by contrast, has identified the differing economic circumstances and explained why the hypothetical negotiation would change drastically depending on when it occurred. ECF No. 152-6 ¶¶ 49–50.

Mr. Bratic's newfound 2007 hypothetical negotiation date is similarly flawed. This date admittedly is not based on any technical analysis. Ex. 10 at 36:3–37:9. Instead, Mr. Bratic ***assumed***

---

[1] All references to "Ex." are exhibits attached to the Elise Edlin declaration, being filed in support of this Reply.

[2] Paltalk argues that Mr. Bratic "identified scenarios where his damages conclusions would have changed depending on the date of first infringement." Opp. at 7 (citing "Ex. 2 at 71:2–25"). Exhibit 2, however, is Dr. Schaefer's expert report. Even giving Paltalk the generous benefit of the doubt that it intended to cite Mr. Bratic's supplemental deposition (which it did not include as an exhibit), this passage does not have any such alternative scenarios. The only exception Mr. Bratic identifies is if the hypothetical negotiation occurred on "any one of those days after July 13, 2022, up to July 26, 2022." Ex. 10 at 71:2–25.

that infringement could begin only when Cisco acquired WebEx Communications even if the accused product was exactly the same. *Id.* But Mr. Bratic ignores that Paltalk's complaint **did** accuse WebEx Communications of infringement. *See* ECF No. 1 (accusing WebEx Communications of infringing the asserted patent). Paltalk's authority is inapposite. Only *Longhorn* involved a defendant's acquisition of the accused products, and in that case, the predecessor entity was not named as a defendant. *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20-cv-00349-JRG-RSP, 2022 WL 903934, at *2 (E.D. Tex. Mar. 27, 2022). Regardless, Mr. Bratic's analysis has no effect on his conclusions; he merely adopts Dr. Schaefer's flawed opinions without modification.

**B.     Dr. Schaefer's Apportionment Is Arbitrary and Inadmissible.**

**1.     Dr. Schaefer Does Not Support His Arbitrarily Chosen Percentages.**

Paltalk's opposition fails to grapple with the reality that Dr. Schaefer's percentages are arbitrary and untethered to any information in the record. Paltalk points to the information Dr. Schaefer says he considered and attempts to blame Cisco for Paltalk's discovery failures. Ultimately, however, Paltalk does not dispute that Dr. Schaefer has no quantifiable basis for any of his apportionment opinions.

Paltalk argues that "Dr. Schaefer's opinions are reliable because they are based on available facts and a proven methodology." Opp. at 11. But a ***recitation*** of various technical features and documents is no substitute for an ***analysis of their value***. Nor has Paltalk shown that Dr. Schaefer's methodology is "proven." Dr. Schaefer's conclusions are not at all tied to the facts he suggests are relevant, and he never links the materials he considered to the percentages he endorses, as he was required to do. *See Guardant Health, Inc. v. Found. Med., Inc.*, No. 17-cv-1616-LPS-CJB, 2020 WL 2461551, at *18–19 (D. Del. May 7, 2020) (experts must show "that there is an evidentiary foundation ***for the particular percentage selected***") (emphasis added); *NetFuel, Inc. v. Cisco Sys.*

*Inc.*, No. 18-cv-02352-EJD, 2020 WL 1274985, at *10 (N.D. Cal. Mar 17, 2020) (excluding apportionment opinions where the expert "failed to explain the methodology underlying his percentage calculations and [] relied on vague assertions about the Accused Feature's value.").

*Contour IP Holding, LLC v. GoPro, Inc.* is instructive because it excluded an expert for a strikingly similar "analysis." No. 3:17-cv-04738-WHO, 2020 WL 5106845, at *12–14 (N.D. Cal. Aug. 31, 2020) There, the plaintiff's expert considered marketing, documents, and testimony from the defendant to apportion the value of the accused functionality opposed to other, non-infringing features. *Id.* at *12. He opined, without any further analysis, that 80% of the value of the accused product was attributable to the asserted patent. *Id.* Even though the expert reviewed evidence in the record, the court excluded the testimony, observing that "[a]lthough [the expert] certainly engaged in his own apportionment analysis …, that analysis is untethered to the 80% figure." *Id.* The same is true here. Dr. Schaefer may have looked at documents from Cisco, but he **never** explains how he got from those documents to his resulting percentages. And while "[a]pproximation is permissible; a figure without economic analysis underlying it is not." *Id.* at *13.  And in *NetFuel*, the court excluded Mr. Bratic from providing apportionment opinions where the underlying technical expert failed to quantitatively support his opinions. *NetFuel*, 2020 WL 1274985, at *10. There, like here, the technical expert explained his percentages with only vague statements about their relative importance. *Compare id.* (infringing functionality is "somewhat more than twice as valuable" as its non-infringing functionality), *with* ECF No. 151-3 at ¶ 173 ("The 75% number reflects that most, but not all, of the Support for Webex Audio (Hybrid Audio) features are attributable to the '858 Patent.").

