# EXHIBIT 10

```
            IN THE UNITED STATES DISTRICT COURT

             FOR THE WESTERN DISTRICT OF TEXAS

                       WACO DIVISION

                         --o0o--

    PALTALK HOLDINGS, INC.,        )
                                   )
                 Plaintiff,        )
                                   )
         vs.                       )  No. 6:21-CV-00757-ADA
                                   )
    CISCO SYSTEMS, INC.,           )
                                   )
                 Defendants.       )
                                   )
                                   )
    _____)

                         --o0o--

                      Deposition of

                      WALTER BRATIC

               TUESDAY, OCTOBER 24, 2023

                         --o0o--

            Reported by:  EMMA HARRIS
             RPR, CRR, CSR No. 14387
```

```
 1                    A P P E A R A N C E S
 2
     For the Defendant, CISCO SYSTEMS, INC.:
 3
                         Perkins Coie LLP
 4                       BY:  ELISE S. EDLIN, Attorney at Law
                              KARL JOHNSTON, Attorney at Law
 5                       505 Howard Street, Suite 1000
                         San Francisco, California 94105
 6                       Telephone:  (415) 344-7150
                         Facsimile:  (415) 344-7350
 7                       Email:  EEdlin@perkinscoie.com
 8
     For the Plaintiff, PALTALK HOLDINGS, INC.:
 9
                         Susman Godfrey
10                       BY:  RYAN CAUGHEY, Attorney at Law
                         1000 Louisiana, Suite 5100
11                       Houston, Texas 77002-5096
                         Telephone:  (713) 653-7823
12                       Facsimile:  (713) 654-6666
                         Email:  rcaughey@susmangodfrey.com
13
14   Also present:
15                       SOUFOU LEE, videographer
16
17
18
19
20
21
22
23
24
25
```

1  potential dates of first infringement?
2     A.  No.
3     Q.  And so, then, you didn't -- you didn't have any
4  information about any other dates of first infringement
5  prior to seeing Dr. Schaefer's revised report in August of
6  2023; is that right?
7     A.  Not based on his analysis.
8     Q.  When you say "not based on his analysis," what do
9  you mean?
10    A.  Well, if you read my supplemental report, I
11 mention the possibility of a hypothetical negotiation in --
12 in May 2007, which is when Cisco acquired WebEx
13 Communications.  That's not dependent on Dr. Schaefer's
14 analysis.
15    Q.  Why is that not dependent on Dr. Schaefer's
16 analysis?
17    A.  Because it has nothing to do with Dr. Schaefer.
18 Dr. Schaefer did not opine the date of first infringement
19 was in May 2007.  The May 2007 date is a date that I thought
20 would -- might be relevant for the trier of fact to consider
21 in light of Ms. Kindler's opinion that the WebEx
22 Communication product that came out in 20 -- 1999 is the
23 same product that they continued to sell through the end of
24 the life of the '848 patent.
25        Therefore, she assumed that the product of the -- the

1  accused WebEx audio functionality infringed the '848 patent
2  in January 2004, and that the product is accused to have
3  infringed, at least as of 2010, based on Dr. Schaefer's
4  analysis, is -- would be reasonable to consider May 2007 as
5  the date of hypothetical negotiation of first infringement
6  by Cisco, because that's when Cisco, which is the only party
7  in this lawsuit and is the only party that has accused
8  products in this lawsuit, first acquired a product which
9  then became an accused product in this case.
10         Q.  Okay.  I'm going to try to unpack this but -- a
11 little bit.
12         Did your -- your con -- sorry.  Strike that.
13         You mentioned a 2007 date as a potential date for the
14 hypothetical negotiation; right?
15         A.  Yes.
16         Q.  And Mr. Schaefer -- excuse me -- Dr. Schaefer did
17 not do any technical analysis for you with respect to any
18 products in 2007 to determine whether or not the products at
19 that time infringed; right?
20         A.  That's correct.
21         Q.  And Dr. Schaefer did not do any technical analysis
22 you -- for you with respect to any products prior to 2007 to
23 determine whether or not those products infringed?
24         A.  That's correct.
25         Q.  Okay.  So your report -- in your report, you

1   understand it.

