# EXHIBIT L-2

**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| PALTALK HOLDINGS, INC., | |
| Plaintiff, | **CIVIL ACTION NO.: 6:21-cv-00757-ADA-DTG** |
| v. | |
| CISCO SYSTEMS, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**FINAL JURY INSTRUCTION NO. 1:  JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be. Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for Paltalk or Cisco in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be.

Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**FINAL JURY INSTRUCTION NO. 2:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses here at trial or at a deposition that will be presented to you, the documents and exhibits that I will admit into evidence, and any facts the lawyers agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you draw from the facts and circumstances that you believe have been proven.

Nothing else is evidence. The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that is attempted to be offered into evidence is improper under the rules of evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.

Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial.  That does not mean you have to believe all of the evidence.  It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The fact that Paltalk filed a lawsuit is not evidence that she is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence. Likewise, the fact that Cisco has raised arguments against the claims asserted is not evidence that Cisco is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here and nothing else.

Some evidence may be admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**FINAL JURY INSTRUCTION NO. 3:  WITNESSES AND WITNESS CREDIBILITY**

You alone are to determine the questions of credibility or truthfulness of the witnesses.

In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  For instance, has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**FINAL JURY INSTRUCTION NO. 4: IMPEACHMENT BY A WITNESS' INCONSISTENT STATEMENTS**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that contradicted the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that misstatement may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

**FINAL JURY INSTRUCTION NO. 5:  DEPOSITION AND REMOTE LIVE TESTIMONY**

Certain testimony may be presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been read or shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**FINAL JURY INSTRUCTION NO. 6:  EXPERT TESTIMONY**

You have heard from what are known as expert witnesses. Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

You will get to weigh the expert's testimony just like you will consider any witness's testimony. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You should measure it against all the other testimony and evidence in the case. Again, just like with any other witness, you are free to accept or reject the testimony of experts.

**FINAL JURY INSTRUCTION NO. 7:  INTERROGATORIES**

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**FINAL JURY INSTRUCTION NO. 8:  STIPULATIONS**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**FINAL JURY INSTRUCTION NO. 9:  DEMONSTRATIVES**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

**FINAL JURY INSTRUCTION NO. 10:  CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts unless I specifically admitted a chart or summary into evidence. You should determine the facts from the evidence.

**FINAL JURY INSTRUCTION NO. 11:  BIAS—CORPORATE PARTY INVOLVED**

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**FINAL JURY INSTRUCTION NO. 12: BURDENS AND STANDARDS OF PROOF GENERALLY**

In any legal action, facts must be proved by a required amount of evidence known as the "standard of proof." This case involves two different standards of proof, "preponderance of the evidence" and "clear and convincing evidence." The burden of meeting the applicable standard of proof is on Paltalk for some issues and on Cisco for other issues.

**FINAL JURY INSTRUCTION NO. 13:  PREPONDERANCE OF THE EVIDENCE**

The burden of proof applicable to Paltalk in this case is known as the preponderance of evidence. Paltalk has the burden of proving patent infringement and damages by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely than not – i.e., evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as slightly greater than 50%. If you find that Paltalk has failed to prove any element of its claim of patent infringement or damages by a preponderance of the evidence, then it may not recover on that claim.

Cisco does not have any burden of proof on the issues of patent infringement or damages.

**FINAL JURY INSTRUCTION NO. 14: BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

PALTALK'S PROPOSED INSTRUCTION:

The burden of proof applicable to Cisco in this case is known as clear and convincing evidence. Cisco has the burden of proving invalidity by clear and convincing evidence.

For invalidity, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven. Clear and convincing evidence is evidence so clear, direct, weighty, and convincing as to enable you to come to a clear conviction without hesitancy.

This is different from the criminal law standard of "beyond a reasonable doubt." On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of the "clear and convincing" standard as being between these two standards.

CISCO'S PROPOSED INSTRUCTION:

The burden of proving invalidity is on Cisco. In particular, Cisco must prove invalidity by clear and convincing evidence. Clear and convincing evidence means that it is highly probable that the fact is true. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

**FINAL JURY INSTRUCTION NO. 15: SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

Paltalk filed suit in this court seeking money damages from Cisco for allegedly infringing the '858 Patent by using in the United States methods that are covered by claims 1-5 of the '858 Patent. These claims may be referred to as the "Asserted Claims."

The products that are alleged to infringe are Cisco's WebEx audio-conferencing products, including WebEx App, WebEx Suite, WebEx Meeting, WebEx Messaging, WebEx Calling, WebEx iOS App, WebEx Android App, WebEx Meetings for iOS, WebEx Meetings for Android, WebEx Teams, WebEx Meetings for Microsoft Teams, and WebEx Training.

Cisco also argues that these claims are invalid. If you decide that any Asserted Claim of the '858 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to compensate it for the infringement.

**FINAL JURY INSTRUCTION NO. 16:  PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For all claim terms, you should apply the ordinary meaning of those terms in the field of the patent.

