IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PALTALK HOLDINGS, INC., | § § § § | |
| Plaintiff | | |
| vs. | § § | No. 6:21-cv-00757-ADA |
| CISCO SYSTEMS, INC., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

## DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR MISTRIAL

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | LEGAL STANDARD | 4 |
| IV. | A MISTRIAL IS REQUIRED | 5 |
| | A. Cisco justifiably relied on the Court's guidance from the August 1 pretrial conference | 5 |
| | B. Cisco suffered substantial prejudice when the Court changed course at the start of trial | 6 |
| | C. The resulting prejudice to Cisco cannot be cured without a mistrial | 7 |
| V. | CONCLUSION | 9 |
| | CERTIFICATE OF SERVICE | 12 |

## I. INTRODUCTION

Cisco has tremendous respect for the Court and its rulings. Cisco believes its conduct throughout this case has demonstrated that respect. Cisco is forced to bring this motion, despite its full realization of the juridical inefficiencies created by the relief requested, because it relied reasonably and in good faith on guidance from the Court regarding how a pivotal claim term would be handled at trial. But from the very first moments of trial, that guidance was changed, and Paltalk was permitted to both show and tell the jury that the Court had already rejected Cisco's reading of the asserted claims. Further, Cisco was forced to let those assertions go unchallenged and unrebutted as Cisco presented its infringement case. The damage is done, and nothing short of a mistrial can put Cisco back on equal footing in this dispute.

## II. BACKGROUND

During expert discovery, Cisco uncovered a latent dispute about the meaning of "each." When Cisco's counsel deposed Paltalk's infringement expert, Dr. Schaefer, he revealed that he had been interpreting "each" to mean "one or more"—not "all," as that word normally means. ECF No. 72 at 2. Cisco promptly brought that dispute to the Court's attention. ECF No. 72 at 1; ECF No. 67 (Dec. 6, 2022 Hearing Tr.) at 4:1–8:6; *see also id.* at 4:24–25 ("We now have a clear claim construction dispute."). Cisco's counsel urged that the Court should resolve the meaning of "each," *id.* at 7:8, 8:7–10, and requested supplemental *Markman* briefing to do so, ECF No. 72 at 1. The Court denied Cisco's request and left the matter for the summary-judgment briefs. *See* ECF No. 67 at 24:6–25; ECF No. 72 at 4 ("the briefing on Cisco's motion for summary judgment will be sufficient to resolve this issue").

Cisco fully briefed the construction of "each" at summary judgment, explaining that the meaning of that term did not extend to "one or more." ECF No. 54 at 1–2, 10–18. Cisco explained that the plain and ordinary meaning of "each" was not "one or more," and that the intrinsic and

extrinsic evidence confirmed as much—including the surrounding claim language, the specification, many dictionary definitions, and testimony from both parties' experts. *Id.* at 12–16. What's more, every court to consider the meaning of "each" had confirmed that it means "all." *Id.* at 16–17. Cisco also reiterated that the claim-scope dispute over "each" should not be submitted to the jury because it presented a claim-construction question. *Id.* at 11; ECF No. 87 at 3 (citing *O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008)).

At the June 30, 2022, pretrial conference, the Court denied Cisco's summary-judgment motion orally and remarked that "'each' has a plain and ordinary meaning which *can include* one or more." 2023.06.30 PTC Tr. 156:8–12 (emphasis added). It was unclear to Cisco whether (or how) the Court had *construed* "each" or *declined* to decide whether the term as used in the patent meant "all" or meant "one or more." Cisco and Paltalk met and conferred, but they found that they had "differing interpretations of the Court's ruling." ECF No. 133 at 1. For its part, Paltalk believed the Court had ruled as a matter of law that "each" meant "one or more," and that therefore "one or more" would satisfy the claims. *See* ECF No. 135 at 1. Cisco disagreed with Paltalk's interpretation of the Court's statement regarding "each" and asked the Court for clarification:

> [I]t is unclear to Cisco whether (a) the Court agreed with Paltalk that the plain and ordinary meaning of the term is a factual dispute such that the parties will present argument and testimony regarding the meaning of the term to the jury, or (b) the Court ruled that as a matter of law the term "each" *means* "one or more." During the meet and confer, Paltalk indicated that its understanding is (b); i.e., that the Court ruled as a matter of law that the term means "one or more."

ECF No. 133 at 2.

