# Exhibit 13

# Direct Examination of Lauren R. Kindler

*Paltalk Holdings*
*v.*
*Cisco Systems, Inc.*

DDX-8.1

# Education and Work Experience

## EDUCATION



B.A., Economics (1995)



M.A., Economics (2006)

## WORK EXPERIENCE

 **The Brattle Group**
(1996 – 1998)

 National Economic Research Associates
(1998 – 1999)

 Analysis Group
(2000 – Present)

# Affiliations and Acknowledgements



**Member of Licensing Executives Society**



**Identified as a top patent damages expert**

# Assignment

 Evaluate Mr. Bratic's damages opinions

 Evaluate Paltalk's damages assuming patent is found valid and infringed

# Evidence Reviewed





**Other Information**

- ➢ '858 Patent
- ➢ HearMe asset purchase agreement
- ➢ Depositions

- ➢ Financial data
- ➢ Marketing materials and presentations
- ➢ License agreements
- ➢ Depositions

- ➢ Legal documents
- ➢ Expert reports
- ➢ Discussions with Mr. Willis and Cisco personnel
- ➢ Independent research

# Summary of Opinions



Mr. Bratic's royalty opinions are flawed and significantly overstated



If patent is valid and infringed, a lump-sum royalty payment of **$1.0M to $1.5M** is reasonable

# Hypothetical Negotiation Framework



Prudent businesses willing to negotiate

Reasonable knowledge and expectations



Agreement must be reached

Assume patent is valid and infringed

# *Georgia-Pacific* Factors

| | | |
|---|---|---|
| **1** Royalties paid by others for the patent | **6** Convoyed or derivative sales | **11** Extent of infringer's use of the patent |
| **2** Royalties paid by licensee for similar technology | **7** Duration of the patent | **12** Customary royalties for use of similar inventions |
| **3** Type of license | **8** Commercial success and popularity of the technology | **13** Profit credited to the patent |
| **4** Licensing policies | **9** Advantages over other methods | **14** Opinion of experts |
| **5** Relationship of the parties | **10** Benefits to using the patent | **15** Hypothetical Negotiation |

# Mr. Bratic's Approach



Total Webex U.S. Audio Revenues

✖

Gross Profit Margin: ▮▮▮▮

✖

Technical Apportionment Factor: ▮▮▮▮

✖

Split of Economic Benefit: ▮▮▮▮

=

Claimed Royalty Damages: $102.6 million

# Mr. Bratic Measured the Value of the Wrong Invention



**Walter Bratic**
*Paltalk's Damages Expert*

22.    The '858 Patent provides conferencing servers the ability to support both legacy switched-based equipment as well as new packet-based systems.[50]  Specifically, the '858 Patent discloses a hybrid server architecture that allows mixing (e.g., PC-based clients) and non-mixing (e.g., phone) clients the ability to simultaneously participate in the same audio conference.[51]  This hybrid system

24.    The distinguishing feature of the '858 Patent over the prior art is the ability to allow communication among many types of devices or terminals (e.g., desktop, mobile, landline, VoIP) using different respective communication protocols, and allow for determination of each terminal's communication capability, without losing quality of communication.[57]  Specifically, the



**Scott Schaefer**
*Paltalk's Technical Expert*

    Q.    So in other words, you took the view that
flexibility to join a conference through telephone or
desktop-based VoIP was the exact scope and teachings of
the '858 patent, right?
    A.    It fell within the scope, yes.

# Mr. Bratic Measures Damages for the Wrong Invention





WebEx[TM] MediaTone[TM] technology ==enables WebEx meeting participants worldwide to enjoy the richest set of data, voice and video interactive services together with unparalleled network performance and reliability.== The secure, highly scalable MediaTone Network can support millions of simultaneous calls, and as many as ==5,000 individuals== may attend one meeting.

