# Exhibit 16

DDX-9.1

# CISCO

## Defendant Cisco's Closing Argument

*Paltalk Holdings, Inc. v. Cisco Systems, Inc.*

August 29, 2024

Case No. 6:21 - cv- 00757

CISCO

DDX-9.1

# Schaefer Does Not Say Webex Infringes if Each Means All

DDX–9.2



**Scott Schaefer**
Paltalk's Expert

**Q.** You'd agree with me that if "each" means "all" in Claim 1, Webex does not infringe, right?

**A.** I'd have to think about it, but I was using "one or more." So --

**Q.** So I guess I can put it this way: You did not provide an opinion in your reports that Webex meets these claim elements by sending a set of multiplexed stream to all clients with a capability to mix audio, right?

**A.** I don't believe I did.

*Trial Tr. 313:5 - 14*

DDX–9.3

# Cisco's Experts on "Each"



**Dean Willis**
Industry Expert

**Q.** Mr. Willis, once again, what is your understanding of the meaning of the term "each" as it's used in the '858 patent?

**A.** In every instance I identified of the use of the word "each" in the '858 patent, it has meant or I have taken it to mean each and every one of a set.

*Trial Tr. 700:2 - 7*



**Jim Bress**
Industry Expert

**Q.** In your opinion, does "each" -- does "each" mean "one or more" in the context of the '858 patent?

**A.** In the context of the '858 patent, no. I believe that the way the word "each" is used, it was meant to mean "every."

*Trial Tr. 900:6 - 10*

## Claims 2 and 3 Require Each = All



DDX−9.5

## Mr. Willis Consulted the Patent to Understand "Each"



**Dean Willis**
Industry Expert

**Q.** Okay. Mr. Willis, what is your understanding of this plain and ordinary meaning of "each"? Where does that come from?

**A.** Well, I have the plain and ordinary meaning of someone who's been speaking English for 60 years, and I do a lot of technical discussion and standards work. So we're pretty cognizant of the meaning of words and of this sort that limit or explain things that apply to this whole exercise of explaining how things work.

**Q.** In addition to your own personal experience and understanding of the English language, did you consult the '858 patent to determine if it uses the term in the same manner?

**A.** Yes. I did.

*Trial Tr. 670:12 - 20, 670:21 - 25*

DDX-9.5

DDX-9.6

# Dr. Schaefer Never Explained...



**Scott Schaefer**
Paltalk's Expert

**1)** Why one sentence has to be shoehorned into claim 1, or

**2)** What gets removed in claims 2 or 3 if it's not included in claim 1

cisco

DDX-9.6

## Schaefer: No Opinion if "Each" Means "All"

DDX–9.7



**Scott Schaefer**
Paltalk's Expert

**Q.** You'd agree with me that if "each" means "all" in Claim 1, Webex does not infringe, right?

**A.** I'd have to think about it, but I was using "one or more." So --

**Q.** So I guess I can put it this way: You did not provide an opinion in your reports that Webex meets these claim elements by sending a set of multiplexed stream to all clients with a capability to mix audio, right?

**A.** I don't believe I did.

*Trial Tr. 313:5 - 14*

# Webex Does Not Practice 1.6 or 1.8



**Nathan Buckles**
Distinguished Engineer



**Aaron Belcher**
Principal Engineer

**1**. A method of providing audio conferencing for a plurality of clients using varying equipment and protocols, comprising the steps of:

(1) receiving an audio packet from each of the plurality of clients;

(2) determining which of the plurality of clients is an active speaker and forming an active speakers list;

(3) determining that a first subset of the plurality of clients has the capability to mix multiple audio streams;

(4) determining that a second subset of the plurality of clients does not have the capability to mix multiple audio streams;

(5) multiplexing said packets of audio data received from each client on said active speakers list into a multiplexed stream;

(6) ~~ending said multiplexed stream to each of said first subset of the plurality of clients;~~

(7) mixing said packets of audio data received from each client on said active speakers list into one combined packet; and

(8) ~~ending said combined packet to each of said second subset of the plurality of clients;~~

whereby said plurality of clients can simultaneously participate in a single audio conference application.

