**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **PALTALK HOLDINGS, INC.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| **vs.** | § | **No. 6:21-cv-00757-ADA** |
| | § | |
| **CISCO SYSTEMS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT CISCO SYSTEMS, INC.'S OPPOSITION TO**
**PALTALK'S MOTION TO AMEND FINAL JUDGMENT**

## I.     INTRODUCTION

Paltalk seeks an unwarranted windfall in the form of prejudgment interest despite its significant delay in bringing this lawsuit and the jury's clear indication that it awarded the entire amount necessary to make Paltalk whole.  For nearly two decades, Paltalk sat on its hands without so much as a letter to Cisco.  That delay not only hampered Cisco's ability to mount a robust defense, but also strategically positioned Paltalk to capitalize on the increased usage of Webex during the COVID-19 pandemic.  An award of prejudgment interest would reward Paltalk for its delay—to Cisco's detriment—in bringing this case.

Paltalk's stale allegations hampered Cisco's ability to put on a full defense.  Among other things, Paltalk's delay deprived Cisco of critical evidence regarding the extensive non-infringing Webex conferences involving only VoIP users that Paltalk does not accuse of infringement.

Moreover, the jury's verdict **_already_** represents comprehensive compensation for any infringement of Paltalk's patent.  Both parties presented their damages calculations, and the jury awarded Paltalk $65,720,700.  That amount (though excessive for the reasons explained in Cisco's post-trial motion) was supposed to reflect the full measure of damages necessary to make Paltalk whole, taking into account the financial position it would have been in had the infringement not occurred.  The jury's decision left no room for additional interest.

The Court should deny Paltalk's request for pre-judgment interest.[1]

## II.     LEGAL STANDARD

As the Supreme Court has recognized, Section 284 "do[es] not … requir[e] the award of prejudgment interest whenever infringement is found."  _Gen. Motors Corp. v. Devex Corp._,

---

[1] While Cisco disputes the propriety of an award of pre-judgment interest, Cisco does not contest the methodology of the pre-judgment interest calculation Paltalk proposes.  Cisco also does not oppose an award of post-judgment interest pursuant to 28 U.S.C. § 1961 if the Court denies Cisco's motion for JMOL or a new trial.  _See_ Notice of Agreed Post-Judgment Interest Rate, Dkt. 228.

461 U.S. 648, 656 (1983).  Instead, district courts have discretion in determining whether to award

prejudgment interest and, if so, what amount.  *Id.* at 656–57.  In particular, "it may be appropriate

to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been

responsible for undue delay in prosecuting the lawsuit …."  *Id.* at 657; *see also Crystal*

*Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001)

(affirming denial of prejudgment interest where plaintiff delayed bringing suit).

## III.    ARGUMENT

### A.    The Court Should Deny Pre-Judgment Interest Due to Paltalk's Delay

Undue delay in filing suit with resulting prejudice to the defendant may warrant denial of

prejudgment interest.  *Crystal Semiconductor*, 246 F.3d at 1361–62.  Here, Paltalk's unreasonable

delay resulted in tactical advantage to Paltalk and prejudice to Cisco.

#### 1.    Paltalk's Delay Was Unjustified

Paltalk delayed bringing this suit using any reference point.  The asserted patent issued on

January 27, 2004,[2] but Paltalk did not file this case until July 23, 2021, more than ***17 years later***.

*See* PX016.  The evidence presented at trial showed that, for purposes of infringement, Webex

operated in substantially the same way as the accused product ***before*** the asserted patent issued.

*See* Dkt. 218 at 595:25–599:11. Even under Dr. Schaefer's flawed analysis, Cisco's alleged

infringement began by 2010—***11 years before*** Paltalk filed the Complaint.  *Id.* at 397:15–25.

Paltalk was also well aware of Cisco and Webex throughout this period.  Paltalk's CEO, Mr. Katz,

told the jury that Cisco was one of Paltalk's customers in the 2000s.  Dkt. 217 at 93:11–24.  He

also testified that he was aware of the various video- and audio-conferencing platforms in

commercial use because his companies were also active in that space.  *Id.* at 133:17–134:16.  He

---

[2] Paltalk had owned the application that became the asserted '858 patent since 2001.  PX012.

even testified that he believed that Cisco and Paltalk were "indirect[]" competitors in a "little bit of a different niche."  *Id.* at 134:17–23.

