# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

PALTALK HOLDINGS, INC.,

               Plaintiff,

v.

CISCO SYSTEMS, INC.,

               Defendant.

**CIVIL ACTION NO.:**
**6:21-cv-00757-ADA-DTG**

# PALTALK'S OPPOSITION TO CISCO'S MOTION
# <u>FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL</u>

# TABLE OF CONTENTS

LEGAL STANDARD .................................................................................................2

ARGUMENT ............................................................................................................3

I.    The Court should reject Cisco's JMOL request, because Cisco does not present any Rule 50(b) arguments. ............................................................3

II.    The Court should deny Cisco's request for a new trial. ............................3

    A.    The Court's construction of the term "each" did not cause unfairness or require a new trial. ....................................................3

        1.    Cisco's argument that the Court imposed "evolving" and unfair limits at trial is a repackaged version of Cisco's already-rejected mistrial motion. ...............................................4

        2.    The Court's rulings did not violate O2 Micro or Markman. ...............................................................................6

        1.    Even Cisco concedes that its dilatory request to construe "removing from" cannot be independent grounds for a new trial. ...............................................................................8

        2.    Cisco's failed written description argument is not a basis for a new trial. ............................................................9

    C.    The Court should not disturb the jury's finding on damages. ....................10

        1.    Paltalk did not mislead the jury that the named inventors invented hybrid audio conferencing, and in any event the argument is waived. ...............................................................10

        2.    The Court previously rejected Cisco's challenge to Paltalk's apportionment—it should do so again. ..........................12

        3.    Paltalk's hypothetical negotiation date was supported by the evidence. ............................................................14

        4.    Paltalk based its apportionment on the usage of the claimed method—but it was not required to tie its analysis to Cisco's usage data. .......................................16

        5.    Paltalk did not rely on the entire market value rule (much less violate it). ................................................17

6.    Paltalk was not required to disprove Cisco's purported non-infringing alternatives. .............................................................18

7.    The Court should not reconsider marking. ...................................20

8.    There is no basis for remittitur. .......................................................20

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Med. Sys. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993)....................................................................................20

*Apple Inc. v. Wi-LAN*,
  25 F.4th 960 (Fed. Cir. 2022) ........................................................................11, 12, 14

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010).................................................................................10

*Burns v. Nielsen*,
  506 F. Supp. 3d 448 (W.D. Tex. 2020).....................................................................20

*CliniComp Int'l v. Athenahealth*,
  2020 WL 5745914 (W.D. Tex. Aug. 12, 2020)........................................................20

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015).................................................................................18

*Conoco v. Energy & Envtl. Int'l*,
  460 F.3d 1349 (Fed. Cir. 2006)...............................................................................8, 9

*Core Wireless v. LG Electronics., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)...............................................................................9, 10

*Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*,
  879 F.3d 1332 (Fed. Cir. 2018).................................................................................13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018).................................................................................12

*Function Media, L.L.C. v. Google, Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013)...............................................................................8, 11

*Grain Proc. Corp. v. American-Maize-Prods*,
  185 F.3d 1341 (Fed. Cir. 1999).................................................................................19

*Hanson v. Alpine Valley Ski Area*,
  718 F.2d 1075 (Fed. Cir. 1983).................................................................................17

*i4i Limited P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)...................................................................................12

*Johnson v. Arkema*,
  685 F.3d 452 (5th Cir. 2012) .....................................................................................19

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)....................................................................................15, 18

*Lucent Technologies v. Gateway*,
   580 F.3d 1301 (Fed. Cir. 2009)........................................................................................17

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995)....................................................................................1, 4, 6, 7

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
   30 F.4th 1339 (Fed. Cir. 2022)...................................................................................13, 16

*NXP USA v. Impinj, Inc.*,
   2023 WL 3933877 (W.D. Wash. June 8, 2023)................................................................13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)................................................................................1, 4, 6, 7

*Omega Patents, LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021).........................................................................................19

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004)..........................................................................................6

*Provisur Technologies, Inc. v. Weber, Inc.*,
   119 F.4th 948 (Fed. Cir. 2024) .........................................................................................14

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   853 F.3d 1370 (Fed. Cir. 2017)........................................................................................7, 8

*Riles v. Shell Exploration & Production Co.*,
   298 F.3d 1302 (Fed. Cir. 2002).........................................................................................15

*Shipman v. Cent. Gulf Lines, Inc.*,
   709 F.2d 383 (5th Cir. 1983) ............................................................................................11

*Sibley v. Lemaire*,
   184 F.3d 481 (5th Cir. 1999) ..............................................................................................3

*Smith v. Transworld Drilling*,
   773 F.2d 610 (5th Cir. 1985) ..............................................................................................3

*Stoller Enters. v. Fine Agrochemicals Ltd.*,
   705 F. Supp. 3d 774 (S.D. Tex. 2023) ..............................................................................19

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020).........................................................................................17

*Titan Tire Corp. v. Case New Holland*,
  566 F.3d 1372 (Fed. Cir. 2009)..................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..........................................................12, 13

*Unisplay S.A. v. American. Electronic Sign Co.*,
  69 F.3d 512 (Fed. Cir. 1995)..................................................................15

*Versata Software, Inc. v. SAP Am., Inc.*,
  717 F.3d 1255 (Fed. Cir. 2013)..................................................................2

*VLSI Technologies v. Intel Corp.*,
  87 F.4th 1332 (Fed. Cir. 2023)................................................................19

*Wang Laboratories., Inc. v. Toshiba Corp.*,
  993 F.2d 858 (Fed. Cir. 1993)...........................................................15, 16

*Wordtech Sys. v. Integrated Networks Sols.*,
  609 F.3d 1308 (Fed. Cir. 2010)................................................................15

**Rules**

Fed. R. Civ. P. 50(b) ............................................................................2, 3

