IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PALTALK HOLDINGS, INC., | § § § | |
| Plaintiff, | § § | |
| vs. | § | No. 6:21-cv-00757-ADA |
| CISCO SYSTEMS, INC., | § § | |
| Defendant. | § § § | |

## DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 50(b) AND 59

**ORAL ARGUMENT REQUESTED**

**REDACTED**

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................................... ii

Table of Abbreviations ................................................................................................................. iv

Table of Exhibits .......................................................................................................................... iv

I.     Introduction ..........................................................................................................................1

II.    Argument .............................................................................................................................1

        A.     The Court should grant a new trial on infringement for all asserted claims and clearly construe the scope of "each" to guide the new proceeding ...................1

             1.     The shifting ground rules resulted in an unfair trial ....................................1

             2.     The ambiguous construction of "each" resulted in the parties arguing claim scope to the jury, contrary to *Markman* and *O2 Micro* ........................................................................................................4

        B.     The Court should also order a new trial on claims 2 and 3 ......................................5

        C.     At a minimum, the Court should reduce or retry damages because the $65+ million award was excessive and relied on unreliable evidence ...................6

             1.     Paltalk's focus on "hybrid audio" was misleading .....................................6

             2.     Paltalk's apportionment was unsupported ..................................................6

             3.     Paltalk's hypothetical-negotiation date was unsupported ...........................7

             4.     Paltalk failed to account for infringing *uses* rather than *capabilities* ..........8

             5.     Paltalk prejudicially relied on the entire market value ...............................9

             6.     Paltalk failed to show incremental value over alternatives .........................9

             7.     The Court should reconsider its marking ruling .......................................10

             8.     Remittitur is an appropriate remedy .........................................................10

III.   Conclusion ........................................................................................................................10

*All emphases in this brief have been added unless otherwise specified.*

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Ameritox, Ltd. v. Millenium Health, LLC*,
    No. 13-cv-832, 2015 WL 1520821 (W.D. Wis. Apr. 3, 2015) ..............................................10

*Apple Inc. v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ............................................................................................7, 9

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    544 F.3d 1310 (Fed. Cir. 2008)..............................................................................................3

*Axonics, Inc. v. Medtronic, Inc.*,
    75 F.4th 1374 (Fed. Cir. 2023) ..............................................................................................3

*Brunnemann v. Terra Int'l, Inc.*,
    975 F.2d 175 (5th Cir. 1992) ...............................................................................................10

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)..............................................................................................7

*Function Media, L.L.C. v. Google Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013).........................................................................................4, 5

*Hanson v. Alpine Valley Ski Area*,
    718 F.2d 1075 (Fed. Cir. 1983)..............................................................................................8

*Johns Hopkins Univ. v. CellPro, Inc.*,
    152 F.3d 1342 (Fed. Cir. 1998)..............................................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) .................................................................................................9

*Lucent Techs, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..............................................................................................8

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ..............................................................................................................4

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
    30 F.4th 1339 (Fed. Cir. 2022) ..............................................................................................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) .............................................................................................4

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004)..............................................................................................3

*Provisur Techs., Inc. v. Weber, Inc.*,
    119 F.4th 948 (Fed. Cir. 2024) ..............................................................................................7

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017)..............................................................................................4

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
 No. CV 19-1515-RGA, 2022 WL 17084156 (D. Del. Nov. 18, 2022)....................10

*Salazar v. HTC Corp.*,
 No. 2:16-cv-1096, 2018 WL 2033709 (E.D. Tex. Mar. 28, 2018) ..........................10

*Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*,
 704 F. Supp. 3d 774 (S.D. Tex. 2023) ...................................................................10

*TecSec, Inc. v. Adobe Inc.*,
 978 F.3d 1278 (Fed. Cir. 2020)................................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011)................................................................................9

*VirnetX, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014)................................................................................9

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
 992 F.3d 1366 (Fed. Cir. 2021)................................................................................7

