IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PALTALK HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | CIVIL ACTION NO. 6:21-CV-00757-ADA |

**PALTALK'S SUPPLEMENTAL BRIEF ON DATE OF FIRST INFRINGEMENT**

Paltalk files this supplemental brief in further response to Cisco's post-trial motion and oral argument on April 11, specifically on the issue of the date of first infringement ("DOFI") of the asserted '858 patent. Paltalk offers this submission to further clarify the relevant legal standard and factual record.

During the April 11, 2025 hearing, the Court invited argument on the issue of DOFI. The issue is relevant to the hypothetical negotiation date under the *Georgia-Pacific* royalty analysis. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012). During the argument, counsel for both parties cited legal principles, and the Court indicated that it would take the matter under advisement and potentially seek additional input on the law. Paltalk submits this supplemental brief specifically to address:

1. **The correct legal standard** in light of certain arguments made by Cisco. Cisco wrongly suggested at the April 11 hearing that a technical expert must issue a specific infringement opinion identifying the DOFI. But that is not the law. Identifying a DOFI is an exercise in approximating when a hypothetical negotiation would have occurred. There is no need for a technical opinion.

2. **The factual record** showing that the named defendant in the case started selling the accused product in 2007—and that the accused product added the accused functionality in 2007—which accords with the law finding this to be the date of the infringement. *See Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993).

1

      3. **The record showing that the damages would not have changed** regardless of which of the *two* dates of first infringement—2004 and 2007—supported the jury's verdict. Cisco, via its expert Lauren Kindler, told the jury that the DOFI was 2004. *See* TT 943:25-944:8. Cisco's 2004 DOFI equally supported the jury's verdict. The trial record includes evidence, in the form of Mr. Bratic's testimony, that his royalty analysis and conclusion would not have changed, regardless whether the DOFI occurred in 2004 or in 2007. TT 357:17-358:12.

Here, the jury heard admissible damages evidence in the form of Mr. Bratic's reasonable royalty testimony, as described below. *See, e.g.*, TT 391:5-12. That testimony was supported by evidence of a DOFI that occurred either in 2007 (per Paltalk, because that's when Cisco purchased Webex Communications and introduced hybrid audio in the accused product) or 2004 (per Cisco). *See* TT 357:17-358:12. The evidence of 2007 was more than sufficient under the legal standard, which allows "an element of approximation and uncertainty." *Wordtech Sys. v. Integrated Networks Sols.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (citing *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009)). But regardless whether the DOFI was 2007 or 2004, Mr. Bratic's analysis of a reasonable royalty (and therefore damages) would be the same and would support the jury's award. Cisco's motion should be denied.

      **I.**      **DOFI involves an "element of approximation and uncertainty" and is the date "when both a patent had issued and the accused products were sold."**

Cisco wrongly suggested to the Court at the April 11 hearing and in briefing that a technical expert must issue a specific infringement opinion identifying the DOFI. *See* ECF No. 225 at 17 (criticizing Mr. Bratic for not being a "technical expert"). That is incorrect as a matter of law—including under the law Cisco has cited. *Georgia-Pacific* analysis does not require the sort of detailed infringement analysis required for liability. The focus for royalty analysis—which necessarily involves reasonable estimation—is on the sale of the product that has been accused. Cisco acknowledged that technical expertise is not necessary by using damages expert Lauren

Kindler to provide Cisco's proposed DOFI of 2004. *See* TT 943:25-944:8. She is not a technical expert and did not rely on Cisco's technical experts for her opinion.

The Federal Circuit has explained that "negotiations should [be] hypothesized at the start of infringement, i.e., when both a patent had issued and the accused products were sold." *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993); *see also LaserDynamics*, 694 F.3d at 75-76 (determining hypothetical negotiation date based on the first sales of the "accused laptop computers" in the United States). Cisco has at least three times relied on this principle in briefing to the Court. Cisco's December 12, 2022 filing was unequivocal:

Cisco's Reply ISO Motion to Exclude Bratic's Testimony (ECF No. 88 at 4)

> determine the date of the hypothetical negotiation. Cisco's Opening Br. at 13. The law is clear that "[t]he date of first infringement begins when both the patent has issued and accused products have been sold." *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322555, at *7 (E.D. Tex. Apr. 6, 2017) (internal citation omitted). To justify its lack of factual

