FILED
April 24, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____lad_____
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PALTALK HOLDINGS, INC., | § |
| | § |
| Plaintiff | § |
| | § No. 6:21-cv-00757-ADA |
| vs. | § |
| | § JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC., | § |
| | § |
| Defendant. | § |

## RESPONSE TO PALTALK'S SUPPLEMENTAL BRIEF
## ON DATE OF FIRST INFRINGEMENT

This issue has come full circle.

Paltalk first presented damages opinions from Mr. Bratic in a report he signed in September 2022. Mr. Bratic relied on a reasonable-royalty theory, but Cisco identified a fatal flaw at the first step in his analysis: he premised his calculations on a presumed date of first infringement in 2015 that lacked any evidentiary support. Mr. Bratic had purported to rely on a technical analysis by Dr. Schaefer, but Dr. Schaefer testified that he had provided no such opinion. *See* ECF No. 55 at 12-17. The Court agreed with Cisco, finding "serious holes … with respect to the way that the hypothetical negotiation date was set" and concluding that Mr. Bratic should place "more reliance on the technical expert to come up with that." ECF No. 131 (Tr. 157:12-16). The Court permitted Mr. Bratic to supplement his opinion accordingly, and he submitted a new report six months later advancing a new, 2010 date of first infringement, citing technical analysis performed by Dr. Schaefer. ECF No. 152 at 1-7. The Court then allowed Mr. Bratic to testify at trial.

At trial, however, Mr. Bratic discarded Dr. Schaefer's technical assessment identifying 2010 as the date of first infringement and relied instead on yet another date, 2007, in his testimony before the jury. But the 2007 date Mr. Bratic chose for trial suffered from the same problem the

1

Court pinpointed in his first report: there was no evidentiary basis for Mr. Bratic to conclude the alleged infringement had begun at that time. Mr. Bratic was not equipped to make such an assessment himself. Dr. Schaefer testified otherwise, concluding 2010 was the correct date. And the single document Paltalk presented at trial referred to hybrid audio functionality *in general*, not the specific method for conferencing multiple callers required by the asserted claims.

Paltalk thus brought the parties, and the Court, right back to where everyone started at the first pre-trial conference. Paltalk once again presented a reasonable royalty damages theory that depended on an unfounded hypothetical negotiation date. That approach was not enough to support Paltalk's damages case then, and it was not enough at trial. The Court should reject Paltalk's current unsolicited, last-gasp attempt to excuse that fundamental deficiency and grant Cisco's motion for remittitur or a new trial.

I.  **Mr. Bratic's asserted 2007 hypothetical negotiation date remains unsupported**

Contrary to Paltalk's suggestion, ECF No. 241 at 2, Cisco has never argued that the *Georgia-Pacific* analysis requires "the sort of detailed infringement analysis required for liability." But a plaintiff like Paltalk attempting to prove its damages case still must establish and apply the right hypothetical negotiation date because using the correct date "is *essential* for properly assessing damages." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) (emphasis added); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) (emphasizing that "the necessity for return to the date when infringement began" is the "key element in setting a reasonable royalty").

Paltalk quibbles with the standard by suggesting that courts simply focus on "the sale of the product that has been accused." ECF No. 241 at 2. But that oversimplifies the issue, especially when, as here, multiple products have been accused. Paltalk later (parenthetically) acknowledges as much by refining the issue to when "the accused product (*with the accused functionality*)" was

sold. *Id.* at 3 (emphasis added). Paltalk thus arrives back at the same standard for setting the hypothetical negotiation: when "the infringement began." *LaserDynamics*, 694 F.3d at 75.

Given the nature of the various products accused here and their numerous functions, the Court recognized that this case called for technical evidence to support Mr. Bratic's opinion as to the correct timing of the hypothetical negotiation. ECF No. 131 (Tr. 157:12-16) (noting "serious holes" in Mr. Bratic's original analysis that required "more reliance on the technical expert to come up with" the date when infringement began). Cisco's JMOL/new trial motion explained that the 2007 hypothetical negotiation date Mr. Bratic relied upon at trial—the third one he has advanced in this proceeding—lacked evidentiary support to establish that was when infringement began. ECF No. 225 at 16-17. Not only did Mr. Bratic lack the technical chops to make such a determination on his own, TT 393:3-11, his choice of 2007 *contradicts* the 2010 date Paltalk's technical expert, Dr. Schaefer, provided. Dr. Schaefer testified that he believed infringing versions of the accused products first emerged years later in 2010. TT 316:19–317:6. That left Mr. Bratic's testimony on the fundamental question of when the alleged infringement began without any evidentiary support.[1]

