UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

PALTALK HOLDINGS, INC.,                    §
                                           §
                    Plaintiff,             §
                                           §
v.                                         §          CIVIL NO. W-21-CV-00757-ADA
                                           §
CISCO SYSTEMS, INC.,                       §
                                           §
                    Defendant.             §

MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL

Before the Court is Defendant Cisco Systems, Inc.'s ("Cisco's") Motion for Judgment as a

Matter of Law or a New Trial Under Federal Rules of Civil Procedure 50(b) and 59. ECF No. 225.

Plaintiff Paltalk Holdings, Inc. ("Paltalk") filed an opposition to the motion on December 3, 2024

(ECF No. 233), and Cisco filed a reply on December 23, 2024 (ECF No. 235). The Court heard

oral argument on April 11, 2025 (ECF No. 239), and the parties filed supplemental briefing

regarding one of the grounds on which Cisco moved for a new trial (*see* ECF Nos. 241, 244). After

careful consideration of the Motion, the parties' briefing, the record, and the applicable law, the

Court **GRANTS-IN-PART and DENIES-IN-PART** Cisco's Motion.

## I.    BACKGROUND

Paltalk brought this patent infringement suit against Cisco, alleging infringement of U.S.

Patent No. 6,683,858 ("the '858 Patent"). ECF No. 1. The '858 Patent is directed towards systems

and methods that allow mixing and non-mixing clients to participate in a single audio

conference.'858 Patent,[1] at Abstract. Paltalk alleged that Cisco's Webex products directly infringe

---

[1] The '858 Patent is attached as an exhibit to Cisco's Motion at ECF No. 225-2.

the '858 Patent. ECF No. 1 at ¶¶ 12–16. This Court conducted a jury trial on August 26–29, 2024, resulting in a unanimous verdict that Cisco infringed the '858 Patent and that the '858 Patent was not invalid. ECF No. 212.

## II.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law – Rule 50(b)

A court may grant judgment as a matter of law (JMOL) against a prevailing party only if a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party on that issue. Fed. R. Civ. P. 50(a)(1). In deciding a renewed JMOL motion, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1112 (5th Cir. 2021). The court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id*. This is because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013).

Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve, and the only reasonable conclusion is in its favor. *Mentor H/S, Inc. v. Medical Device All., Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001). JMOL is inappropriate if the record evidence is such that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003).

A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict. *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004). Substantial evidence is more than a scintilla, but less than

a preponderance. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019). Thus, JMOL must be denied if a jury's verdict is supported by legally sufficient evidence that amounts to more than a mere scintilla. *Laxton*, 333 F.3d at 585.

**B.    New Trial – Rule 59**

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action of law in federal court." Fed. R. Civ. P. 59(a). Generally, a new trial may be granted when the trial court finds "(1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

Whether to grant or deny a motion for new trial "is within the sound discretion of the trial court." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). A "district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." *Wellogix*, 716 F.3d at 881 (quotations and citations omitted). Thus, "mere conflicting evidence or evidence that would support a different conclusion" cannot serve as the basis for a new trial. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). Indeed, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. If the evidence at trial is legally sufficient to support the jury's verdict, a district court does not abuse its discretion by denying a motion for new trial. *One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (citations omitted). Thus, grant of a new trial is proper only where the jury's verdict is "against the great weight of the evidence"

or will result in a "miscarriage of justice." *Pryor*, 138 F.3d at 1026 n.3 (5th Cir. 1998) (quoting *Thompson & Co. v. Partridge*, 636 F.2d 945, 957 (5th Cir. 1981)).

### III.    ANALYSIS

The jury found that Cisco's Webex products directly infringed the '858 Patent and that the '858 Patent is not invalid for obviousness or inadequate written description. ECF No. 212. The jury awarded Paltalk damages in the amount of $65,720,700. *Id.* Cisco seeks JMOL and a new trial on the issues of infringement and invalidity. Cisco further requests a new trial on damages or, in the alternative, remittitur of the damages award.

### A.    No New Trial or Judgment as a Matter of Law Is Warranted Based on the Court's Construction of "Each"

Cisco argues that a new trial is warranted because (1) the Court's guidance as to the term "each" deprived Cisco of a fair trial, and (2) the Court's construction of the term "each" was contrary to *Markman* and *O2 Micro*. ECF No. 225 at 2–8. Cisco contends that under the proper construction of the term "each," it is entitled to judgment as a matter of law. ECF No. 235 at 1 n.1. Paltalk opposes both grounds. ECF No. 233 at 3–9. For the reasons stated below, the Court finds that no new trial or judgment as matter of law on the issue of infringement is warranted.