Dr. Schaefer's willingness to disavow his original opinions for the sake of being "conservative" highlights the arbitrariness of both opinions. Dr. Schaefer admitted that he

"[doesn't] necessarily agree with [the new apportionment,] but [he] attempted to make this a little bit more conservative." ECF No. 151-5 at 146:16–147:10; *see also id.* at 147:8–10 ("I made an even more conservative assignment from 90 down to 75 [percent]."); *id.* at 163:1–9 ("I think it should be higher in this case, but that's where I went to and said at least 75 percent was the conservative estimate."). Because Dr. Schaefer had no discernable methodology for his percentages, he felt free to alter those percentage as he saw fit. But "merely labelling a value 'conservative' is no substitute for a showing that there is an evidentiary foundation for the particular percentage selected." *Guardant Health*, 2020 WL 2461551, at *18–19.

    Rather than addressing these fundamental flaws, Paltalk attacks an argument Cisco never made that it is improper for Mr. Bratic to rely on Dr. Schaefer. Opp. at 9. The issue here is not whether Mr. Bratic could rely on a sound opinion of Dr. Schaefer. It is that the lack of any sound underlying opinion renders Mr. Bratic's apportionment unreliable. Paltalk's cited cases are inapposite. In *Apple*, the plaintiff's damages expert properly relied on a technical expert to identify a noninfringing alternative chip. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). But the technical expert there did not opine on vague and unsupported percentages purportedly attributable to the asserted patents. Again, it is not the reliance *per se* that renders Mr. Bratic's opinions unreliable—it is that *Dr. Schaefer's* underlying opinions are faulty. In *Intellectual Ventures*, the defendants argued that the plaintiff's technical expert's analysis of the comparable licenses was "factually incorrect." *Intellectual Ventures II, LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0662-JRG-RSP, 2019 WL 1877309, at *3 (E.D. Tex. Apr. 26, 2019). Here, however, Cisco is not disputing facts. The problem is that Dr. Schaefer's analysis of the technical

value of the features is **nonexistent**.³

Paltalk also suggests that Dr. Schaefer's plucked-from-thin-air percentages are "testable" because Dr. Willis provided a rebuttal to his opinions. Opp. at 7. But making adjustments to Dr. Schaefer's flawed analysis does not show that it is "testable." To the contrary, Mr. Willis had no way to confirm or quantitatively analyze Dr. Schaefer's figures, and his adjustments provided in rebuttal simply highlight and factor in other valuable noninfringing features that Dr. Schaefer ignores, despite their inclusion in the documents and testimony that he cites. ECF No. 152-8 at ¶ 186 ("I disagree that this is a comprehensive list, disagree with Dr. Schaefer's characterization of what these features represent, disagree with his characterization of the novelty of these features, and disagree with the technological value of the feature (and to Audio overall) that he attributes to the patented technology."). Indeed, Mr. Willis expressly rejected Dr. Schaefer's inadequate methodology and provided his alternative opinions to show how even Dr. Schaefer's flawed opinions are overstated. *Id.* ¶ 190.

At the end of the day, Dr. Schaefer has never explained the bases for his apportionment percentages—and Paltalk does not argue otherwise. Dr. Schaefer waved his hands, stated generally that he based them on Cisco's documents, and then rested on unexplained percentages. The Court should not permit the jury to hear such unreliable testimony. *See Lind v. Int'l Paper Co.*, No. A-13-CV-249-LY, 2014 WL 11332304, at *2 (W.D. Tex. Mar. 12, 2014) (A court is not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert.").

### 2. Dr. Schaefer's Reliance on Dr. Madisetti's Undisclosed Opinions Is Improper.

---

³ Paltalk's reliance on *Hafeman* is unpersuasive. Paltalk contends that there Dr. Schaefer "conducted a qualitative apportionment analysis by evaluating the technical novelty of the Accused Products." Opp. at 9. But the Order and the record in *Hafeman* contain no detail of the challenged apportionment, and the Court denied LG's motion summarily. *See Hafeman v. LG Elecs., Inc.*, No. 6:21-cv-00696-ADA, 2023 WL 4362863, at *1 (W.D. Tex. Apr. 14, 2023).

Paltalk argues that Dr. Madisetti was not the sole source of Dr. Schaefer's opinions on novelty or design-around potential, Opp. at 12, but Dr. Schaefer repeatedly stated in both his expert report and deposition that he had no opinions of his own and was, indeed, relying on Dr. Madisetti. *See, e.g.*, ECF No. 152-2 ¶ 151 ("As I am not offering my opinions regarding the prior art or novelty of the '858 patent in this matter, I am relying on the report of Dr. Madisetti as well as interviews I have conducted with him to determine whether a patented feature is novel in comparison with the prior art."); ECF No. 151-6 at 109:21–24 ("With respect to apportionment, I'm relying on Dr. Madisetti with things like the novelty and the design around potential."). Paltalk cannot run away from Dr. Schaefer's admissions.