2       Q.  So is it your position that because the damages
3   period in this case is six years from the date that Paltalk
4   filed suit -- so it starts in 2015 -- is it your position
5   that the date of the damages period means that it doesn't
6   matter when the hypothetical negotiation occurred, because
7   that is the period that would be factored at any time?

8       MR. CAUGHEY:  Objection.  Form.

9       THE WITNESS:  No, that's not true.  There's
10  approximately -- I'm giving you an approximation --
11  approximately 2,500 days from July 13, 2015, to July 26,
12  '22.  If the hypothetical negotiation occurred on any one of
13  those days after July 13, 2022, up to July 26, 2022, then
14  the hypothetical negotiation would result in different
15  royalty damages.

16      So it is not the case, as Ms. Kindler asserts, that it
17  doesn't matter to me when the hypothetical negotiation
18  occurs.  It happens to be under the facts of this case that
19  whether a hypothetical negotiation occurred in 2004,
20  May 2007, or 2010, I concluded the outcome of the
21  hypothetical negotiating terms of royalty damages wouldn't
22  change based on three -- those three dates.  And I've also
23  concluded that Ms. Kindler's royalty opinions wouldn't
24  change if the hypothetical negotiation occurred in 2007 or
25  2010 compared to her date of 2004.

1  Dr. Madisetti determined it did not have in either 2004,
2  May 20 -- 2007 or 2010.
3       So that's an example where the outcome of the
4  hypothetical could have -- could change.  For example, if
5  Dr. Madisetti had been of the opinion that Cisco had no
6  non-infringing alternative available in January 2004 but did
7  in 2010, that would have impacted my analysis of a
8  reasonable royalty.  I would have had to take that into
9  consideration.
10      But that's not the case here, because Dr. Madisetti
11 confirmed for me on Friday that his opinion, as I set forth
12 in my supplemental expert report from August 2022, is that
13 either in 2004, 2007, or 2010, Cisco did not have any
14 available, acceptable, non-infringing alternatives that
15 could -- could -- would have provided the same or similar
16 functionality as did the patent-in-suit without infringing
17 the patent-in-suit.
18      Q.  Has Mr. Madisetti ever done an analysis of
19 non-infringing alternatives that were available on July 13th
20 of 2015?
21      MR. CAUGHEY:  Objection.  Form.
22      THE WITNESS:  I don't know if he has or hasn't.  I
23 didn't ask him.  But I'm just giving you an example of how
24 that could have an impact on the hypothetical negotiation.
25      Q.  BY MS. EDLIN:  Did you ask him to do any analysis

1   incremental benefit attributed to the patent technology, and
2   then I do a split of the incremental benefit to determine
3   how much of the incremental benefit is retained by Cisco for
4   its contributions to allow it to enjoy those incremental
5   benefits, and how much of the incremental benefits are then
6   attributed or should be paid to Paltalk as a reasonable
7   royalty.
8        Q.   BY MS. EDLIN:  And this analysis that -- that
9   you've done doesn't change between 2004, 2007, 2010, and
10  2015; right?
11       A.   Well, depends on when in 2015.  If it starts in
12  July 14, 2015, then yes, it would change.
13       Q.   Okay.  So your analysis does not change between
14  2004, 2007, 2010, and prior to July 14, 2015?
15       A.   Yes.  On those specific dates.
16       Q.   Okay.  Why doesn't it change on those specific
17  dates?
18       A.   Well, it doesn't change on those specific dates
19  for two -- two primary reasons that are overarching.  When
20  you look at the patent statute and when you look at the
21  Georgia-Pacific patents, they zero in on the use made of the
22  patent invention.
23            And then, of course, the use made of the patent
24  investigation and the patent statute, the only compensation
25  that Paltalk is entitled to is the use that's compensable to

C E R T I F I C A T E   O F   R E P O R T E R

I, EMMA HARRIS, RPR, CRR, CSR NO. 14387, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor in any way interested in the outcome of the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of OCTOBER 2023.

_____
EMMA HARRIS
RPR, CRR, CSR NO. 14387