**FINAL JURY INSTRUCTION NO. 17: INDEPENDENT AND DEPENDENT CLAIMS**

There are two types of patent claims:  independent claims and dependent claims. Both types of claims are asserted in this case.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 of the '858 Patent is an independent claim.

The remainder of the asserted claims in Paltalk's patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A method that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim. If any requirement of the dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the method is not covered by that dependent claim.

**FINAL JURY INSTRUCTION NO. 18:  INFRINGEMENT**

I will now instruct you how to decide whether or not Paltalk has proven that Cisco has infringed any of the Asserted Claims of the '858 Patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim. You may also find that none of the claims are infringed.

Here, Paltalk alleges that Cisco accused Webex audio-conferencing products infringe claims 1, 2, 3, 4, and 5 of the '858 Patent.

In order to prove infringement, Paltalk must prove by a preponderance of evidence that Cisco used a method that infringed any of the Asserted Claims of the '858 Patent.

**FINAL JURY INSTRUCTION NO. 19:  INVALIDITY GENERALLY**

Another issue you will be asked to decide is whether the asserted claims of the '858 Patent are invalid.

A claim of a patent may be invalid because it claims subject matter that is obvious. Even if every element of a claim is not sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time *in view of one or more prior art references*. You will need to consider a number of questions in deciding whether the asserted claims of the '858 Patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.

If you decide that any claim of the '858 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Paltalk to compensate it for the infringement. Paltalk is not entitled to any compensation for any invalid claim. A damages award should put Paltalk in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Paltalk would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. *The damages* you award are meant to compensate Paltalk and not to punish Cisco. You may not include in your award any additional amount as a fine or penalty in order to punish Cisco. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

**FINAL JURY INSTRUCTION NO. 20:  PRIOR ART**

PALTALK'S PROPOSED INSTRUCTION:

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." In this case, the prior art includes references, such as publications or patents, that Cisco contends disclose the claimed invention or elements of the claimed invention.

Cisco contends that the prior art can be applied to the claims as shown below:

| References |
| --- |
| Pearce + Oran (cl. 1) |
| Pearce + Oran + Robert (cls. 2-3) |
| Pearce + Oran + Salama (cls. 4-5) |
| Botzko (cls. 1-3) |
| Botzko + Rosenberg (cls. 4-5) |
| CallManager (cls. 1-5) |
| ITU-T Recommendation H.323 (cls. 1-3, 5) |
| ITU-T Recommendation H.323 + IETF RFC 2543 (cl. 4) |

The ultimate burden of proving by clear and convincing evidence that the Asserted Claims of Paltalk's patent are invalid is on Cisco, and this burden never shifts.

CISCO'S PROPOSED INSTRUCTION:

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claims 1, 2, 3, 4, and 5 of the '858 Patent are anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Cisco contends that the following prior art references anticipate or render obvious the asserted claims of the '858 Patent:

| References |
| --- |
| Pearce + Oran (cl. 1) |

| |
|---|
| Pearce + Oran + Robert (cls. 2-3) |
| Pearce + Oran + Salama (cls. 4-5) |
| Botzko (cls. 1-3) |
| Botzko + Rosenberg (cls. 4-5) |
| CallManager (cls. 1-5) |
| ITU-T Recommendation H.323 (cls. 1-3, 5) |
| ITU-T Recommendation H.323 + IETF RFC 2543 (cl. 4) |

**FINAL JURY INSTRUCTION NO. 21:  OBVIOUSNESS**

I will now instruct you on Cisco's obviousness defense.

Even though an invention may not have been identically disclosed or described in a single prior art reference, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Cisco contends that claim 1 of the '858 Patent was obvious in view of U.S. Patent No. 7,079,495 to Pearce et al. ("Pearce") in combination with U.S. Patent No. 6,418,125 to Oran ("Oran"). Cisco contends that claims 2 and 3 of the '858 Patent were also obvious in view of Pearce and Oran in further combination with U.S. Patent No. 6,327,276 to Robert et al. ("Robert"). Cisco contends that claims 4 and 5 of the '858 Patent were also obvious in view of Pearce and Oran in further combination with U.S. Patent No. 6,584,093 to Hussein Farouk Salama et al. ("Salama").

Cisco further contends that claims 1–3 of the '858 Patent were obvious in view of U.S. Patent No. 6,141,597 to Botzko et al. ("Botzko"). Cisco contends that claims 4 and 5 of the '858 Patent were also obvious in view of Botzko in combination with the IETF Internet Draft entitled "An RTP Payload Format for User Multiplexing" by Rosenberg et al. ("Rosenberg"). Cisco further contends that claims 1–5 of the '858 Patent were obvious in view of the Cisco Communication Network using Cisco/Selsius CallManager ("CallManager").

Cisco further contends that claims 1–5 of the '858 Patent were obvious in view of the Cisco Communication Network using Cisco/Selsius CallManager ("CallManager").

Cisco further contends that claims 1-3 and 5 of the '858 Patent were obvious in view of ITU-T Recommendation H.323, and that claim 4 of the '858 Patent was also obvious in view of ITU-T Recommendation H.323 in combination with IETF RFC-2543.