At the August 1, 2024 final pretrial conference, this Court heard argument and clarified that it had *not* defined "each" to necessarily include "one or more" but had left that issue open such that at trial both sides can provide their different positions on the meaning of "each":

> MS. PIEPMEIER: … And the question we have, Your Honor, is whether Your Honor has ruled that "each" *means* one or more; in

> other words, Your Honor has defined the word "each" in the context of the '858 patent to mean --
>
> THE COURT: I have not. I have not.
>
> MS. PIEPMEIER: Okay. So just to clarify, Your Honor's ruling is that "each" takes its plain and ordinary meaning, that *can* include one or more, it does not have to include—
>
> THE COURT: Correct. Yes, ma'am.
>
> MS. PIEPMEIER: Okay. Thank you.
>
> And just one other point just because I want to make sure our experts don't run afoul of Your Honor's ruling, that the experts will presumably provide opinion to the jury as to how one of ordinary skill in the art would understand the plain and ordinary meaning of "each." It could be one or more; it could be all or every, et cetera.
>
> THE COURT: Yes, ma'am.

PTC 2024.08.01 Tr. 8:3–21 (emphases added). Although Cisco's position remained that, as a matter of law, the plain and ordinary meaning of "each" is "all" or "every" and that the Court should not construe that term to include "one or more," Cisco also understood from the August 1 hearing that the Court was submitting the choice between "all" or "one or more" to the jury—and that each side would need to present its case for how "each" should be interpreted. Paltalk declined the opportunity to further supplement its expert reports. *Id.* at 23:1–7.

Over the next three weeks, Cisco prepared its case for trial based on that guidance. It made strategic choices about which witnesses to call, which arguments to make, which prior art to drop, which noninfringement arguments to drop, and how to use its limited trial time—all based on the idea that it would have the opportunity to establish that a person of ordinary skill would understand "each" to mean "all," not "one or more," in the asserted claims.

On day one of trial, however, the Court applied different parameters. Cisco objected to a demonstrative slide that showed an excerpt from a pretrial hearing transcript where the Court said "each has a plain and ordinary meaning which can include one or more." Cisco believed this

violated both the guidance from the August 1 final pretrial conference and Court MIL #17. *See* ECF No. 186 at 3; Tr. 6:16–7:24. But the Court overruled Cisco's objection on grounds that it *had* construed "each." Tr. 9:14–10:14. The jury, then, would *not* decide what "each" means. *See, e.g.,* Tr. 623:2–7 ("THE COURT: I have told you what the plain and ordinary meaning of the word is. He needs—your direct needs to be limited to: Have you reviewed the Court's construction? Did you apply it to the products? What don't we infringe? That's what you're going to do."); Tr. 625:19–20 ("THE COURT: … He doesn't get to say this is what I think the plain and ordinary meaning is.").

Near the end of the second day of trial, the Court changed gears and ordered that "the jury will decide" the meaning of "each" after all. Tr. 653:11–12 ("THE COURT: Okay. 'Each' will be for the—the jury will decide it."). But at that point, cross-examination was closed on Paltalk's infringement case and Cisco had already put on all its own technical fact witnesses.

### III. LEGAL STANDARD

A mistrial is warranted if a party was "prevented … from receiving a fair trial," *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1310 (5th Cir. 1977), and "is 'appropriate when there is a high degree of necessity.'" *Zamora v. City of Houston*, 798 F.3d 326, 337 (5th Cir. 2015) (quoting *Renico v. Lett*, 559 U.S. 766, 774 (2010)). Whether to grant a mistrial "is reserved to the 'broad discretion' of the trial judge." *Renico*, 559 U.S. at 774 (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1961)). Courts have granted a mistrial to avoid prejudice to a party's case "caused by ... justifiable reliance" on a pretrial order. *Lieberman v. Corporacion Experienca Unica, S.A.*, No. 14-cv-3393, 2019 WL 13426204, at *1 n.1 (E.D. Pa. Dec. 9, 2019). Courts have also granted a mistrial where prejudice could "not be cured or reversed by the Court with a mere limiting instruction." *Sandolf v. Martin Marietta Materials, Inc.*, 6:19-cv-00516-ADA, ECF No. 76 (W.D. Tex. July 7, 2023).

## IV. A MISTRIAL IS REQUIRED

### A. Cisco justifiably relied on the Court's guidance from the August 1 pretrial conference

Cisco diligently and in good faith attempted to resolve any dispute and uncertainty over the meaning of "each" long before trial. Cisco first uncovered a dispute over the meaning of "each" while conducting expert discovery. Cisco brought the issue to the Court's attention immediately, more than 18 months ago. ECF No. 67 (Tr. 4:1–8:18). Cisco asked the Court to construe "each" to mean "all" or "every." ECF No. 54; ECF No. 72 at 1; ECF No. 67 (Tr. 9:20–10:14). And when the Court instead announced that "'each' has a plain and ordinary meaning which can include one or more," ECF No. 131 (Tr. 156:9-12), Cisco promptly moved for clarification, ECF No. 133 at 1-2.