# Flawed and Overstated Calculations



Total Webex U.S. Audio Revenues ✖

✖

Gross Profit Margin: ▮ ✖

✖

Technical Apportionment Factor: ▮ ✖

✖

Split of Economic Benefit: ▮ ✖

=

Claimed Royalty Damages: $102.6 million ✖

# Flawed and Overstated Calculations



**Total Webex U.S. Audio Revenues** ✗

✗

**Gross Profit Margin:** ▮

✗

**Technical Apportionment Factor:** ▮

✗

**Split of Economic Benefit:** ▮

=

**Claimed Royalty Damages: $102.6 million**

# Webex Meeting Minutes by Type of Participant



# Meeting Minutes that Include VoIP and PSTN Participants



# Mr. Bratic Ignored Usage

**Mr. Bratic's starting point revenues**

**Majority of meeting minutes do <u>not</u> include both VoIP & PSTN participants**

# Flawed and Overstated Calculations



Total Webex U.S. Audio Revenues ✖

✖

**Gross Profit Margin:** ▮ ✖

✖

Technical Apportionment Factor: ▮

✖

Split of Economic Benefit: ▮

=

**Claimed Royalty Damages: $102.6 million**

# Mr. Bratic's Profit Margin Is Too High



**\* Operating expenses are associated with engineering and management personnel supporting Webex**

# Flawed and Overstated Calculations





DDX-8.20

# Overstated Technical Apportionment Factor



# Corrections to Mr. Bratic's Damages





# Real World Facts Ignored by Mr. Bratic



- Limited contribution of the patent
- Paltalk never commercialized the patent
- Relevant patent license and sale agreements
- Available, acceptable non-infringing alternatives

January
2004

# Real World Facts Ignored by Mr. Bratic



Limited contribution of the patent

Paltalk never commercialized the patent

Relevant patent license and sale agreements

Available, acceptable non-infringing alternatives

January
2004

# Mr. Bratic Overstated the Contribution of the Patent

➢ Majority of meetings/minutes are <u>VoIP-only or PSTN-only</u>

➢ Key demand drivers are unrelated to the patent

➢ Webex and Cisco's contributions are significant

# Key Demand Drivers Are Unrelated to the Patent

**Brand Reputation**



**Customer Service**



**Video Conferencing**



**Compatible Hardware**



**Screen Sharing**



**Ease of Use**



**Reliability**



**Security**



# Webex Has Many Important Features



 Messaging

 Video Messaging

 Calling

 Polling

 Whiteboarding

 Meetings

 Events

 Webinars

# Cisco's / Webex's Substantial Investments

 **Paltalk's Contribution**

 **Webex's Contributions**

License to **'858 Patent**

**Development** of Webex Meetings and other accused products

**Sales and marketing** to commercialize and promote the products

**Engineering** to support and improve the products

**Implementation** of numerous non-accused features

740 **Webex patents** (over 400 relating to Webex Audio)

# Cisco's / Webex's Patented Inventions

 **Paltalk's Patent**

 **Single** '858 Patent

**Select Webex Audio-Related Patents**

**47** relate to conference management or teleconferencing

**40** relate to either VoIP or PSTN

**37** relate to connecting data flows

**29** relate to bandwidth savings

**26** relate to other audio features

**20** relate to audio quality

**19** relate to voice recognition or noise isolation

**15** relate to mute or mute on join options

**14** relate to scalability

**12** relate to either mixing or multiplexing

**11** relate to echo cancellation suppression

**9** relate to interoperability

# Real World Facts Ignored by Mr. Bratic



# Paltalk Never Commercialized the Patent



# Real World Facts Ignored by Mr. Bratic



Limited contribution of the patent

Paltalk never commercialized the patent

Relevant patent license and sale agreements

Available, acceptable non-infringing alternatives

January
2004

paltalk

webex



DDX-8.33

DDX-8.34

DDX-8.36



# 2001 HearMe – Paltalk Agreement



ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement"), effective as of December 19, 2001 (the "Effective Date"), is by and between HearMe, a Delaware corporation, and its wholly-owned subsidiaries, AnotoTalk Networks, Inc., a California corporation, and Resounding Technologies, Inc., a Delaware corporation (collectively, "HearMe"), having a principal office at 685 Clyde Avenue, Mountain View, California 94043, and PalTalk Holdings, Inc. ("Buyer"), a Delaware corporation, having a principal place of business at 213 West 35th Street, Thirteenth Floor, New York, NY 10001 (collectively the "Parties").