# Webex Uses Unique Streams

DDX-9.9



**Nathan Buckles**
Distinguished Engineer



**Aaron Belcher**
Principal Engineer

**Q.** Okay. And just stepping back to a higher view of this whole example you've walked us through, do each of these users always get their own separate streams?

**A.** Yes.

*Trial Tr. 561:11 - 14*

**Q.** Does Webex send every participant a unique stream regardless of whether they joined by phone number dial-in or by clicking a hyperlink?

**A.** Yes. They do.

*Trial Tr. 610:1 - 4*

## Schaefer Agrees: Webex Sends Unique Streams

DDX-9.10



**Scott Schaefer**
Paltalk's Expert

**Q.** So in other words, in Webex, each active speaker receives a unique multiplexed stream, right?

**A.** Yes.

*Trial Tr. 312:20 - 22*

**Q.** You agree with me that at Webex, each active speaker receives a unique multiplexed stream, right?

**A.** Yes.

*Trial Tr. 314:6 - 8*

DDX-9.10

DDX-9.11

# Why Webex Uses Unique Streams



**Aaron Belcher**
Principal Engineer

**Q.** Is there anything else that would differentiate those streams?

**A.** Yeah. So both of those participants, they could be on different, you know, network connections. So their bandwidth that's available might be different. So we would adjust the quality of their audio to deal with that. So they might have a lower quality or different audio for that reason.

The streams would also be encrypted, and that would make the streams different.

*Trial Tr. 609:12 - 21*

DDX-9.12

# Code Confirms: Webex Uses Unique Streams



**Dean Willis**
Industry Expert

"And the code checks each packet against the active speaker. If the packet was not sourced from that active speaker, then the packet gets encoded into an output queue or an output stream, in the language of the patent, that would go just to that one active speaker.

Consequently, we end up with a number of streams, one per active speaker, each containing a unique combination of data."

*Trial Tr. 708:2 - 10*

## Cisco Has No Burden on Infringement

DDX-9.13

**FINAL JURY INSTRUCTION NO. 12:**

Cisco does not have any burden of proof on the issues of patent infringement or damages.

## Verdict Form

DDX-9.14

### QUESTION 1: DIRECT INFRINGEMENT

**Directions:** In answering Question 1 below, please answer either "Yes" or "No" for each listed claim. <mark>If you answer "No" for claim 1, you must answer "No" for claims 2-5.</mark>

**QUESTION 1:** Has **Paltalk** proven by a preponderance of the evidence that **Cisco** directly infringed the following claims of the Patent-in-Suit? "Yes" is a finding for **Paltalk**. "No" is a finding for **Cisco**.

The '858 Patent



Claim 1: Yes _____ No _____

Claim 2: Yes _____ No _____

Claim 3: Yes _____ No _____

Claim 4: Yes _____ No _____

Claim 5: Yes _____ No _____



# What came before the '858 patent

## An Invention Cannot Be Obvious

**FINAL JURY INSTRUCTION NO. 18:**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.

## An Invention Cannot Be Obvious

DDX-9.17

**FINAL JURY INSTRUCTION NO. 19:**

Even though an invention may not have been identically disclosed or described in a single prior art reference, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

DDX-9.17

DDX-9.18

# Botzko Was First



**Botzko's Patent**

(DX037)

## United States Patent [19]

**Botzko** et al.

[54] **AUDIO PROCESSOR**

[75] Inventors: **Stephen C. Botzko**, Reading; **David M. Franklin**, Maynard, both of Mass.

[73] Assignee: **PictureTel Corporation**, Andover, Mass.