The Supreme Court has recognized that such delays can warrant denying prejudgment interest.  *See Gen. Motors*, 461 U.S. at 657 ("[I]t may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit.").  The Federal Circuit has affirmed district-court rulings that denied prejudgment interest based on prejudicial delay by patent holders.  *See Crystal Semiconductor*, 246 F.3d at 1362 (affirming denial of prejudgment interest due to patent holder's two-year delay in suing for infringement, which caused the damages to escalate); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1546 (Fed. Cir. 1991) (affirming denial of prejudgment interest during a four-year period when the proceedings were stayed at the patent holder's request).

Despite the many years its patent had been in force and its longstanding awareness of Cisco and Webex, Paltalk seeks to justify its delay by contending it was a small company with "limited bandwidth for projects outside its primary business."  Dkt. 226 ("Mot.") at 3–4.  That excuse does not withstand scrutiny.  To begin with, Paltalk relies on Mr. Katz's *deposition* testimony, not his *trial* testimony.  *Id.* (citing Mot. Ex. 4 and Ex. 5).  Moreover, that uncorroborated deposition testimony contrasted starkly with Mr. Katz's trial testimony, where he told the jury that Paltalk was a publicly traded company listed on the NASDAQ exchange and that Paltalk engaged in acquisitions of other companies, including ManyCam, only a few years ago.  Dkt. 217 at 81:9–82:10.

### 2.    Paltalk's Delay Prejudiced Cisco

Paltalk asserts that its delay in filing this lawsuit caused no prejudice.  That is factually incorrect and ignores the broader context of the global COVID-19 pandemic and Paltalk's own

conduct during the trial.  Paltalk's delay in bringing this suit significantly disadvantaged Cisco because it resulted in the loss of critical evidence.

Paltalk's delay deprived Cisco relevant evidence necessary to defend itself and prove lack of use.  To make matters worse, Paltalk repeatedly intimated that the jury should not believe Cisco's witnesses because they could not substantiate their testimony with data that could have been preserved had Paltalk timely filed suit.  Under Paltalk's own infringement theories, Webex conferences held only among VoIP users or held only among PSTN users do not infringe.  Dkt. 217 at 301:10–302:1. To reduce its damages base, Cisco sought to show how many Webex meetings involved only VoIP users or only PSTN users (not both).  But Cisco retains such information for only 13 months.  Dkt. 218 at 501:15–502:19.  Had Paltalk sued Cisco closer in time to the hypothetical negotiation, Cisco would have retained and relied upon records substantiating the vast majority of non-infringing conferences.  *Cf. A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (concluding that loss of records due to delay was material prejudice for purposes of laches), *abrogated on other grounds, SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017).

Worse still, counsel for Paltalk repeatedly chastised Cisco's witnesses about how Cisco "has no data," inviting the jury to discount the witnesses' personal recollection:

> Q. So – and let me ask you, Mr. Barave, you understand the damages period in this case goes from 2015 to 2022, correct?
>
> A. I wasn't sure that's the period, but it is possible.
>
> Q. And it's – Cisco does not have any data for 2020 usage data?
>
> A. We do not have it available anymore.
>
> Q. Cisco does not have usage data for 2019?
>
> A. Correct. So past the 13 months from 2019, Cisco has not had it.

> Q. And the same for 2018 and 2017 and 2016 and 2015, when the damages period started in those – in this case. For all of those years, Cisco has no data; is that correct?
>
> A. It would be correct for all of those time periods Cisco would have had the data for 13 months.
>
> Q. So if we wanted to today go look at the data from 2015 to 2021 – and you've kept – and you've shown us the 2021 data or you've talked about it – we would not be able to see any data between 2015 and 2021; is that correct?
>
> A. That's correct. We would not be able to see it today.

Dkt. 218 at 513:15– 514:14; *see also* Dkt. 220 at 1022:2–1024:5.

Moreover, Paltalk did not just wait for years to bring suit; it sued only *after* the COVID-19 pandemic had drastically increased usage of Webex. As Mr. Barave testified, the pandemic was a sudden and unforeseen phenomenon, and Cisco saw Webex usage reach three to four times what it was before 2020. Dkt. 218 at 527:7–18. By waiting until after this unforeseen event, Paltalk was able to extract additional royalties based on Webex's increased usage and user base. *See ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) (economic prejudice established by showing a change in economic position such as the successful expansion of the business).