Fed. R. Civ. P. 59 ................................................................................2, 3

FRCP 61 ............................................................................................3, 11

FRE 103 ...................................................................................................6

FRE 403 ...................................................................................................5

FRE 703 .................................................................................................14

FRE 801 ...................................................................................................5

## INDEX OF ABBREVIATIONS

| Phrase | Abbreviation |
|---|---|
| Paltalk Holdings, Inc. | Paltalk |
| Cisco Systems, Inc. | Cisco |
| US Patent No. 6,683,858 B1 | '858 Patent |
| Trial Transcript | TT |
| Plaintiff's Exhibit | PX |
| Defendant's Exhibit | DX |
| June 29, 2023 Pretrial Conference Transcript | FPC Tr. |
| August 1, 2024 Pretrial Conference Transcript | SPC Tr. |

**Unless otherwise noted, all emphasis in this brief is added.**

Paltalk accused certain Cisco Webex products of infringing claims 1-5 of the '858 Patent. On August 29, 2024, after four days of trial, the jury returned a verdict (1) finding all the asserted claims infringed, (2) finding none of the asserted claims invalid, and (3) awarding damages in the amount of $65,720,700. Dkt. 211. Paltalk had sought $102,581,465 in damages.

Cisco now moves for judgment as a matter of law and for a new trial, almost entirely on bases that were previously raised and rejected by the Court. The Court need not retread old ground. Cisco has not identified any basis for judgment as a matter of law or a new trial.

1.    <u>The Court's construction of the term "each" was proper and did not result in an unfair trial</u>. The term "each" played a large role in this case before and during trial. Nearly two years before trial (but long after *Markman*), Cisco sought a construction of the term "each." At the June 2023 Pretrial Conference, the Court issued a construction: "'each' has a plain and ordinary meaning which can include one or more." FPC Tr. 156:9. At trial, Paltalk put forth evidence under this construction, and the jury found infringement. Cisco, for its part, argued that Webex did not infringe because, in its view, "each" must mean "all or every." The jury rejected Cisco's position.

Cisco argues that the Court's approach resulted in an unfair trial and violated *Markman* and *O2 Micro*. The Court previously rejected both arguments. Cisco's <u>first argument</u> is that the Court's allegedly "evolving" approach caused unfairness, requiring a new trial. This is a re-hash of Cisco's Motion for Mistrial, which the Court denied after extensive argument. Cisco cites no authority supporting its position that the Court's approach requires a new trial. Cisco's <u>second argument</u> is an already-rejected *O2 Micro* complaint. As the Court recognized at trial, there is no *O2 Micro* issue because the Court construed the disputed term "each"—on the record at the First Pretrial Conference. The Court then allowed the parties to tailor their expert work and trial presentations to the Court's construction. There was no error and no prejudice.

1

2.      <u>The Court should reject Cisco's arguments about the term "removing."</u> Dependent claims 2 and 3 teach "removing" a client's audio from a stream or packet. For the first time in its Motion for New Trial, Cisco asks the Court to construe the term "removing." Because Cisco could have asked for this construction before now, Cisco has waived this argument. Cisco also asks the Court to overturn the jury's rejection of its written description argument. There is no basis to do so. Cisco had the burden on written description, and the jury found that Cisco did not meet it.

3.      <u>Cisco has not presented any basis to disturb the damages award.</u> Paltalk sought $102.5 million in damages based on Dr. Schaefer's technical apportionment and Walter Bratic's royalty calculation. Cisco's expert Lauren Kindler opined that the maximum royalty should be $1.5 million, in part based on a sliver of marginally relevant usage data. The jury's $65.7 million award reflects the jury's consideration of the evidence and the credibility of the witnesses.

All but one of Cisco's damages arguments were previously considered and rejected by the Court and the jury. All lack merit. Paltalk's apportionment was reliable, rooted in Cisco's technical and marketing documents, and properly separated infringing from non-infringing uses. Likewise, Paltalk's hypothetical negotiation date and Webex Audio royalty base are both supported by the evidence, including rigorous expert analysis. The damages award should stand.

## LEGAL STANDARD

Under <u>Rule 50(b)</u> "[a] JMOL may only be granted when, viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Versata Software, Inc. v. SAP Am., Inc.,* 717 F.3d 1255, 1261 (Fed. Cir. 2013) (citation omitted).

Under <u>Rule 59</u>, "[c]ourts grant a new trial when it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing

harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). A new trial may be granted only "[if] the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling*, 773 F.2d 610, 613 (5th Cir. 1985). "[T]he court must disregard all errors and defects that do not affect any party's substantial rights." FRCP 61.

## ARGUMENT

### I.    The Court should reject Cisco's JMOL request, because Cisco does not present any Rule 50(b) arguments.

Cisco purports to have filed a "Motion for Judgment as a Matter of Law or a New Trial under Federal Rules of Civil Procedure 50(b) and 59." But Cisco has not presented any JMOL arguments under Rule 50(b). In each section of its motion, Cisco asks for a new trial. All of Cisco's arguments are Rule 59 arguments about (1) the fairness and prejudice of trial, (2) the weight of the evidence, or (3) excessive damages. *See, e.g., Smith*, 773 F.2d at 613; *see also, e.g.,* Mot. at 2 ("The Court should order a new trial on infringement due to prejudicial ambiguity …."); *id.* at 11 ("The verdict … was contrary to the great weight of the evidence."). The Court should deny any relief requested under Rule 50(b).

### II.    The Court should deny Cisco's request for a new trial.

Cisco asserts three bases for a new trial: (1) alleged "prejudicial ambiguity" with respect to the Court's construction of "each"; (2) the alleged need to construe "removing" in claims 2 and 3 and the jury's related rejection of Cisco's written description argument; and (3) objections to the jury's damages award. Mot. at 2, 10-11, 13. Cisco is wrong on all fronts.