**Statutes and Rules**                                                                                           **Pages**

Fed. R. Civ. P. 50 ............................................................................................................1

Fed. R. Civ. P. 59 ............................................................................................................1

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Ex. __ | Exhibit to the Piepmeier Declaration accompanying Cisco's motion for judgment as a matter of law or a new trial (Dkt. 225) (see Table of Exhibits below) |
| JMOL | judgment as a matter of law |
| POSA | person of ordinary skill in the art |
| TT *xx–yy* | trial transcript pages *xx–yy* |
| (*xx:yy–zz*) | column *xx*, lines *yy–zz* |
| '858 patent | U.S. Patent No. 6,683,858 |

## TABLE OF EXHIBITS

| | |
|---|---|
| Ex. A | the '858 patent |
| Ex. B | excerpted transcript from the February 24, 2022, pretrial conference hearing |
| Ex. C | demonstrative slides for Paltalk's opening statement |
| Ex. D | demonstrative slides for Paltalk's direct examination of Walter Bratic |
| Ex. E | demonstrative slides for Paltalk's closing argument |
| Ex. F | excerpted transcript from the August 1, 2024, pretrial conference hearing |

I.  INTRODUCTION

Paltalk presents far-fetched answers to the substantial problems laid out in Cisco's motion. It contends that an unexpected change of course in the middle of a jury trial affected nothing. It argues that Cisco suffered no prejudice from its inability to probe the meaning of "each" with key witnesses and from Paltalk's repeated message that adopting Cisco's reading would violate a prior Court order. Paltalk even suggests that claim-construction arguments Cisco has raised at every turn somehow represent an effort to obtain "a new construction" raised only after Cisco had "the benefit of seeing the verdict." Paltalk observes that the Court did not grant Cisco's mistrial request, but the prejudice only grew from there, as confirmed by the verdict and damages award.

On damages, Paltalk clings to conclusory testimony and tries to evade all scrutiny. Paltalk flouted this Court's pretrial concerns, presented a case based on an accused product rather than the claimed method, neglected fundamentals of damages law, and dropped an expert at the last minute to evade scrutiny. The resulting award of nearly $66 million was grossly excessive.

The Court should return the litigation to a fair course by granting a new trial.[1]

II.  ARGUMENT

　　A.  **The Court should grant a new trial on infringement for all asserted claims and clearly construe the scope of "each" to guide the new proceeding**

　　　　1.  **The shifting ground rules resulted in an unfair trial**

Paltalk sticks its head in the sand, pretending nothing changed at trial. At the first pretrial conference, the Court held that "'each' has a plain and ordinary meaning which ***can include*** one or more." Dkt. 131 at 156. Cisco sought clarification about whether the Court had affirmatively ruled that "each" ***did include*** one or more or was instead leaving the term's scope for the jury to

---

[1] Paltalk is wrong (at 3) that Cisco's motion invoked only Rule 59. Cisco challenged the sufficiency of evidence of infringement under the proper constructions and the sufficiency of evidence for the damages award. Remedies under Rule 50 include a new trial and JMOL. *See* Rule 50(b)(2)–(3).

1

decide. Dkt. 133 at 1–2; Dkt. 136 at 1–2. At the August 2024 pretrial conference, the Court made clear that the issue remained open for trial and that Cisco was free to present expert testimony and argue that "each" meant "all or every." Dkt. 183 at 8. But at trial, Paltalk and its expert Dr. Schaefer argued over and over that the Court had ***definitively*** construed "each" and that Cisco's position contradicted that order. TT 6–10, 200–01, 258–59, 265–71, 620–31, 1125–26. Moreover, Cisco was precluded from confronting Dr. Schaefer with the Court's clarification that it had left the issue open, TT 306-08, from showing definitions, TT 620–22, and from offering engineer testimony that skilled artisans understood "each" as "all or every," TT 570, 620–23. Cisco did not cross-examine Dr. Schaefer about the intrinsic evidence because it understood the Court to have changed its guidance and precluded witnesses from opining about the scope of "each."