In Cisco's first *and* second motion to exclude Bratic's damages testimony, Cisco likewise cited the Federal Circuit's *Wang* decision, telling the Court that "[t]he date of first infringement begins when both the patent has issued and the accused products have been sold." ECF No. 55 at 13 (citing *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 1322555, at *7 (E.D. Tex. Apr. 6, 2017), and *Wang* for the proposition that "[t]he date of first infringement begins when both the patent has issued and the accused products have been sold"); *see also* ECF No. 151 at 4; *accord Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp.2d 783 (D. Del. 2011). Therefore, the DOFI inquiry is a simple one: when was the accused product (with the accused functionality) sold when the patent had been issued?

This question, like all aspects of a hypothetical negotiation and damages analysis, is not tied to the specifics of an infringement chart—as Cisco implied, *see* ECF No. 225 at 17. To arrive at a DOFI, a damages expert does not need to rely on a technical expert's technical analysis, on a claim-by-claim basis or otherwise. Cisco has never cited any authority supporting that proposition. The law is the opposite: it is well-established that determining a hypothetical negotiation date "*necessarily involves an element of approximation and uncertainty.*" *Wordtech*, 609 F.3d at 1319; *accord LaserDynamics*, 694 F.3d at 76.

## II. The jury heard evidence that the DOFI was in 2007, which in turn supported Bratic's *Georgia-Pacific* analysis.

For two reasons, Paltalk's evidence of 2007 as the DOFI, as presented at trial, supported Bratic's reasonable royalty analysis and the jury's verdict. The patent-in-suit issued in 2004, and the jury heard evidence that Cisco began offering Webex with the accused functionality in 2007.

*First*, 2007 was when Cisco acquired Webex Communications. TT 355:4-10. Thus, 2007 was the first time when Cisco (the only defendant in the case) sold the accused Webex products. This satisfies the standard set forth in *Wang* and trumpeted by Cisco. Even Cisco told the jury, via its expert Ms. Kindler, that 2004 was the DOFI—i.e., when the patent issued and Webex was sold. *See* TT 943:25-944:8. And the law supports the notion that the DOFI should not be earlier than the date when the *named defendant* in the case started selling the accused product, which was in 2007.[1]

---

[1] *See, e.g., Longhorn HD LLC v. Netscout Sys., Inc.*, 2022 WL 903934, at *2 (E.D. Tex. Mar. 27, 2022) (rejecting notion that the hypothetical negotiation could have occurred prior to a corporate acquisition of the seller of the accused product); *Papst Licensing GmbH v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 608-09 (E.D. Tex. 2019) (proper to strike portions of report "basing the hypothetical negotiation date on sales of products never accused in this case and that were sold at a substantially different time than the Accused Products"); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) ("There is nothing to suggest that we should tie a hypothetical negotiation to a prior infringement no longer at issue.").

TT 355:4-10. So, based on Cisco's evidence of a DOFI and governing legal principles, the DOFI for Bratic's analysis should have been (and was) 2007.

*Second*, the jury heard evidence in the form of a Cisco technical document—a 2007 memo about the introduction of "hybrid audio" to the accused Webex products—that provides evidence of a 2007 DOFI. *See* PX213. That document specified that "hybrid audio … is a new service that this engineering release will introduce" in Webex. *Id.* at 2. According to Cisco's technical document, the hybrid audio would "offer user the capability to join audio conference via VoIP or PSTN" and "[o]ffer a competitive advantage over a traditional audio conference provider." *Id.* This supports a jury conclusion that Cisco added the accused functionality in 2007.

A 2007 DOFI serves the ends of a hypothetical negotiation. Cisco had just purchased Webex Communications and, per PX213, proposed to add the accused functionality to the Webex suite of products. It would have made sense at that moment for Cisco to sit across from Paltalk and negotiate a license—precisely the purpose of identifying a DOFI. *See LaserDynamics*, 694 F.3d at 76 ("[T]he basic question posed in a hypothetical negotiation is: if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?").