---

[1] Paltalk's suggestion that Mr. Bratic was exempted from providing evidentiary support because Ms. Kindler "is not a technical expert and did not rely on Cisco's technical experts for her opinion" is unsound. ECF No. 241 at 2-3. As a defense expert, she had to *assume* infringement when identifying a hypothetical negotiation date. She properly did so based on Paltalk's assertion in the original complaint that Webex—not just Cisco—had infringed the '858 patent. TT 943:13–944:8; *see* ECF No. 22 (stipulated dismissal of Webex); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) (withdrawn assertions in pleadings retain status as evidentiary admissions). Paltalk has never argued that Ms. Kindler's 2004 date would not support a verdict adopting *her* damages calculation. *See* ECF. No. 131 (Tr. 68:11-15); ECF No. 183 (Tr. 81:5-6); ECF No. 148.

Paltalk now offers two theories to prop up the unsupported date of first infringement that Mr. Bratic used at trial. Neither supplies any basis to find that accused Webex products started using the claimed methods in 2007.

Paltalk asserts that a document Mr. Bratic discussed at trial provided evidence that "Cisco added the accused functionality in 2007." ECF No. 241 at 5 (discussing PX213). But PX213 does not say *anything* about the specific steps required by the asserted claims of the '858 patent, and Paltalk points only to a passage referencing "hybrid audio" and "the capability to join audio conference via VoIP or PSTN." *Id.* (quoting PX213 at 3). No one disputes that methods for providing hybrid audio (an audio conference supporting both VoIP and PSTN users) predated the '858 patent, TT 320:10-21 (Schaefer), so Paltalk's patent claims did not and could not cover those broad concepts as referenced in PX213. Instead, the asserted '858 claims recite *one approach* to carrying out such functions, limited to a particular combination of steps for doing so. Bare reference to "hybrid audio" thus provides no evidence of whether '858 patent was infringed at any given time. PX213 provides nothing else.

Paltalk's second theory relies not on any asserted factual support, but on a legal argument premised entirely on *Longhorn HD LLC v. NetScout Systems, Inc.*, No. 2:20-cv-00349, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022). Paltalk made no such argument in its first attempt at opposing Cisco's post-trial motion, ECF No. 233 at 14-16, and for good reason. *Longhorn* is a single, unpublished decision that is not only distinguishable, given the significantly different circumstances, but also in significant tension with numerous decisions of other courts—including this Court—holding that the hypothetical negotiation may involve parties beyond those that end up litigating a later infringement suit.

In *Longhorn*, the court emphasized that the plaintiff was "not claiming liability" before the defendant in that case acquired the prior seller, and the plaintiff sought damages starting from the acquisition date. 2022 WL 903934, at *2. Here, Paltalk's requested damages period does not start on either of the dates presented by the parties at trial, and Paltalk did not *choose* to forgo damages before 2007—its damages period is instead cabined by the six-year lookback of § 286. Moreover, unlike in *Longhorn*, Paltalk's technical expert provided affirmative evidence of a *different* date of first infringement than the one used by Mr. Bratic. TT 316:19–317:6.

Furthermore, *Longhorn*'s analysis restricting the alleged infringer at a hypothetical negotiation solely to a party in suit runs contrary to numerous decisions that have held the hypothetical negotiation may include non-parties. *E.g.*, *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. 20-cv-00073-ADA, 2022 WL 831619, at *8 (W.D. Tex. Feb. 24, 2022); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011). *Longhorn* identified no rationale for courts to account for intervening acquisitions on one side of the table but not the other. *See* 2022 WL 903934, at *2 n.3.

Paltalk points out that Cisco cross-examined Mr. Bratic at trial. ECF No. 241 at 5-6. But the problem here is a failure of proof on an issue for which Paltalk bore the burden at trial. The opportunity for cross-examination does not cure the fundamental hole in Paltalk's damages case. Accepting Paltalk's view would mean that no post-trial motion like Cisco's would ever succeed because damages experts are always cross-examined at trial.

Mr. Bratic's asserted 2007 hypothetical-negotiation date was "essential" to the damages theory he presented at trial. *LaserDynamics*, 694 F.3d at 75. By choosing to rely on that wholly unsupported date at trial, Mr. Bratic and Paltalk failed to present evidence necessary to sustain their damages case. The Court should therefore grant Cisco's request for remittitur or a new trial.