### 1.    The Court's Construction of the Term "Each" From Pre-Trial Through Trial

Claim 1 of the '858 Patent recites a method of providing audio conferencing for a plurality of clients that includes the following steps: (1) receiving an audio packet from "each of the plurality of clients," (2) multiplexing the audio packets received "from each client" into a multiplex stream, (3) sending the multiplexed stream "to each of" the "first subset of the plurality of clients [that] has the capability to mix multiple audio streams," and (4) sending the mixed audio packets to "each of" the "second subset of the plurality of clients [that] does not have the capability to mix multiple audio streams." '858 Patent at 7:55–8:13.

Though the parties did not raise the term "each" during the *Markman* hearing, Cisco's motion for summary judgment of non-infringement and the subsequent briefing was based on the interpretation of this term. *See* ECF Nos. 54, 78, 87. Cisco argued that "each" should be given its plain and ordinary meaning of "all" or "every one." ECF No. 54 at 15. Paltalk countered that the Court need not construe the term "each" because neither party had sought construction of the term. ECF No. 78 at 1–2. Alternatively, if the Court did construe the term, Paltalk argued that "each" should be construed to mean "one or more." *Id.* at 2. On June 29, 2023, the Court addressed Cisco's motion for summary judgment during a pretrial conference and ruled that the term "'each' has a plain and ordinary meaning which can include one or more." ECF No. 131 at 156:8–12. The minute entry for the proceeding reflected the same, stating that the "Court construes each . . . plain and ordinary meaning, wherein each can mean one or more." *See* ECF No. 130.

Cisco moved to clarify the June pretrial conference ruling regarding the term "each," which the Court addressed during a pretrial conference in August 2024. *See* ECF Nos. 133, 183.  Cisco asked whether the Court had "ruled that 'each' means one or more," and the Court confirmed that it had not so ruled and that its ruling was that "'each' takes its plain and ordinary meaning, that can include one or more." ECF No. 183 at 8:3–12. The Court further confirmed that "the experts will presumably provide opinion to the jury as to how one of ordinary skill in the art would understand the plain and ordinary meaning of 'each.'" *Id.* at 8:13–21.

At the end of trial, Cisco moved for a mistrial, arguing that the Court's guidance regarding its construction of the term "each" changed throughout trial, causing Cisco to suffer substantial prejudice. *See* ECF No. 198 at 1. Cisco's present Motion for a new trial asserts the same, identifying instances where Cisco contends the Court's guidance changed in a way that unfairly prejudiced Cisco.

First, Cisco argues that "on the first day of trial, and over Cisco's objection, Paltalk presented the Court's statement that 'each' can include one or more and contended to the jury that the Court had rejected Cisco's 'all or every' construction." ECF No. 225 at 5. Cisco refers to "a demonstrative slide in which Paltalk was suggesting that the Court had definitively construed 'each.'" *Id.*; *see* ECF No. 224-4 at 34. However, the Court sees no inconsistency with its decision to overrule Cisco's objection. At trial, Cisco argued that by displaying the Court's ruling on the term "each" from the June pretrial conference, "Paltalk want[ed] to tell the jury that the Court has ruled that they're right, that it can include 'one or more.'" ECF No. 214 at 6:17–20. The issue with this argument is that the Court did construe "each," as stated during the June pretrial conference and again in taking up Cisco's motion for clarification, as having "its plain and ordinary meaning, that can include one or more." ECF No. 131 at 156:8–12; ECF No. 183 at 8:3–12; *see also* ECF No. 130. Thus, when Cisco asked at trial whether Paltalk can "say that the Court has said that "each" can include," the Court answered in the affirmative and noted that, as stated at the previous hearings, "'each' can include that [*i.e.*, one or more]." ECF No. 214 at 9:12–4. This answer aligned with the construction issued before trial.[2]

Second, Cisco argues that "[t]he Court did not allow Cisco to cross-examine Dr. Schaefer with the Court's statement at the pretrial hearing that it had *not* defined 'each' as 'one or more' and that the term could alternatively mean 'all or every.'" ECF No. 225 at 5 (emphasis in original) (citing ECF No. 214 at 306–08). Cisco points to a Paltalk objection that the Court sustained regarding Cisco's use of the transcript from the August 2024 pretrial conference in which the Court clarified its construction of the term. ECF No. 214 at 306:9–307:6. The Court sustained the

---

[2] This answer further comports with the Court's standing MIL No. 17, which provides: "The parties shall be precluded from introducing evidence, testimony, or argument relating to the Court's Claim Construction Order **other than the Court's actual adopted constructions**, including the Court's reasoning or the parties' agreements." (emphasis added).

objection because Cisco wished to introduce language that was not part of the Court's construction. *Id.* at 307:13–14. As reiterated at the start of trial, the Court's construction was: "'each' has a plain and ordinary meaning which can include one or more." *Id.* at 10:11–13. Thus, the Court's decision to exclude the Court's August statement regarding what "it had *not* defined" "each" as is consistent with its earlier decision allowing Paltalk to show the Court's ruling from the June 2023 pretrial conference, which provided the construction the Court *had* issued.[3]