Paltalk makes two excuses for its experts' failure to disclose their opinions: (i) that Dr. Madisetti's opinions were disclosed in his expert report; and (ii) that Dr. Schaefer can rely on the undisclosed opinions anyway. Both fail. *First*, Dr. Madisetti's novelty and design-around opinions are indisputably as of the assumed priority date of the asserted patent—June 28, 2000— *not* as of the asserted hypothetical negotiation dates. ECF No. 152-9 ¶¶ 73, 79.[4] That mistake is critical; indeed, Mr. Bratic admitted that the availability of noninfringing alternatives would affect his hypothetical negotiation analysis. Ex. 10 at 73:3–9. *Second*, left only with Dr. Madisetti's undisclosed opinions about novelty as of the hypothetical negotiation date, Paltalk argues that Cisco "had every opportunity to explore both experts' opinions." Opp. at 12. But the opinions must be properly disclosed in the first instance. ECF 151-9 at 64:24–65:4 ("THE COURT: [W]here in

---

[4] Paltalk argues that Dr. Madisetti "analyzed the benefits of the patent as of 2004," but it confusingly cites only to "*Id.* ¶ 72, 90." Opp. at 13. The preceding citation is Mr. Willis's expert report, neither paragraph of which relates to Dr. Madisetti's analysis. Even assuming Paltalk intended to cite Dr. Madisetti's report, those paragraphs recite the Court's claim construction (¶ 72) and benefits of the '858 patent in accomplishing low bandwidth connections (¶ 90). They do not support that he conducted an analysis as of 2004.

the technical expert's report is there something that provides the information that Mr. Bratic intends to rely on?"). Even though the Court gave Paltalk an opportunity to correct and fully disclose its experts' opinions, Paltalk again nested its expert opinions three layers deep: Mr. Bratic relies on Dr. Schaefer's apportionment opinions, which in turn rely on Dr. Madisetti's undisclosed opinions about novelty as of the date of the hypothetical negotiation. The Court should exclude this entire nesting doll of unsupported opinions.[5]

### C. Paltalk's Remaining Arguments Are Meritless.

Paltalk tries to shift the blame for its failure to meet its burden of proof by arguing that it is *Cisco's* fault that Paltalk lacks quantitative information. Paltalk's blame-casting fails. *First*, Cisco *did* produce quantitative information about the usage of mixed VoIP- and PSTN-conferences despite Paltalk's more-than-17-year delay bring this case, and Ms. Kindler relied extensively on this information. But Paltalk eschews this objective data in favor of Dr. Schaefer's subjective feelings, and even seeks to preclude Ms. Kindler from relying on the objective data. ECF No. 148. *Second*, contrary to Paltalk's assertions, Cisco produced more than one document. In addition to the usage data that Paltalk ignores, Cisco produced year-by-year revenue and P&L data that were hundreds of thousands of rows long. *Third*, despite bearing the burden on damages, Paltalk never moved to compel production of more information.

Finally, Paltalk concedes that Mr. Bratic's "reasonableness check" is based on Dr. Schaefer's flawed apportionment. The Court should exclude it for the same reasons.

### III. CONCLUSION

Cisco respectfully requests that the Court exclude the opinions offered by Paltalk's experts.

---

[5] Paltalk does not dispute that it would be inappropriate to permit it to present unapportioned revenues of WebEx Audio should the Court exclude Mr. Bratic's apportionment analysis. *See* ECF No. 151 ("Mot.") at 3.

Dated: November 28, 2023                                  Respectfully submitted,

/s/ *Sarah E. Piepmeier*
Sarah E. Piepmeier (admitted, Cal. SBN. 227094)
Elise Edlin (admitted *pro hac vice*)
Robin L. Brewer (admitted *pro hac vice*)
Karl M. Johnston (admitted *pro hac vice*)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
SPiepmeier@perkinscoie.com
EEdlin@perkinscoie.com
RBrewer@perkinscoie.com
KJohnston@perkinscoie.com
Telephone: 415.344.7000
Facsimile: 415.344.7050

Ryan Hawkins (*pro hac vice*)
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, California 92130
RHawkins@perkinscoie.com
Telephone: 858.720.5700
Facsimile: 858.720.5799

Jessica J. Delacenserie (*pro hac vice*)
PERKINS COIE LLP
1201 3rd Ave, Suite 4900
Seattle, Washington 98101
JDelacenserie@perkinscoie.com
Telephone: 206.359.8000
Facsimile: 206.359.9000

Olivia S. Radics (admitted *pro hac vice*)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
ORadics@perkinscoie.com
Telephone: (608) 663-7460

Michael E. Jones (SBN. 10929400)
Shaun W. Hassett (SBN. 24074372)
POTTER MINTON, P.C.
110 N. College Ave., Suite 500

-11-

        Tyler, Texas 75702
        mikejones@potterminton.com
        shaunhassett@potterminton.com
        Telephone: 903-597-8311
        Facsimile: 903-531-3939

        Attorneys for Defendant
        CISCO SYSTEMS, INC.

-13-

## **CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 28, 2023.

                                              */s/ Sarah E. Piepmeier*
                                              Sarah E. Piepmeier