Cisco may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent, that someone would have had, at the time the claimed invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, as well as the ordinary knowledge of the person of ordinary skill at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.

In considering whether a claimed invention is obvious, you may consider whether, as of the date of the asserted patent, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) whether the change resulted more from design incentives or other market forces.

a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention.

**FINAL JURY INSTRUCTION NO. 22:  WRITTEN DESCRIPTION**

One of Cisco's invalidity arguments is based on the written description requirement.

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date. Cisco contends Claims 1, 2, 3, 4, and 5 of the '858 Patent are invalid because the specification of the '858 Patent does not contain an adequate written description of the invention.

To succeed, Cisco must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the claimed effective filing date of June 28, 2000, would not have recognized that it describes the full scope of the invention as it is finally claimed in Claims 1, 2, 3, 4, and 5 of the '858 Patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

**FINAL JURY INSTRUCTION NO. 23:  LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to:  (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

**FINAL JURY INSTRUCTION NO. 24:  DAMAGES – INTRODUCTION**

If you find that Cisco infringed any valid claim of Paltalk's patent, you must then consider what amount of damages to award to Paltalk. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Cisco has not infringed any valid claim of the asserted patents, then Paltalk is not entitled to any damages.

If you award damages, they must be adequate to compensate Paltalk for any infringement you find. A damages award should put Paltalk in approximately the same financial position that it would have been in had the infringement not occurred. Your damages award, if you reach this issue, should not be less than what the patent holder would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Paltalk and not to punish Cisco. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Paltalk for the infringement, in order to punish Cisco.

Paltalk has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Paltalk establishes are more likely than not. While Paltalk is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Paltalk seeks damages in the form of what it contends to be a reasonable royalty. You must be careful to ensure that award is no more and no less than the value of the patented invention.

**FINAL JURY INSTRUCTION NO. 25:  DATE OF COMMENCEMENT OF DAMAGES**

CISCO'S PROPOSED INSTRUCTION:

In determining the amount of damages, you must determine when the damages began.

If you find that a product has been sold or licensed, by Paltalk or a third party, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the licensed products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents. Paltalk has the burden of establishing that it substantially complied with the marking requirement. This means Paltalk must show that substantially all of the products made, offered for sale, or sold under the asserted patents have been marked, and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the asserted patent marked the products.

If Paltalk's licensees have not marked practicing products with the patent number, you must determine the date that Cisco received actual notice of the asserted patents and of the specific product alleged to infringe.  Actual notice means that Paltalk communicated to Cisco a specific charge of infringement of each asserted patent by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.

If you find that an embodying product has not been sold, then the marking and notice requirements do not affect the damages period. If you find that the asserted patent was granted before the infringing activity began, damages should be calculated as of the date you determine that infringement began. If you find that the asserted patent was granted after the infringing activity began, damages should be calculated as of the date the patent issued.

**FINAL JURY INSTRUCTION NO. 26:  REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is defined as the money amount that the patent owner and the alleged infringer would have agreed to if a hypothetical negotiation had taken place at the time just prior to when any infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

The reasonable royalty award must be based on the incremental value that the patented invention adds to an accused process. When the infringing methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented feature.

**FINAL JURY INSTRUCTION NO. 27: REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The value that the claimed invention contributes to the accused product.
2. The value that factors other than the claimed invention contribute to the accused product.
3. Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that Paltalk and Cisco or WebEx would consider in setting the amount Cisco should pay. I will list for you a number of factors (commonly referred to as the "Georgia-Pacific factors") that you may consider. They are as follows:

1. The royalties received by the patentee for the licensing of the patent-in-patent-in- suit, proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of other patents comparable to the patent- patent- in- suit.;

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales;

7. The duration of the patent and the term of the license;

8. The established profitability of the product made under the patents, its commercial success, and its current popularity;

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; , that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**FINAL JURY INSTRUCTION NO. 28:  DAMAGES – APPORTIONMENT**

PALTALK'S PROPOSED INSTRUCTION:

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused method or other factors such as marketing or advertising. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the method, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing methods have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**Source: *Hafeman v. LG*, No. 6:21-CV-00696, Dkt. 239 (W.D. Tex. Apr. 28, 2023); Federal Circuit Bar Association Model Patent Jury Instructions, 2020 Ed. (Last Edited May 2020) § 5.12 (with modification).**

CISCO'S PROPOSED INSTRUCTION:

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused method or other factors such as marketing or advertising, or Paltalk's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the method, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing methods have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

In other words, the royalty base must be closely tied to the patented invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

**FINAL JURY INSTRUCTION NO. 29:  DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

**FINAL JURY INSTRUCTION NO. 30:  DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**FINAL JURY INSTRUCTION NO. 31:  SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information about this case to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, a smartphone, tablet, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website (such as Facebook, LinkedIn, YouTube, Snapchat, Instagram, TikTok, WeChat, Twitter), or any other way to communicate. You may not communicate to anyone any information about this case or to conduct any research about this case until this case is over, and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

_____
JURY FOREPERSON