On August 1—more than a year later and just over three weeks before trial—the Court answered that "each" in the '858 claims "could be one or more; it could be all or every," and that the parties would be entitled to present evidence at trial "as to how one of ordinary skill in the art would understand the plain and ordinary meaning of 'each.'" ECF No. 183 (Tr. 8:3-21). While Cisco maintained its position that "each" should be construed to mean "all" or "every," ECF No. 183 (Tr. 8:25–9:1), it recognized the Court's ruling and prepared its case accordingly—on the express understanding that the meaning of "each" had not been definitively established and that the jury would decide what claim scope to apply, subject to persuasion by the evidence presented at trial.

Cisco thus reasonably thought it understood the Court's ground rules for addressing the meaning of "each" in the asserted claims at trial. And it relied on that understanding to inform numerous decisions leading up to trial. It prepared to present exhibits and testimony from several witnesses to inform the jury regarding the correct understanding "each." It declined to pursue

certain noninfringement and invalidity theories it had developed in favor of others that depend on reading "each" to mean "all" or "every." And it chose which witnesses to call and omitted others based on those considerations. In short, Cisco crafted its trial presentation with a primary aim of establishing that "each" meant "all" or "every" in the asserted claims of the '858 patent—just as it had asserted since first uncovering the parties' dispute over that term.

### B. Cisco suffered substantial prejudice when the Court changed course at the start of trial

Having framed its liability case around establishing that "each" means "all" or "every" in the '858 claims, Cisco found itself confronting a very different playing field from the first moments of trial. In deciding initial objections over demonstrative slides, the Court informed Cisco that it *had* construed "each" and that it had been decided the term "has a plain and ordinary meaning which can mean one or more." Tr. 9:14–10:14.

That led to immediate and irreparable prejudice.

- The jury was shown an excerpt from a pretrial hearing transcript and told that, as a "ruling of the Court," the claim term "each has a plain and ordinary meaning which can include one or more." Tr. 201:2-18; PDX3 (Schaefer) at 34; *contra* ECF No. 186 (Court MIL No. 17).

- Paltalk's technical expert Dr. Schaefer was permitted to rely on those prior comments by the Court to suggest that Paltalk's preferred construction of "each" had been blessed by the Court. Tr. 201:2-18.

- Dr. Schaefer returned to the same point *repeatedly*, each time reinforcing the idea that the central pillar of Cisco's noninfringement case—that "each" means "all" or "every" in the '858 claims—had to be rejected because it contradicted a binding Court ruling. Tr. 259:3-24, 268:2-12, 271:10-16; *see also id.* 265:20–266:7.

- At the same time, Cisco was prohibited from cross-examining Dr. Schaefer using countervailing statements from the Court found in the pretrial record, where the Court had clarified that it had not defined each to necessarily include "one or more," that it could mean "all or every," and that the experts could each provide opinion to the jury as to how one of ordinary skill would understand the plain and ordinary meaning of "each". Tr. 306:8–307:23.

- Cisco was likewise prohibited from asking testifying engineers about their understanding as persons of ordinary skill in the art about what "each" means in view of their experience in the field. Tr. 569:22–570:22.

- And Cisco was precluded from otherwise even attempting to present or defend its own construction of "each." *See* Tr. 620:18–623:10.

Cisco thus faced highly prejudicial demonstrative and testimonial evidence, presented repeatedly to convey a message to the jury that Cisco's primary noninfringement argument had been forbidden by a prior Court order. Even worse, Cisco was denied any opportunity to adequately respond. It was hamstrung in cross-examination and could not present countervailing affirmative support for the meaning of "each" it had used as the foundation of its liability case. And trial had already started by the time any of this became apparent—far too late for Cisco to shift trial strategy.

### C. The resulting prejudice to Cisco cannot be cured without a mistrial

The prejudice to Cisco cannot "be cured or reversed by the Court with a mere limiting instruction," *Sandolf*, 6:19-cv-00516-ADA, ECF No. 76, or any other relief short of a mistrial.