WITNESSETH THAT

WHEREAS, HearMe owns and/or has acquired certain rights to software, trademarks, domain names, improvements and applications for letters patent and/or letters patent related to such improvements;

WHEREAS, HearMe desires to sell, and Buyer desires to buy, certain assets of HearMe, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the promises herein, and for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound, HearMe and Buyer hereby agree as follows:

ARTICLE I.  DEFINITIONS

In addition to other words and terms defined elsewhere in this Agreement, as used herein the following words and terms shall have the following meanings, respectively, unless the context hereof clearly otherwise dictates:

1.1    "Applications" shall mean HearMe's software applications more fully described in Appendix A, in both Object Code and Source Code form developed by HearMe (including all of HearMe's right, title and interest in copyrights and trade secrets, recognized in any country or jurisdiction of the world, embodied in, related to, or used in each of the Applications) and all HearMe Improvements thereto, except that Applications shall not include ownership of any third party code included in any one or more of the Applications.  A description of the Source Code for certain of the Applications is provided in Appendix I.  Applications shall not include those rights and licenses that Buyer is required to obtain pursuant to Section 2.5 of this Agreement.

1.2    "Domain Names" shall include the domain names listed in Appendix B.

1.3    "Improvements" shall mean any modifications, derivative works, upgrades, improvements, extensions, including, without limitation, major, minor and maintenance releases, to or for the Applications.

**Exhibit 0008** 9/14/2022 Jason Katz

CONFIDENTIAL

PT_0008767

> Paltalk purchased HearMe assets, including:

  - 12 U.S. patents and patent applications (including the application that issued as the **'858 Patent**)

  - software, domain names, trademarks, & equipment

> Paltalk made a one-time payment of **$145,000**

# 2001 HearMe – Paltalk Agreement Compared to Hypothetical Negotiation

## Similarities

 Includes the application that issued as the '858 Patent

 Close in time to the hypothetical negotiation in 2004

## Differences

 Included software, other IP, and equipment beyond the '858 Patent application

 Agreement was for an asset purchase, not a non-exclusive license

 The '858 Patent had not yet been issued (patent application only)

 HearMe was a financially-distressed entity

# 2001 HearMe – Paltalk Agreement: Adjustments



| Difference | Discount Factor | Adjusted Payment |
|---|---|---|
| Likelihood of Patent Issuance | 44.5% | ~$326K |
| Discount for Liquidation of Financially-Distressed Entity | Up to 76.7% | ~$622K |

# Royalty Payment Implied by Paltalk – HearMe Agreement

Acquisition Price: **$145,000**



Likelihood of Patent Issuance: **44.5%**



1 – Discount for Distressed Assets: **23.3%**



Implied Royalty Payment: **$1.4 Million**

# Real World Facts Ignored by Mr. Bratic



DDX-8.42

# Webex Had Available Non-Infringing Alternatives

 Sending only the loudest user's audio stream when multiple participants are speaking at once

 Sending mixed audio to all devices (not just devices not capable of mixing)

**Both non-infringing alternatives are:**

- **Commercially acceptable**
- **Inexpensive and easy to implement**
- **Well known**

# Outcome of the Hypothetical Negotiation

Reasonable royalty damages of no more than:
**$1.0 million to $1.5 million**

# Mr. Bratic's Damages Are Way Too High