[21] Appl. No.: **08/925,309**

[22] Filed: **Sep. 8, 1997**



DX037 (Botzko) at Fig. 1

DDX-9.18

DDX-9.19

# Botzko's Patent



**NON-MIXING CLIENTS**

**MIXING CLIENTS**



*DX037 (Botzko) at Fig. 3*



*DX037 (Botzko) at Fig. 2A*

# The Claimed Invention Was Obvious

DDX-9.20



**Jim Bress**
Industry Expert

### Botzko's Patent
**SEPTEMBER 1997**



### '858 Patent, Claim 1
**JUNE 2000**

> ✓ 1. A method of providing audio conferencing for a plurality of clients using varying equipment and protocols, comprising the steps of:
>
> ✓ (1) receiving an audio packet from each of the plurality of clients;
>
> ✓ (2) determining which of the plurality of clients is an active speaker and forming an active speakers list;
>
> ✓ (3) determining that a first subset of the plurality of clients has the capability to mix multiple audio streams;
>
> ✓ (4) determining that a second subset of the plurality of clients does not have the capability to mix multiple audio streams;
>
> ✓ (5) multiplexing said packets of audio data received from each client on said active speakers list into a multiplexed stream;
>
> ✓ (6) sending said multiplexed stream to each of said first subset of the plurality of clients;
>
> ✓ (7) mixing said packets of audio data received from each client on said active speakers list into one combined packet; and
>
> ✓ (8) sending said combined packet to each of said second subset of the plurality of clients;
>
> ✓ whereby said plurality of clients can simultaneously participate in a single audio conference application.

DDX-9.21

# The Claimed Invention Was Obvious



**Jim Bress**
Industry Expert

### Botzko's Patent
**SEPTEMBER 1997**

### Rosenberg
**MAY 1998**



### '858 Patent, Claims 2-5
**JUNE 2000**

✓ **2.** The method of claim **1**, further comprising the step of:
before sending said multiplexed stream to one of said first subset of the plurality of clients, removing from said multiplexed stream said packets of audio data received from said one of said first subset of the plurality of clients when said one of said first subset of the plurality of clients is on said active speakers list.

✓ **3.** The method of claim **1**, further comprising the step of:
before sending said combined packet to one of said second subset of the plurality of clients, removing from said combined packet said packets of audio data received from said one of said second subset of the plurality of clients when said one of said second subset of the plurality of clients is on said active speakers list.

✓ **4.** The method of claim **1**, wherein at least one of said first subset of the plurality of clients is using PC-based equipment and the Session Initiation Protocol (SIP).

✓ **5.** The method of claim **1**, wherein at least one of said second subset of the plurality of clients is using a telephone and the H.323 protocol.



DDX-9.21

DDX–9.22

# Using a List Was Obvious

I. A method of providing audio conferencing for a plurality of clients using varying equipment and protocols, comprising the steps of:

(1) receiving an audio packet from each of the plurality of clients;

(2) determining which of the plurality of clients is an active speaker and forming an active speakers list;

(3) determining that a first subset of the plurality of clients has the capability to mix multiple audio streams;

(4) determining that a second subset of the plurality of clients does not have the capability to mix multiple audio streams;

(5) multiplexing said packets of audio data received from each client on said active speakers list into a multiplexed stream;

(6) sending said multiplexed stream to each of said first subset of the plurality of clients;

(7) mixing said packets of audio data received from each client on said active speakers list into one combined packet; and

(8) sending said combined packet to each of said second subset of the plurality of clients;

whereby said plurality of clients can simultaneously participate in a single audio conference application.



When two or more speakers are determined to exist by selector **26'** the detector provides to the mixer **28**, over lines **37**, signal information identifying on which of the input lines the speakers can be found. The mixer **28** can mix, depending

*DX037 (Botzko) at 7:54 - 57, Fig. 3*

# Using a List Was Obvious

DDX-9.23



**Jim Bress**
Industry Expert

"A list is ... probably the most basic fundamental data structure [in] software. So providing information about multiple active speakers would be in a list."