## B.    The Jury Award Represents the Entire Compensation Owed to Paltalk

The jury returned a verdict that fully compensated (indeed, overcompensated) Paltalk for any infringement of the asserted patent. Both Paltalk and Cisco presented damages calculations to the jury, dkt. 218 at 350:6–351:7; dkt. 220 at 961:25–962:22, 984:20–985:17, but the jury did not adopt either party's proposal. Instead, it determined that $65,720,700 was what "Paltalk has proven by a preponderance of the evidence that it is entitled to for Cisco's infringement of the Asserted Claims of the Patent-in-Suit." Dkt. 211 (Jury Verdict) at 7. The jury already awarded

the total sum necessary to make Paltalk whole had infringement not occurred—and that provides an independent reason why the Court should not award additional interest.

The verdict form expressly asked the jury to award the full measure of damages Paltalk was entitled to, not merely a royalty rate or a reasonable royalty at the time of the hypothetical negotiation. The jury instructions confirm this understanding. The Court instructed the jury that its damages award "should put Paltalk in approximately the same financial position that it would have been in had the infringement not occurred." *See* Dkt. 206 (Final Jury Instructions) at No. 22. That measure of damages *included* the value that Paltalk now seeks to recoup with pre-judgment interest. And nothing in those instructions told the jury it had to leave interest out of that assessment. As a result, no additional interest is necessary. *See Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 36-37 (Fed. Cir. 2012) (holding damages award could not include prejudgment interest because the jury had been instructed they could not award any interest on damages).

As Paltalk recognizes, "[t]he purpose of prejudgment interest is to place the patentee in as good a position as [it] would have been had the infringer paid a reasonable royalty rather than infringe." Mot. at 2–3 (citing *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-57-ADA, 2022 WL 1477728, at *1 (W.D. Tex. May 10, 2022)). And the jury was instructed to fulfill exactly that purpose—to "put Paltalk in approximately the same financial position that it would have been in had the infringement not occurred"—when determining its award here. Neither the jury instructions nor the verdict form contained any qualifying language that limited the jury award in any way—let alone limited it to a royalty paid on a specific date of the hypothetical negotiation.

*Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373-75 (Fed. Cir. 2022), does not compel a different result. There the parties stipulated that they would have entered into a lump-sum license

agreement as of a specific hypothetical negotiation date, and the jury was instructed to "focus on what the expectations of the parties would have been had they entered into an agreement [on that date]." *Id.* at 1374 (cleaned up). Similarly, the *Kaufman* verdict form asked "What has [the plaintiff] proved he is entitled to recover as a one-time royalty payment for the life of the patent?" *Id.* (internal citation omitted). Unlike *Kaufman,* where the jury's award explicitly represented an amount owed on a particular pre-suit hypothetical negotiation date, here, the jury was asked to put Paltalk in the same financial position it would have been in had the infringement not occurred. Furthermore, Paltalk presented conflicting facts about when a hypothetical negotiation would have occurred, and Mr. Bratic testified that the date didn't impact his calculation of damages. Dkt. 217 at 316:19-317:6; Dkt. 218 at 355:1-10, 357:17-358:12, 424:5-12.

This Court has broad discretion to interpret the verdict form, *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010), and the language on its face encompassed the full amount to be awarded to Paltalk if Cisco infringed.

## IV. CONCLUSION

If the jury's award stands, Paltalk will be positioned at least as well as if the infringement had not occurred. Adding prejudgment interest on top would reward Paltalk for unreasonable and prejudicial delay in bringing suit and greatly prejudice Cisco. Cisco therefore respectfully requests that the Court deny Paltalk's Motion to Amend the Final Judgment to add pre-judgment interest. If Cisco's motion for JMOL or a new trial is denied, Cisco will not oppose amending the judgment to include post-judgment interest at the statutory rate.

Dated: November 19, 2024

Respectfully submitted,

*/s/ Sarah E. Piepmeier*

Sarah E. Piepmeier
Nathan B. Sabri (admitted *pro hac vice*)
Elise Edlin (admitted *pro hac vice*)
Karl Johnston (admitted *pro hac vice*)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
SPiepmeier@perkinscoie.com
EEdlin@perkinscoie.com
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Ryan Hawkins (admitted *pro hac vice*)
Abigail Gardner (admitted *pro hac vice*)
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
RHawkins@perkinscoie.com
Telephone: (858) 720-5709
Facsimile: (858) 720-5809

Jessica J. Delacenserie (admitted *pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
JDelacenserie@perkinscoie.com
Telephone: (206) 359-3644

Michael E. Jones (SBN: 10929400)
Shaun W. Hassett (SBN: 24074372)
POTTER MINTON
110 North College
500 Plaza Tower
Tyler, TX  75702
mikejones@potterminton.com
shaunhassett@potterminton.com
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

-9-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on November 19, 2024.


/s/ Sarah E. Piepmeier
Sarah E. Piepmeier