### A.    The Court's construction of the term "each" did not cause unfairness or

require a new trial.

Cisco asks the Court to set aside the jury's verdict "due to prejudicial ambiguity regarding the scope and meaning of the 'each' limitations" in claim 1. Mot. at 2. Cisco's argument takes two forms. *First*, Cisco complains that the Court imposed "evolving" and unfair limits on Cisco's trial presentation. *Second*, Cisco contends that the Court's construction violated *O2 Micro* and *Markman*. The Court has already addressed and rejected both points. The Court should do so again.

### 1.    Cisco's argument that the Court imposed "evolving" and unfair limits at trial is a repackaged version of Cisco's already-rejected mistrial motion.

Towards the end of trial, Cisco moved for mistrial, arguing that the Court's "guidance … changed" throughout trial and deprived Cisco of a "fair opportunity to present its case," requiring a new trial. Dkt. 198 at 1, 9. After lengthy argument, the Court denied Cisco's motion.

Cisco now re-urges the same argument. *See* Mot. at 2-8. Mirroring its mistrial motion, Cisco's new-trial bid excerpts the same pretrial hearing discussion and makes the same points about Paltalk's experts' testimony. The Court previously rejected Cisco's request for a new trial and should do so again. The Court's approach to the word "each" was neither inconsistent nor unfair:

- In the second half of 2022, Cisco identified a dispute over the meaning of the term "each." Cisco asked the Court for a construction.
- At the June 29, 2023 Pretrial Conference, the Court issued a construction: "'[E]ach' has a plain and ordinary meaning which can include 'one or more.'"
- The Court allowed Cisco to amend its expert reports to provide opinions consistent with its construction of the term "each." Cisco served hundreds of pages of supplemental reports on non-infringement, invalidity, and damages.
- Cisco moved for clarification on whether it would be allowed to address the meaning of the word "each" with the jury. At the August 2024 Pretrial Conference, counsel for Cisco asked: "So just to clarify, Your Honor's ruling is that 'each' takes its plain and ordinary meaning, that can include one or more …." The Court confirmed.
- During trial, the Court explained that "the intent of my construction … is that it can include 'one or more' but it doesn't have to." TT 640:12-15. The Court properly

instructed the parties (and by extension, their experts) that they should present their cases in reliance on the Court's construction. *Id.* 641:17-20.

- Throughout trial, the Court allowed both parties to show the Court's June 2023 construction to the experts and the jury. Cisco elicited testimony and made arguments to the jury concerning the term "each," both during Cisco's case-in-chief and Paltalk's.

The Court's consistent approach refutes Cisco's allegations of "unfairness" due to allegedly "evolving" standards. In fact, the Court's construction provided at the June 29, 2023 Pretrial Conference was the *same* construction it provided in the Court's final jury instructions. This belies Cisco's "inconsistency" argument and eliminates Cisco's new-trial argument.

Independently, even assuming the Court's standards did "evolve," Cisco cannot claim prejudice. During trial Cisco, had ample opportunity to advance—and did advance—its position regarding the term "each" (i.e., that it must mean "all or every"), including in its examinations of its infringement and invalidity experts. *See, e.g.*, 672:5-673:3; 900:1-18. Cisco made this argument a showcase of its opening statement, its cross-examination of Dr. Schaefer, and its direct examination of Dean Willis.[1] *See, e.g.*, TT 48:19-21, 305:12-15, 313:3-9, 670:9-14. Cisco likewise devoted much of its closing argument to the term "each." *Id.* 1098:16-20 (Cisco's closing). There was no prejudice and, therefore, no basis for a new trial.

Nor is there substance to Cisco's assertions of how the Court supposedly limited Cisco's trial presentation. In every instance identified by Cisco, the Court acted within its discretion and not contrary to Cisco's substantial rights:

- Transcript from Second Pretrial Conference. Cisco contends the Court should not have sustained Paltalk's objection to Cisco showing the jury an excerpt of attorney argument (from the Second Pretrial Conference) relating to "each." Mot. at 7. *See* TT 306:12-308:3. The Court's exclusion was not error. The excerpt that Cisco wanted to display was inadmissible because it was hearsay (FRE 801), likely to confuse the jury (FRE 403), and because its prejudicial effect outweighed its probative value (FRE 403). Cisco also suffered no prejudice: the exclusion did not limit Cisco's non-infringement case. Cisco cross-

---

[1] Dean Willis was Cisco's non-infringement expert.

examined Dr. Schaefer on "each" (*e.g.*, TT 306:9-11, 313:3-9) and presented extensive evidence and argument on "each." (*e.g.*, TT 670:9-14, 671:23-673:3).

- <u>Dr. Schaefer's examination</u>. Cisco argues that the Court prevented it from asking Dr. Schaefer questions "regarding the claim language and the import of passages in the specification." Mot. at 7. Cisco does not identify any rulings that prevented it from asking questions about "each." Nothing prevented Cisco from asking about the specification either. *See, e.g.*, TT 185:4-9 (Dr. Schaefer on the specification on direct examination); 316:7-13 (on cross-examination). Cisco does not identify questions it wanted to ask but was prevented from asking or testimony that it was prevented from eliciting. *See* FRE 103 (party can claim error in a ruling to exclude only if it provides an offer of proof).

- <u>Testimony of Cisco's engineers.</u> Cisco suggests the Court improperly prevented it from asking its engineers about the term "each." Mot. at 7. Cisco asserts that the Court prevented Nathan Buckles from testifying about "each" because the Court purportedly "made clear that witnesses could no longer opine on the scope and meaning of 'each.'" *Id.* at 7. That is false. The Court sustained an objection to Buckles' testimony on "each" because Buckles had not "read the entire patent" or the Court's claim constructions. TT 574:10-25; 570:12-25. Buckles thus lacked foundation to testify about the Court's constructions. *Id.* Cisco's motion does not cite *any* ruling that prevented Belcher from testifying about "each."