Paltalk points (at 4–5) to the Court's ***later*** redetermination that the parties and their witnesses ***could*** debate what "each" meant, TT 640–41, and Cisco's subsequent efforts to present its position through one of its witnesses, Mr. Willis. But by that point Dr. Schaefer and Cisco's engineer witnesses had testified and been excused. Moreover, Paltalk continued to contend that Cisco's interpretation contravened an order of the Court even though the Court had said it was leaving the scope of "each" to the jury. *E.g.*, TT 1125–26 (accusing Cisco and its counsel of asking the jury to "disregard this Court's ruling"). Cisco tried to recover and persuade the jury that "each" meant all or every, but it did not have a full and fair opportunity to do so given the varying limits during trial and Paltalk's repeated accusations that Cisco had contravened the Court's order.

Paltalk argues (at 5–6) that the Court properly "sustained Paltalk's objection to Cisco showing the jury an excerpt of attorney argument … relating to 'each.'" But as the Court recognized, Cisco was trying to highlight the ***Court's*** statement that it had left the issue open. TT 306–08. And Cisco was substantively prevented from debunking Paltalk's false claim that Cisco's all/every

2

construction contradicted the Court's earlier order. Paltalk suggests (at 6) that nothing prevented Cisco from cross-examining Dr. Schaefer on the construction, but the Court at that time ruled that Dr. Schaefer's testimony comported with its construction despite the clarification at the pretrial conference, TT 307, and it told the parties that it had already construed the claim language, leaving the jury with nothing to decide about its meaning. Cisco was prejudiced. Paltalk's citation of Dr. Schaefer's cross-examination at TT 316 is puzzling: that testimony addressed a different issue (removing vs. not including), and Cisco asked only about the "plain meaning" of removing.

Paltalk also distorts the ruling that excluded testimony about "each" from Cisco engineer Nathan Buckles. Mr. Buckles was not, as Paltalk suggests (at 6), being asked "about the Court's constructions." He was prevented from testifying about the plain meaning of "each" as understood by those working in the field. TT 570. If the meaning of "each" was a triable issue, Cisco should have been permitted to offer testimony about its ordinary usage in the art.

Paltalk chides Cisco (at 6) for not citing a case to confirm it suffered prejudice. The point is obvious. Construing the claims "change[s] the rules of the game," *Johns Hopkins Univ. v. Cell-Pro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998), and altering a claim construction ruling requires opportunities to respond with new evidence and arguments, *e.g.*, *id.*; *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1317 (Fed. Cir. 2008); *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1380–81, 1383–84 (Fed. Cir. 2023). Paltalk relies on *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004), but that case was radically different because it involved a bench trial at which both parties (and the finder of fact) knew from the outset that the court would refine its construction. *Id.* at 1410–14. Here, Cisco came into a jury trial understanding that the scope of "each" was an open issue, then had to retrench in view of the Court's contrary suggestion on the first day, then had to retrench again after the Court's final decision to leave it to the jury.

3

### 2. The ambiguous construction of "each" resulted in the parties arguing claim scope to the jury, contrary to *Markman* and *O2 Micro*

Paltalk acknowledges (at 6–7) that *Markman* and *O2 Micro* require courts to resolve disputes over claim scope rather than leaving such issues to the jury. Paltalk argues (at 7) that "[t]he Court resolved the dispute by construing 'each' at the First Pretrial Conference." But the Court ruled only that the plain and ordinary meaning of "each" ***could include*** one or more, not that "each" ***actually meant*** one or more here, and it let the jury decide the scope of that critical term. TT 653 ("the jury will decide"). The parties' closing arguments thus read like a *Markman* hearing, *see* TT 1073–76, 1091–100, 1125–32, and the jury ended up deciding the claims' boundaries.