Finally, it is legally significant that Cisco zealously cross-examined Bratic on his hypothetical negotiation date. *See, e.g.*, TT 423:23-426:5. Courts have acknowledged that cross-examination—not exclusion—is the proper way to address a dispute over DOFI. *Mobility Workx, LLC v. Cellco P'ship*, 2019 WL 572814, at *17 (E.D. Tex. Nov. 5, 2019) ("[A] dispute over when the hypothetical negotiation date would have occurred is better left to cross examination than the exclusion of Dr. Hernandez's entire opinion."). Cisco also, of course, elicited testimony from its own expert Ms. Kindler contesting Mr. Bratic's DOFI and proposing an alternative hypothetical

5

negotiation that occurred in 2004. Because Mr. Bratic's DOFI opinion was supported by evidence and the subject of cross-examination, there is no basis to exclude Mr. Bratic's damages opinion.

### III. The jury also heard evidence, from Cisco, that the DOFI was in 2004, and that evidence independently supports the jury's damages award.

2007 was not the only DOFI the jury was presented with. Cisco's own expert Ms. Kindler (not a technical expert) told the jury that, from Cisco's perspective, the relevant DOFI was 2004.

> Q.        [W]e heard Mr. Bratic say, that the hypothetical negotiation date would have been in 2007. Do you recall that?
>
> Kindler.  Yes. And we disagree on this point. Based on my understanding of Paltalk's initial infringement allegations, **it's my view that the appropriate date should be January 2004**, and that's when the patent issued. (TT 943:25-944:8)

Ms. Kindler's testimony was not based on any technical analysis. It was instead based on her conclusion, given what she understood of the infringement allegations, that 2004 was an appropriate time "to put the parties in this case … in a room …. and hypothesize a license negotiation that would have occurred at that point in time." TT 943:17-22. Neither Ms. Kindler nor any other Cisco expert analyzed infringement as of 2004—yet Cisco told the jury that 2004 was the appropriate hypothetical negotiation date. *See* TT 943:25-944:8 (Cisco basing its DOFI on the date "when the patent issued" at a time when Webex was sold).

Cisco cannot try to avoid its own proposed DOFI of 2004. It presented that date to the jury, and the jury could have accepted it. Thus, Cisco must accept that the trial record contains evidence supporting the existence of a DOFI.

This 2004 evidence is dispositive in Paltalk's favor. The reason is that the trial record also includes evidence, in the form of Mr. Bratic's testimony, that his royalty analysis and conclusion would not have changed, regardless whether the DOFI occurred in 2004 or in 2007. TT 357:17-358:12 ("So the damages period and the focus of the use made of the invention occurs after 2004

6

and 2007. So whether you pick 2004 or 2007 as your hypothetical negotiation dates, it wouldn't impact the telescoping down and looking at the use made of the invention under the patent statute."). The jury could have thus accepted Cisco's 2004 DOFI and also Mr. Bratic's explanation of why his *Georgia-Pacific* analysis would lead to the same conclusion even under a 2004 date. Cisco's post-trial motion quibbles with this testimony of Mr. Bratic's but cites no authority suggesting it should be excluded.[2] It is evidence that supports the jury's verdict.

This is an independent reason, supported by evidence in the trial record, of why Cisco's motion should be denied.

### IV. None of Cisco's authorities are to the contrary—the Court should not disturb the jury's damages award.

Cisco has never cited any authority suggesting that technical analysis is necessary to identify a DOFI, that Mr. Bratic's testimony should be excluded, or that the damages award should be disturbed. Instead, the four cases Cisco cites in its post-trial motion all support Paltalk's position:[3]

- Cisco cites *Wang*, 993 F.2d at 870, and *LaserDynamics*, 694 F.3d at 75, for the basic notion that identifying a DOFI is an important component of a hypothetical negotiation analysis under *Georgia-Pacific*. ECF No. 225 at 16. No one disputes that premise. But neither of those cases suggests any technical infringement analysis is required. To the contrary, as explained, both cases advance the well-accepted principle that admissible royalty analysis can be tied to a hypothetical

---

[2] See below for a discussion of Cisco's authorities. In addition, in its prior *Daubert* motions on this topic, Cisco cited *Cassidian Communications, Inc. v. Microdata GIS*, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013), but that case supports Paltalk's position on this point. In *Cassidian*, "Defendants *did not dispute* that [the expert's] entire opinion [was] based on an incorrect hypothetical negotiation date." *Id.* While the court rejected the expert's opinion on another basis, the court allowed the expert to supplement his report and allowed the new opinion even though "his original damages assessment remain[ed] substantially unchanged." *Cassidian Commc'ns, Inc. v. Microdata GIS*, 2013 WL 12148459, at *4 (E.D. Tex. Dec. 10, 2013).