**II.     Paltalk cannot salvage Mr. Bratic's analysis by retreating to Cisco's hypothetical negotiation date**

The Court should also reject Paltalk's argument that the result would not change under Cisco's 2004 hypothetical negotiation date. ECF No. 241 at 2, 6-7. Paltalk's argument effectively reverts to relying on the start of the damages period—an approach that the law forbids and that the Court correctly rejected at the *Daubert* stage.

Paltalk points to Mr. Bratic's testimony that his analysis and conclusion would not have changed if the date of first infringement were 2004 rather than 2007. *Id.* at 6–7 (citing TT 357:17–358:12). That is the problem. In suggesting that all dates would yield the same result, Mr. Bratic pointed to just one of fifteen *Georgia-Pacific* factors—the use made of the invention. Moreover, he testified that the choice between 2004 and 2007 was irrelevant *because both dates predated the damages period*.[2] The *only* basis Mr. Bratic identified for equating the various dates was that Cisco made the same use during the damages period regardless of the selected hypothetical negotiation date. TT 440:23–441:2 ("Q. And so when you say that there are different hypothetical negotiation dates that have been discussed but they don't change your ultimate damages analysis, this is why? A. Yes. Absolutely. That's the reason.").

---

[2] *See* TT 357:17–358:12 ("When you look at the patent statute and it says, well, take a look at use made of the invention, we know that time period is July 23rd, 2015 to July 26, 2022. So the damages period and the focus of the use made of the invention occurs after 2004 and 2007. So whether you pick 2004 or 2007 as your hypothetical negotiation dates, it wouldn't impact the telescoping down and looking at the use made of the invention under the patent statute."); TT 439:6-22 ("[B]oth the 2004 and 2007 dates are well before the limited damages period … from July 2015 to July 2022. That never changes even though there are hypothetical negotiation dates earlier than that. And under the patent statute, where you look to the extent of use made of the invention by the infringer, that occurs from July 2015 to July 2022, which is unaffected by the date of the hypothetical negotiation which precedes the beginning date of damages."); TT 440:8-13 (when questioned about why Dr. Schaefer's 2010 date of first infringement would not matter, answering "It never changes the damages period.").

If that approach were permissible, the hypothetical negotiation date would *never* matter. Only the damages period would matter because, under Paltalk's view, that marks the operative "use of the invention" and would remain the same. That is not the law. Rather, the "key element" in a reasonable-royalty analysis is setting the hypothetical negotiation to when infringement began, *regardless of when damages began. Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (collecting cases). "[C]orrect determination" of that date is "essential for properly assessing damages." *LaserDynamics*, 694 F.3d at 75 (citation omitted).

*Wang* illustrates the point. In that case, the district court set a hypothetical negotiation date at the beginning of the damages period rather than when the patent issued, but the Federal Circuit reversed. 993 F.2d at 869-70. If Paltalk's position were correct, *Wang* would have resulted in affirmance because use during the damages period would remain the same under any hypothetical negotiation date, and any error in selecting which date to use would have been harmless. But the choice of date is critical because a *Georgia-Pacific* analysis must account for the "changing technological and financial landscape in the market" over time. *LaserDynamics*, 894 F.3d at 78; *Roland Corp. v. inMusic Brands, Inc.*, No. 2023-1327, 2025 WL 926703, at *15 n.18 (Fed. Cir. Mar. 27, 2025). Many of the fifteen *Georgia-Pacific* factors hinge on economic circumstances that change with negotiation dates—for example, the duration of the hypothetical license, the remaining patent term, the customary economic facts in the industry, business risks, apportionment of then-extant features, among others, as well as the parties' comparative bargaining positions. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Paltalk also ignores that Mr. Bratic did not merely say his analysis would be the same for hypothetical negotiation dates in 2004 and 2007. He said it would be the same with a 2010 date too. TT 427:15-19. Yet there is no dispute that economic circumstances differed substantially at

7

those times. *See* TT 427:15–429:3, 429:23–430:11 (Bratic). Selecting the right date is critical because the analysis must consider the economic circumstances as of the hypothetical negotiation date. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), *vacated on other grounds*, 545 U.S. 193 (2005). Mr. Bratic acknowledged that, if the hypothetical negotiation date were 2004, the parties would have been Paltalk and *WebEx*, not Cisco. TT 427:15–428:7. But he confessed that he had not considered that and other relevant economic circumstances in 2004. *See* TT 428:10–430:11.