Cisco then proceeded to cross-examine Dr. Schaefer as to why, in his opinion, a person of ordinary skill would view "each" as meaning one or more. *See id.* at 308:8–314:9. While Cisco states that it "did not cross-examine Dr. Schaefer about the intrinsic evidence because it understood the Court to have changed its guidance and precluded witnesses from opining about the scope of 'each,'" all the Court had indicated prior to and during the cross-examination of Dr. Schaefer was that trial transcripts of other proceedings would not be allowed in unless they reflected the actual construction of "each" issued by the Court.

Third, Cisco argues the Court also prevented it from asking its engineer witnesses about how they would interpret the term "each." ECF No. 225 at 6 (citing ECF No. 215 at 570). Cisco cites an instance where Paltalk objected to Cisco asking its engineer witness, Mr. Buckles, if he had an understanding of what the word "each" means. ECF No. 215 at 570:1–9. The Court sustained the rejection because he had lacked foundation to testify about the Court's constructions. *Id.* at 570:12–25. Moreover, Cisco had stated it was "not planning on asking him with regard to claim construction of the patent" but instead was planning to ask him "what he thinks the word means." *Id.* at 570:19–22. Thus, the Court found the question irrelevant. *Id.* at 570:23–25. Cisco

---

[3] This decision is likewise consistent with this Court's MIL No. 17: "The parties shall be precluded from introducing evidence, testimony, or argument relating to the Court's Claim Construction Order **other than the Court's actual adopted constructions, including the Court's reasoning or the parties' agreements**." (emphasis added).

further identifies Mr. Belcher as another engineer witness it was precluded from questioning about his understanding of the term "each," but Cisco fails to cite to any portion of the transcript where the Court did so.[4]

Finally, Cisco argues that "the Court stated that it had 'told [counsel] what the plain and ordinary meaning of the word is,' that experts were not to opine on the meaning of the term in the context of the patent and instead were limited to applying the Court's construction to the accused products in assessing infringement." ECF No. 255 at 5 (citing ECF No. 215 at 620–31). Cisco cites a portion of the trial transcript in which counsel and the Court took a sidebar right after Mr. Willis, Cisco's non-infringement expert, was sworn in. The discussion focused on what Mr. Willis planned to say regarding the Court's construction of the term "each" and whether it adhered to the Court's prior rulings. Initially, there was confusion as to what Cisco's position was regarding what Mr. Willis was going to testify as to the construction of "each." *See* ECF No. 215 at 634:23–635:5. However, as the discussion continued, Cisco clarified that its expert planned to testify consistent with what the Court's construction is. *Id.* at 637:5–13. Eventually, the Court determined that the jury would decide the issue. *Id.* at 653:16–17. Mr. Willis then provided his opinion regarding the application of the Court's construction of the term "each" to the issue of infringement. *Id.* at 670:9–681:17.

Having chronologically described the instances raised by Cisco above, the Court finds that its approach to the term "each" was consistent. In sum, its decisions regarding the admission and exclusion of transcripts from pre-trial hearings in which the Court construed and clarified its construction of the term "each" comported with the principle of the Court's MIL No. 17: no evidence, testimony, or argument relating to a claim construction order, including the Court's

---

[4] The portions cited by Cisco pertain to Mr. Buckles (ECF No. 215 at 570) or occurred after Mr. Belcher was dismissed (ECF No. 215 at 620–23).

reasoning or the parties' agreements, *unless* it is limited to the Court's actual adopted constructions. Moreover, that the "experts will presumably provide opinion to the jury as to how one of ordinary skill in the art would understand the plain and ordinary meaning of 'each'" (*see* ECF No. 183 at 8:13–21) does not mean that a fact witness who had not considered the Court's construction or the asserted patent may testify as to his understanding of the term. Finally, the Court's ultimate determination regarding Mr. Willis' testimony as to the term "each" did not depart from its initial guidance.

To the extent there was any inconsistency, the Court finds that Cisco has not carried its burden to show that its substantial rights were affected. Cisco advanced its position regarding "each" throughout the entirety of the case. *See* ECF No. 214 at 48:19–50:14 (opening statement), 305:12–306:8 (cross-examination of Dr. Schaefer), 308:18–309:4 (continued cross of Dr. Schaefer), 312:24–314:9 (continued cross of Dr. Schaefer); ECF No. 215 at 669:4–681:18 (direct of Mr. Willis); ECF No. 216 at 700:2–704:9 (direct of Mr. Willis), 713:20–714:16 (direct of Mr. Willis), 784:20–785:8 (redirect Mr. Willis), 785:18–786:7 (redirect of Mr. Willis), 787:8–23 (redirect of Mr. Willis), 900:2–18 (redirect of Mr. Bress[5]), ECF No. 220 at 1091:14–1101:3 (Cisco's closing).