First, a curative instruction cannot unring the bell Paltalk rang early and often when it touted "one or more" as the Court-blessed "ruling" or "construction." *See* Tr. 201:2–15, 259:7–19, 259:23–24; *see also* Tr. 200:12, 201:2, 201:7, 201:16, 259:8, 259:18, 260:14, 267:25, 271:15 ("ruling"); Tr. 174:19–20, 259:22, 268:3–4, 308:22 ("construction"). Cisco was not allowed to bring

up the August 1 pretrial hearing transcript that clarified and contextualized the Court's earlier statement. Tr. 307:17-308:4. And after two full days of trial, no possible instruction would "alleviate [that] erroneous impression created in the mind of the jurors" by the repeated comments Cisco was prevented from adequately responding to at the time. *O'Rear*, 554 F.2d at 1309 (curative instructions inadequate because party was not given adequate "opportunity to rebut" prejudicial statements). The issue of "each" is key to both parties' infringement cases. Thus, Paltalk's thumb-on-the-scale presentation is "likely to have a substantial impact on the jury's verdict" and is thus "so highly prejudicial as to be incurable by" an instruction. *United States v. Ramirez-Velasquez*, 322 F.3d 868, 878 (5th Cir. 2003).

Second, the Court's evidentiary decisions prevented Cisco from fully testing Paltalk's case. Cisco was stymied from contextualizing Paltalk's prejudicial remarks and from fully cross-examining Dr. Schaefer about the meaning of "each." Cisco was precluded in particular from asking about the impact of the Court's August 1 clarification. Tr. 307:17–308:4. That issue is critical because Dr. Schaefer relied *almost exclusively* on the first transcript in assuming that "each" meant "one or more." *See* Tr. 268:7–12. A curative instruction cannot fix that problem, and Dr. Schaefer is done testifying. *O'Rear*, 554 F.2d at 1308–09 (curative instructions inadequate because party was not given adequate "opportunity to rebut" prejudicial statements).

Third, only a mistrial would permit Cisco to present its technical fact witnesses' relevant personal knowledge about whether "each" has a technical meaning in their field, as it tried to do in the first place. The Court sustained a relevance objection to that line of questioning, Tr. 569:22–570:21, consistent with the Court's view at the time that the plain and ordinary meaning of "each" was not to be disputed. A curative instruction cannot undo that prejudice, and those witnesses have finished testifying too.

-8-

Fourth, only a mistrial can cure the prejudice suffered by Cisco's justifiable reliance on the Court's pretrial guidance. Cisco *prepared* its case under the understanding that "each" was up for debate, but it had to *try* a significant chunk of it—all of Paltalk's infringement/damages case, and the first portion of Cisco's case—under the directive that the meaning of "each" *had* to accommodate "one or more" and there was no room for the jury to decide. *See Lieberman*, 2019 WL 13426204, at *1 n.1 (mistrial in light of "justifiable reliance on the Court's pretrial order" after admissibility position with respect to damages witness testimony changed midway through trial). A mistrial is necessary for Cisco to receive a fair opportunity to present its case.

## V. CONCLUSION

To ensure that Cisco can have a fair trial and defend itself from Paltalk's allegations, the Court should grant Cisco's motion and declare a mistrial. In the event the Court does not grant this motion, Cisco requests the opportunity to submit a curative instruction.

| | |
|---|---|
| Dated: August 28, 2024 | Respectfully submitted, |

/s/ Sarah E. Piepmeier
Sarah E. Piepmeier
Elise Edlin (admitted *pro hac vice*)
Robin L. Brewer (admitted *pro hac vice*)
Nathan B. Sabri (admitted *pro hac vice*)
Karl M. Johnston (admitted *pro hac vice*)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
SPiepmeier@perkinscoie.com
EEdlin@perkinscoie.com
RBrewer@perkinscoie.com
NSabri@perkinscoie.com
KJohnston@perkinscoie.com
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Ryan Hawkins (admitted *pro hac vice*)
Abigail A. Gardner
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
RHawkins@perkinscoie.com
AGardner@perkinscoie.com
Telephone: (858) 720-5709
Facsimile: (858) 720-5809

Jessica J. Delacenserie (admitted *pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
JDelacenserie@perkinscoie.com
Telephone: (206) 359-3644

Andrew T. Dufresne (admitted *pro hac vice*)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
ADufresne@perkinscoie.com
Telephone: (608) 663-7460

Jonathan I. Tietz (admitted *pro hac vice*)
PERKINS COIE LLP
700 13th Street NW, Suite 800

Washington, DC 20005
JTietz@perkinscoie.com
(202) 942-8667

Michael E. Jones (SBN: 10929400)
Shaun W. Hassett (SBN: 24074372)
POTTER MINTON
110 North College
500 Plaza Tower
Tyler, TX  75702
mikejones@potterminton.com
shaunhassett@potterminton.com
Telephone: (903) 597.8311
Facsimile: (903) 593.0846

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 28, 2024.

*/s/ Sarah E. Piepmeier*
Sarah E. Piepmeier