*Trial Tr. at 841:5 - 8*



When two or more speakers are determined to exist by selector **26'** the detector provides to the mixer **28**, over lines **37**, signal information identifying on which of the input lines the speakers can be found. The mixer **28** can mix, depending

*DX037 (Botzko) at 7:54 - 57, Fig. 3*

DDX-9.24

# Botzko Shows Multiplexing

1. A method of providing audio conferencing for a plurality of clients using varying equipment and protocols, comprising the steps of:

(1) receiving an audio packet from each of the plurality of clients;

(2) determining which of the plurality of clients is an active speaker and forming an active speakers list;

(3) determining that a first subset of the plurality of clients has the capability to mix multiple audio streams;

(4) determining that a second subset of the plurality of clients does not have the capability to mix multiple audio streams;

(5) multiplexing said packets of audio data received from each client on said active speakers list into a multiplexed stream;

(6) sending said multiplexed stream to each of said first subset of the plurality of clients;

(7) mixing said packets of audio data received from each client on said active speakers list into one combined packet; and

(8) sending said combined packet to each of said second subset of the plurality of clients;

whereby said plurality of clients can simultaneously participate in a single audio conference application.



to SITE "C". In an application where SITE "C" may receive multiple audio streams, the selector **26** may be appropriately modified to select more than one of the SITES "A", "B", or "D" for coupling to SITE "C". It should be noted that an

* * *

this problem. Thus, the selector **26**/switch(es) **22** will output the loudest speakers (more than one) in separate streams to the local mixing end-point SITES. The system can limit the

DX037 (Botzko) at 5:1 - 4, 5:54 - 56, Fig. 2A

## Botzko  Shows Multiplexing

DDX-9.25



**Scott Schaefer**
Paltalk's Expert



"Multiplexing is just taking multiple streams of data and combining them together to transmit down, say, a single connection."

*Trial Tr. at 188:1 - 3*

to SITE "C". In an application where SITE "C" may receive multiple audio streams, the selector **26** may be appropriately modified to select more than one of the SITES "A", "B", or "D" for coupling to SITE "C". It should be noted that an this problem.    * * *    Thus, the selector **26**/switch(es) **22** will output the loudest speakers (more than one) in separate streams to the local mixing end-point SITES. The system can limit the

*DX037 (Botzko) at 5:1 - 4, 5:54 - 56, Fig. 2A*





# Clear and Convincing Evidence



DDX- 9.28



Paltalk's demand for $102 million

## HearMe Acquisition

DDX-9.30



**Jason Katz**
Paltalk Founder, CEO

**Q.** Did that purchase price reflect how Paltalk valued the HearMe assets?

**A.** No. I said that a bunch of times. I think it was just an extreme fire sale based on the way the world was and where HearMe was, and their liquidation was a once-in-a-lifetime sort of opportunity.

*Trial Tr. 140:3 - 8*

**A.** I couldn't even put a price on what it was worth to us to own that.

*Trail Tr. 101:6*

DDX-9.30

# Paltalk/ HearMe  Purchase Agreement

DDX-9.31





DDX-9.32

# Paltalk Never Used the '858 Patent



**Jason Katz**
Paltalk Founder, CEO

**Q.** Now, during the life of the '858 patent, <mark>Paltalk has never sought to license that patent itself, correct?</mark>

**A.** <mark>Correct.</mark>

*Trial Tr. 125:11 - 14*

**Q.** And over the course of the past 20 years since the patent has issued, Paltalk has had numerous other products, but <mark>none of them have used the '858 patent here, correct?</mark>

**A.** <mark>That's correct.</mark>

*Trial Tr. 125:6 - 10*





# No Benefit From the '858 Patent



**Jason Katz**
Paltalk Founder, CEO

> **Q.** Has Paltalk -- but you would agree with me that ==Paltalk has never generated any revenue or benefit from the '858 patent== standing alone?
>
> **A.** ==That is correct.==

*Trial Tr. 127:15 - 18*

DDX-9.33

# Paltalk's Apportionment



**Water Bratic**
Paltalk Expert



'858 Patent ≠ VoIP + PSTN

## Schaefer Agrees: VoIP + PSTN Was Not New

DDX-9.36



**Scott Schaefer**
Paltalk's Expert

**Q.** But you would agree that there are, in fact, ways to do hybrid calls, VoIP to PSTN calls, without infringing the '858 patent, right?