Notably, Cisco does not cite a single authority for its assertion that the Court's allegedly "evolving" approach requires a new trial. *See* Mot. at Part III.A & III.A.1 (citing no caselaw or other legal authorities). Paltalk is not aware of any precedent for granting a new trial under similar circumstances. By contrast, in *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004), the Federal Circuit affirmed the denial of a motion for new trial even though the Court's "incomplete claim construction" was refined mid-trial, affecting the presentation of evidence. There is much less of a case for a new trial here.

### 2.  The Court's rulings did not violate *O2 Micro* or *Markman*.

Cisco also argues that the Court's construction of "each" violated *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), and *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). That is false. The thrust of *O2 Micro* and *Markman* is that courts are required to construe disputed terms. The Court did exactly that. It construed the term "each," explicitly considered *O2 Micro*, and rejected Cisco's argument. The Court should do so again.

6

"It is the province of the court to construe the claims of the patent that has been offered in evidence." *Markman*, 52 F.3d at 981. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro*, 521 F.3d at 1362.

The Court's approach here was proper. Long after the *Markman* hearing, Cisco presented what it viewed as "a fundamental dispute regarding the scope" of the claim term "each." *See O2 Micro*, 521 F.3d at 1362. The Court resolved the dispute by construing "each" at the First Pretrial Conference. FPC Tr. 156:9-12. Cisco now argues that the Court's construction should have been clearer. But "[a] sound claim construction need not always purge every shred of ambiguity, including potential ambiguity arising from the words a court uses to construe a claim term." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1378–79 (Fed. Cir. 2017). The Court construed the claim term "each," which is all that the law even arguably required. The fact that Cisco now wants a new construction of "each" after the benefit of seeing the verdict—and a new trial in light of whatever new construction the Court would issue (Cisco doesn't propose one)—does not create an *O2 Micro* issue.

The Court may recall that it rejected this same *O2 Micro* argument during trial. The Court explained: "[I]t can't be an *O2 Micro* because I gave a construction, plain and ordinary meaning which includes. *That eliminates the O2 Micro issue*." TT 631:10-13 (emphasis added). This Court's assertion was right, and Cisco identifies no authority to the contrary. Cisco identifies no case overturning a jury verdict under *O2 Micro* where (as here) the trial court issued a construction of the disputed term at issue.

Courts have rejected post-trial motions in analogous circumstances. *Rembrandt Technologies*, 853 F.3d at 1375, is illustrative. There, the district court construed the term "modulation metho[d] of a different type" as "different families of modulation techniques …." *Id.*

At trial (like in this case), the parties disagreed about the scope of the Court's construction (particularly with respect to the words "different families" and "modulation techniques"). *Id.* at 1378. In its post-trial motion, Samsung argued that Rembrandt's witnesses' testimony on "different families" was an improper claim construction argument. The Federal Circuit affirmed the denial of the motion, reasoning that the court's claim construction "need not always purge every shred of ambiguity, including potential ambiguity arising from the words a court uses to construe a claim term." *Id.* at 1378 (citation omitted); *see also Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1327 (Fed. Cir. 2013). Much like the defendant in *Rembrandt*, Cisco asks the Court to convene Markman hearing and a new trial so it can "purge every shred of ambiguity from its own construction." *See id*. The law does not support Cisco's request.

Finally, Cisco appears to raise a new argument that the Court should have further defined "can include." Mot. at 1. This request was never raised before or during trial and is thus waived. *Conoco v. Energy & Envtl. Int'l*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial.").

## B. The Court should not disturb the jury's findings that <u>claims 2 and 3</u> of the '858 Patent were infringed and valid.

Paltalk presented evidence that Cisco's products infringe the '858 Patent by removing audio from a multiplexed stream (claim 2) or combined packet (claim 3) before sending to a subset of clients. *See, e.g.*, TT 272:2-278:13. The jury found infringement and no invalidity of these claims. Cisco asks the Court to overturn the jury's finding for two reasons: (1) because, according to Cisco, the Court should construe the term "removing," as it appears in claims 2 and 3 and (2) because the jury's rejection of Cisco's written description argument was supposedly against the great weight of the evidence. Mot. at 11-13. Neither of Cisco's arguments has merit.

### 1. Even Cisco concedes that its dilatory request to construe "removing from"

**cannot be independent grounds for a new trial.**

For the first time in its motion, Cisco asks the Court to construe the terms "removing from" in claims 2 and 3. Mot. at 11. This is not a basis for a new trial, and Cisco does not disagree. Cisco recognizes that "neither party requested construction of 'removing from' before trial." *Id.* Cisco, in turn, seeks a new construction only "*if* the Court vacates the infringement verdict or judgment" for some other reason. *Id.* Thus, the Court need not even consider Cisco's "removing from" argument as a potential new-trial ground. Cisco has waived any argument the construction of "removing from" by raising the argument only after trial. *Conoco,* 460 F.3d at 1359.

**2.    Cisco's failed written description argument is not a basis for a new trial.**

Cisco argues, as it did at trial, that claims 2 and 3 lack an adequate written description because the specification "does not describe removing data from a multiplexed stream or combined packet." Mot. at 10; *see also* TT 854:20-855:4. The Court rejected this argument at trial. Cisco's motion presents no reason to reverse course.

Cisco had the burden to prove invalidity due to a lack of written description by clear and convincing evidence. *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). After Cisco's invalidity presentation, Paltalk chose to waive rebuttal. Cisco argues that because it presented some evidence on written description and Paltalk did not present rebuttal evidence, the jury had no choice but to accept its invalidity expert James Bress's testimony on written description. This is wrong: the jury was free to conclude that Cisco did not meet its burden.