Citing *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, 853 F.3d 1370, 1379 (Fed. Cir. 2017), Paltalk contends (at 7–8) that a construction "need not always purge every shred of ambiguity." But *Rembrandt* did not involve an *O2 Micro* issue, and this case is not about "shred[s] of ambiguity." In *Rembrandt*, the Federal Circuit affirmed the district court's construction of "modulation method[s] ... of a different type" to mean different "families" of modulation techniques, 853 F.3d at 1375–76, and held that the dispute over whether particular modulation techniques were in different families was a factual issue for the jury, *id.* at 1378–79. This case, in contrast, involves a fundamental dispute between the parties about the claims' scope. Cisco raised a clear dispute: whether the claims' repeated references to "each" client applied to ***every*** client in the group, as Cisco contended, or only to ***one or more*** clients, as Paltalk contended. In *O2 Micro*, the Federal Circuit held that the district court erred in allowing a jury to decide whether an "only if" limitation applied in all power states or only one. 521 F.3d at 1360–62. As in *O2 Micro*, the parties should not have been arguing that legal issue to the jury. And as in *O2 Micro*, the solution is to vacate the judgment and definitively resolve the claim construction issue before a second trial.

*Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1327 (Fed. Cir. 2013), is also off-

4

point. The issue there was not claim construction: the plaintiff got the construction it wanted and did not seek further construction. *Id.* Here, Cisco did ***not*** get the construction it sought, and it moved before trial for clarification of the ambiguous "can include" statement from the first pretrial conference. Paltalk's suggestion (at 7) that Cisco just "wants a new construction of 'each' after the benefit of seeing the verdict" is ludicrous, as are its assertions (at 7, 8) that Cisco has not proposed a construction and waived clarification. Once the dispute became clear, Cisco repeatedly and consistently argued that the Court needs to resolve the issue and should do so by holding that "each" means all/every. *E.g.*, Dkt. 54 at 1-2, 10-18; 67 at 4-8, Dkt. 72 at 1-2; Dkt. 87 at 3-8; Dkt. 131 at 7-19; Dkt. 133 at 1-2; Dkt. 136 at 1-2; Dkt. 183 at 7-9; TT 5-7, 9-10, 634-653, 931-33, 1030.

### B. The Court should also order a new trial on claims 2 and 3

Claims 2 and 3 require "***removing***" audio data "***from***" a multiplexed stream or combined packet. Throughout this case, Cisco relied on the plain and ordinary meaning of "removing from": taking something away from where it was. Everyone agreed that the accused products never initially include and then remove an active speaker's own audio data from a multiplexed stream or combined packet. Paltalk claimed only literal infringement, so the issue was whether ***not including*** audio data constitutes "removing" that data "from" a stream or packet. That is a legal issue. Paltalk notes that Cisco did not request formal construction of "removing ... from." But neither did Paltalk, and Paltalk's position depended on discarding the plain meaning. And while Paltalk argues (at 9) the Court is not ***obliged*** to construe the term, it does not dispute this Court has the ***power*** to do so.

As to validity, the verdict that the patent adequately described claims 2 and 3 was contrary to the great weight of the evidence. Despite Paltalk's suggestion (at 10), column 5 nowhere mentions "***removing***" audio data "***from***" a multiplexed stream or combined packet. It describes not including audio data in a multiplexed stream or combined packet in the first place. Ex. A at 5:44–63. Cisco's expert explained why the two are significantly different, TT 856–59, and Paltalk

5

presented no contrary testimony. The jury may have reasoned that "removing from" is *analogous* to "not including" or that the two are *obvious* variations, but written description requires more. Paltalk presented no evidence that "removing from" is "not including." Paltalk says Cisco bore the burden of proof, and Cisco met that burden with the great weight of the evidence and no rebuttal.