[3] Cisco's Motion for Judgment as a Matter of Law or a New Trial cites only four cases in support of its challenge to Mr. Bratic's hypothetical negotiation analysis. Those four are discussed in the following bullets. Cisco's prior motions to exclude certain of Mr. Bratic's opinions included additional authorities. Those authorities were addressed and distinguished in Paltalk's responses to those motions. *See* ECF No. 74 at 5-10; ECF No. 152 at 2-7.

7

- negotiation date that, by its nature, involves an "element of approximation and uncertainty." *Wordtech*, 609 F.3d at 1319.

- Cisco also cites *Wang* for the proposition that the "negotiation date should have been the date of first infringement even though damages period was later." ECF 225 at 16. That too is undisputed. Here, the damages period began in 2015. The jury was presented with evidence of a DOFI in 2007 (Mr. Bratic) or 2004 (Ms. Kindler), and Mr. Bratic analyzed the *Georgia-Pacific* factors as of those dates. The *Wang* expert, by contrast, pegged the hypothetical negotiation to the commencement of the damages period. *See* 993 F.2d at 870.

- Cisco cites *Unisplay S.A. v. American Electric Sign Co.*, 69 F.3d 512, 518 (Fed. Cir. 1995), for the proposition that a hypothetical negotiation must be based on "when the infringement began" as opposed to a company's later circumstances. Here, Mr. Bratic's analysis was tied explicitly to "when the infringement began," either in 2007 or in 2004. A 2004 date would not change the analysis. *See, e.g.*, TT 357:17-358:12. That contrasts starkly with the expert in *Unisplay*, who analyzed factors "given the situation with the company … *now*." 69 F.3d at 518 ("At no time did he testify that a hypothetical negotiation between the parties at the time the infringement began would have yielded [the asserted royalty.").

- Cisco cites *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002), where the court rejected a damages model based on the "worth" of the accused products at the time of trial instead of the result of a hypothetical negotiation. But it is irrefutable that Mr. Bratic performed a hypothetical negotiation analysis in light of the *Georgia-Pacific* factors. *Compare* TT 351:18-391:12 (Mr. Bratic's extensive analysis of the hypothetical negotiation as of 2007 or 2004), *with Riles*, 298 F.3d at 1313 ("Riles did not provide any evidence or testimony to show that Mr. Dry's models reflected what the parties might have agreed to, at any time, particularly at the time the infringement began.").

In sum, the jury heard evidence of a reasonable royalty in the form of Mr. Bratic's *Georgia-Pacific* analysis. That analysis was conventional, and it was premised on a hypothetical negotiation that would have occurred "when both a patent had issued and the accused products were sold." *Wang*, 993 F.2d at 869. The jury heard evidence supporting a 2007 DOFI and also a 2004 DOFI (from Cisco's own expert). The jury also heard cross-examination of Mr. Bratic and Ms. Kindler on this issue. On that basis, the jury awarded Paltalk $65.7 million dollars, about two-thirds of what Paltalk asked for. That verdict was supported by evidence and should stand.

8

Dated: April 14, 2025

Respectfully submitted,

By: */s/ Max L. Tribble, Jr.*
    Max L. Tribble, Jr.
    State Bar No. 2021395
    SUSMAN GODFREY L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Fax: (713) 654-6666
    mtribble@susmangodfrey.com

    **ATTORNEY-IN-CHARGE FOR PLAINTIFF PALTALK HOLDINGS, INC.**

OF COUNSEL:

Ryan Caughey
State Bar No. 24080827
Amber Magee (*admitted pro hac vice*)
State Bar No. 24121572
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
rcaughey@susmangodfrey.com
amagee@susmangodfrey.com

Kalpana Srinivasan
State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

Mark D. Siegmund
State Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES, PLLC
400 Austin Ave., 9th Floor

Waco, Texas 76701
Telephone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

## CERTIFICATE OF SERVICE

This document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure.

<em>/s/ Ryan Caughey</em><br>
Ryan Caughey