Paltalk's sideswipes at the basis for Ms. Kindler's 2004 date, ECF No. 241 at 2-3, 6, are also beside the point and do not absolve the problems with Mr. Bratic's testimony. For starters, the viability of Ms. Kindler's opinion is not in dispute. Paltalk has not challenged Ms. Kindler's date as factually unsupported or unreliable. Furthermore, Cisco did not have the burden to prove damages or infringement. Paltalk did. A defendant need not come forward with affirmative evidence of infringement to put on a damages case. Ms. Kindler properly *assumed* infringement for purposes of her analysis based on Paltalk's allegations that *Webex* infringed. Her date of first infringement did not require any technical support because it assumed that Paltalk's infringement allegations were true. TT 943:25–945:15; *see* ECF No. 131 (Tr. 54:20–56:12). Webex existed before the patent issued, and consistent with precedent, Ms. Kindler therefore assumed the date of first infringement to be the date the patent issued. *Wang*, 933 F.2d at 869-70 (hypothetical negotiation date was when patent issued, not dates of infringing use for damages purposes). That was the correct date of first infringement under her proper, assumption-based analysis. But Cisco contested infringement at all times in 2015, 2010, 2007, and 2004.

**III.    Paltalk's repeated emphasis on *Wordtech* is a red herring**

Throughout its supplemental brief, Paltalk repeats a snippet from *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010), each time suggesting

8

that setting the hypothetical negotiation date is steeped in "approximation and uncertainty." But neither that sound bite nor the holding in *Wordtech* was directed to the hypothetical negotiation date in particular. Rather, the opinion explained that the *hypothetical negotiation as a whole* "involves an element of approximation and uncertainty." *Id.* at 1319. Moreover, Paltalk ignores that the Federal Circuit vacated the damages verdict in *Wordtech* as lacking sufficient evidentiary support and instead relying on "speculation or guesswork" for several factual assertions underlying the plaintiff's damages case. *Id.* at 1320-22. As *Wordtech* aptly demonstrates, allowing some approximation in fashioning a reasonable royalty award is not a license to forgo evidence-based analysis in favor of speculation or guesswork. That is exactly what Paltalk and Mr. Bratic engaged in when asserting the 2007 hypothetical negotiation date at trial.

      The Court should grant Cisco's motion for remittitur or a new trial.

| | |
|---|---|
| Dated: April 23, 2025 | Respectfully submitted, |
| | |
| Ryan Hawkins (admitted *pro hac vice*)<br>Abigail A. Gardner<br>PERKINS COIE LLP<br>11452 El Camino Real, Suite 300<br>San Diego, CA 92130<br>RHawkins@perkinscoie.com<br>AGardner@perkinscoie.com<br>Telephone: (858) 720-5709 | */s/ Shaun W. Hassett*<br>Sarah E. Piepmeier<br>Elise Edlin (admitted *pro hac vice*)<br>Robin L. Brewer (admitted *pro hac vice*)<br>Nathan B. Sabri (admitted *pro hac vice*)<br>Karl M. Johnston (admitted *pro hac vice*)<br>PERKINS COIE LLP<br>505 Howard Street, Suite 1000<br>San Francisco, CA 94105<br>SPiepmeier@perkinscoie.com<br>EEdlin@perkinscoie.com<br>RBrewer@perkinscoie.com<br>NSabri@perkinscoie.com<br>KJohnston@perkinscoie.com<br>Telephone: (415) 344-7000<br>Facsimile: (415) 344-7050 |
| Jessica J. Delacenserie (admitted *pro hac vice*)<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>JDelacenserie@perkinscoie.com<br>Telephone: (206) 359-3644 | |
| Andrew T. Dufresne<br>PERKINS COIE LLP<br>33 East Main Street, Suite 201<br>Madison, WI 53703<br>ADufresne@perkinscoie.com<br>Telephone: (608) 663-7460 | Michael E. Jones (SBN: 10929400)<br>Shaun W. Hassett (SBN: 24074372)<br>POTTER MINTON<br>102 North College, Suite 900<br>Tyler, TX 75702<br>mikejones@potterminton.com<br>shaunhassett@potterminton.com<br>Telephone: (903) 597.8311<br>Facsimile: (903) 593.0846 |
| Jonathan I. Tietz (admitted *pro hac vice*)<br>PERKINS COIE LLP<br>700 13th Street NW, Suite 800<br>Washington, DC 20005<br>JTietz@perkinscoie.com<br>Telephone: (202) 942-8667 | ATTORNEYS FOR DEFENDANT<br>CISCO SYSTEMS, INC. |