Having reviewed the record, the Court determines that Cisco has not carried its burden to show that a new trial is warranted.

### 2.     The Term "Each" and *O2 Micro*

Cisco argues that the Court's construction of the term "each" violated *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008) and *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). ECF No. 225 at 8. As

---

[5] Mr. Bress was Cisco's invalidity expert. *See* ECF No. 216 at 801:1–21.

discussed above, the parties' dispute over the term "each" began with Cisco's motion for summary judgment of non-infringement. ECF No. 54. Cisco argued that it should prevail because a person of ordinary skill in the art would understand the term "each" to have its plain and ordinary meaning of "all" or "every one." *Id.* at 15. Cisco contented that under this construction of the term "each," Paltalk must prove that the accused products (1) create a multiplexed stream with audio from *everyone* on the active speaker's list on the audio conference list and then (2) send that stream to the first of two subsets of people that joined the audio conference. *Id.* at 5. Because it was undisputed that Webex does not create a multiplexed stream comprising the audio of all active speakers, Cisco argued summary judgment of non-infringement was appropriate. *Id.* at 5–6.

Paltalk responded that one of ordinary skill in the art would understand that "each" in Claim 1 "could mean 'one or more' in light of the specification and the text of the other patent claims." ECF No. 78 at 9. According to Paltalk, this is because the fifth claim element teaches the formation of a multiplexed stream before that stream is sent to one or more clients. *Id.* Cisco's construction would require *all* users to receive their own audio. *Id.* However, dependent Claims 2 and 3 discuss removing an active speaker's audio before the audio is sent to an active speaker, either as part of a multiplexed stream (Claim 2) or a combined packet (Claim 3). *Id.* Thus, Paltalk argued that Claims 2 and 3 require sending less than all clients' audio as part of multiplexed streams or combined packets. *Id.* Because Claims 2 and 3 depend on Claim 1, then Claim 1 "*must* accommodate the fact that an active speaker's audio might not be included in a multiplexed stream or one combined packet." *Id.* (emphasis in original).

The Court thus issued the following construction: "'each' has a plain and ordinary meaning which can include one or more." ECF No. 131 at 156:8–12. This comports with the language of Claims 1, 2, and 3 in view of the patent specification. Specifically, the '858 Patent describes the

preferred embodiments of the invention and steps through the process of providing a hybrid IP-based client and phone client conference. '858 Patent at 4:60–62. After determining the number of active speakers participating in the audio conference, "[i]n step 314, active speaker audio data for each and every active speaker is multiplexed." *Id.* at 5:44–47. "However, as will be apparent to those skilled in the relevant art(s), if party j is an active speaker, step 314 will not include party j's own audio data in the multiplexed packets." *Id.* at 5:48–50. This is so "that party j will not 'hear themselves speak.'" *Id.* at 5:50–52. Then, the multiplexed audio packet is sent to a mixing client. *Id.* at 5:66–6:1. These steps will then loop "until all participants . . . have been sent an updated audio stream." *Id.* at 6:4–8.[6]

Under the Court's construction, Claim 1 thus covers, but is not limited to, the preferred embodiments described in the '858 Patent. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'"). The issue, as the Court sees it, is that Cisco's argument boils down to this—the plain and ordinary meaning of "each" does not include "one or more"; it can only mean "all." But the Court expressly construed "each" to "ha[ve] its plain and ordinary meaning, which can include one or more." Thus, the Court does not view the issue as one over a "fundamental dispute regarding the scope of the claim term." Cisco may disagree with the correctness of this Court's construction, but that is not grounds for a new trial.[7] Because the Court does not construe the term "each" according to Cisco's construction, judgment as a matter of law is further unwarranted.

---

[6] This discussion focuses on the multiplexed stream relating to Claims 1 and 2. Dependent Claim 3 is essentially the same but applied to the non-mixing component.

[7] Cisco states that the Court "partially construed" the term "each" and suggests that the phrase "can include" should have been construed. ECF No. 225 at 9. However, "a sound claim construction need not always purge every shed of ambiguity." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977 (Fed. Cir. 2021).

**B.    No New Trial or Judgment as a Matter of Law Is Warranted As to Infringement and Invalidity of Dependent Claims 2 and 3**

The jury found infringement and no invalidity of Claims 2 and 3. As discussed above, Claims 2 and 3 depend from Claim 1 and recite removing an active speaker's audio before the audio is sent to an active speaker. Paltalk presented evidence that Cisco's products infringe by removing the active speaker's audio data from the multiplexed stream or combined packet. *See* ECF No. 214 at 272:2–278:13. Cisco now moves for judgment as a matter of law or new trial on both infringement and invalidity of Claims 2 and 3.