**A.** There are -- there are ways.

**Q.** You agree that it was possible prior to the '858 patent to have a VoIP and PSTN call?

**A.** I believe so.

*Trial Tr. 320:9 - 15*

# Early PSTN and VoIP Systems





DX068



Botzko Patent (DX037)



# MediaTone Had VoIP + PSTN





**Aaron Belcher**
Principal Engineer

**Q.** Do you know whether the underlying MediaTone product is from before 2003?

**A.** Yeah. So Webex was started in 1996, and it was -- it's always been known as MediaTone.

**Q.** Does this document, that's DX-68, does it show VoIP and PSTN users on the same meeting?

**A.** It does.

*Trial Tr. 597:8 - 14*

DDX-9.39





# Mr. Bratic Overstates Alleged Benefits



**Water Bratic**
Paltalk Expert

# Market Value of License to the '858 Patent

DDX-9.42



**Lauren Kindler**
Damages Expert



No more than **$1.5 Million**



Approximately ██████

Reasonable Royalty of No More Than:
**$1.0 million – $1.5 million**

# Hypothetical Negotiation



DDX-9.44

# Verdict Form

### QUESTION 1: DIRECT INFRINGEMENT

**Directions:** In answering Question 1 below, please answer either "Yes" or "No" for each listed claim. <mark>If you answer "No" for claim 1, you must answer "No" for claims 2-5.</mark>

**QUESTION 1:** Has **Paltalk** proven by a preponderance of the evidence that **Cisco** directly infringed the following claims of the Patent-in-Suit? "Yes" is a finding for **Paltalk**. "No" is a finding for **Cisco**.

The '858 Patent



Claim 1: Yes _____ No_____

Claim 2: Yes _____ No_____

Claim 3: Yes _____ No_____

Claim 4: Yes _____ No_____

Claim 5: Yes _____ No_____

DDX-9.44

## Verdict Form

DDX-9.45

### QUESTION 2: INVALIDITY- OBVIOUSNESS

**Directions:** In answering Question 2 below, please answer either "Yes" or "No" for each listed claim.

**QUESTION 2:** Has **Cisco** proven by clear and convincing evidence that the following claims of the Patent-in-Suit are invalid based on obviousness? "Yes" is a finding for **Cisco**. "No" is a finding for **Paltalk**.

The '858 Patent



Claim 1: Yes _____ No_____

Claim 2: Yes _____ No_____

Claim 3: Yes _____ No_____

Claim 4: Yes _____ No_____

Claim 5: Yes _____ No_____

DDX-9.46

# Verdict Form

## QUESTION 3: INVALIDITY- WRITTEN DESCRIPTION

**Directions:** In answering Question 3 below, please answer either "Yes" or "No" for each listed claim.

**QUESTION 3:** Has **Cisco** proven by clear and convincing evidence that the following claims of the Patent-in-Suit are invalid for inadequate written description? "Yes" is a finding for **Cisco**. "No" is a finding for **Paltalk**.

The '858 Patent

Claim 2: Yes __✓__ No_____

Claim 3: Yes __✓__ No_____

DDX-9.47

# Verdict Form

**You should proceed to answer Question 4 only if:**

   **(1) you answered "YES" for any claim or claims in Question 1, AND**

   **(2) you answered "NO" for the same claim or claims in Questions 2 and 3.**

<u>**QUESTION 4: DAMAGES**</u>

**QUESTION 4:** If you found any Asserted Claim of the '858 Patent both infringed and not invalid, what is the amount of damages that **Paltalk** has proven by a preponderance of the evidence that it is entitled to for **Cisco's** infringement of the Asserted Claims of the Patent-in-Suit?

$_____