The Federal Circuit rejected a similar argument in *Core Wireless v. LG Electronics., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018). There, LG's expert testified about anticipation, the plaintiff cross-examined the expert, and the plaintiff chose not to call a rebuttal witness. *Id.* at 1360. LG argued that the great weight of the evidence supported its anticipation defense because the plaintiff did not present rebuttal evidence. The Federal Circuit disagreed, noting that the jury was not "required

to give full credit and acceptance to the testimony of [the expert]." *Id.* at 1364. The jury was similarly free to discredit Bress's testimony here. Paltalk cross-examined Bress, and the jury assessed Bress's credibility. *See, e.g.*, TT 890:8-22. The jury was entitled to conclude (as it did) that Cisco had not met its burden of proving that the term "removing" lacked written description.

Cisco is also wrong about written description. Column 5 of the '858 Patent describes "removal" of a client's audio before it is sent back to the client. Cisco's citation to *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010), is misplaced. Paltalk has pointed out that "removing" as understood by Dr. Schaefer is disclosed in the specification, not that that the claimed invention is an obvious variant of what was disclosed. The Court should reject Cisco's attempt to re-argue its failed written description presentation.

### C.    The Court should not disturb the jury's finding on damages.

Cisco puts forth no basis to disturb the damages award. Paltalk's damages model of $102,581,465 withstood a *Daubert* challenge on multiple grounds, including apportionment. For its part, Cisco presented an alternative apportionment analysis. After trial, the jury awarded Paltalk $65,720,700. The damages award reflects the jury's consideration of the evidence and credibility of the witnesses, and it is amply supported by the record. Cisco raises seven arguments for a new trial. The Court has already considered and rejected all but one of them. None justifies a new trial.

### 1.    Paltalk did not mislead the jury that the named inventors invented hybrid audio conferencing, and in any event the argument is waived.

Cisco seeks a new trial because Paltalk allegedly "mislead the jury into thinking the named inventors invented 'hybrid audio' conferencing." Mot. at 13-14. Cisco points to several statements that it contends "pervaded the trial" and "skewed the jury's verdict," resulting in an unfair trial. *Id.*

Cisco waived this argument by not objecting at trial. With respect to allegedly improper arguments, a "[c]ourt will consider errors to which no objections were made at trial but will

exercise this power only in *exceptional cases* where the interest of substantial justice is at stake. To reverse, this Court must find plain error." *Shipman v. Cent. Gulf Lines, Inc.*, 709 F.2d 383, 388 (5th Cir. 1983); *accord Function Media*, 708 F.3d at 1327. At trial, Paltalk put forth extensive testimony, documentary evidence, and argument about "hybrid audio"—i.e., audioconferencing involving PSTN and VoIP users in the same conference. *See, e.g.*, TT 181:10-23; 190:9-25. Cisco did not object to Paltalk's characterizations, and Cisco points to no authority suggesting this is an "exceptional case" or that Paltalk's presentation was "plain error."

Even if Cisco's "hybrid audio" argument was not waived, Cisco would bear the burden of demonstrating that Paltalk's argument was improper and that, as a result, Cisco's substantial rights were affected. FRCP 61. Cisco cannot make that showing. The concept of "hybrid audio" is used in both the '858 Patent and Cisco's internal documents (*see, e.g.*, PX213)—and in the identical way, as a reference to PSTN-VoIP audioconferencing. At trial, both parties explained to the jury that the '858 Patent was not the only way of accomplishing "hybrid audio." *See, e.g.*, TT 320:9-15; 317:15-18. Cisco witnesses also told the jury that Webex had hybrid audio functionality before the '858 Patent. *See* DX-60; TT 580: 1-25; 596:1-599:12. But the key point is that Cisco did not dispute that the core innovation of the '858 Patent— "hybrid audio" accomplished by mixing and multiplexing—was present in the accused Webex products. Therefore, Paltalk's assertions were not unfair or improper. Nor did Cisco suffer prejudice, as it was free to (and did) elicit testimony about "hybrid audio" from its witnesses and cross-examine Paltalk's witnesses on the topic.

Cisco cherry-picks out-of-context excerpts from trial that it says were misleading. They were not. When Paltalk used the phrase "hybrid audio" at trial, Paltalk referred to the particular way that the '858 Patent accomplishes hybrid audio, and this was reflected in Dr. Schaefer's analysis. *See, e.g.*, TT 40:16-41:7, 181:6-23. Cisco's citation to *Apple Inc. v. Wi-LAN,* 25 F.4th

960, 976 (Fed. Cir. 2022), is not to the contrary. There, the court granted a new trial because the expert conflated the benefits of the asserted patent with the benefits of the broader technology and assumed (with no support) that the benefits of the patent accounted for quality differences between the broader technology and a non-infringing alternative. *Id.* Nothing of the sort happened here— Paltalk analyzed the benefits of the '858 Patent and recognized that there were hybrid audio benefits not attributable to the '858 Patent. TT 190:9-25, 295:16-296:3, 375:2-7.

### 2. The Court previously rejected Cisco's challenge to Paltalk's apportionment—it should do so again.

Before trial, Cisco filed multiple rounds of *Daubert* motions on apportionment. In extensive argument, Paltalk showed that Dr. Schaefer's technical apportionment was more rigorous, and more amply supported, than what the Federal Circuit requires. *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312-13 (Fed. Cir. 2018) (affirming denial of post-trial motion because apportionment giving all features equal weight was admissible). The Court denied Cisco's motion. Cisco now re-urges the identical argument in its motion for new trial. For at least four reasons, the Court should again reject Cisco's argument.[2]

*First*, Paltalk's apportionment was rooted in a large body of evidence, including Cisco's marketing and technical documents. *See, e.g.*, PX62 at 1, PX109, PX145, and PX129. Paltalk's experts explained the factual bases for the apportionment analysis at trial. *See, e.g.*, TT 283:1-299:3 (Schaefer); 379:11-382:3 (Bratic). Because Paltalk's opinions were "drawn from [Cisco]'s internal documents" and publicly available information, Paltalk's opinions had a sufficient factual basis, and the jury's verdict is supported by the weight of the evidence. *See i4i Limited Partnership v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010). Cisco cites *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), for the proposition that Paltalk's technical weights

---

[2] Paltalk incorporates its response to Cisco's Daubert motion at Dkt. 152.

are "conjectural or speculative." *Uniloc* is distinguishable. There, the Federal Circuit rejected an expert's bare assumption that 25% was a reasonable royalty applied. *Id.* at 1311. By contrast, Paltalk's technical weights are supported by record evidence.