### C. At a minimum, the Court should reduce or retry damages because the $65+ million award was excessive and relied on unreliable evidence

#### 1. Paltalk's focus on "hybrid audio" was misleading

Paltalk faults Cisco for not objecting to individual comments, but the problem was their *cumulative* prejudicial effect. Paltalk insists (at 11) that blurring the facts was no problem because the term "hybrid audio" was in "Cisco's internal documents" as "a reference to PSTN-VoIP audio-conferencing." But that exacerbates the harm from Paltalk acting as though *any* mention of "hybrid audio" was infringing. Because hybrid audio was old news, Paltalk now supposes (at 11) the "core innovation" was actually hybrid audio "accomplished by mixing and multiplexing." But its damages case did not focus on hybrid audio by mixing and multiplexing; it insisted that the jury should apply "greatest weight" to "the ability to have [a] hybrid audio call," which it called "the very thing the patent is about." TT 1089–90 (closing); *see also* TT 282–304 (Schaefer apportionment); TT 331–454 (Bratic); Ex. D at 33, 36 (emphasizing "hybrid audio").

#### 2. Paltalk's apportionment was unsupported

Experts cannot simply conjure black-box apportionment numbers. Paltalk ignores that the Court expressed grave concerns and gave Paltalk a mulligan, yet Paltalk fixed nothing. Paltalk notes (at 12) that the Court denied Cisco's *Daubert* motion, but the problem here is sufficiency, not just admissibility. Moreover, the bases for Dr. Schaefer's testimony changed after the *Daubert* ruling because he abandoned everything but his reliance on Dr. Madisetti, a no-show at trial. And because that reliance was new at trial, TT 327–28, Cisco couldn't cross-examine him beforehand.

6

Paltalk cites (at 12) *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1312–13 (Fed. Cir. 2018), but that case involved a fundamentally different methodology. *Finjan* did not involve black-box qualitative weighing of general attributes; it involved counting discrete functions and tallying precisely which infringed or not. *Id.* Paltalk argues (at 13) that Dr. Schaefer accounted for non-infringing uses, but his apportionment had nothing to do with whether ***uses*** of Webex infringed. Dr. Schaefer also made conclusory assumptions that "no record evidence" supported. *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022). He provided no independent opinion on novelty/design-around—he was a Madisetti mouthpiece. TT 291–92; *contra Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021) (improper to "allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion"). Paltalk insists (at 14) that in *Apple*, "documentary" evidence contradicted the expert whereas "no evidence" contradicted Dr. Schaefer's apportionment here. In fact, plenty of evidence contradicted those opinions, *e.g.*, TT 726–27, 947–49, 958–61 (discussing analyses, documents, opinions), but, more critically, no "record evidence" ***supported*** them, *see Apple*, 25 F.4th at 973. Paltalk doesn't dispute that Dr. Schaefer's testimony was conclusory, and it therefore fails under *Provisur Technologies, Inc. v. Weber, Inc.*, 119 F.4th 948, 957 (Fed. Cir. 2024). Paltalk's only distinction of *Provisur* (at 14) is that the expert there opined about "consumer demand," but that is a distinction without a relevant difference.

### 3. Paltalk's hypothetical-negotiation date was unsupported

Paltalk does not dispute three critical points. ***First***, economic circumstances differed significantly across the potential negotiation dates. ***Second***, Mr. Bratic had no basis to say when infringement first occurred. He was not a POSA and did not rely on any POSA's opinion of a 2007 date. Paltalk cites a 2007 document, but its infringement expert never relied on it. Paltalk also insists that Mr. Bratic countered Cisco's 2004 date, but he disavowed any technical opinion,

7

TT 442, and Dr. Schaefer never addressed 2007. **Third**, Mr. Bratic argued that the date was irrelevant solely because each asserted date predated the damages period. That was legal error because it would render the circumstances at the time of negotiation irrelevant. In passing, Paltalk tries to distinguish Cisco's cases, but it relies on inconsequential differences and conclusory assertions about Mr. Bratic's testimony. If Mr. Bratic were right, those cases would have come out the other way. Paltalk insists that any hypothetical negotiation involves "approximation," but the problem here was a wholesale failure of proof, not inevitable approximation.