Cisco first argues that judgment as a matter of law or new trial as to these claims is warranted because the Court should have construed the phrase "removing from." ECF No. 225 at 11. According to Cisco, the parties disagreed only on whether excluding packets in the first place falls within the literal scope of "removing" audio packets "from" the multiplexed stream or combined packet. *Id.* However, as Cisco acknowledges, neither side requested construction of "removing" packets. *Id.* "Litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Conoco, Inc. v. Energy & Env't Intern., L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). Thus, the issue has been waived.

Cisco also argues that judgment as a matter of law or a new trial is warranted because the verdict that the patent provides an adequate written description of Claims 2 and 3 was contrary to the great weight of the evidence because (1) the '858 Patent does not describe removing data from a multiplexed stream or combined packet, only not including audio data in the multiplexed stream or combined packet in the first place, and (2) Cisco's no-written-description case went unrebutted. *Id.* The Court finds that neither argument justifies judgment as a matter of law nor a new trial.

Cisco's first point is similarly based on its argument that the Court should have construed the term "removing from." The Court declines to address a claim construction argument raised for

the first time post-trial. Regarding Cisco's second point, the Federal Circuit has held that a plaintiff

is not entitled to judgment as a matter of law simply because a patentee presents a prima facie case

of invalidity and the defendant fails to present any affirmative evidence. *See Core Wireless*

*Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363–64 (Fed. Cir. 2018). The jury was not

required "to give full credit and acceptance to the testimony of [Cisco's expert]." *Id.*

For these reasons, the Court determines that neither judgment as a matter of law nor a new

trial is warranted as to the findings of infringement and no invalidity of Claims 2 and 3.

## C.    Remittitur or New Trial Regarding Damages

Cisco moves for remittitur or a new trial on damages based on seven grounds: (1) Paltalk

relied on an erroneous hypothetical-negotiation date; (2) Paltalk conflated hybrid audio with the

claimed method; (3) Paltalk's technical apportionment, upon which its damages expert relied, was

inadequate; (4) Paltalk based its damages model on the accused products' capabilities rather than

on usage of the claimed method; (5) Paltalk violated the entire market value rule; (6) Paltalk's

evidence regarding non-infringing alternatives was inadequate and flawed; and (7) the Court

should reconsider its ruling regarding Cisco's failure-to-mark summary judgment motion. ECF

No. 225 at 11–20.

### 1.    Applicable Law

The burden of proving damages falls on the patentee. *Lucent Techs., Inc. v. Gateway, Inc.*,

580 F.3d 1301, 1324 (Fed. Cir. 2009). There are two alternative categories of infringement

compensation: (1) a patentee's lost profits and (2) the reasonable royalty they would have received

through arms-length bargaining. *Id.* Lost profits are not at issue in the present case.

There are several approaches for calculating a reasonable royalty, but the common

approach attempts to determine the royalty upon which the parties would have agreed had they

successfully negotiated an agreement just before infringement began. *Id.* Under this hypothetical negotiation framework, the asserted patent claims are assumed valid, enforceable, and infringed. *Id.* at 25. There are two separate and distinct components to a reasonable royalty: (1) the royalty base, or the revenue pool implicated by the infringement; and (2) the royalty rate, or the percentage of that pool "adequate to compensate" the plaintiff for infringement. *Cornell Univ. v. Hewlett-Packard Co.*, 609 F.Supp.2d 279, 286 (N.D.N.Y. 2009).

A patentee in every case must provide evidence tending to apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features. *Lucent*, 580 F.3d at 1337. "[S]uch evidence must be reliable and tangible, and not conjectural or speculative." *Id.* However, if the patented feature creates the "basis for customer demand" or "substantially create[s] the value of the component parts," then a patentee may assess damages based on the entire market value of the accused products. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (citing *Lucent*, 580 F.3d at 1336). This too must be shown by reliable and satisfactory evidence. *Lucent*, 580 F.3d at 1337. A reasonable royalty analysis "necessarily involves an element of approximation and uncertainty." *Id.* at 1325. However, the jury verdict still must be supported by sufficient evidence.

Remittitur is a procedural issue not unique to patent law and is thus governed the law of the Fifth Circuit. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005). In the Fifth Circuit, a decision on remittitur and new trial is within the sound discretion of the trial court. *See Volger v. Blackmore*, 352 F.3d 150, 154 (5th Cir. 2003). The standard is highly deferential, and damages are set aside "only upon a clear showing of excessiveness." *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010) (quoting *Duff v. Werner Enters., Inc.*, 489 F.3d 727, 730 (5th Cir. 2007)).