**Second**, as the Court's *Daubert* denial recognized, Paltalk's qualitative apportionment methodology was reliable and admissible. *See, e.g.*, *NXP USA v. Impinj, Inc.*, 2023 WL 3933877, at *3 (W.D. Wash. June 8, 2023) (permitting qualitative analysis). "[A]pportionment can be addressed in a variety of ways," including "by careful selection of the royalty base," "by adjustment of the royalty rate," "by a combination thereof," or by a "proper analysis of the Georgia-Pacific factors." *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.,* 879 F.3d 1332, 1348–49 (Fed. Cir. 2018). Dr. Schaefer analyzed the technical advantages and benefits of the claimed technology, and Bratic then used that information in his *Georgia-Pacific* analysis.

**Third**, Cisco's argument that Paltalk's apportionment failed to account for non-infringing uses is contrary to the record. Dr. Schaefer calculated the extent to which various Webex Audio features are attributable to the '858 Patent. *See, e.g.*, TT 283:1-24, 295:15-18, 303:10-20. For example, Dr. Schaefer determined that 45% of the Scalability feature was attributable to the '858 Patent. The remaining 55% of this feature is not attributable to the '858 Patent and is therefore non-infringing. Paltalk complied with *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.,* 30 F.4th 1339, 1345, 1357 (Fed. Cir. 2022), which requires a damages model to distinguish between infringing and non-infringing uses.

**Fourth**, the Court should reject Cisco's argument that Paltalk's novelty and design-around predicates were unsupported. Dr. Schaefer testified about both novelty and design around potential at trial. TT 291:10-292:12. This testimony was evidence. Cisco complains that Dr. Schaefer partially relied on Dr. Madisetti for these opinions and that Dr. Madisetti did not testify at trial,

13

but this argument carries no weight. Experts can rely on other experts. FRE 703. And there is no prejudice to Cisco because Cisco cross-examined Dr. Schaefer on his conversations with Dr. Madisetti,[3] who was also deposed twice.

Cisco cites *Apple*, 25 F.4th at 973 and *Provisur Technologies, Inc. v. Weber, Inc.*, 119 F.4th 948, 957 (Fed. Cir. 2024), but neither supports Cisco's position. In *Apple*, 25 F.4th at 973-74, the documentary record explicitly contradicted each of the three reasons an expert gave for why certain patents were important. Here, no evidence contradicts Dr. Schaefer's apportionment analysis— only the say-so of Cisco's experts. In *Provisur*, 119 F.4th at 957-58, the court excluded an expert's opinions that the patented features drove demand for the accused products for lacking factual support. Here, Paltalk made no specific presentation about drivers of consumer demand. And regardless, the trial record here contains survey evidence (and other evidence) about the features that drive Webex demand. Dr. Schaefer relied on and testified about these materials. *See, e.g.*, PX 109 (survey). None of Cisco's apportionment arguments provides a basis for a new trial.

### 3.    Paltalk's hypothetical negotiation date was supported by the evidence.

Cisco renews its argument that Paltalk relied on an incorrect hypothetical negotiation date.[4] TT 462:14-464:4. The Court denied Cisco's *Daubert* motion on this issue. The Court should reject Cisco's argument again. Paltalk's hypothetical negotiation date is supported by the evidence, making Bratic's *Georgia Pacific* analysis admissible.

***First***, Bratic's 2007 hypothetical negotiation date is supported by the evidence. For example, PX213 is a June 2007 Cisco document noting the advent of "hybrid audio" in Webex: "The hybrid audio service is a new service that this engineering release will introduce. The service will offer user the capability to join audioconference via VoIP or PSTN." PX213 at 3; *see also* TT

---

[3] *See, e.g.*, TT 323:17-324:21
[4] Paltalk incorporates by reference its Response to Cisco's Motion to Exclude, Dkt. 152 at 5-7.

354:24-355:25, 446:9-452:6. 2007 was also the first date when Cisco sold any of the accused Webex products. Additionally, Bratic walked the jury through evidence suggesting that Cisco's proposed 2004 date was erroneous. TT 442:18-444:10 (discussing DX-68). The jury had ample basis to accept Paltalk's proposed hypothetical negotiation date.

**Second**, Bratic's application of the 2007 hypothetical negotiation date to his Georgia-Pacific analysis provides no basis for a new trial. Cisco tried to attack Bratic's credibility by eliciting testimony that his royalty opinion would not change if the hypothetical negotiation date were 2004 as opposed to 2007. TT 357:17-358:12. Bratic explained the basis for his opinion, and the jury awarded damages. There is no error—certainly none that is against the great weight of the evidence. A hypothetical negotiation date "necessarily involves an element of approximation and uncertainty." *Wordtech Sys. v. Integrated Networks Sols.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). Cisco's attack on Bratic's testimony is not a basis for a new trial.

Cisco cites *LaserDynamics, Inc. v. Quanta Computer, Inc.*,[5] *Riles v. Shell Exploration & Production Co.*,[6] *Wang Laboratories., Inc. v. Toshiba Corp.*,[7] and *Unisplay S.A. v. American. Electronic Sign Co.*,[8] in trying to obtain a new trial because of an allegedly erroneous hypothetical negotiation date. All are distinguishable.