### 4. Paltalk failed to account for infringing *uses* rather than *capabilities*

Paltalk insists (at 16) it need not rely on Cisco's usage data. But that is all the record contained. Paltalk could have procured other data (*e.g.*, surveys) to estimate usage but chose not to. Paltalk says it limited its base to "products that were actually used to perform the claimed method," but it had no way to know without assessing use. Paltalk did not show how often the claimed methods were performed. And all the jury found was at least one instance of infringement. Paltalk argues (at 17) that Dr. Schaefer "explained why … his apportionment was a better measure of value" than extent of use. But Paltalk does not cite any such testimony—because there was none.

Paltalk cites *Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1081 (Fed. Cir. 1983), but the expert there ***estimated*** use. Citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009), Paltalk contends (at 17) that a party could have "strong reasons" not to tie a royalty amount to usage but identifies no such reasons here. Paltalk dismisses *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291–92 (Fed. Cir. 2020), because the royalty there was based on total sales, not a subset. But the problem there was not reliance on ***total*** sales, but rather that sales were an improper metric given the infringement theory in that case. As to *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022), Paltalk insists that it "apportioned the infringing uses from the non-infringing uses," but it apportioned ***product properties***, not uses.

8

####    5.    Paltalk prejudicially relied on the entire market value

Paltalk contends that it did not rely on the entire market value, but it told the Court the opposite to get the ▇▇▇▇▇▇ number before the jury. TT 25 ("This is used in Mr. Bratic's apportionment. The ▇▇▇▇▇▇ is the product revenue; that is the product we are accusing."). Paltalk also says it used that number as a "second apportionment" or reasonableness check. But the Federal Circuit has rejected that reasoning because using overall value as a secondary "check" still violates the rule. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311–12, 1318–21 (Fed. Cir. 2011).

Even for Webex Audio, Paltalk has a problem. It insists that the ▇▇▇▇▇▇ figure was for "the accused functionality," but Webex Audio had unpatented features too. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("identification of the smallest salable unit" not enough "if that unit still contains significant unpatented features"). Paltalk blames Cisco's accounting, but Paltalk cannot "hide behind [Cisco's] sales model" to forgo an adequate analysis. *Id.*; *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69–70 (Fed. Cir. 2012). Paltalk could have chosen a different damages model—a per-infringing-call royalty or lump sum—and "should have identified a patent-practicing feature with a sufficiently close relation to the claimed functionality." *VirnetX*, 767 F.3d at 1329; *LaserDynamics*, 694 F.3d at 70.

####    6.    Paltalk failed to show incremental value over alternatives

Paltalk claims (at 18–19) it proved incremental value, but it did not. Instead, it "conflated the benefits" of the claims with hybrid audio "generally." *See Apple*, 25 F.4th at 975–76. It argued that hybrid audio was better than non-hybrid, TT 179–81, but the patentee did not invent hybrid audio, and Paltalk did not compare other hybrid audio methods. Paltalk insists that Dr. Schaefer testified about novelty/design-around, but he just parroted assumptions. TT 323, 325–28. Paltalk attacks the volume of Cisco's evidence, but Cisco's witnesses identified discrete implementations; the changes needed based on Webex; the cost based on experience, Cisco's practices, and industry

9

standards, TT 716–21; and how alternatives affected royalties, TT 941–42, 982–84.

Paltalk cites cross-examination to sow doubt, but its experts never connected that to royalties. Paltalk's arguments (at 19) about Cisco's burden are also a meritless distraction. Proving acceptable alternatives is required for **lost profits**. *Salazar v. HTC Corp.*, No. 2:16-cv-1096, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018). For reasonable royalties, the degree of acceptability simply factors in. Paltalk relies only on *Stoller Enterprises* to assign a burden to Cisco. More courts have ruled the other way,[2] and Paltalk presented no evidence that the alternatives were unacceptable, *Salazar*, 2018 WL 2033709, at *3, or how that would affect damages. Paltalk ignores Media-Tone without disputing its availability as a hybrid audio platform that Cisco/WebEx supported.