### 2.    The Hypothetical-Negotiation Date[8]

Mr. Bratic, Paltalk's damages expert, asserted a 2007 hypothetical-negotiation date, which is when Cisco acquired Webex. ECF No. 215 at 356:22–23. Cisco's damages expert asserted a hypothetical negotiation date of 2004, which is when the '858 Patent issued. ECF No. 220 at 944:4–8. Cisco contends that the 2007 hypothetical-negotiation date is inaccurate and grounds for retrial. ECF No. 225 at 16. Cisco argues that Mr. Bratic's opinion is flawed because he testified that the hypothetical-negotiation date is irrelevant because the date was before the damages period. *Id.* Cisco further argues that it is factually flawed because both damages experts recognized that the circumstances varied significantly between the proposed hypothetical-negotiation dates. *Id.* Finally, Cisco notes that the 2007 hypothetical-negotiation date is unsupported by the evidence and contrary to first date of infringement provided by Paltalk's own technical expert. *Id.* at 17.

The hypothetical-negotiation date is relevant and "essential for properly assessing damages." *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012). This is because a reasonable royalty is typically determined from the "hypothetical results of hypothetical negotiations between the patentee and infringer (both hypothetically willing) at the time infringement began." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). Thus, "the date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics*, 694 F.3d at 75.

While Cisco cites testimony indicating that the circumstances were different in 2004 than in 2007, these factual differences matter only if Cisco's proposed hypothetical negotiation date was the correct date.[9] However, the Court determines that there was sufficient evidence supporting

---

[8] The parties provided supplemental briefing on this issue at the Court's request. *See* ECF Nos. 241, 244.

[9] Cisco's proposed hypothetical negotiation date also raises concern, as the parties at the hypothetical negotiation would be Paltalk and Webex, not Paltalk and the alleged infringer in this case, Cisco. *See, e.g., Longhorn HD LLC v.*

Mr. Bratic's proposed hypothetical negotiation date. Mr. Bratic testified that the hypothetical negotiation would have happened in 2007, when Cisco acquired Webex. ECF No. 215 at 356:17–23. Paltalk introduced evidence supporting this 2007 hypothetical negotiation date, specifically a July 2007 Cisco document stating: "The hybrid audio service is a new service that this engineering release will introduce. The service will offer user the capability to join audioconference via VoIP or PSTN." *See* PX213 at 3; ECF No. 215 at 448:21–449:2. Mr. Bratic explained why this document supported his view that the hypothetical negotiation date was 2007, as well as why Cisco's proposed 2004 date was incorrect. ECF No. 215 at 357:6–16, 442:18–444:10, 451:25–452:6 (discussing PX213). While Paltalk contends that this date is unsupported by an infringement expert's testimony, the Court is unaware of, and Paltalk does not cite any case law requiring infringement expert testimony to establish the hypothetical negotiation date. *See* ECF No. 244. The jury was entitled to conclude, based on the evidence presented, that the accused Webex functionality was implemented in 2007 based on the Cisco document.

Thus, though there is conflicting testimony from Cisco's damages expert, Ms. Kindler (*see* ECF No. 216 at 943:25–944:8), Paltalk's infringement expert (*see* ECF No. 214 at 317:3–6), and Paltalk's damages expert (*see* ECF No. 215 at 448:21–452:6), the parties' dispute over the actual date of first infringement was a question of fact for the jury. *See Micro Chem., Inc. v. Lextron, Inc.* 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *see also Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-CV-01414-HSG, 2017 WL 2001981, at *3 (N.D. Cal. May 11, 2017) (ruling that the actual date of first infringement is a

---

*Netscout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 9033934, at *3 & n.3 (E.D. Tex. Mar. 27, 2022) (noting precedents where the potential licensor was a different party than the plaintiff but finding no precedent where the damages period is limited to when the defendant was allegedly infringing but the defendant was not considered the "infringer" at the time of first infringement).

fact question for the jury). Because there was substantial evidence to support Mr. Bratic's hypothetical negotiation date, a new trial on damages is not warranted on this ground.

### 3.    Paltalk's Characterizations of "Hybrid Audio"

It is undisputed that Cisco did not object to Paltalk's characterizations of "hybrid audio." Unobjected-to errors only justify a new trial in an "exceptional case where the interests of substantial justice is at stake." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1327 (Fed. Cir. 2013) (quoting *Shipman v. Cent. Gulf Lines, Inc.*, 709 F.2d 383, 388 (5th Cir. 1983)). Having considered the parties' arguments and reviewed the record, the Court is not convinced that Cisco's substantial rights were affected. Both parties presented evidence and testimony that differentiated between the concept of "hybrid audio" as used in the '858 Patent and "hybrid audio" generally. *See, e.g.*, PX213; DX-60; ECF No. 214 at 40:16–41:7, 181:6–23, 191:10–23, 190:9–25, 317:15–18, 320:9–16; ECF No. 215 at 580:1–25, 596:1–599:12. Moreover, Paltalk recognizes that there were hybrid audio benefits not attributable to the '858 Patent. ECF No. 214 at 190:9–25, 295:16–296:3; ECF No. 215 at 375:2–7. The Court does not find Paltalk's statements during trial sufficiently erroneous to make this case exceptional.