- In *LaserDynamics*, 694 F.3d at 75, the court set a hypothetical negotiation date that post-dated evidence of direct infringement by several years. Nothing similar happened here.

- In *Riles*, 298 F.3d at 1313, the damages experts analyzed the value of the products at the time of trial rather than when the infringement began. By contrast, Bratic's royalty is tied to the hypothetical negotiation date. *See, e.g.*, TT 382:4-384:23.

- In *Unisplay*, 69 F.3d at 518,, the damages expert analyzed the royalty rate at the time of trial and not at the time of the hypothetical negotiation. But Bratic's royalty is tied to the hypothetical negotiation date. *See, e.g.*, TT 382:4-384:23.

---

[5] 694 F.3d 51, 75 (Fed. Cir. 2012).
[6] 298 F.3d 1302, 1313 (Fed. Cir. 2002).
[7] 993 F.2d 858, 870 (Fed. Cir. 1993).
[8] 69 F.3d 512, 518 (Fed. Cir. 1995).

- In *Wang*, 993 F.2d at 870, the Federal Circuit ordered a new trial after the trial court erroneously assumed the hypothetical negotiation date was first date on which damages could be recovered (as opposed to the first date when damages could accrue). Here, Bratic's opinions were grounded in the evidence.

### 4. Paltalk based its apportionment on the usage of the claimed method—but it was not required to tie its analysis to Cisco's usage data.

Cisco renews its Daubert argument that Paltalk's apportionment improperly failed to account for Webex's actual use, via Cisco's usage data. TT 461:20-462:13. For three reasons, the Court should reject Cisco's arguments, as it did before.

***First***, that Cisco wanted Paltalk to use other usage data is no basis for a new trial. In discovery, Cisco produced a spreadsheet containing the number of hybrid calls for a single year, having failed to retain the data for other years. Dr. Schaefer and Bratic considered this evidence and concluded that one year of data was not a reliable indicator of usage over the relevant period. *See, e.g.*, TT 299:4-301:9, 379:18-380:24, 300:3-301:9. Paltalk's experts explained their opinions, which were admissible and not against the great weight of the evidence.

***Second***, contrary to Cisco's assertion, Paltalk's did not seek "damages based on sales of products with the mere capability to practice the claimed method." *Niazi*, 30 F. 4th at 1357. Paltalk, in accordance with *Niazi*, "limited [the damages base] to products that were actually used to perform the claimed method." 30 F.4th at 1357. *Id.* Paltalk's royalty base was Webex Audio, which is the "audio portion of the [Webex] product functionality"—i.e., the product that "w[as] actually used to perform the claimed method." TT 165:3-23; 388:25-389:20. Paltalk apportioned Webex Audio by segregating the portion attributable to the '858 Patent from the portion not attributable to the '858 Patent. *See, e.g.*, TT 295:16-296:3; TT 323:10-13.

Cisco's authorities do not call into question Paltalk's apportionment. In *Niazi*, 30 F. 4th at 1357, the Federal Circuit affirmed the exclusion of a damages model that failed to "apportion between infringing and non-infringing uses." Paltalk, by contrast, apportioned the infringing uses

from the non-infringing uses as explained above. In *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), the Federal Circuit affirmed the grant of a new trial after TecSec sought a reasonable royalty based on total product sales. 978 F.3d at 1291-92. *TecSec* is distinguishable because, among other reasons, Paltalk did not apportion total product sales—it tied damages to the accused Webex Audio functionalities.

Cisco also cites *Lucent Technologies v. Gateway*, 580 F.3d 1301, 1334 (Fed. Cir. 2009), but there Federal Circuit acknowledged that it had "never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence." The Court explained that "companies in the high-tech computer industry often strike licensing deals in which the amount paid for a particular technology is not necessarily limited to the number of times a patented feature is used by a consumer," and further that "[a] company licensing a patented method often has strong reasons not to tie the royalty amount strictly to usage."[9] *Id.*; *see also Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (approving a reasonable royalty not based on "actual use of the snowmaking machinery" but on what a party would have paid to have the machine available to use). Likewise here, Dr. Schaefer explained why Cisco's usage data was not a reliable reflection of value and contribution of the patented method—and that his apportionment was a better measure of value. At *Daubert*, the Court ruled that Dr. Schaefer's apportionment approach, and rejection of usage data did not render his opinions inadmissible. There is no basis to diverge from that ruling.

### 5. Paltalk did not rely on the entire market value rule (much less violate it).

Cisco argues that Paltalk impermissibly based its damages presentation on the entire market value of Webex. TT 459:25-460:19. The Court should reject Cisco's arguments.

---

[9] *Lucent* rejected a damages model for failing to distinguish sufficiently between infringing and non-infringing uses, but that is not an issue with Dr. Schaefer's analysis.

***First***, Paltalk did not base its apportionment on "sales of [an] entire product" or present to the jury "a royalty expressed as a percentage of the entire market value of a product." *LaserDynamics,* 694 F.3d at 68. Paltalk's apportionment started with Cisco's in-house apportionment of Webex Audio. Webex Audio is not a product; it is Cisco's way of referring to the "audio portion of the Webex product functionality[.]" TT 165:3-23; 388:25-389:20. Dr. Schaefer then performed multiple additional apportionment steps to isolate the contribution of the infringing functionalities. Paltalk's apportionment is not based on the sales of an entire product.

***Second***, the evidence supports Paltalk's use of the Webex Audio revenues. Cisco's corporate representative testified that the Webex Audio revenue line corresponded to the accused functionalities, the audio portion of Cisco's sales. TT 165:9-16. Cisco's representative also testified that Cisco did not report revenues at a more granular level than this. *Id.* 167:17-25.