### 7. The Court should reconsider its marking ruling

Paltalk provides no reason not to reconsider marking. Paltalk's trial strategy shows why the requirement should apply: Paltalk ran a damages case based on an accused **product**, not performing a method. Licensed products can and should be marked.

### 8. Remittitur is an appropriate remedy

Paltalk claims (at 20) that Cisco has given no basis for remittitur. But Cisco has explained the many flaws that made the damages "excessive and against the great weight of the evidence" and has identified "the maximum amount the jury could properly have awarded." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 177 (5th Cir. 1992).

### III. CONCLUSION

The Court should order a new trial on all issues and conduct a predicate supplemental claim construction before holding the new trial. The Court should at least reduce or retry damages.

---

[2] *See, e.g.*, *Ameritox, Ltd. v. Millenium Health, LLC*, No. 13-cv-832, 2015 WL 1520821, at *14 (W.D. Wis. Apr. 3, 2015); *Salazar*, 2018 WL 2033709, at *3; *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, No. CV 19-1515, 2022 WL 17084156, at *4 (D. Del. Nov. 18, 2022).

10

**REDACTED**

Dated: December 23, 2024

Respectfully submitted,

/s/*Sarah E. Piepmeier*

| | |
|---|---|
| Ryan Hawkins (admitted *pro hac vice*) | Sarah E. Piepmeier |
| Abigail A. Gardner | Elise Edlin (admitted *pro hac vice*) |
| PERKINS COIE LLP | Robin L. Brewer (admitted *pro hac vice*) |
| 11452 El Camino Real, Suite 300 | Nathan B. Sabri (admitted *pro hac vice*) |
| San Diego, CA 92130 | Karl M. Johnston (admitted *pro hac vice*) |
| RHawkins@perkinscoie.com | PERKINS COIE LLP |
| AGardner@perkinscoie.com | 505 Howard Street, Suite 1000 |
| Telephone: (858) 720-5709 | San Francisco, CA 94105 |
| | SPiepmeier@perkinscoie.com |
| Jessica J. Delacenserie (admitted *pro hac vice*) | EEdlin@perkinscoie.com |
| PERKINS COIE LLP | RBrewer@perkinscoie.com |
| 1201 Third Avenue, Suite 4900 | NSabri@perkinscoie.com |
| Seattle, WA 98101 | KJohnston@perkinscoie.com |
| JDelacenserie@perkinscoie.com | Telephone: (415) 344-7000 |
| Telephone: (206) 359-3644 | |
| | Michael E. Jones (SBN 10929400) |
| Andrew T. Dufresne | Shaun W. Hassett (SBN 24074372) |
| PERKINS COIE LLP | POTTER MINTON |
| 33 East Main Street, Suite 201 | 110 North College, Suite 900 |
| Madison, WI 53703 | Tyler, TX 75702 |
| ADufresne@perkinscoie.com | mikejones@potterminton.com |
| Telephone: (608) 663-7460 | shaunhassett@potterminton.com |
| | Telephone: (903) 597-8311 |
| Jonathan I. Tietz (admitted *pro hac vice*) | |
| PERKINS COIE LLP | |
| 700 13th Street NW, Suite 800 | |
| Washington, DC 20005 | |
| JTietz@perkinscoie.com | |
| Telephone: (202) 942-8667 | |

*Attorneys for Defendant Cisco Systems, Inc.*

**REDACTED**

## CERTIFICATE OF SERVICE

I certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on December 23, 2024.

*Sarah E. Piepmeier*
Sarah E. Piepmeier