### 4.    Paltalk's Technical Apportionment

The evidence supporting apportionment must be reliable and not speculative or conjectural. *Lucent*, 580 F.3d at 1337. Cisco contends that Paltalk failed to reliably apportion the infringing features from the non-infringing features.

Specifically, Cisco argues that Dr. Schaefer arbitrarily identified and weighted "key features of Webex" such as "novelty, design-around potential, and importance" without performing any calculation or explaining why he chose his percentages. ECF No. 225 at 14–15. Cisco then argues that Dr. Schaefer's assessment of the novelty and design-around features was

unsupported by the evidence because he relied on Dr. Madisetti, who did not testify at trial. *Id.* Cisco further argues that Dr. Schaefer failed to account for non-infringing uses. Thus, Cisco argues a new damages trial is warranted because Dr. Schaefer's apportionment was inadequate.

The Court disagrees. Dr. Schaefer explained how he apportioned between infringing and non-infringing functionalities, identifying Cisco's internal documents as the factual bases for his analysis. *See, e.g.*, ECF No. 214 at 283:1–299:3; PX62 at 1, PX109, PX145, PX129. Moreover, Dr. Schaefer explained that after he assigned technical weights to the features he identified, he further determined how much of each category was attributable to the '858 Patent. ECF No. 214 at 295:16–298:13. While Dr. Schaefer refers to "hybrid audio," he does so in context of the asserted patent, not writ large. *See id.* Finally, Dr. Schaefer's reliance on Dr. Madisetti was permissible under the Federal Rules of Evidence, and Cisco was able to cross-examine Dr. Schaefer regarding his conversations with Dr. Madisetti at trial. *See* ECF No. 214 at 323:19–328:4. Thus, the Court finds Dr. Schaefer's technical apportionment adequately supported by the record and sufficiently reliable.

### 5.    Damages Based on the Accused Products' Capabilities

Where the only asserted claim is a method claim, "[d]amages should be apportioned to separate out noninfringing uses." *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022). Here, Cisco argues a new trial on damages is warranted because Paltalk failed to present evidence of infringing use. ECF No. 225 at 18.  Cisco contends that Dr. Schaefer and Mr. Bratic both based their analyses on product capability and features rather than on usage. *Id.*

Paltalk counters that Cisco produced usage data for only a single year, and Paltalk's experts explained why this data was not a reliable indicator of usage over the relevant damages period.

ECF No. 233 at 16. Moreover, Paltalk argues it limited its damages base to products that were actually used to perform the claimed method—*i.e.*, Webex Audio—in accordance with *Niazi*. Paltalk further distinguishes the cases cited by Cisco and asserts there is no basis for a new trial.

The Court finds that a new trial on damages is warranted on this ground because Paltalk's damages theory failed to apportion for non-infringing uses. Mr. Bratic and Dr. Schaefer did not address or rely on any evidence that estimated use of the Webex Audio. While Paltalk's experts were free to find Cisco's data usage unreliable and decline to use it, the cases cited by both parties reaffirm the principle that a reasonable royalty for a method claim must be tied to the alleged infringer's *use* of the method, not merely to its sale of products capable of practicing the claimed method. *See Niazi*, 30 F.4th at 1357 ("Damages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method."); *Lucent*, 580 F.3d at 1334 ("No evidence describes how many Microsoft Outlook users had ever performed the patented method or how many times. Lucent has the burden to prove that the extent to which the infringing method has been used supports the lump-sum damages award."); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291–92 (Fed. Cir. 2020) (holding that sales of the accused product could not be a measure of damages for direct infringement by the defendant where it was undisputed that direct infringement occurred only after the accused product was installed).

Though Paltalk used Webex Audio revenue as the royalty base and apportioned between the functionalities attributable to the '858 Patent and those that are not, this method is not tethered to any alleged *use*. And while Paltalk asserts that "[a] company licensing a patented method often has strong reasons not to tie the royalty amount strictly to usage," Paltalk cites no evidence in the record supporting that this is the case here. *Cf. Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075,

1081 (Fed. Cir. 1983) (holding that a royalty based on actual use did not make sense where "the record contain[ed] substantial evidence that actual use of the snowmaking machinery would not have been the basis upon which a willing licensor and a willing licensee would have established the royalty").

In sum, the Court finds that Paltalk based its apportionment on the accused products' capabilities rather than on usage of the claimed method. Thus, the evidence presented at trial was legally insufficient to support the jury's verdict. Based on the Court's conclusion as to this ground, the Court does not reach Cisco's argument regarding whether Paltalk violated the entire market value rule.