***Third***, Cisco's argument that Paltalk erred by disclosing Cisco's overall revenues is wrong and was previously rejected by the Court. TT 24:22-26:4. To check Webex's internal Webex Audio apportionment, Dr. Schaefer and Bratic conducted a second apportionment that began with all Webex revenues and determined the percentage of the Webex functionalities attributable to the '858 Patent. Because Paltalk performed multiple layers of apportionment, the entire market value rule does not apply. The jury's damages award is supported by the evidence.

## 6. Paltalk was not required to disprove Cisco's purported non-infringing alternatives.

Cisco argues that a new trial is warranted because Paltalk failed to prove the incremental value of the patented invention. Mot. at 19. Cisco is wrong.

Contrary to Cisco's suggestion, Paltalk introduced evidence about the "incremental value that the patented invention adds to [Webex]." *See, e.g.*, *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). Dr. Schaefer and Bratic

testified about the benefits of the '858 Patent over other methods of communication. *See, e.g.*, TT 179:2-181:5, 190:9-191:20, 375:2-7. Dr. Schaefer also testified about the "novelty" and "design-around potential" of Webex's functionalities, and he incorporated that analysis into his apportionment. As Cisco acknowledges, Dr. Schaefer further explained that there were "no readily available alternatives" to the infringing features. *See* Mot. at 19. Paltalk's evidence survived *Daubert*, was admissible, and supports the jury's award.

Cisco responds by asserting that the "great weight of the evidence" established multiple non-infringing alternatives that Dr. Schaefer and Bratic allegedly failed to consider. *Id.* at 20. This is false. It was Cisco's burden to establish that non-infringing "alternatives [were] acceptable and available" if it wanted a "lower" royalty calculation. *Stoller Enters. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023) (citing *Grain Proc. Corp. v. American-Maize-Prods*, 185 F.3d 1341, 1353-54 (Fed. Cir. 1999)). But Cisco's proof was flimsy at best. Cisco cites no documents and just a brief bit of testimony as its "evidence" of non-infringing alternatives. Mot. at 20. And this testimony was contested: the jury heard Paltalk's cross-examinations of Cisco's witnesses and also Paltalk's experts' opinions that there were no non-infringing alternatives. *See* TT 983:11-984:2; 320:5-9; 778:3-781:6. Cisco's proposed non-infringing alternatives are barely supported by any evidence,[10] much less the "great weight of the evidence" required for a new trial.

Cisco's two authorities are unpersuasive. In *VLSI Technologies v. Intel Corp.*, 87 F.4th 1332, 1348 (Fed. Cir. 2023), the Court set aside a verdict that was based on data derived from usage of non-accused or non-infringing functionality. But as explained, Paltalk's apportionment analysis focused intensely on the infringing functionalities. And in *Omega Patents, LLC v. CalAmp*

---

[10] Cisco's opinions on non-infringing alternatives were not the product of any reliable methodologies or observable facts. *See, e.g.,* Dkt. 149 at 6 (citing Willis's testimony that he relied on Star Trek to estimate the number of engineering hours needed for a non-infringing alternative); *see also Johnson v. Arkema*, 685 F.3d 452, 459 (5th Cir. 2012).

*Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021), Omega failed to apportion altogether or make a showing of "incremental value." By contrast, Paltalk's rigorous, multi-step apportionment, coupled with Bratic's *Georgia-Pacific* analysis, provides appropriate analysis "incremental value" and supports the jury's award. Cisco cites no authority suggesting Paltalk's experts and the jury were required to credit and rely on Cisco's insubstantial evidence of non-infringing alternatives.

### 7.    The Court should not reconsider marking.

Before summary judgment, and in advance of the Court's deadline to narrow the number of claims asserted, Paltalk dropped all asserted claims except for five method claims. Method claims are not subject to a marking defense. *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). Cisco nevertheless moved for summary judgment on marking, and the Court denied it. Dkt. 71, Dkt. 130. The Court's ruling was correct, and there is no basis to disturb it now. *See CliniComp Int'l v. Athenahealth*, 2020 WL 5745914 (W.D. Tex. Aug. 12, 2020).[11]

### 8.    There is no basis for remittitur.

In a single sentence, Cisco asks for remittitur to remedy the allegedly excessive damages award. Mot. at 13. "A verdict is excessive if it is contrary to right reason[,] … entirely disproportionate to the injury sustained" or is "so large as ... clearly exceeding that amount that any reasonable man could feel the claimant is entitled to." *Burns v. Nielsen*, 506 F. Supp. 3d 448, 484 (W.D. Tex. 2020) (cleaned up). Cisco's motion does not explain how the verdict was disproportionate or exceeded the amount a reasonable juror would award. The damages award was supported by the evidence and was neither disproportionate nor excessive.

### CONCLUSION

The Court should deny Cisco's Motion.

---

[11] Paltalk incorporates its response to Cisco's Motion for Summary Judgment on Marking at Dkt. 73.

Dated: December 3, 2024                    Respectfully submitted,


By: */s/ Max L. Tribble, Jr.*
        Max L. Tribble, Jr.
        State Bar No. 2021395
        SUSMAN GODFREY L.L.P.
        1000 Louisiana Street, Suite 5100
        Houston, Texas 77002-5096
        Telephone: (713) 651-9366
        Fax: (713) 654-6666
        mtribble@susmangodfrey.com

        **ATTORNEY-IN-CHARGE FOR
        PLAINTIFF PALTALK HOLDINGS, INC.**



OF COUNSEL:

Ryan Caughey
State Bar No. 24080827
Amber Magee (*admitted pro hac vice*)
State Bar No. 24121572
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
amagee@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

Mark D. Siegmund
State Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES, PLLC
400 Austin Ave., 9th Floor
Waco, Texas 76701
Telephone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

## **CERTIFICATE OF SERVICE**

This document has been served on counsel of record in accordance with the Federal Rules

of Civil Procedure.

*/s/ Amber B. Magee*
Amber B. Magee