### 6.    Non-Infringing Alternatives

In determining a reasonable royalty, a fact finder may consider evidence concerning the availability and cost of acceptable non-infringing alternatives to the patented invention. *Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 797 (S.D. Tex. 2023). Cisco argues that Paltalk failed to show the incremental value of the patented invention over non-infringing alternatives. ECF No. 225 at 19. Cisco contends that Dr. Schaefer's testimony that there were "no readily available alternatives" was conclusory and that his assumptions regarding novelty, and design-around potential are unsupported by the record. *Id.* Cisco further argues that the great weight of evidence established there were non-infringing alternatives. *Id.*

Paltalk counters that Dr. Schaefer and Mr. Bratic testified about the incremental benefits of the '858 Patent over other methods of communication. ECF No. 233 at 18–19. Moreover, Dr. Schaefer explained that there were "no readily available alternatives" to the infringing features. *Id.* Paltalk argues it is Cisco's burden to establish that non-infringing alternatives were acceptable,

and the jury was free to weigh the credibility of Cisco's witnesses and Paltalk's experts on this matter. *Id.*

The Court determines that a new trial is not warranted on this ground. Several courts have determined that the alleged infringer has the burden to establish that non-infringing alternatives were acceptable and available under a reasonable royalty analysis to get the benefit of a lower calculation. *See, e.g., Stoller*, 705 F. Supp. 3d at 798; *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-00343, 2024 WL 1289821, at *4 & n.1 (E.D. Tex. Mar. 26, 2024). Both sides presented competing testimony regarding the availability of acceptable non-infringing alternatives. *See* ECF No. 215 at 320:5–9; ECF No. 216 at 778:3–781:6; ECF No. 220 at 983:11–984:2. The Court thus concludes that a new trial is not warranted on this ground.

### 7.    Motion for Reconsideration Regarding Marking

Cisco asks the Court to reconsider its previous order denying Cisco's motion for partial summary judgment of no pre-suit damages based on Paltalk's failure to comply with the marking requirement of 35 U.S.C. § 287. ECF No. 225 at 20. However, Cisco reargues points raised in the original briefing. Motions for reconsideration on not vehicles for relitigating old issues. The Court declines to reconsider its previous ruling.

### 8.    Conclusion

For these reasons, the Court concludes that a new trial on damages is warranted. Paltalk's damages theory was based on accused product functionality rather than usage. Paltalk therefore failed to appropriately apportion infringing *use* of the asserted method claims in accordance with Federal Circuit precedent. Because the Court finds that Paltalk's damages evidence at trial is insufficient as a matter of law to support the jury's damages award, the appropriate remedy is a new trial. *See Power Integrations, Inc. v Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 980

(Fed. Cir. 2018) (vacating damages award where the evidence presented was insufficient as a matter of law and remanding for new trial).

While Cisco asks for remittitur to the maximum damages calculated by its damages expert, the Court determines that a new trial is the better remedy. If the Court were to decide to grant the motion for remittitur, it would be required to apply the maximum recovery rule, which would require a course of briefing, reweighing the evidence at trial, making factual determinations, and calculation of the maximum damages award supported by the evidence. *See Shockley v. Arcan*, 248 F.3d 1349, 1362 (Fed. Cir. 2001). Given Paltalk's assertion that Ms. Kindler's hypothetical negotiation date is flawed, and the Court's noted concern with that date as well, the Court finds no advantage to further litigation of the damages award post-trial because it is likely that Paltalk would assert its right to decline the award and obtain a new trial. It is more efficient to proceed directly to a new trial. The parties shall meet and confer regarding appropriate next steps and shall submit to the Court an agreed schedule by October 1, 2026.

## IV.    CONCLUSION

For these reasons, it is therefore **ORDERD** that Cisco's Motion for Motion for Judgment as a Matter of Law or a New Trial Under Federal Rules of Civil Procedure 50(b) and 59 (ECF No. 225) is **GRANTED-IN-PART and DENIED-IN-PART**.

Specifically, it is **ORDERED** that Cisco's motion for judgment as a matter of law or new trial as to the findings of infringement and no invalidity of Claims 1, 2, and 3 is **DENIED**.

It is further **ORDERED** that Cisco's motion for remittitur is **DENIED** and Cisco's motion for new trial on damages is **GRANTED**. The jury verdict awarding $65,720,700 is **VACATED**, but the jury verdict of infringement and no invalidity is unchanged.

It is further **ORDERED** that Paltalk's motion to amend the final judgment to add prejudgment and post-judgment interest (ECF No. 226) is **DENIED WITHOUT PREJUDICE**.


**SIGNED** this 27th day of August, 2025.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE